Michael S. Amato
Sheryl P. Giugliano
Nicolas A. Florio
Madison F. Scarfaro
RUSKIN MOSCOU FALTISCHEK, P.C.
1425 RXR Plaza
East Tower, 15th Floor
Uniondale, New York 11556
Telephone:  (516) 663-6600
mamato@rmfpc.com
sgiugliano@rmfpc.com
nflorio@rmfpc.com
mscarfaro@rmfpc.com

*Proposed Counsel to the Debtors and Debtors-in-Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| EXCELL COMMUNICATIONS, INC., *et al.*,[1] | Case No. 25-71444 (____) |
| Debtors. | (Joint Administration Requested) |

-------------------------------------------------------------x

### DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING DEBTORS TO PAY CERTAIN PRE-PETITION CLAIMS OF CRITICAL VENDORS, AND GRANTING RELATED RELIEF

Excell Communications, Inc. and its affiliated debtors and debtors-in-possession (collectively, the "**Debtors**," and each individually, a "**Debtor**") by and through their proposed counsel, Ruskin Moscou Faltischek, P.C., respectfully submit this motion (the "**Motion**"), for entry of interim and final orders, substantially in the forms annexed hereto, respectively, as **Exhibit A** (the "**Proposed Interim Order**") and **Exhibit B** (the "**Proposed Final Order**"): (i) authorizing, but not directing, the Debtors to pay the pre-petition claims of certain Critical Vendors

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: E-Fleet Services Corp. (3213), Excell Communications, Inc. (3973), and Telecable, Inc. (7957). The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is 255 Executive Drive, Suite 409, Plainview, New York 11803.

(defined below); (ii) authorizing, but not directing, the Debtors to waive claims under chapter 5 of the Bankruptcy Code (defined below) against the Critical Vendors; and (iii) granting related relief. In support of this Motion, the Debtors respectfully represent as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), to the entry of a final order by the Bankruptcy Court in connection with this Motion to the extent that it is later determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105 and 366 of title 11 of the United States Code (the "**Bankruptcy Code**").

**BACKGROUND**

4.      On the date hereof (the "**Petition Date**"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Simultaneously herewith, the Debtors have sought joint administration of these bankruptcy cases.

5.      The Debtors are authorized and intend to continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

6.      No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

7.      The Debtors specialize in the development of network infrastructure for leading

2

companies in the wireless, fiber, and utility industries, including the provision of comprehensive construction and project management services to the telecommunications industry.

8.      The Court and interested parties are respectfully referred to the *Declaration of Harry Zapiti Pursuant to Local Rule 1007-4 in Support of First Day Motions*, filed contemporaneously herewith, for a more complete description of the Debtors, their operations, and the events leading to the filing of these chapter 11 cases.

**The Critical Vendors**

9.      In the ordinary course of business, the Debtors engage a limited number of companies to provide the critical services upon which the Debtors depend to facilitate their operations. These services predominantly sustain the design and construction components of the Debtors' projects, including the critical planning, design and permitting functions necessary for the Debtors to timely service their major customers. Without these critical services, the Debtors would not be able to operate their businesses effectively or generate revenue from their projects.

10.      Accordingly, the Debtors, after careful assessment of their books and records and business models, have identified those certain vendors that are critical to the Debtors' uninterrupted operations (collectively, the "**Critical Vendors**," and each individually, a "**Critical Vendor**"). A list of the potential Critical Vendors and the approximate pre-petition claims held by each Critical Vendor (the "**Critical Vendor Claims**") is annexed hereto as **<u>Exhibit C</u>**.

11.      The Debtors believe that payment of those Critical Vendor Claims is vital to the Debtors' ability to continue to provide its services on a timely basis to their customers and, thus, to their efforts to preserve and maximize value for all stakeholders during their bankruptcy proceedings.

1045573

12.     To identify the Critical Vendors identified in **Exhibit C**, the Debtors evaluated their vendors according to, among other things, the following criteria: (a) whether the vendor or service provider is a sole, limited, or high value source provider of goods or services critical to the business operations of the Debtors; (b) whether no or few alternative vendors are available that can provide requisite volumes of similar goods or services on equal or better terms to the Debtors; (c) whether the Debtors could not continue to operate while transitioning business to an alternative vendor or source of supply; (d) whether replacement costs, including pricing, transition expenses and lost sales, exceed the amount of the vendor's outstanding invoices to a significant degree; (e) whether an agreement exists by which the Debtors could compel the vendor to perform; or (f) whether specifications (including patented processes or materials), permit or contract requirements prevent, directly or indirectly, the Debtors from obtaining goods and/or services from an alternative vendor or source; and (g) whether failure to pay all or a part of the invoices of a vendor or service provider who meets any of the foregoing standards could result in financial distress for the vendor such that the Debtors' ability to continue operating would be jeopardized. Based on this evaluation procedure, the Debtors are confident that the Critical Vendors listed in **Exhibit C** are appropriately identified.

13.     While the list of Critical Vendors on **Exhibit C** is, upon information and belief, a complete and accurate list of all Critical Vendors and the estimated amounts that may need to be paid to such Critical Vendors, the Debtors reserve the right to identify additional Critical Vendors or to amend **Exhibit C** in the ordinary course of business as circumstances may warrant.

14.     In the event that the Debtors identify in the ordinary course additional Critical Vendors and/or additional amounts sought to be paid to the Critical Vendors not currently set forth in **Exhibit C** hereto, the Debtors will file a notice with this Court listing: (a) the Critical Vendor

4

sought to be paid; (b) the services provided by such Critical Vendor; (c) the amount sought to be paid to such Critical Vendor; (d) the risk of harm from nonpayment or the economic benefit to the Debtors' estates from payment to such Critical Vendor; and (e) the absence of a legal or practical alternative to payment of such Critical Vendor.

**Customary Trade Terms**

15.     In return for paying the Critical Vendor Claims, the Debtors will use commercially reasonable efforts to require the applicable Critical Vendor to provide favorable trade terms in line with historical practice for the post-petition delivery of goods and services or otherwise continue supplying the Debtors with essential goods and services for the duration of these chapter 11 cases.

16.     The Debtors therefore request authority to condition payment of the Critical Vendor Claims upon the execution of a trade agreement, substantially in the form annexed hereto as **Exhibit D**, when and if the Debtors determine, in the exercise of their reasonable business judgment, that it is appropriate to do so. Any proposed trade agreement would seek to secure trade terms at least as favorable to the Debtors as those practices and programs in place prior to the Petition Date.

17.     If any Critical Vendor accepts payment pursuant to the relief requested in this Motion and does not continue to provide services to the Debtors in accordance with customary trade terms, subject to any trade agreement executed between the Debtors and such Critical Vendor, then the Debtors propose that: (a) any such payment on account of a pre-petition claim received by such Critical Vendor shall be deemed, in the Debtors' sole discretion, an improper post-petition transfer and, therefore, immediately recoverable by the Debtors in cash upon written request by the Debtors; (b) upon recovery by the Debtors, any pre-petition claim of such Critical Vendor shall be reinstated as if the payment had not been made; and (c) if there exists an

outstanding post-petition balance due from the Debtors to such Critical Vendor, the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by the Motion to such outstanding post-petition balance and such vendor will be required to repay to the Debtors such paid amounts that exceed the post-petition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims.

## RELIEF REQUESTED

18.     By this Motion, the Debtors request that this Court enter the Proposed Interim Order and Proposed Final Order, substantially in the forms annexed hereto, respectively, as **Exhibit A** and **Exhibit B**: (i) authorizing, but not directing, the Debtors to pay in the ordinary course of business those pre-petition claims held by the Critical Vendors; (ii) authorizing, but not directing, the Debtors to waive claims under chapter 5 of the Bankruptcy Code against the Critical Vendors; and (iii) granting related relief. In addition, the Debtors request the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances, and seek a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h).

## BASIS FOR RELIEF

19.     It is widely recognized that courts may authorize the debtor's payment of pre-petition obligations where necessary to protect and preserve the estate. ). *See Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 985 (2017) (recognizing that courts routinely authorize the allowance of pre-petition payments to essential suppliers in order to preserve and maximize the debtors' estates). In authorizing such payments, courts routinely rely on legal theories rooted in Bankruptcy Code §§ 105(a) and 363(b).

20.     Bankruptcy Code § 363(b)(1) provides, in relevant part, that a debtor may, after notice and a hearing, "use, sell or lease, other than in the ordinary course of business, property of

the estate." 11 U.S.C. § 363(b)(1). Under that section, a court may authorize a debtor to pay certain pre-petition claims where a sound business purpose exists for doing so. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (recognizing that Bankruptcy Code § 363(b) provides "broad flexibility" to authorize debtor to honor pre-petition claims supported by appropriate business justification); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (Bankr. S.D.N.Y. 1983) (relying on Bankruptcy Code § 363(b) to authorize the payment of pre-petition claims to suppliers); *Official Comm. of Unsecured Creditors of LTV Aerospace & Defense Co. v. LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a court may approve an application under Bankruptcy Code § 363(b) upon a showing of a good business reason for the disposition).

21.     In addition, Bankruptcy Code § 105(a) provides that a court, pursuant to its equitable powers, may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Pursuant to the "doctrine of necessity," the court may authorize the payment of pre-petition obligations when essential to the continued operation of a debtor's business. *See, e.g.*, *In re C.A.F. Bindery, Inc.*, 199 B.R. 828, 835 (Bankr. S.D.N.Y. 1996); *see also In re Fin. News Network Inc.*, 134 B.R. 732, 735–36 (Bankr. S.D.N.Y. 1991) ("The 'doctrine of necessity' stands for the principle that a bankruptcy court may allow pre-plan payments of prepetition obligations where such payments are critical to the debtor's reorganization."). Furthermore, courts have even held that, consistent with Bankruptcy Code § 1107(a), there are instances in which a debtor's implied duty as a debtor-in-possession to protect and preserve the estate "can only be fulfilled by the preplan satisfaction of a prepetition claim." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).

22.     Here, the Debtors respectfully submit that their request for the relief herein satisfies the foregoing standards.

23.     The Debtors have determined, according to their business judgment, that the preservation of the Debtors' relationships with the Critical Vendors is of the utmost importance to the Debtor's continued operations and future prospects. The Debtors predominantly rely on their Critical Vendors to sustain the design and construction aspects of their business model, without which the Debtors cannot complete their projects and, in turn, generate revenue.

24.     Because of the scale and essential nature of the critical services provided by the Critical Vendors, the Debtors cannot shift those services to alternative vendors. As of the date of this Motion, certain Critical Vendors are actively processing hundreds of unique permits across dozens of the Debtors' construction projects. Critical Vendors are also serving certain other indispensable functions across the Debtors' business model, coordinating the Debtors' complex construction efforts across multiple states for their largest customers. Even where alternative vendors exist that could provide comparable services to the Critical Vendors, the interruption of the permit acquisition process and larger operational functions on such a large scale would impose severe time and cost strains on the Debtors' business operations.

25.     The ability to satisfy the Debtors' Critical Vendor Claims, will allow the Debtors to discharge their fiduciary duties as debtors-in-possession. Such relief promotes the preservation and maximization of the going concern value of the Debtors' businesses, including the preservation of key business relationships. Absent such relief, the Debtors believe that their relationships with the Critical Vendors will materially deteriorate and cause irreparable harm to the Debtors' businesses, goodwill, employees, and customers. Indeed, such harm would likely far outweigh the cost of payment of the Critical Vendors Claims.

1045573

26.     The Debtors also seek Court authority, but not direction, to waive and release any and all actual or potential claims and causes of action to avoid a transfer pursuant to any applicable section of the Bankruptcy Code, including, but not limited to, Bankruptcy Code §§ 502(d), 544, 545, 547, 548, 549, 550, 551, 553(b), as against the Critical Vendors. The Debtors submit that this specialized relief is appropriate because of the years-long work that the Critical Vendors have provided in support of the Debtors' businesses, which has been critical to the Debtors' ongoing operations and survival. The Debtors' relationships with these particular vendors is unique, and such relief is essential to the preservation of those relationships into the future.

27.     The Debtors also submit that they have sufficient funds to pay the Critical Vendor Claims in the ordinary course of business by virtue of expected cash flows from ongoing business operations. Moreover, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Critical Vendor Claims. Therefore, the Debtors respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

28.     For the foregoing reasons, the Debtors respectfully submit that the relief requested herein reflects the Debtors' good faith exercise of sound business judgment, is necessary to avoid immediate and irreparable harm, and is in the best interests of the Debtors' estates, their creditors, and other parties in interest.

## BASIS FOR EXTRAORDINARY RELIEF AND WAIVER OF STAY

29.     Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an order granting "a motion to use,

9

sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before twenty-one (21) days after the filing of the petition. FED. R. BANKR. P. 6003(b).

30.     The Debtors respectfully submit that the extraordinary relief sought herein is necessary for the Debtors to operate their business without material disruption and to preserve and maximize value for their estates. Failure to receive such relief within the first twenty-one (21) days of the Petition Date could drastically undermine the Debtors' efforts to preserve their relationships with the Critical Vendors and secure the critical design documents, permits, and construction support they need to complete their projects. Accordingly, any such disruption would cause immediate and irreparable harm to the Debtors' ongoing operations and revenue prospects.

31.     To implement the foregoing successfully, the Debtors respectfully request that the Court enter an order on an interim basis finding that notice has been sufficient under Bankruptcy Rule 6004(a), and further waiving the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h).

## NOTICE

31.     The Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable: (i) the Office of the United States Trustee for the Eastern District of New York, Central Islip Division, Alfonse D'Amato Federal Courthouse, 560 Federal Plaza, Central Islip, New York 11722-4456, Attn: Christine H. Black (Christine.H.Black@usdoj.gov); (ii) any party whose interests are directly affected by relief requested in the Motion; (iii) any party entitled to notice pursuant to rule 9013-1(d) of the Local Bankruptcy Rules for the Eastern District of New York (the "**Local Rules**") or that requests notice pursuant to Bankruptcy Rule 2002; (iv) the consolidated list of the thirty (30) largest unsecured creditors of the Debtors; and (v) any other parties required to receive service under Local Rule

1045573

2002-2 and the Court's Administrative Order No. 565 adopting the *Guidelines for First Day Motions*, dated July 6, 2010. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **LOCAL RULE 9013-1(A) STATEMENT**

32.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

## **NO PRIOR REQUEST**

33.     No prior request for the relief sought herein has been made to this Court or any other court.

[*Remainder of page intentionally left blank*]

1045573

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request this Court enter the Proposed Interim Order and Proposed Final Order, substantially in the forms annexed hereto, respectively, as **Exhibit A** and **Exhibit B**, granting the relief requested herein and such other relief as is just and proper.

Uniondale, New York
April 14, 2025

Respectfully submitted,

 /s/ *Michael S. Amato*
Michael S. Amato
Sheryl P. Giugliano
Nicolas A. Florio
Madison F. Scarfaro
**RUSKIN MOSCOU FALTISCHEK, P.C.**
1425 RXR Plaza
East Tower, 15th Floor
Uniondale, New York 11556
Telephone:  516-663-6600
mamato@rmfpc.com
sgiugliano@rmfpc.com
nflorio@rmfpc.com
mscarfaro@rmfpc.com

*Proposed Counsel to the Debtors and
Debtors-in-Possession*

1045573

## **EXHIBIT A**

**Proposed Interim Order**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                                                          Chapter 11

EXCELL COMMUNICATIONS, INC., *et al.*,[1]                Case No. 25-71444 (___)

                                        Debtors.            (Joint Administration Requested)
------------------------------------------------------------x

### INTERIM ORDER AUTHORIZING DEBTORS TO PAY CERTAIN PRE-PETITION CLAIMS OF CRITICAL VENDORS, AND GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of Excell Communications, Inc. and its affiliated debtors

and debtors-in-possession (collectively, the "**Debtors**," and each individually, a "**Debtor**"),

seeking entry of an interim order authorizing the Debtors to pay the pre-petition claims of certain

Critical Vendors, and granting related relief; and this Court having jurisdiction over this matter

pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that the Motion is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having the power to enter a final

order consistent with Article III of the United States Constitution; and this Court having found that

venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408

and 1409; and this Court having found that the Debtors provided adequate and appropriate notice

of the Motion under the circumstances and that no other or further notice is required; and this Court

having found and determined that the relief requested in the Motion is in the best interest of the

Debtors' estates, their creditors, and other parties in interest; and that the legal and factual bases

set forth in the Motion establish just cause for the relief granted herein; and after due deliberation

and sufficient cause appearing therefor, it is hereby

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: E-Fleet Services Corp. (3213), Excell Communications, Inc. (3973), and Telecable, Inc. (7957). The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is 255 Executive Drive, Suite 409, Plainview, New York 11803.

[2] All capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion.

ORDERED, that the Motion is **GRANTED** on an interim basis as set forth herein; and it is further

ORDERED, that the Debtors are authorized, but not directed, to honor, pay, or otherwise satisfy in the ordinary course those pre-petition claims held by the Critical Vendors (the "**Critical Vendor Claims**") to the extent necessary to avoid immediate and irreparable harm to the Debtors' estates; and it is further

ORDERED, that the Debtors are authorized, but not directed, to condition payment of the Critical Vendor Claims upon the execution of a trade agreement, substantially in the form annexed to the Motion as **Exhibit D**, and the Debtors are authorized, but not directed, to enter into such trade agreements when and if the Debtors determine, in the exercise of their reasonable business judgment, that it is appropriate to do so; and it is further

ORDERED, that the form of trade agreement annexed to the Motion as **Exhibit D** is approved in its entirety, and the Debtors are authorized, but not directed, to negotiate, modify, or amend the trade agreement in their reasonable business judgment; and it is further

ORDERED, that the Debtors are authorized, but not directed, to waive and release any and all actual or potential claims and causes of action to avoid a transfer pursuant to any applicable section of the Bankruptcy Code, including, but not limited to, Bankruptcy Code §§ 502(d), 544, 545, 547, 548, 549, 550, 551, 553(b), against the Critical Vendors; and it is further

ORDERED, that nothing herein shall impair or prejudice the Debtors' ability to contest, in their sole discretion, the extent, perfection, priority, validity, or amounts of any claims held by any of the Critical Vendors. The Debtors do not concede that any claims satisfied pursuant to this Order are valid, and the Debtors expressly reserve all rights to contest the extent, validity, or perfection or seek the avoidance of all such liens or the priority of such claims; and it is further

1045576

**ORDERED**, that notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed as: (a) an admission as to the validity or priority of any claim or lien against the Debtors, (b) a waiver of the Debtors' rights to subsequently dispute such claim or lien on any grounds, (c) a promise or requirement to pay any pre-petition claim, (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or this Order, (e) a request or authorization to assume any pre-petition agreement, contract, or lease pursuant to Bankruptcy Code § 365, or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; and it is further

**ORDERED**, that the banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the pre-petition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Order; and it is further

**ORDERED**, that the contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b) because the relief granted in this Order is necessary to avoid immediate and irreparable harm to the Debtors' estates; and it is further

**ORDERED**, that notice of the Motion shall be deemed good and sufficient notice of such Motion, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice or waived; and it is further

**ORDERED**, that notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

1045576

**ORDERED**, that to the extent the Motion is inconsistent with this Order, the terms of this Order shall govern; and it is further

**ORDERED**, that the Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion; and it is further

**ORDERED**, that this Court shall retain jurisdiction over any and all issues arising from or related to the implementation, interpretation, and enforcement of this Order; and it is further

**ORDERED**, that a final hearing on the Motion shall be held on _____**, 2025 at __:__ __.m. (ET)**, and any objections or responses to the Motion shall be filed and served so as to actually be received on or before _____**, 2025 at 4:00 p.m. (ET)** upon (i) proposed counsel to the Debtors, Ruskin Moscou Faltischek, P.C., 1425 RXR Plaza, East Tower, 15th Floor, Uniondale, New York 11556, Attn: Michael S. Amato and Nicolas A. Florio (mamato@rmfpc.com; nflorio@rmfpc.com) (ii) the Office of the United States Trustee for the Eastern District of New York, Central Islip Division, Alfonse D'Amato Federal Courthouse, 560 Federal Plaza, Central Islip, New York 11722-4456, Attn: Christine H. Black (Christine.H.Black@usdoj.gov); (iii) if applicable, counsel to any statutory committee appointed in these chapter 11 cases; and (vi) any party that has requested notice pursuant to Bankruptcy Rule 2002.

**EXHIBIT B**

**Proposed Final Order**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

In re:                                                    Chapter 11

EXCELL COMMUNICATIONS, INC., *et al.*,[1]        Case No. 25-71444 (____)

                           Debtors.        (Joint Administration Requested)

---------------------------------------------------------------x

## FINAL ORDER AUTHORIZING DEBTORS TO PAY CERTAIN PRE-PETITION CLAIMS OF CRITICAL VENDORS, AND GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of Excell Communications, Inc. and its affiliated debtors and debtors-in-possession (collectively, the "**Debtors**," and each individually, a "**Debtor**"), seeking entry of a final order authorizing the Debtors to pay the pre-petition claims of certain Critical Vendors, and granting related relief; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors provided adequate and appropriate notice of the Motion under the circumstances and that no other or further notice is required; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at the hearing held before this Court on _____, 2025 (the "**Final Hearing**"); and this Court having found and determined that the relief requested in the Motion is in the best interest of the Debtors' estates, their creditors, and other parties in interest; and that the legal and factual bases

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: E-Fleet Services Corp. (3213), Excell Communications, Inc. (3973), and Telecable, Inc. (7957). The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is 255 Executive Drive, Suite 409, Plainview, New York 11803.

[2] All capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion.

set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby

ORDERED, that the Motion is **GRANTED** on a final basis as set forth herein; and it is further

ORDERED, that the Debtors are authorized, but not directed, to honor, pay, or otherwise satisfy in the ordinary course those pre-petition claims held by the Critical Vendors (the "**Critical Vendor Claims**") to the extent necessary to avoid immediate and irreparable harm to the Debtors' estates; and it is further

ORDERED, that the Debtors may identify additional Critical Vendors and/or additional amounts sought to be paid to the Critical Vendors by filing a notice with the Court listing: (a) the Critical Vendor sought to be paid; (b) the services provided by such Critical Vendor; (c) the amount sought to be paid to such Critical Vendor; (d) the risk of harm from nonpayment or the economic benefit to the Debtors' estates from payment to such Critical Vendor; and (e) the absence of a legal or practical alternative to payment of such Critical Vendor; and it is further

ORDERED, that the Debtors are authorized, but not directed, to condition payment of the Critical Vendor Claims upon the execution of a trade agreement, substantially in the form annexed to the Motion as **Exhibit D**, and the Debtors are authorized, but not directed, to enter into such trade agreements when and if the Debtors determine, in the exercise of their reasonable business judgment, that it is appropriate to do so; and it is further

ORDERED, that the form of trade agreement annexed to the Motion as **Exhibit D** is approved in its entirety, and the Debtors are authorized, but not directed, to negotiate, modify, or amend the trade agreement in their reasonable business judgment; and it is further

2

1045578

**ORDERED**, that the Debtors are authorized, but not directed, to pay the Critical Vendor Claims, in the event that no trade agreement has been executed if the Debtors determine, in their business judgment that a formal trade agreement is unnecessary to ensure a vendor's continued performance upon customary trade terms; and it is further

**ORDERED**, that if any Critical Vendor accepts payment hereunder and does not continue supplying goods or services to the Debtors in accordance with customary trade terms, then: (a) any payment on account of a pre-petition claim received by such Critical Vendor shall be deemed, in the Debtors' sole discretion, an improper post-petition transfer and, therefore, immediately recoverable by the Debtors in cash upon written request by the Debtors; (b) upon recovery by the Debtors, any pre-petition claim of such Critical Vendor shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding post-petition balance due from the Debtors to such party, the Debtors may elect to re-characterize and apply any payment made pursuant to the relief requested by the Motion to such outstanding post-petition balance and such vendor will be required to repay to the Debtors such paid amounts that exceed the post-petition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise; and it is further

**ORDERED**, that prior to exercising any of the remedies set forth in the immediately preceding paragraph, the Debtors shall provide the applicable Critical Vendor with notice of their intent to exercise such remedies and a copy of this Order attached thereto (collectively, the "**Notice of Intent**"). The applicable Critical Vendor shall have fourteen (14) days from delivery of such Notice of Intent to file an objection with the Court and serve it on the Debtors, and if such Critical Vendor files and serves such objection, the Debtors shall not exercise any remedies set forth in the immediately preceding paragraph pending further order of the Court or agreement of the parties.

1045578

The Debtors shall provide a copy of this Order to the applicable Critical Vendor prior to such Critical Vendor's acceptance of any payment hereunder; and it is further

**ORDERED**, that the banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the pre-petition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Order; and it is further

**ORDERED**, that the Debtors are authorized to issue post-petition checks, or to effect post-petition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to pre-petition amounts owed in connection with any Critical Vendor Claims; and it is further

**ORDERED**, that the Debtors are authorized, but not directed, to waive and release any and all actual or potential claims and causes of action to avoid a transfer pursuant to any applicable section of the Bankruptcy Code, including, but not limited to, Bankruptcy Code §§ 502(d), 544, 545, 547, 548, 549, 550, 551, 553(b), against the Critical Vendors; and it is further

**ORDERED**, that nothing herein shall impair or prejudice the Debtors' ability to contest, in their sole discretion, the extent, perfection, priority, validity, or amounts of any claims held by any of the Critical Vendors. The Debtors do not concede that any claims satisfied pursuant to this Order are valid, and the Debtors expressly reserve all rights to contest the extent, validity, or perfection or seek the avoidance of all such liens or the priority of such claims; and it is further

**ORDERED**, that notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed as (a) an admission as to the validity

4

or priority of any claim or lien against the Debtors, (b) a waiver of the Debtors' rights to subsequently dispute such claim or lien on any grounds, (c) a promise or requirement to pay any pre-petition claim, (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or this Order, (e) a request or authorization to assume any pre-petition agreement, contract, or lease pursuant to Bankruptcy Code § 365, or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; and it is further

**ORDERED**, that notice of the Motion shall be deemed good and sufficient notice of such Motion, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice or waived; and it is further

**ORDERED**, that notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

**ORDERED**, that to the extent the Motion is inconsistent with this Order, the terms of this Order shall govern; and it is further

**ORDERED**, that the Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion; and it is further

**ORDERED**, that this Court shall retain jurisdiction over any and all issues arising from or related to the implementation, interpretation, and enforcement of this Order.

1045578

**<u>EXHIBIT C</u>**

**Critical Vendors List**

| Vendor Name | Approximate Pre-Petition Claim[2] |
|---|---|
| Asata Telecom LLC | $485,000 |
| Core Com Inc. | $114,612 |
| Togstad Construction LLC | $28,500 |
| RoadSafe Traffic Systems, Inc. | $6,000 |
| Colliers Engineering & Design, Inc. | $2,500,000 |
| Telecon Design (USA) Inc. | $1,146,000 |
| Communications Construction Corporation | $488,720 |

---

[2] These are approximate amounts that may be in dispute by the parties. The Debtors reserve all rights to revise the amounts set forth herein.

1045573

**EXHIBIT D**

**Form of Trade Agreement**

1045573

THIS TRADE AGREEMENT IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN. ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT FOR ANY SUCH CHAPTER 11 PLAN. THE INFORMATION IN THIS TRADE AGREEMENT STATEMENT IS SUBJECT TO CHANGE. THIS TRADE AGREEMENT STATEMENT IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.

## TRADE AGREEMENT

[COMPANY ENTITY] (the "**Company**"), on the one hand, and [SUPPLIER] ("**Supplier**"), on the other hand, hereby enter into the following trade agreement (this "**Trade Agreement**") dated as of _____, 2025.

### Recitals

WHEREAS on April 14, 2025 (the "**Petition Date**"), the Company and its affiliates and related entities (collectively, the "**Debtors**") filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Eastern District of New York (the "**Court**").

WHEREAS on _____, 2025, the Court entered the *Final Order Authorizing Debtors to Pay Certain Pre-Petition Claims of Critical Vendors, and Granting Related Relief* (ECF Doc. No. ___) (the "**Critical Vendor Order**"), authorizing the Debtors on a final basis, under certain conditions, to pay the pre-petition claims of certain vendors, including Supplier, subject to the terms and conditions set forth therein.[1]

WHEREAS prior to the Petition Date, Supplier delivered goods and/or provided services to the Company, and the Company paid Supplier for such goods and/or services, according to Customary Trade Terms (as defined herein).

---

[1] Capitalized terms used but not defined herein shall have the meanings set forth in the Critical Trade Order.

WHEREAS the Company and Supplier (each a "**Party**," and collectively, the "**Parties**") agree to the following terms as a condition of payment on account of certain pre-petition claims Supplier may hold against the Company.

<u>**Agreement**</u>

1.      <u>Recitals</u>. The foregoing recitals are incorporated herein by reference as if set forth at length herein.

2.      <u>Supplier Payment</u>. Supplier represents and agrees that, after due investigation, the sum of all amounts currently due and owing by the Company to Supplier is $_____ (the "**Agreed Supplier Claim**"). Following execution of this Trade Agreement, the Company shall, in full and final satisfaction of the Agreed Supplier Claim:

     a. Pay Supplier $_____ on account of its pre-petition claim (the "**Supplier Payment**") (without interest, penalties, or other charges), as such invoices become due and payable; or

     b. Pay the Supplier Payment (with interest, penalties, or other charges) on the date which is the later of thirty (30) days after the effective date of a chapter 11 plan and when the invoices become payable in ordinary course.

3.      <u>Agreement to Supply</u>.

     a. Supplier shall supply goods and/or provide services to the Company for the duration of the Debtors' chapter 11 cases based on the following "Customary Trade Terms": those trade terms at least as favorable to the Company as those practices and programs (including credit limits, pricing, cash discounts, timing of payments, allowances, product mix, availability, and other programs) in place in the terms prior to the Petition Date.

     b. Supplier shall continue all shipments of goods and provision of services in the ordinary course and shall fill orders for goods requested by the Company in the ordinary course of business for the duration of the Debtors' chapter 11 cases pursuant to the Customary Trade Terms.

     c. The Customary Trade Terms may not be modified, adjusted, or reduced in a manner adverse to the Company except as agreed to in writing by the Parties.

1045577

4.     <u>Other Matters</u>.

    a.    Supplier agrees that it shall not require a lump-sum payment upon the effective date of a plan in the Company's chapter 11 cases on account of any outstanding administrative claims Supplier may assert arising from the delivery of post-petition goods or services, to the extent that payment of such claims is not yet due. Supplier agrees that such claims will be paid in the ordinary course of business after confirmation of a plan pursuant to the Customary Trade Terms then in effect. The Supplier Payment will be made concurrently with payment of other outstanding administrative clams as provided in a confirmed plan.

    b.    Supplier will not separately seek payment from the Company on account of any pre-petition claim (including, without limitation, any reclamation claim or any claim pursuant to Bankruptcy Code § 503(b)(9)) outside the terms of this Trade Agreement or a plan confirmed in the Company's chapter 11 cases.

    c.    Supplier will not file or otherwise assert against the Company, its assets, or any other person or entity or any of their respective assets or property (real or personal) any lien, regardless of the statute or other legal authority upon which the lien is asserted, related in any way to any remaining pre-petition amounts allegedly owed to Supplier by the Company arising from pre-petition agreements or transactions. Furthermore, if Supplier has taken steps to file or assert such a lien prior to entering into this Trade Agreement, Supplier will promptly take all necessary actions to remove such liens.

5.     <u>Supplier Breach</u>.

    a.    In the event that Supplier fails to satisfy its undisputed obligations arising under this Trade Agreement (a "**Supplier Breach**"), upon written notice to Supplier, Supplier shall promptly pay to the Company immediately available funds in an amount equal to, at the election of the Company, the Supplier Payment or any portion of the Supplier Payment which cannot be recovered by the Company from the post-petition receivables then owing to Supplier from the Company.

    b.    In the event that the Company recovers the Supplier Payment pursuant to Section 5(a) hereof or otherwise, the full Agreed Supplier Claim shall be reinstated as if the Supplier Payment had not been made.

    c.    Supplier agrees and acknowledges that irreparable damage would occur in the event of a Supplier Breach and remedies at law would not be adequate to compensate the Company. Accordingly, Supplier agrees that the Company shall have the right, in addition to any other rights and remedies existing in its favor, to an injunction or injunctions to prevent breaches of the provisions of this Trade Agreement and to enforce its rights and obligations hereunder not only by an action or actions for damages but also by an action or actions for specific performance, injunctive relief

and/or other equitable relief. The right to equitable relief, including specific performance or injunctive relief, shall exist notwithstanding, and shall not be limited by, any other provision of this Trade Agreement. Supplier hereby waives any defense that a remedy at law is adequate and any requirement to post bond or other security in connection with actions instituted for injunctive relief, specific performance, or other equitable remedies.

6.    <u>Notice</u>.

If to Supplier:

_____
_____
_____
_____

If to the Company:

Excell Communications, Inc.
255 Executive Dr., Suite 409
Plainview, NY 11803
Attn:    Carlos Lourenco, CEO
         Harry Zapiti, CFO
         carloslourenco@excellcommunications.com
         harryzapiti@excellcommunications.com

With a copy to:

Ruskin Moscou Faltischek, P.C.
1425 RXR Plaza
East Tower, 15th Floor
Uniondale, NY 11556
Attn:    Michael S. Amato, Esq.
         Nicolas A. Florio, Esq.
         mamato@rmfpc.com
         nflorio@rmfpc.com

7.    <u>Representations and Acknowledgements</u>. The Parties agree, acknowledge and represent that:

a.    The Parties have reviewed the terms and provisions of the Critical Trade Order and this Trade Agreement and consent to be bound by such terms and that this Trade Agreement is expressly subject to the procedures approved pursuant to the Critical Trade Order;

1045577

b. Any payments made on account of the Agreed Supplier Claim shall be subject to the terms and conditions of the Critical Trade Order;

c. If Supplier refuses to supply goods or services to the Company as provided herein or otherwise fails to perform any of its obligations hereunder, the Company may exercise all rights and remedies available under the Critical Trade Order, the Bankruptcy Code, or applicable law; and

d. In the event of disagreement between the Parties regarding whether a breach has occurred, either Party may apply to the Court for a determination of their relative rights, in which event, no action may be taken by either Party, including, but not limited to, the discontinuing of shipment of goods from Supplier to the Company, until a ruling of the Court is obtained.

8. <u>Confidentiality</u>. Supplier agrees to hold in confidence and not disclose to any party: (a) this Trade Agreement; (b) any and all payments made by the Company pursuant to this Trade Agreement; (c) the terms of payment set forth herein; and (d) the Customary Trade Terms (collectively, the "**Confidential Information**"); provided, that, if any party seeks to compel Supplier's disclosure of any or all of the Confidential Information, through judicial action or otherwise, or Supplier intends to disclose any or all of the Confidential Information, Supplier shall immediately provide the Company with prompt written notice so that the Company may seek an injunction, protective order or any other available remedy to prevent such disclosure; provided, further, that, if such remedy is not obtained, Supplier shall furnish only such information as Supplier is legally required to provide.

9. <u>Miscellaneous</u>.

a. The Parties hereby represent and warrant that: (i) they have full authority to execute this Trade Agreement on behalf of the respective Parties; (ii) the respective Parties have full knowledge of, and have consented to, this Trade Agreement; and (iii) they are fully authorized to bind that Party to all of the terms and conditions of this Trade Agreement.

b. This Trade Agreement sets forth the entire understanding of the Parties regarding the subject matter hereof and supersedes all prior oral or written agreements between them. This Trade Agreement may not be changed, modified, amended or supplemented, except in a writing signed by both Parties. Moreover, Supplier

agrees to vote all claims now or hereafter beneficially owned by Supplier in favor of, and not take any direct or indirect action to oppose or impede confirmation of, any chapter 11 plan on a timely basis in accordance with the applicable procedures set forth in any related disclosure statement and accompanying solicitation materials, and timely return a duly-executed ballot to the Debtors in connection therewith, if such chapter 11 plan provides for a treatment of any Agreed Supplier Claim that is materially consistent with this Agreement.

c.  Signatures by facsimile or electronic signatures shall count as original signatures for all purposes.

d.  This Trade Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

e.  The Parties hereby submit to the exclusive jurisdiction of the Court to resolve any dispute with respect to or arising from this Trade Agreement.

f.  This Trade Agreement shall be deemed to have been drafted jointly by the Parties, and any uncertainty or omission shall not be construed as an attribution of drafting by any Party.

[*Remainder of page intentionally left blank; signature page follows*]

1045577

AGREED AND ACCEPTED AS OF THE DATE SET FORTH ABOVE:

**[COMPANY ENTITY]**                    **[SUPPLIER]**


_____        _____

By: _____        By: _____
Name: _____        Name: _____
Title: _____        Title: _____

1045577