Michael S. Amato
Sheryl P. Giugliano
Nicolas A. Florio
Madison F. Scarfaro
RUSKIN MOSCOU FALTISCHEK, P.C.
1425 RXR Plaza
East Tower, 15th Floor
Uniondale, New York 11556
Telephone:  (516) 663-6600
mamato@rmfpc.com
sgiugliano@rmfpc.com
nflorio@rmfpc.com
mscarfaro@rmfpc.com

*Proposed Counsel to the Debtors and Debtors-in-Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| EXCELL COMMUNICATIONS, INC., *et al.*,[1] | Case No. 25-71444 (___) |
| Debtors. | (Joint Administration Requested) |

-----------------------------------------------------------x

### DECLARATION OF HARRY ZAPITI PURSUANT TO LOCAL RULE 1007-4 IN SUPPORT OF FIRST DAY MOTIONS

Harry Zapiti, makes this declaration under 28 U.S.C. § 1746:

1.      I am the Chief Financial Officer of Excell Communications, Inc. ("**Excell**"), Telecable, Inc. ("**Telecable**"), and E-Fleet Services Corp. ("**E-Fleet**", together with Excell and Telecable collectively, the "**Debtors**" ).

2.      On the date hereof, each of the Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in this court (the "**Court**").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: E-Fleet Services Corp. (3213), Excell Communications, Inc. (3973), and Telecable, Inc. (7957). The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is 255 Executive Drive, Suite 409, Plainview, New York 11803.

3. I am knowledgeable and familiar with the Debtors' day-to-day operations, business and financial affairs, books and records, and the circumstances leading to the commencement of these chapter 11 cases (the "**Chapter 11 Cases**"). Except as otherwise indicated herein, the facts set forth in this declaration (the "**Declaration**") are based upon my personal knowledge, my review of relevant documents, information provided to me by employees of the Debtors or advisors and counsel to the Debtors or my opinion based upon my experience, knowledge, and information concerning the Debtors' operations. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

4. This Declaration is submitted pursuant to Rules 1007-4 and 9077-1 of the Local Bankruptcy Rules for the Eastern District of New York (the "**Local Rules**") for the purpose of apprising the Court and parties in interest of the circumstances that led to the commencement of these Chapter 11 Cases, and in support of the motions and applications that the Debtors have filed with the Court, including the "first day" motions (the "**First Day Motions**") that have been filed with this Court contemporaneously herewith.

## I.

### Nature of Debtors' Business and Circumstances
### Leading to the Filing of These Chapter 11 Cases

5. The Debtors specialize in the development of network infrastructure for leading companies in the wireless, fiber, and utility industries, including the provision of comprehensive construction and project management services to the telecommunications industry.

**a. Excell**

6. Excell is a corporation organized and existing under the laws of Alabama. Founded in 2008, Excell originally was a small regional telecommunications contractor with offices in Birmingham, Alabama.

1045457

7.      Excell was purchased by *Dunas de Contrastes* (Portuguese corporation based in Braga, Portugal) in 2018.

8.      In 2019, Excell began providing services to Altice, USA. In 2020, primarily due to its growing relationship and business with Altice, Excell relocated its main business operations to Plainview, New York.

9.      Excell on the one hand, and Altice USA, LLC and CSC Holdings, LLC (collectively, "**Altice**") entered into that certain Master Services Agreement effective as of August 28, 2022 (the "**2022 MSA**") and related Statements of Work ("**SOW's**") and related documents and agreements, as supplemented and amended from time to time (the "**Altice Agreements**") pursuant to which Excell provided goods and services to Altice and certain of its subsidiaries.

10.     Excell's business providing fiber optic connection and construction services to Altice grew to approximately $250–300 million per year in 2022. Almost 100% of all Excell's work was for Altice.  By 2022, Excell was the one of the four largest fiber optic deployment companies in the United States, and had personnel, fleet contractors,  and real estate (offices, lots, warehouses) to support those operations, with over five hundred (500) employees, operating in more than thirty (30) states.

11.     In 2022, *Dunas de Contrastes* sold its interest in Excell to its current owner, Global Growth Tech Fund, a private equity fund based in Lisbon, Portugal.

12.     In or about July 2023 there was a breakdown in the relationship between Altice and Excell, unrelated to Excell's performance.  Altice unilaterally terminated all contracts and work going forward with Excell. [2]

---

[2] In July 2023, the Portuguese government announced an investigation into alleged fraud involving Altice and various contractors/individuals. Soon afterward, Altice terminated its relationship with Excell.

3

13.     Excell's business has two major components — design and construction.  Design requires: (i) completing a survey or surveys, (ii) project design and (iii) obtaining necessary permits and licenses to complete the potential project.  The construction phase is the actual installation of fiber optic cable and related equipment, which can be installed either aerial or underground.

14.     Surveys are obtained from third party subcontractors. Permits are set up and submitted by a third party and obtained by Excell.  Each project may require multiple permits at various levels, including state, county and local municipalities or utilities.  The project design phase is performed by a mix of third party contractors and existing Excell employees.

15.     Historically, construction was completed using Excell employees and/or subcontractors.  Going forward, Excell will complete projects using subcontractors, with Excell providing project management services.

16.     Excell has two major customers — Connect Holding II LLC d/b/a Brightspeed ("**Brightspeed**") and Hotwire Communications, Ltd. ("**Hotwire**"). Pursuant to that certain Master Services Agreement dated as of July 31, 2023 (as amended and supplemented from time to time) between Excell and Brightspeed, Excell provides goods and services to Brightspeed related to the installation and maintenance of Fiber optic cables and networks.

17.     Pursuant to that certain Subcontractor Master Services Agreement dated as of August 28, 2023 (as amended and supplemented from time to time) between Excell and Hotwire, Excell provides goods and services to Hotwire related to the installation and maintenance of Fiber optic cables and networks.

1045457

**b. Telecable**

18.     In or about 2022, Excell acquired Telecable.  Historically, Telecable was a cable and line construction service.   It is a Tier 1 partner of Comcast Cable Communications Management, LLC ("**Comcast**").  Excell  acquired Telecable based upon its relationship as a Tier 1 partner of Comcast.

19.     Telecable presently provides "business as usual" or "BAU" services to Comcast, essentially performing maintenance work for existing networks in specific zones. This current work is not profitable, which has resulted in Excell providing additional funding to Telecable to sustain its operations.

20.     However, this work is essential to develop Telecable and develop the opportunity to expand its role for Comcast to include more profitable design and construction projects. Presently, Telecable is working on several construction projects for Comcast in the Edison, New Jersey region.

21.     There exists large demand for fiber optic design and construction services.  The proliferation of data streaming has exceeded the capabilities of existing networks reliant upon coaxial cable.  Parties are able to stream limitless data over fiber optic networks.

22.     Developing and installing fiber optic networks has become a national security priority in the United States.  This business is expected to expand exponentially over the next five years.  There is substantial federal and state investment in these projects as the United States hopes to match the almost total penetration of fiber optic in Europe and Asia.

23.     The goal is to have Telecable expand its existing scope of work with Comcast to include design and construction projects.

**c. E-Fleet**

1045457

24.    E-Fleet essentially is a special purpose entity.  It leased vehicles and equipment pursuant to that certain Master Lease dated March 17, 2023, and related documents (the "**Altec Lease**"), by and between E-Fleet and ALTEC Capital Services, LLC ("**Altec**"). The Altec Lease is guaranteed by Excell.

### d.  Circumstances Leading to Filing

25.    The breakdown with Altice required Excell to downsize dramatically.  Excell was slow to take the necessary measures to adapt to its new, much smaller business.  Initially, Excell expected that it could replace the work that it previously performed for Altice, maintain the company, and provide the same level of service.  Once Excell realized that it could not fully replace the Altice work, it already had sustained substantial losses.

26.    The Debtors engaged in substantial efforts to right size it business operations.  It has returned vehicles and equipment that it leased pursuant to various agreements, surrendered multiple leased premises and relocated to smaller, less expensive and appropriate spaces, and reduced its headcount.  However, business is not sustainable over the long term under its current debt obligations, cost structure and sales volume. Given these considerations, the Debtors have concluded, in the exercise of its business judgment and as fiduciaries for its stakeholders, that the only viable path to maximize the value of its business and to preserve as many jobs as possible is a chapter 11 filing.

## II.
## The First Day Motions[3]

### A.    Motion for Joint Administration

---

[3] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the respective First Day Motion.

1045457

27.     The Debtors request that the Court grant their motion for an order directing joint administration ("**Joint Administration**") of the Debtors' chapter 11 cases.

28.     The Debtors in these chapter 11 cases are affiliated and related, but independent, entities. Excell is the parent of each of the other Debtors. Therefore, I am advised by counsel that joint administration of these chapter 11 cases is appropriate under Bankruptcy Rule 1015(b).

29.     Joint administration will save time and money and avoid duplicative and potentially confusing filings by permitting counsel for all parties in interest to: (a) use a single caption on the numerous documents that will be served and filed herein; and (b) file the papers in one case rather than in multiple cases. Joint administration also will protect parties in interest by ensuring that parties in each of the Debtors' chapter 11 cases will be apprised of the various matters taking place before this Court in the chapter 11 cases.

30.     The rights of the Debtors' respective creditors will not be adversely affected by joint administration of these chapter 11 cases inasmuch as the relief sought is purely procedural and is in no way intended to affect any substantive rights. All creditors and other parties in interest will maintain whatever claims and rights that they may have against the Debtors' individual estates.

31.     Additionally, the Debtors seek authority to file, where necessary, monthly operating reports on a consolidating basis as required by the Office of the United States Trustee if, in the Debtors' sole determination, after consultation with the Office of the United States Trustee and the creditors' committee (if a committee is appointed and chooses to serve in these chapter 11 cases), such consolidation of the monthly operating reports would be in the best interests of administrative economy and efficiency and would accurately reflect the Debtors' consolidated business operations and financial affairs.

**B.      Motion to Implement Case Management Procedures**

32.      The Debtors request that the Court grant the Debtors' motion to implement the case management procedures (the "**Case Management Procedures**").

33.      The proposed Case Management Procedures seek to, among other things: (a) establish the requirements for filing and serving notices, motions, applications, declarations, objections, responses, memoranda briefs, supporting documents, and other papers filed in these chapter 11 cases (collectively, the "**Court Papers**"); (b) delineate standards for notices of hearings; (c) specify mandatory guidelines for scheduling hearings and objection deadlines; and (d) limit matters that are required to be heard by the Court.

34.      The proposed Case Management Procedures would minimize the costs and burdens associated with running the Debtors' chapter 11 cases by, among other things, limiting service of the Court Papers filed in the case to parties that have an interest in the subject matter thereof. This will, in turn, maximize the efficiency and orderly administration of this chapter 11 case, while ensuring that appropriate notice is provided, particularly to those parties that are directly affected by a request for relief or who have expressed a desire to receive notice of Court Papers filed in this case. Accordingly, the Debtors believe the provisions set forth in the proposed Case management Procedures order are appropriate and should be implemented in these chapter 11 cases.

**C.      Motion to Continue to Use Existing Cash Management System and Maintain Existing Bank Accounts and Business Forms**

35.      The Debtors respectfully request that the Court grant the motion (the "**Cash Management Motion**") for entry of interim and final orders, authorizing the Debtors to maintain their current cash management system, existing bank accounts, and existing business forms for the pendency of these chapter 11 cases

1045457

36. Prior to the Petition Date, the Debtors maintained an efficient cash management system (the "**Cash Management System**") in the ordinary course of business. The Cash Management System facilitates efficient flow and management of funds involved in the Debtors' business operations, and is customized to address the specific needs of the Debtors, which ensures their ability to efficiently monitor and control their cash reserves, as set forth below.

37. In connection with their Cash Management System, the Debtors maintain eleven (11) bank accounts (the "**Accounts**") as of the Petition Date, all of which are maintained at Regions Bank at the branch located at 1900 5th Avenue, North Birmingham, Alabama 35203. A summary of these Accounts is annexed hereto as **Schedule 12** (and to the motion as **Exhibit C**).

38. I am advised by counsel that each of the Accounts are designated as authorized depositories by the Office of the United States Trustee, pursuant to the *Operating Guidelines and Reporting Requirements for Chapter 11 Debtors and Trustees (Revised 03/01/23)* set forth by the Office of the United States Trustee for Region 2 (the "**Operating Guidelines**").

39. The Debtors utilize certain Accounts as depository accounts (the "**Depository Accounts**") to receive deposits and disburse payroll. Each Depository Account holds a minimum reserve of $10,000 to ensure the availability of sufficient funds to pay the Debtors' employees and independent contractors. In the ordinary course of business, if a Depository Account for any given Debtor was low on reserves, Excell would, as necessary, deposit funds into said account, which would reflect internally as an intercompany "loan" in the Debtor's books and records. Excell would initiate certain other intercompany transfers to the other Debtors' Accounts on a limited basis, as necessary, to ensure each Debtor had adequate reserves to meet their other non-payroll obligations as they came due, including, but not limited to, insurance, lease, license, police detail, and bond payments. The Depository Account for Excell is also used for auto-draft payments, such Regions

1045457

Commercial Credit Card payments, Blue Cross Blue Shield health insurance premium payments, and banking fees for all Debtors.

40.　　Additionally, the Debtors utilize certain Accounts as disbursement accounts (the "**Disbursement Accounts**") to disburse payments to their vendors. Certain Debtors also maintain separate brokerage, flex pay, certificate of deposit (CD), and other limited-use accounts.

41.　　Each of the Debtors use substantially the same procedural systems to manage the flow of cash from the Depository Accounts to the Disbursement Accounts. Each time a Debtor receives a deposit into its respective Depository Account, the following procedures apply: (i) a vendor payment file is created and submitted for approval to management; (ii) the Treasury Manager receives an accounts payable report, and creates a "pivot" chart summarizing all payments due to vendors; (iii) a transfer rate calculation is completed to ensure the exact funds are available to any foreign vendor that must be paid in currency other than U.S. dollars; (iv) the proposed disbursement funds are transferred to the Debtor's Disbursement Account; and (v) upon receiving approval from two (2) authorized individuals in management, the disbursement is made. If a paper check is required, the Treasury Manager uploads the check to a positive pay program for fraud prevention measures.

42.　　As a part of their Cash Management System, the Debtors also use a variety of pre-printed business forms, including, but not limited to, checks, letterhead, correspondence forms, purchase orders, invoices, and other business documents, in the ordinary course of business (collectively, the "**Business Forms**").

43.　　The Debtors believe that it is appropriate and beneficial that they be permitted to continue using and maintaining their existing Cash Management System, together with their existing Accounts and Business Forms. The Debtors respectfully submit that the granting of the

10

relief requested herein will facilitate a smooth and orderly transition of the Debtors' operations into chapter 11 and minimize the disruption of its business affairs, without undermining either the policies of chapter 11 or the rules of this Court.

**D.    Motion Authorizing the Debtors to Pay Pre-Petition Date Wages, Salaries, Commissions, Employee Benefits, Payroll Taxes and Other Obligations**

44.    The Debtors submit this motion for entry of interim and final orders, substantially in the forms annexed to the motion, respectively, as **Exhibit A** (the "**Proposed Interim Order**") and **Exhibit B** (the "**Proposed Final Order**"): (i) authorizing, but not directing, the Debtors, in accordance with their past and current employment policies and practices to: (a) pay all pre-petition obligations on account of accrued wages, salaries, and other compensation (collectively, the "**Compensation Obligations**") in the ordinary course of business, (b) maintain all pre-petition obligations on account of employee benefits, including paid time off, health and medical benefits and insurance, retirement savings accounts, workers' compensation, reimbursable business expenses, and other welfare benefits (collectively, the "**Employee Benefit Obligations**") in the ordinary course of business, and (c) pay all employment, unemployment, social security, and similar federal, state, and local taxes relating to the Compensation Obligations and Employee Benefit Obligations (collectively, the "**Payroll Taxes**"), whether withheld from wages or paid directly by the Debtors to governmental authorities, and make other payroll deductions, including retirement and other employee benefit plan contributions, garnishments, and child support (collectively, the "**Payroll Deduction Obligations**"); (ii) authorizing Regions Bank, and any other banks and financial institutions with which the Debtors are authorized to do business (collectively, the "**Banks**"), to receive, process, honor, and pay any and all checks drawn on and transfers made from the Debtors' accounts to the extent such checks or transfers relate to any of the foregoing; and (iii) granting related relief.

11

45.     The Debtors employ approximately thirty-five (35) employees (the "**Employees**") and one (1) independent contractor (the "**Independent Contractor**").

46.     In connection with the Debtors' Compensation Obligations, the Debtors' payroll obligations generally include wages, salaries, and payments on account of used vacation time and other paid time off.  The Debtors expect their estimated payroll will be, on average, approximately $92,300 per weekly pay period. The Debtors also anticipate that the Independent Contractor, who charges the Debtors for his services on an hourly basis, will charge the Debtors approximately $15,000 for services that will be rendered over the next thirty (30) days.

47.     The Debtors engage ADP, Inc. ("**ADP**") as their third-party payroll administrator. The Debtors pay on average approximately $2,400 per month for ADP's services. As of the Petition Date, the Debtors are current on their fees with ADP.

48.     In the ordinary course of business, the Debtors pay their Employees on a weekly basis for work already performed one week in arrears. The Debtors fund ADP's account from the Debtors' disbursement account each Wednesday, and authorize ADP to distribute payroll weekly each Friday, for the previous Monday through Sunday. Because the Debtors' Employees are paid in arrears, the Employees are owed accrued but unpaid wages and salaries as of the Petition Date.

49.     As of the Petition Date, the Debtors estimate that they owe approximately $92,300 on account of unpaid wages, compensation, and other compensation for pre-petition services, all of which will become due within seven (7) days of the Petition Date.

50.     In addition, substantially all of the Employees are paid by direct deposit, however, some may have received live checks. Some of the Employees who received payment of their wages via check immediately prior to the Petition Date, therefore, may not yet have presented the checks for payment. Further, for those Employees that have deposited their checks pre-petition, some of

12

such checks may not have cleared through the banking system for payment as of the filing of these chapter 11 cases. The Debtors therefore request authorization to pay the aggregate amount of accrued wages and salaries that have not yet been paid to these Employees for periods prior to the Petition Date, and authorize the Debtors' Banks to honor or send all checks or wire transfers, as the case may be, for all pre-petition wages that have either already been sent on behalf of the Employees, which either were not presented for payment in advance of the Petition Date, or have yet to clear through the banking system.

51.     To the best of the Debtors' understanding, none of the Debtors' Employees is owed more than $15,150 in accrued and unpaid compensation for pre-petition services. To the extent the Debtors' discover that any Employee is owed compensation in an amount exceeding the $15,150 priority cape imposed by Bankruptcy Code § 507(a)(4), the Debtors will seek authority to pay such amounts by separate motion.

52.     In the ordinary course of business, the Debtors maintain various employment benefit plans and policies, including, without limitation, health insurance, dental insurance, vision insurance, accidental death and dismemberment insurance, short-term disability insurance, workers' compensation, flexible spending programs, retirement savings accounts, voluntary benefit plans, vacation, bereavement leave, sick leave, other paid time off, and other programs for Employees (collectively, the "**Employee Benefit Programs**").

53.     The Employee Benefit Programs are, in each case, available to qualifying full-time Employees, in accordance with the Debtors' customary employment policies and practices. The Debtors' average cost (after taking into account Employee contributions) of maintaining the Employee Benefit Programs is approximately $24,000 in the aggregate per month.

1045457

54.     The Debtors seek authority, in the exercise of their discretion, to pay pre-petition claims (if applicable), to honor obligations, and to continue their programs, in the ordinary course of business and consistent with past practice, relating to the Employee Benefits Programs, subject to the Debtors' rights, if any, to modify or discontinue any Employee Benefit Programs to reduce applicable costs or the benefits provided thereunder.

55.     In the ordinary course of business, the Debtors deduct all mandatory deductions, including federal, state, and local taxes, FICA (Social Security and Medicare), and other tax liabilities. ADP, on behalf of the Debtors, withholds such payroll tax deductions from the Employees' paychecks, averaging approximately $26,400 on a weekly basis.

56.     As of the Petition Date, there are no amounts outstanding on account of the foregoing Payroll Taxes. While there are no such amounts outstanding at this time, out of an abundance of caution, the Debtors request authority to pay any such amounts that may arise and become due and payable in the ordinary course of business.

57.     In the ordinary course of processing payroll, the Debtors may also withhold, as required by law, certain other amounts from their Employees' paychecks, including wage amounts for various garnishments, child support, tax levies, and similar deductions. ADP, on behalf of the Debtors, withholds such deductions from the Employees' paychecks.

58.     As of the Petition Date, there are no amounts outstanding on account of the foregoing Payroll Deduction Obligations. While there are no such amounts outstanding at this time, out of an abundance of caution, the Debtors request authority to pay any such amounts that may arise and become due and payable in the ordinary course of business.

59.     The Debtors have a fiduciary duty to continue to operate their businesses as going concerns. Fulfilling this duty requires that the Debtors pay their Employees on account of the

Compensation Obligations and Employee Benefits Obligations. The Debtors' Employees are among their most valuable assets and are vital to the success of the Debtors' business operations and their chapter 11 cases. Accordingly, it is imperative that morale be maintained and that the Debtors have the authority to assure that the Employees do not unduly suffer as a consequence of the commencement of these bankruptcy cases. Indeed, in the absence of granting the relief requested herein, the Employees will suffer undue economic hardship, which will have a detrimental impact on the administration of these chapter 11 cases.

**E.      Motion to Reject Certain Leases and Executory Contracts as of the Petition Date**

60.      The Debtors submitted the motion (the "**Rejection Motion**") for entry of an order, authorizing, but not directing, the Debtors to (i) reject as of the Petition Date (defined below) those certain unexpired real property leases (the "**Unexpired Leases**") and executory contracts (the "**Executory Contracts**") set forth, respectively, in **Schedule 1** and **Schedule 2** to the Proposed Order, and (ii) and abandon certain *de minimis* personal property (the "**Personal Property**") in connection therewith, as set forth in **Schedule 3** to the Proposed Order.

**The Unexpired Leases**

61.      The Debtors are no longer occupying, and have no use for, such premises.  As a result, the Unexpired Leases and any personal property remaining on such premises have no value or benefit to the estate.

62.      Accordingly, the Debtors have determined to reject the Unexpired Leases and abandon any remaining personal property, effective as of the Petition Date, so as to avoid the incurrence of continued obligations related thereto.

**The Executory Contracts**

63.    The Executory Contracts include the lease and/or maintenance of various items of machinery, vehicles and equipment pursuant to agreements with Altec Capital Services, L.L.C. and Merchant Fleet and CTOS Rentals, LLC respectively.  The Debtors no longer have use for the lease of such machinery, vehicles and equipment.  As a result, the Executory Contracts have no value or benefit to the estate.

64.    Accordingly, the Debtors have determined to reject the Executory Contracts, effective as of the Petition Date, so as to avoid the incurrence of continued obligations related thereto.

**The Personal Property**

65.    The Personal Property that the Debtors intend to abandon is of *de minimis* value, consisting primarily of miscellaneous fixtures, furniture, and other office equipment, located at the respective premises of the subject Unexpired Leases.

66.    The Personal Property is not subject to any liens, claims, or encumbrances.

67.    For the foregoing reasons, and as more fully set forth in the Rejection Motion, the Debtors respectfully submit that their decisions to (i) reject the Unexpired Leases and Executory Contracts as of the Petition Date, and (ii) abandon the Personal Property in connection therewith reflect the Debtors' good faith exercise of sound business judgment and are in the best interests of the Debtors' estates, their creditors, and other parties in interest.

**F.      Motion to Approve Debtors' Proposed form of Adequate Assurance of Payment to Utility Providers, Establishing Procedures for Determining Adequate Assurance of Payment for Future Utility Services, and Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Utility Service**

68.    The Debtors respectfully request that this Court enter an order, substantially in the form annexed to the motion as **<u>Exhibit A</u>**: (i) determining that the Utility Providers have received adequate assurance of payment for future Utility Services, as provided herein; (ii) approving

16

procedures whereby the Utility Providers may request additional or different assurances beyond that proposed herein; (iii) determining that the Debtors are not required to provide any additional assurance beyond the assurance set forth herein; and (iv) prohibiting the Utility Providers from altering, refusing or discontinuing Utility Services to the Debtors on account of any pre-petition amounts owed and outstanding for any Utility Services rendered.

69.     In connection with the operation of their businesses and the management of their properties, the Debtors obtain gas, electricity, telecommunications, and similar utility products and services (collectively, the "**Utility Services**") from various utility providers (collectively, the "**Utility Providers**," and each individually, a "**Utility Provider**") covering a number of utility accounts. A list of the names and addresses of the Utility Providers known to the Debtors as of the date hereof is set forth in **<u>Schedule 1</u>** to the Proposed Order (the "**Utilities List**").[4]

70.     As of the Petition Date, the Debtors are current on all of their obligations to their Utility Providers. On average, prior to the Petition Date, the Debtors spent approximately $16,000 each month on account of their Utility Services.

71.     As adequate assurance of payment, the Debtors submit that the form of adequate assurance proposed herein (the "**Proposed Adequate Assurance**") constitutes adequate assurance of future payment to the Utility Providers satisfying the requirements of Bankruptcy Code § 366. The Debtors propose to provide a cash deposit (the "**Adequate Assurance Deposit**") to any Utility Provider that requests a deposit in writing, as set forth herein, to be held by the Utility Provider

---

[4] The Debtors have made a good faith effort to identify their Utility Providers and include them on the Utilities List. Nonetheless, it is possible that certain Utility Providers have not yet been identified by the Debtors or included on the Utilities List. To the extent that the Debtors identify additional Utility Providers, the Debtors shall: (i) file a supplemental notice (a "**Supplemental Notice**"), which shall include, among other things, any applicable proposed Adequate Assurance Deposit (defined below), and (ii) serve such Supplemental Notice along with copies of the Proposed Order (when and if entered) by overnight delivery on all Utility Providers identified in the Supplemental Notice. The Debtors therefore request that the Proposed Order (when and if entered) be binding on all Utility Providers, regardless of when such Utility Providers were added to the Utilities List by a Supplemental Notice.

for the duration of the Debtors' chapter 11 cases. The amount of the Adequate Assurance Deposit will be equal to the average cost of two (2) weeks of service from such Utility Provider, or as may have been requested by the Utility Provider and agreed to by the Debtors

72.     Accordingly, the Debtors respectfully request that the Court authorize the procedures described in the Motion (the "**Adequate Assurance Procedures**") for Utility Providers holding deposits or Utility Providers requesting alternate or additional forms of assurance

73.     Any Adequate Assurance Deposit (whether a pre-petition deposit or pursuant to the terms hereof) may be used only: (i) to secure ongoing, post-petition payment obligations of the Debtors pursuant to the terms of the Debtors' and that Utility Provider's pre-petition contract; and (ii) to pay those post-petition amounts owed to that Utility Provider that are reasonably undisputed.

74.     The Adequate Assurance Deposit may not be used by the Utility Provider to offset against or otherwise secure any amounts incurred prior to the Petition Date. In the event that a Debtor defaults by failing to timely pay post-petition invoices, the Utility Provider shall be authorized, but not required, to set off the Adequate Assurance Deposit in the amount of any unpaid post-petition invoices without further order of the Bankruptcy Court.

75.     The Debtors respectfully submit that the Adequate Assurance Procedures are reasonable, satisfy the requirements of Bankruptcy Code § 366, and are in the best interests of the Debtors' estates, their creditors, and other parties in interest.

### G.     Motion to Authorize Payment of Pre-Petition Claims of Critical Vendors

76.     The Debtors entry of interim and final orders, substantially in the forms annexed to the motion, respectively, as **Exhibit A** and **Exhibit B**: (i) authorizing, but not directing, the Debtors to pay in the ordinary course of business those pre-petition claims held by the Critical Vendors; and (ii) granting related relief.

1045457

77.     In the ordinary course of business, the Debtors engage a limited number of companies to provide the critical services upon which the Debtors depend to facilitate their operations. These services predominantly sustain the design and construction components of the Debtors' projects, including the critical planning, design and permitting functions necessary for the Debtors to timely service their major customers. Without these critical services, the Debtors would not be able to operate their businesses effectively or generate revenue from their projects.

78.     Accordingly, the Debtors, after careful assessment of their books and records and business models, have identified those certain vendors that are critical to the Debtors uninterrupted operations (collectively, the "**Critical Vendors**," and each individually, a "**Critical Vendor**"). A list of the potential Critical Vendors and the approximate pre-petition claims held by each Critical Vendor (the "**Critical Vendor Claims**") is annexed to the motion as **Exhibit C**.

79.     The Debtors believe that payment of those Critical Vendor Claims is vital to the Debtors' ability to continue to provide its services on a timely basis to their customers and, thus, to their efforts to preserve and maximize value for all stakeholders during their bankruptcy proceedings.

80.     The Debtors have determined, according to their business judgment, that the preservation of the Debtors' relationships with the Critical Vendors is of the utmost importance to the Debtor's continued operations and future prospects. The Debtors predominantly rely on their Critical Vendors to sustain the design and construction aspects of their business model, without which the Debtors cannot complete their projects and, in turn, generate revenue.

81.     Because of the scale and essential nature of the critical services provided by the Critical Vendors, the Debtors cannot shift those services to alternative vendors. As of the date of this Motion, certain Critical Vendors are actively processing hundreds of unique permits across

dozens of the Debtors' construction projects. Critical Vendors are also serving certain other indispensable functions across the Debtors' business model, coordinating the Debtors' complex construction efforts across multiple states for their largest customers. Even where alternative vendors exist that could provide comparable services to the Critical Vendors, the interruption of the permit acquisition process and larger operational functions on such a large scale would impose severe time and cost strains on the Debtors' business operations.

82.     The ability to satisfy the Debtors' Critical Vendor Claims, will allow the Debtors to discharge their fiduciary duties as debtors-in-possession. Such relief promotes the preservation and maximization of the going concern value of the Debtors' businesses, including the preservation of key business relationships. Absent such relief, the Debtors believe that their relationships with the Critical Vendors will materially deteriorate and cause irreparable harm to the Debtors' businesses, goodwill, employees, and customers. Indeed, such harm would likely far outweigh the cost of payment of the Critical Vendors Claims.

**H.      Motion for Monthly Compensation Procedures**

83.     The Debtors request the entry of an order, substantially in the form annexed to the motion as **<u>Exhibit A</u>** (the "**Proposed Order**"), establishing procedures for interim compensation and reimbursement of professional expenses of the Professionals (defined below) retained in these chapter 11 cases.

84.     The Debtors request the establishment of procedures: (a) for compensating and reimbursing the Professionals on a monthly basis; and (b) governing the Professionals' interim and final fee application process.

85.     I am advised that the relief requested by the Debtors conforms substantially with Bankruptcy Rule 2016, Local Rule 2016-1, and the Administrative Order, which establish procedures for monthly compensation and reimbursement of expenses of professionals.

86.     Establishing procedures for compensation and reimbursement of expenses will enable parties in interest to monitor closely the costs of administration, maintain a level cash flow, and implement efficient cash management procedures. These procedures set forth in the motion are in the best interests of the Debtors, their estates, and their creditors, and will leave sufficient liquidity in these chapter 11 cases to meet all obligations proposed in the motion.

**Information Required by Local Rule 1007-4**

87.     In accordance with Local Rule 1007-4, the schedules attached hereto provide certain information related to the Debtors. Pursuant to Local Rule 1007-4(a)(i) and 1007-4(a)(ii), the Debtors are not small business debtors within the meaning of §101(51B) of the Bankruptcy Code or single asset real estate debtors within the meaning of §101(51B) of the Bankruptcy Code.

88.     Pursuant to Local Rule 1007-4(a)(vi), **Schedule 1** lists each of the holders of the 30 largest general unsecured claims, excluding insiders and creditors holding priority claims, and states whether the claim is contingent, unliquidated, disputed, or partially secured.

89.     Pursuant to Local Rule 1007-4(a)(vii), **Schedule 2** lists each of the holders of the largest secured claims and provides a description and an estimate of the value of the collateral securing the claims, and whether the claim or lien is disputed.

90.     Pursuant to Local Rule 1007-4(a)(viii), **Schedule 3** contains a summary of the Debtors' assets and liabilities.

91.     Pursuant to Local Rule 1007-4(a)(ix), the Debtors have no publicly traded securities.

1045457

92.     Pursuant to Local Rule 1007-4(a)(x), none of the Debtors' property is in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents, or secured creditor, or agent for any such entity.

93.     Pursuant to Local Rule 1007-4(a)(xi), **Schedule 4** lists all of the premises owned, leased, or held under any other arrangement from which the Debtors operate their business.

94.     Pursuant to Local Rule 1007-4(a)(xii), **Schedule 5** lists the location of the Debtors' significant assets, the location of their books and records, and the nature and location of assets, if any, held by the Debtors outside the territorial limits of the United States.

95.     Pursuant to Local Rule 1007-4(a)(xiii), **Schedule 6** lists the nature and present status of each action or proceeding, pending or threatened, against the Debtors or their property where a judgment against the Debtors or a seizure of their property may be imminent.

96.     Pursuant to Local Rule 1007-4(a)(xiv), **Schedule 7** lists the debtor's existing senior management, their tenure with the debtor, and a summary of their relevant responsibilities and experience.

97.     Pursuant to Local Rule 1007-4(a)(xv), **Schedule 8** sets forth the estimated amount of the weekly payroll to employees (exclusive of officers, directors, stockholders, partners and members) for the 30-day period following the filing of the chapter 11 petition.

98.     Pursuant to Local Rule 1007-4(a)(xvi), **Schedule 9** sets forth the amount paid and proposed to be paid for services for the 30-day period following the filing of the chapter 11 petition to the Debtors' officers and directors.

99.     Pursuant to Local Rule 1007-4(a)(xvii), **Schedule 10** contains an itemized schedule, for the 30-day period following the filing of the Debtors' chapter 11 petitions, of estimated cash receipts and disbursements, net cash gain or loss, obligations and receivables

1045457

expected to accrue but remaining unpaid, other than professional fees, and any other information relevant to an understanding of the foregoing.

100.    Pursuant to Local Rule 1007-4(a)(xviii), **Schedule 11** contains a schedule of the Debtors' current insurance policies, including the identity of the insurer, policy period and type of insurance for each insurance policy listed;

101.    Pursuant to local Rule 1007-4(a)(xix), **Schedule 12** contains a schedule of the Debtors' bank accounts, including the name and address of the banking institution where the accounts are held, the name on the account, and the nature of the account for each bank account listed.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Executed this 14th day of April, 2025.

 /s/ *Harry Zapiti*
Harry Zapiti, CFO
Excell Communications, Inc.
Telecable, Inc.
E-Fleet Services Corp.

## **SCHEDULE 1**

Pursuant to Local Rule 1007-4(a)(v), I incorporate by reference the list of the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis, excluding insiders, which is attached to the Debtors' chapter 11 petitions (the "**Consolidated Top 30 List**").

The information contained in the Consolidated Top 30 List shall not constitute an admission of liability by, nor is it binding on, the Debtors. The Debtors reserve all rights to assert that any debt or claim listed in the Consolidated Top 30 List is a disputed claim or debt, and to challenge the priority, nature, amount, or status of any such claim or debt. In the event of any inconsistencies between the summaries set forth in the Consolidated Top 30 List and the respective corporate and legal documents relating to such obligations, the descriptions in the corporate and legal documents shall control. The Consolidated Top 30 List includes estimates of outstanding amounts as of the Petition Date.

**Consolidated List of 30 Largest Unsecured Creditors**

| No. | Creditor Name and Address | Unsecured Claim |
|---|---|---|
| 1 | Internal Revenue Service<br>Centralized Insolvency Operation<br>PO Box 7346<br>Philadelphia, PA 19101-7346 | $4,754,762.60 |
| 2 | Digital Works Group DMCC<br>Att: Officer, Manager, Authorized Agent<br>DMCC Business Centre Level 5 Unit 422<br>Jewelry & Gemplex 2 Dubai UAE | $3,191,579.35 |
| 3 | NY Cabletek LLC<br>Att: Officer, Manager, Authorized Agent<br>27 Lewis St<br>Yonkers, NY 10703-1610 | $2,992,500.00 |
| 4 | Colliers Engineering & Design Inc.<br>Att: Officer, Manager, Authorized Agent<br>101 Crawfords Corner Rd Ste 3000<br>Holmdel, NJ 07733-1981 | $2,500,000.00 |
| 5 | SpliceX Inc.<br>Att: Officer, Manager, Authorized Agent<br>2940 Ocean Pkwy Apt 6B<br>Brooklyn, NY 11235-8217 | $2,432,343.94 |
| 6 | SmartDev, S.A.<br>Att: Officer, Manager, Authorized Agent<br>Rua do Carmo, No 38-3<br>Dto Esquerdo 9050-019 Funchal Madeira Portugal | $2,401,104.00 |
| 7 | Custom Truck One Source, L.P.<br>Att: Officer, Manager, Authorized Person<br>7701 Independence Ave<br>Kansas City, MO 64125-1300 | $2,090,023.58 |
| 8 | AM Communications, Ltd.<br>Attn: Officer, Manager, Authorized Agent<br>5707 State Route 309<br>Galion, OH 44833 | $1,828,079.47 |
| 9 | State of New Jersey Department of the Treasury<br>Division of Taxation Att: Matthew Greco<br>6 Commerce Dr Ste 300<br>Cranford, NJ 07016-3515 | $1,763,989.96 |
| 10 | Deepomatic Inc.<br>Att: Officer, Manager, Authorized Person<br>500 7th Ave<br>New York, NY 10018-4502 | $1,218,456.27 |

| 11 | Telecon Design (USA) Inc.<br>Att: Officer, Manager, Authorized Agent<br>5225 W Wiley Post Way Ste 250<br>Salt Lake City, UT 84116-2801 | $1,057,397.30 |
|---|---|---|
| 12 | Merchants Fleet (Merchants Automotive Group, LLC)<br>Att: Officer, Manager, Authorized Agent<br>14 Central Park Dr # 1<br>Hooksett, NH 03106-2507 | $734,286.62 |
| 13 | Splicer Plus Inc.<br>Att: Officer, Manager, Authorized Agent<br>867 Fm 1138<br>Royse City, TX 75189-4160 | $642,827.01 |
| 14 | Workforce7 Inc.<br>Att: Officer, Manager, Authorized Agent<br>4226a White Plains Rd # 3<br>Bronx, NY 10466-3016 | $640,000.00 |
| 15 | Vertiv Corporation<br>Att: Officer, Manager, Authorized Agent<br>505 N Cleveland Avenue<br>Westerville, OH 43082 | $629,970.16 |
| 16 | Altec Capital Services, Inc.<br>Att: Officer, Manager or Authorized Agent<br>33 Inverness Center Pkwy Ste 200<br>Birmingham, AL 35242-7642 | $507,825.44 |
| 17 | Triple-X Connections Corp.<br>Att: Officer, Manager, Authorized Agent<br>2244 Victoria Dr<br>Davenport, FL 33837-1711 | $497,234.99 |
| 18 | Communications Construction Corporation<br>Att: Officer, Manager, Authorized Agent<br>84 Main St<br>Mineola, NY 11501-4062 | $488,720.02 |
| 19 | Asata Telecom LLC<br>Att: Officer, Manager, Authorized Agent<br>8 Tice Rd Apt 113<br>Franklin Lakes, NJ 07417-1468 | $485,000.00 |
| 20 | Work Zone Contractors LLC<br>Att: Officer, Manager, Authorized Agent<br>1222 Delsea Dr Unit A<br>Westville, NJ 08093-2227 | $458,652.92 |

1050269

| 21 | High Point Utilities, L.L.C.<br>Att: Officer, Manager, Authorized Agent<br>150 Ryerson Ave<br>Wayne, NJ 07470-7214 | $342,944.53 |
|---|---|---|
| 22 | MPEG Communications Corp.<br>Att: Officer, Manager, Authorized Agent<br>980 N Federal Hwy Ste 100<br>Boca Raton, FL 33432-2704 | $333,333.33 |
| 23 | Phase One Communications, LLC<br>Att: Officer, Manager, Authorized Person<br>28 W Sandford Blvd<br>Mount Vernon, NY 10550-4416 | $332,541.97 |
| 24 | IG Tech (United Cable Services)<br>Att:  Officer, Manager, Authorized Agent<br>165 Amboy Rd, Ste 400<br>Morganville, NJ 07751-1083 | $308,479.99 |
| 25 | Pacific Tech Communications, Inc.<br>Att: Officer, Manager, Authorized Agent<br>9371 Jackson Rd<br>Sacramento, CA 95826-9725 | $300,000.00 |
| 26 | Lightspeed Construction Group, LLC<br>Att:  Officer, Manager, Authorized Agent<br>14480 62nd St N, Unit A<br>Clearwater, FL 33760-2721 | $282,876.00 |
| 27 | Gordon L. Seaman, Inc.<br>Att: Officer, Manager, Authorized Agent<br>29 Dock Rd<br>Yaphank, NY 11980-9702 | $280,345.07 |
| 28 | Basis Systems, Inc.<br>Att: Officer, Manager, Authorized Agent<br>1030 Salem Rd<br>Union, NJ 07083-7058 | $237,694.59 |
| 29 | BIAH USA Inc.<br>Att: Officer, Manager, Authorized Agent<br>1030 Salem Rd<br>Union, NJ 07083-7058 | $234,063.83 |
| 30 | Souza Batista USA LLC<br>Att: Officer, Manager, Authorized Person<br>22 Featherbed Ln<br>Clark, NJ 07066-2112 | $200,000.00 |

1050269

## **SCHEDULE 2**

Pursuant to Local Rule 1007-4(a)(vii), the following is a list each of the holders of the largest secured claims and provides a description and an estimate of the value of the collateral securing the claims, and whether the claim or lien is disputed.

Fill in this information to identify the case:

Debtor name **Excell Communications, Inc.**

United States Bankruptcy Court for the: **Eastern** District of **New York**

(State)

Case number (if known):

☐ Check if this is an amended filing

Official Form 206D

# Schedule D: Creditors Who Have Claims Secured by Property 12/15

Be as complete and accurate as possible.

1. **Do any creditors have claims secured by debtor's property?**

   ☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

   ☑ Yes. Fill in all of the information below.

| Part 1: | List Creditors Who Have Secured Claims |
| --- | --- |

2. **List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.

| | | Column A<br>**Amount of claim**<br>Do not deduct the value of collateral. | Column B<br>**Value of collateral that supports this claim** |
| --- | --- | --- | --- |

**2.1** Creditor's name

**Altec Capital Services, Inc.**

Creditor's mailing address

**Att: Officer, Manager or Authorized Agent**

**33 Inverness Center Pkwy Ste 200**

**Birmingham, AL 35242-7642**

Creditor's email address, if known

Date debt was incurred

Last 4 digits of account number ___ ___ ___ ___

Do multiple creditors have an interest in the same property?

☑ No

☐ Yes. Specify each creditor, including this creditor, and its relative priority.

Describe debtor's property that is subject to a lien

Describe the lien

**Vehicles, equipment and related**

Is the creditor an insider or related party?

☑ No

☐ Yes

Is anyone else liable on this claim?

☐ No

☑ Yes. Fill out Schedule H: Codebtors (Official Form 206H).

As of the petition filing date, the claim is:
Check all that apply.

☑ Contingent

☑ Unliquidated

☑ Disputed

**Amount of claim:** unknown

**Value of collateral:** unknown

3. **Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.**

**Fill in this information to identify the case:**

Debtor name    **Telecable, Inc.**

United States Bankruptcy Court for the: _____ **Eastern** ____ District of ____ **New York** _____
                                                                (State)

Case number (if known): _____

☐ Check if this is an
   amended filing

**Official Form 206D**

# Schedule D: Creditors Who Have Claims Secured by Property    12/15

**Be as complete and accurate as possible.**

1. **Do any creditors have claims secured by debtor's property?**

   ☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

   ☑ Yes. Fill in all of the information below.

| Part 1: | List Creditors Who Have Secured Claims |
| --- | --- |

2. **List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.

|  | **Column A** Amount of claim Do not deduct the value of collateral. | **Column B** Value of collateral that supports this claim |
| --- | --- | --- |

**2.1** Creditor's name

**Altec Capital Services, Inc.**

Creditor's mailing address

**Att: Officer, Manager or
Authorized Agent**

**33 Inverness Center Pkwy Ste 200**

**Birmingham, AL 35242-7642**

Creditor's email address, if known

_____

Date debt was incurred _____

Last 4 digits of account ___ ___ ___ ___
number

Do multiple creditors have an interest in
the same property?

☑ No

☐ Yes. Specify each creditor, including this
   creditor, and its relative priority.

_____

_____

**Describe debtor's property that is subject to a lien**

_____

_____

_____

**Describe the lien**

**Equipment and related**

_____

**Is the creditor an insider or related party?**

☑ No

☐ Yes

**Is anyone else liable on this claim?**

☐ No

☑ Yes. Fill out Schedule H: Codebtors (Official Form 206H).

**As of the petition filing date, the claim is:**
Check all that apply.

☑ Contingent

☑ Unliquidated

☑ Disputed

|  | Column A | Column B |
| --- | --- | --- |
| | **unknown** | **unknown** |

3. **Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional
   Page, if any.**                                                         _____

| Debtor | __Telecable, Inc.__ | | Case number (if known) _____ |
|---|---|---|---|
| | Name | | |

| **Part 1:** | Additional Page | | Column A | Column B |
|---|---|---|---|---|

Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page.

| | Column A | Column B |
|---|---|---|
| | *Amount of claim*<br>Do not deduct the value<br>of collateral. | *Value of collateral<br>that supports this<br>claim* |

**2.2** **Creditor's name**

**Merchants Bank Equipment Finance**

**Creditor's mailing address**

**Att: Officer, Manager, Authorized Agent**

**4450 West 77th Street ste 140**

**Edina, MN 55435-2033**

**Creditor's email address, if known**

_____

**Date debt was incurred** _____

**Last 4 digits of account number** ___ ___ ___ ___

**Do multiple creditors have an interest in the same property?**

☑ No

☐ Yes. Have you already specified the relative priority?

   ☐ No.  Specify each creditor, including this creditor, and its relative priority.

     _____

     _____

   ☐ Yes. The relative priority of creditors is specified on lines _____

**Describe debtor's property that is subject to a lien**

_____

_____

_____

**Describe the lien**

**Vermeer Plow/trencher**

**Is the creditor an insider or related party?**

☑ No

☐ Yes

**Is anyone else liable on this claim?**

☐ No

☑ Yes. Fill out Schedule H: Codebtors (Official Form 206H).

**As of the petition filing date, the claim is:**
Check all that apply.

☑ Contingent

☑ Unliquidated

☑ Disputed

| | unknown | unknown |
|---|---|---|

Fill in this information to identify the case:

Debtor name  **E-Fleet Services Corp.**

United States Bankruptcy Court for the: _____ **Eastern** ____  District of ____ **New York** ____
(State)

Case number (if known): _____

☐ Check if this is an amended filing

**Official Form 206D**

# Schedule D: Creditors Who Have Claims Secured by Property

12/15

**Be as complete and accurate as possible.**

1. **Do any creditors have claims secured by debtor's property?**
   ☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.
   ☑ Yes. Fill in all of the information below.

**Part 1:   List Creditors Who Have Secured Claims**

2. **List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.

| | Column A | Column B |
|---|---|---|
| | Amount of claim Do not deduct the value of collateral. | Value of collateral that supports this claim |

| **2.1** | **Creditor's name** |
|---|---|

**Altec Capital Services, Inc.**

**Describe debtor's property that is subject to a lien**
See SOFA Schedule 5.1                                $507,825.44          unknown

**Creditor's mailing address**

**Att: Officer, Manager or Authorized Agent**

**33 Inverness Center Pkwy Ste 200**

**Birmingham, AL 35242-7642**

**Describe the lien**
**Vehicles, equipment and related**

**Is the creditor an insider or related party?**
☑ No
☐ Yes

**Creditor's email address, if known**
_____

**Is anyone else liable on this claim?**
☐ No
☑ Yes. Fill out Schedule H: Codebtors (Official Form 206H).

**Date debt was incurred** _____

**Last 4 digits of account number** __ __ __ __

**As of the petition filing date, the claim is:**
Check all that apply.
☑ Contingent
☑ Unliquidated
☑ Disputed

**Do multiple creditors have an interest in the same property?**
☑ No
☐ Yes. Specify each creditor, including this creditor, and its relative priority.
_____
_____

3. **Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.**                                $507,825.44

## **SCHEDULE 3**

Pursuant to Local Rule 1007-4(a)(viii), the following provides a summary of the Debtors' assets and liabilities.

Fill in this information to identify the case:

Debtor name          **Excell Communications, Inc.**

United States Bankruptcy Court for the:

          **Eastern District of New York**

Case number (if known): _____        Chapter ___11___

☐ Check if this is an
   amended filing

## Official Form 206Sum

# Summary of Assets and Liabilities for Non-Individuals          **12/15**

**Part 1:**  Summary of Assets

1. **Schedule A/B: Assets–Real and Personal Property** (Official Form 206A/B)

   1a. **Real Property:**
       Copy line 88 from *Schedule A/B*.............................................................................................

       | $0.00 |

   1b. **Total personal property:**
       Copy line 91A from *Schedule A/B*...........................................................................................

       | $20,418,222.04 |

   1c. **Total of all property:**
       Copy line 92 from *Schedule A/B*.............................................................................................

       | $20,418,222.04 |

**Part 2:**  Summary of Liabilities

2. **Schedule D: Creditors Who Have Claims Secured by Property** (Official Form 206D)
   Copy the total dollar amount listed in Column A, *Amount of claim*, from line 3 of *Schedule D*.................

   | $0.00 |

3. **Schedule E/F: Creditors Who Have Unsecured Claims** (Official Form 206E/F)

   3a. **Total claim amounts of priority unsecured claims:**
       Copy the total claims from Part 1 from line 5a of *Schedule E/F*....................................................

       | $6,779,993.67 |

   3b. **Total amount of claims of non-priority amount of unsecured claims:**
       Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*....................................................

       | + $28,138,530.53 |

4. **Total liabilities**...........................................................................................................................
   Lines 2 + 3a + 3b

   | $34,918,524.20 |

**Fill in this information to identify the case:**

Debtor name      _____ **Telecable, Inc.** _____

United States Bankruptcy Court for the:

_____ **Eastern District of New York** _____

Case number (if known): _____  Chapter __11__

☐ Check if this is an amended filing

## Official Form 206Sum

# Summary of Assets and Liabilities for Non-Individuals

12/15

### Part 1:   Summary of Assets

1. **Schedule A/B: Assets–Real and Personal Property** (Official Form 206A/B)

   1a. **Real Property:**

   Copy line 88 from *Schedule A/B*.......................................................................................................

   | $0.00 |
   |---|

   1b. **Total personal property:**

   Copy line 91A from *Schedule A/B*..................................................................................................

   | $1,578,887.34 |
   |---|

   1c. **Total of all property:**

   Copy line 92 from *Schedule A/B*....................................................................................................

   | $1,578,887.34 |
   |---|

### Part 2:   Summary of Liabilities

2. **Schedule D: Creditors Who Have Claims Secured by Property** (Official Form 206D)

   Copy the total dollar amount listed in Column A, *Amount of claim*, from line 3 of *Schedule D*.................

   | $0.00 |
   |---|

3. **Schedule E/F: Creditors Who Have Unsecured Claims** (Official Form 206E/F)

   3a. **Total claim amounts of priority unsecured claims:**

   Copy the total claims from Part 1 from line 5a of *Schedule E/F*....................................................................

   | $0.00 |
   |---|

   3b. **Total amount of claims of non-priority amount of unsecured claims:**

   Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*.....................................................

   | +   $3,876,852.32 |
   |---|

4. **Total liabilities**.........................................................................................................................

   | $3,876,852.32 |
   |---|

   Lines 2 + 3a + 3b

Fill in this information to identify the case:

Debtor name _____ **E-Fleet Services Corp.** _____

United States Bankruptcy Court for the:

_____ **Eastern District of New York** _____

Case number (if known): _____        Chapter __11__

☐ Check if this is an
amended filing

## Official Form 206Sum

# Summary of Assets and Liabilities for Non-Individuals                    **12/15**

### Part 1:  Summary of Assets

1. ***Schedule A/B: Assets–Real and Personal Property*** (Official Form 206A/B)

   1a. **Real Property:**
       Copy line 88 from *Schedule A/B*.........................................................................................................

   | | |
   |---|---|
   | | **$0.00** |

   1b. **Total personal property:**
       Copy line 91A from *Schedule A/B*......................................................................................................

   | | |
   |---|---|
   | | **$295,148.53** |

   1c. **Total of all property:**
       Copy line 92 from *Schedule A/B*.........................................................................................................

   | | |
   |---|---|
   | | **$295,148.53** |

### Part 2:  Summary of Liabilities

2. ***Schedule D: Creditors Who Have Claims Secured by Property*** (Official Form 206D)
   Copy the total dollar amount listed in Column A, *Amount of claim*, from line 3 of *Schedule D*.................

   | | |
   |---|---|
   | | **$507,825.44** |

3. ***Schedule E/F: Creditors Who Have Unsecured Claims*** (Official Form 206E/F)

   3a. **Total claim amounts of priority unsecured claims:**
       Copy the total claims from Part 1 from line 5a of *Schedule E/F*......................................................................

   | | |
   |---|---|
   | | **$0.00** |

   3b. **Total amount of claims of non-priority amount of unsecured claims:**
       Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*....................................................

   | | |
   |---|---|
   | + | **$6,746,359.45** |

4. **Total liabilities**...................................................................................................................................
   Lines 2 + 3a + 3b

   | | |
   |---|---|
   | | **$7,254,184.89** |

## **<u>SCHEDULE 4</u>**

Pursuant to Local Rule 1007-4(a)(xi), the following lists the property or premises owned, leased, or held under other arrangement from which the Debtors operate their businesses.

The following list is solely intended to provide the Court with information as to the premises from which the Debtors currently operate their businesses. The Debtors reserve all rights, including, but not limited, under Bankruptcy Code § 365. The Debtors make no admission as to the contractual relationship or enforceability of any lease agreement and further reserve all rights in connection therewith.

# Real Property

**Description↑**

🏠 **Landlord of Sub Lease**
2626 Wilson Road Harris, TX

🏠 **Leasehold - Office**
111 Express St Plainview, NY 11803-2404

🏠 **Leasehold - Office**
44 Middle Ave Summit, NJ 07901-4028

🏠 **Leasehold - Office**
255 Executive Dr Ste 409 Plainview, NY 11803

🏠 **Leasehold - Parking Lot**
225 Pine Aire Dr Bay Shore, NY 11706-1147

🏠 **Leasehold - Residential**
9 Pine Dr Old Bethpage, NY 11804-1017

🏠 **Leasehold - Residential**
1299 Corporate Dr Apt 1209 Westbury, NY 11590-6646

🏠 **Leasehold - Residential**
140 Old Country Rd Mineola, NY 11501-4303

🏠 **Leasehold - Residential**
2 Carol Ct Dix Hills, NY 11746

🏠 **Leasehold - Residential**
S Cesar Chavez Blvd. # 1322 Dallas, TX 75201

🏠 **Leasehold - Residential**
123 Clinton Ave Mineola, NY 11501-2857

🏠 **Leasehold - Residential**
43 Cranberry Ln Plainview, NY 11803

🏠 **Leasehold - Storage Lot**
9820 US 301 Hwy Lumberton, NC 28360

🏠 **Leasehold - Storage Lot**
7667 Floyd Highway North Copper Hill, VA 24079

🏠 **Leasehold - Storage Lot**
1351 Nc Highway 16 S Taylorsville, NC 28681-8942

🏠 **Leasehold - Storage Lot**
8111 Highway 271 S Fort Smith, AR 72908-7961

🏠 **Leasehold - Storage Lot**
50 Pottawattamie Dr Cherokee Vlg, AR 72529-7306

**Leasehold - Storage Lot**
52 Mason Rd Byhalia, MS 38611-9216

**Leasehold - Storage Lot**
3909 W Dewey Dr Las Vegas, NV 89118-2327

**Leasehold - Storage Lot**
320 W. Main St Lot A High Point, NC 27262

**Leasehold - Warehouse**
10 Culnen Dr Branchburg, NJ 08876-5400

**Leasehold - Warehouse**
444 Railroad Avenue Camp Hill, PA 17011

**Leasehold - Warehouse**
1333 E 44th St Lubbock, TX 79401

**Leasehold - Warehouse**
2510 S. Cockrell Ave Dallas, TX 75214

**Leasehold - Warehouse**
2626 Wilson Rd Humble, TX 77396-3705

**Leasehold - Warehouse**
143 Pine Aire Dr Bay Shore, NY 11706-1103

**Leasehold - Warehouse**
139 Woodward Av Norwalk, CT 06854

**Leasehold - Warehouse**
117 Liberty Dr Bldg B Thomasville, NC 27360-4859

**Leasehold - Warehouse/Parking**
200 Townline Rd Kings Park, NY 11754

**Leasehold Lot**
320 W. Main St., Lot A Jamestown, NC 27282

**Leasehold Warehouse**
2626 Wilson Road Humble, TX 77396

**Leasehold Warehouse**
404 Mountain View Avenue Rural Retreat, VA 24368

# Real Property

**Description↑**

🏠 **Leasehold - Lot**
**5801 Lakewood Rd Fort Mohave, AZ 86436**

## **SCHEDULE 5**

Pursuant to Local Rule 1007-4(a)(xii), the following lists the locations of the Debtors' significant assets, the locations of their books and records, and the nature, location, and value of any assets held by the Debtors outside of the territorial limits of the United States.

The Debtors do not have assets outside of the United States.

| | |
|---|---|
| Main Office: | 255 Executive Drive, Suite 409<br>Plainview, NY 11803 |
| Warehouse: | 444 Railroad Avenue<br>Camp Hill, PA 17011 |
| Office/Warehouse: | 2510 S. Cockrell Avenue<br>Dallas, TX 75214 |
| Lot/Warehouse: | 200 Townline Road<br>Kings Park NY 11754 |
| Warehouse: | 117 Liberty Drive, Building B<br>Thomasville, NC 07360-4859 |
| Warehouse: | 10 Culnen Drive<br>Branchburg, NJ 08876-5400 |

## **SCHEDULE 6**

Pursuant to Local Rule 1007-4(a)(xii), the following provides a summary of all present legal actions against the Debtors.

Debtor    **Excell Communications, Inc.**                                    Case number *(if known)* _____
Name

| 7.1. | Case title | Nature of case | Court or agency's name and address | Status of case |
|------|-----------|----------------|------------------------------------|----------------|

**7.1.**

**Case title**
**Eluri Aziani v. Nesco LLC et al**

**Nature of case**
**Torts - Motor Vehicle**

**Court or agency's name and address**
**New York State Supreme Court County of Bronx**
Name
**851 Grand Concourse**
Street

**Bronx, NY 10451-2937**
City                State    ZIP Code

**Status of case**
☑ Pending
☐ On appeal
☐ Concluded

**Case number**
**816745/2024E**

---

**7.2.**

**Case title**
**Torres Andrade, Jesus v. Altice USA, Inc. et al.**

**Nature of case**
**Torts - Motor vehicles**

**Court or agency's name and address**
**Kings County Supreme Court**
Name
**360 Adams St**
Street
**Kings County Civic Center**
**Brooklyn, NY 11201-3707**
City                State    ZIP Code

**Status of case**
☑ Pending
☐ On appeal
☐ Concluded

**Case number**
**053404/2022**

---

**7.3.**

**Case title**
**Rodriguez, Edwin Manuel v. Excell Communications, Inc. et al**

**Nature of case**
**Tort - Motor vehicle**

**Court or agency's name and address**
**Supreme Court of the State of New York, County of Suffolk**
Name
**1 Court St**
Street

**Riverhead, NY 11901-3092**
City                State    ZIP Code

**Status of case**
☑ Pending
☐ On appeal
☐ Concluded

**Case number**
**0615079/2023**

---

**7.4.**

**Case title**
**R & R Commercial Realty Group LLC v. Excell Communications, Inc.**

**Nature of case**
**Civil - Business organizations**

**Court or agency's name and address**
**Supreme Court of the State of New York, County of Suffolk**
Name
**1 Court St**
Street

**Riverhead, NY 11901-3092**
City                State    ZIP Code

**Status of case**
☑ Pending
☐ On appeal
☐ Concluded

**Case number**
**0207549/2022**

---

**7.5.**

**Case title**
**Olivo, Decharn v. Scovil, Ray et al**

**Nature of case**
**Tort - Motor vehicles**

**Court or agency's name and address**
**New York State Supreme Court County of Bronx**
Name
**851 Grand Concourse**
Street

**Bronx, NY 10451-2937**
City                State    ZIP Code

**Status of case**
☑ Pending
☐ On appeal
☐ Concluded

**Case number**
**0817871/2023**

| Debtor | **Excell Communications, Inc.** | | Case number *(if known)* | |
| | Name | | | |

| | | | | |
|---|---|---|---|---|
| 7.6. | **Case title** | **Nature of case** | **Court or agency's name and address** | **Status of case** |
| | **IGTECH LLC et al v. Excell Communications Inc et al** | **Civil - breach of contract** | **U.S. District Court, Northern District of Alabama** | ☑ Pending |
| | | | Name | ☐ On appeal |
| | **Case number** | | **1729 5th Ave N** | ☐ Concluded |
| | | | Street | |
| | **2:24-CV-00317** | | **Hugo L. Black United States Courthouse** | |
| | | | **Birmingham, AL 35203-2022** | |
| | | | City          State        ZIP Code | |

| | | | | |
|---|---|---|---|---|
| 7.7. | **Case title** | **Nature of case** | **Court or agency's name and address** | **Status of case** |
| | **Ferreira v. Prower Telco Services, Inc. et al** | **Civil - Labor and employment** | **U.S. District Court, Eastern District of New York** | ☑ Pending |
| | | | Name | ☐ On appeal |
| | **Case number** | | **100 Federal Plz** | ☐ Concluded |
| | | | Street | |
| | **2:25-CV-00085** | | | |
| | | | **Central Islip, NY 11722-4438** | |
| | | | City          State        ZIP Code | |

| | | | | |
|---|---|---|---|---|
| 7.8. | **Case title** | **Nature of case** | **Court or agency's name and address** | **Status of case** |
| | **Dieze DMCC v. Excell Communications, Inc.** | **Civil - Contract** | **U.S. District Court, Eastern District of New York** | ☑ Pending |
| | | | Name | ☐ On appeal |
| | **Case number** | | **225 Cadman Plz E** | ☐ Concluded |
| | | | Street | |
| | **1:24-CV-07907** | | | |
| | | | **Brooklyn, NY 11201-1832** | |
| | | | City          State        ZIP Code | |

| | | | | |
|---|---|---|---|---|
| 7.9. | **Case title** | **Nature of case** | **Court or agency's name and address** | **Status of case** |
| | **Chaskis Communications LLC v. Excell Communications, Inc.** | **Civil - Contract** | **U.S. District Court, Eastern District of Virginia** | ☑ Pending |
| | | | Name | ☐ On appeal |
| | **Case number** | | **600 Granby St** | ☐ Concluded |
| | | | Street | |
| | **2:24-CV-00730** | | **Walter E. Hoffman United States Courthouse** | |
| | | | **Norfolk, VA 23510-1915** | |
| | | | City          State        ZIP Code | |

| | | | | |
|---|---|---|---|---|
| 7.10. | **Case title** | **Nature of case** | **Court or agency's name and address** | **Status of case** |
| | **Burgess, Salvator M. v. Excell Communications, Inc. et al** | **Tort - Motor Vehicle** | **Kings County Supreme Court** | ☑ Pending |
| | | | Name | ☐ On appeal |
| | **Case number** | | **360 Adams St** | ☐ Concluded |
| | | | Street | |
| | **0527618/2022** | | **Kings County Civic Center** | |
| | | | **Brooklyn, NY 11201-3707** | |
| | | | City          State        ZIP Code | |

| Debtor | **Excell Communications, Inc.** | | Case number *(if known)* |
|---|---|---|---|
| | Name | | |

| 7.11. | Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|---|
| | **Brown, Carl, et al v. Paul, Ismery J. et al** | **Civil - Vehicular Torts** | **Bridgeport Judicial District, Superior Court** <br> Name | ☑ Pending <br> ☐ On appeal <br> ☐ Concluded |
| | Case number | | **1061 Main St** <br> Street | |
| | **FBT-CV-24-6139995-S** | | | |
| | | | **Bridgeport, CT 06604-4222** <br> City          State     ZIP Code | |

| 7.12. | Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|---|
| | **Ajayi, Adesoji O. v. Fraser, Sean D. et al** | **Tort - Motor vehicle** | **Kings County Supreme Court** <br> Name | ☑ Pending <br> ☐ On appeal <br> ☐ Concluded |
| | Case number | | **360 Adams St** <br> Street | |
| | **0532848/2022** | | **Kings County Civic Center** | |
| | | | **Brooklyn, NY 11201-3707** <br> City          State     ZIP Code | |

| 7.13. | Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|---|
| | **JRP Realty, LLC v. Excell Communications, Inc.** | **Civil Landlord Tenant** | **Superior Court of New Jersey Law Division: Union County** <br> Name | ☑ Pending <br> ☐ On appeal <br> ☐ Concluded |
| | Case number | | Street | |
| | **UNN-L-0059-25** | | | |
| | | | City          State     ZIP Code | |

**8. Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

☑ None

| 8.1. | Custodian's name and address | Description of the property | Value |
|---|---|---|---|
| | Custodian's name | | |
| | | Case title | Court name and address |
| | Street | | Name |
| | | Case number | Street |
| | City          State     ZIP Code | | |
| | | Date of order or assignment | City          State     ZIP Code |

---

**Part 4:** Certain Gifts and Charitable Contributions

**9.** List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000

☑ None

Debtor    **Telecable, Inc.** _____    Case number *(if known)* _____
          Name

| | | |
|---|---|---|
| 5.1. | **Entrust Group** | **5081 Lakewood Rd., Fort Mohave, AZ** |
| | Creditor's name | **86436** |
| | **PO Box 10081** | |
| | Street | |
| | **Att: Ken Renfroe** | |
| | **San Bernardino, CA 92423-0081** | |
| | City          State     ZIP Code | |

## 6. Setoffs

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

☑ None

| Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|---|---|---|---|
| 6.1. _____ | | | |
| Creditor's name | XXXX– __ __ __ __ | | |
| _____ | | | |
| Street | | | |
| _____ | | | |
| _____ | | | |
| City          State     ZIP Code | | | |

---

**Part 3:    Legal Actions or Assignments**

## 7. Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case.

☐ None

| 7.1. | Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|---|
| | **Donofrio v. McGinley Hess** | **Torts/Negligence; Personal Injury** | **Superior Court, Camden County** | ☑ Pending |
| | | | Name | ☐ On appeal |
| | | | **101 S 5th St** | ☐ Concluded |
| | Case number | | Street | |
| | **L-001897-09** | | **Camden County Hall of Justice** | |
| | | | **Camden, NJ 08103-4001** | |
| | | | City          State     ZIP Code | |

| 7.2. | Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|---|
| | **PSEG Service Corp. v. Telecable Inc.** | **Tort Auto** | **Superior Court, Middlesex County** | ☑ Pending |
| | | | Name | ☐ On appeal |
| | | | **56 Paterson St** | ☐ Concluded |
| | Case number | | Street | |
| | **DC-006714-17** | | | |
| | | | **New Brunswick, NJ 08901-2014** | |
| | | | City          State     ZIP Code | |

Debtor **Telecable, Inc.**                                    Case number *(if known)* _____
_____
Name

| 7.3. | Case title | Nature of case | Court or agency's name and address | Status of case |
|------|-----------|----------------|-----------------------------------|----------------|
| | **Complete Business Solutions Group Inc v. Telecable Inc.** | **Civil** | **Court of Common Pleas, Lancaster County** <br> Name <br> **50 N Duke St** <br> Street <br> **PO Box 83480** <br> **Lancaster, PA 17602-2805** <br> City        State    ZIP Code | ☑ Pending <br> ☐ On appeal <br> ☐ Concluded |
| | **Case number** | | | |
| | **CI-17-05438** | | | |

| 7.4. | Case title | Nature of case | Court or agency's name and address | Status of case |
|------|-----------|----------------|-----------------------------------|----------------|
| | **PSE&G v. Telecable, Inc.** | **Tort - Negligence** | **Superior Court, Middlesex County** <br> Name <br> **56 Paterson St** <br> Street <br><br> **New Brunswick, NJ 08901-2014** <br> City        State    ZIP Code | ☑ Pending <br> ☐ On appeal <br> ☐ Concluded |
| | **Case number** | | | |
| | **DC-003369-22** | | | |

| 7.5. | Case title | Nature of case | Court or agency's name and address | Status of case |
|------|-----------|----------------|-----------------------------------|----------------|
| | **Jersey Central Power v. Telecable, Inc.** | **Torts - Negligence** | **Superior Court, Middlesex County** <br> Name <br> **56 Paterson St** <br> Street <br><br> **New Brunswick, NJ 08901-2014** <br> City        State    ZIP Code | ☑ Pending <br> ☐ On appeal <br> ☐ Concluded |
| | **Case number** | | | |
| | **DC-007965-23** | | | |

**8.    Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

☑ None

| 8.1. | Custodian's name and address | Description of the property | Value |
|------|------------------------------|----------------------------|-------|
| | Custodian's name <br><br> Street <br><br> City        State    ZIP Code | Case title <br><br> Case number <br><br> Date of order or assignment | Court name and address <br> Name <br> Street <br><br> City        State    ZIP Code |

---

**Part 4:** Certain Gifts and Charitable Contributions

**9.    List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

☑ None

## **SCHEDULE 7**

Pursuant to Local Rule 1007-4(a)(xiv), the following is a list of the Debtors' senior management.

| Name | Title | Tenure |
|------|-------|--------|
| Carlos Lourenco | Chief Executive Officer | December, 2024 – Present |
| Harry Zapiti | Chief Financial Officer | December, 2024 – Present |

## **SCHEDULE 8**

Pursuant to Local Rule 1007-4(xiv)–(xv), the following provides the estimated amount of weekly payroll to be paid to the Debtors' employees (not including officers, directors, or independent contractor) and the estimated amount to be paid to the officers, directors, and financial and business consultants retained by the Debtors for the thirty (30) day period following the filing of these chapter 11 cases.

| Payments to Employees, Officers, and Directors | |
|---|---|
| Weekly Payroll to Employees (Not Including Officers and Directors) | The estimated weekly payroll for these employees is $58,619.35 per week for the 30-day period following the filing date. |
| Estimated Payments to Officers and Directors | The estimated weekly payroll for officers and directors is $3,846 per week for the 30-day period following the filing date |

## SCHEDULE 9

Pursuant to Local Rule I 007-4(a)(xvi), the following is the amount paid and proposed to be paid for services for the thirty (30) day period following the filing of the Debtors' chapter 11 petitions: (A) to the Debtors' officers and directors, and (B) to the chief restructuring officer retained by the Debtors.

The estimated payments to officers and directors for the thirty (30) day period following the Petition Date is approximately $15,384.

The Debtors retained Lindenwood Associates.

# **SCHEDULE 10**

Pursuant to Local Rule 1007-4(a)(xvii), the following is an itemized schedule, for the thirty (30) day period following the filing of the Debtors' chapter 11 petitions, of estimated cash receipts and disbursements, net cash gain or loss, obligations and receivables expected to accrue but remaining unpaid, other than professional fees, and any other information relevant to an understanding of the foregoing.

| Excell Communications Inc & Subsidiaries | | | | | | | Forecast | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Starting Date** | **4/14/25** | | | | | | | | | | | | | |
| **Week:** | **1** | **2** | **3** | **4** | **5** | **6** | **7** | **8** | **9** | **10** | **11** | **12** | **13** | **Total for** |
| Week Beginning | 4/14/25 | 4/21/25 | 4/28/25 | 5/5/25 | 5/12/25 | 5/19/25 | 5/26/25 | 6/2/25 | 6/9/25 | 6/16/25 | 6/23/25 | 6/30/25 | 7/7/25 | **13** |
| Week Ending | 4/20/25 | 4/27/25 | 5/4/25 | 5/11/25 | 5/18/25 | 5/25/25 | 6/1/25 | 6/8/25 | 6/15/25 | 6/22/25 | 6/29/25 | 7/6/25 | 7/13/25 | **Week** |
| **Receipts** | | | | | | | | | | | | | | |
| Excell & Telecable Receipts | 254,677 | 450,234 | 357,645 | 741,051 | 485,846 | 445,086 | 970,931 | 201,281 | 59,789 | 639,333 | 639,333 | 615,290 | 597,258 | 6,457,755 |
| Other Receipts | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Other Misc. Receipts (Tax refunds, insurance proceeds, etc.) | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| *Total Receipts* | *254,677* | *450,234* | *357,645* | *741,051* | *485,846* | *445,086* | *970,931* | *201,281* | *59,789* | *639,333* | *639,333* | *615,290* | *597,258* | *6,457,755* |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| **Variable Expenses** | | | | | | | | | | | | | | |
| Construction Subcontractors | - | - | - | - | - | 414,167 | 414,167 | 406,532 | 400,806 | 400,806 | 400,806 | 407,448 | 447,300 | 3,292,033 |
| Materials & Supplies | - | - | - | - | - | 23,333 | 23,333 | 22,903 | 22,581 | 22,581 | 22,581 | 22,955 | 25,200 | 185,467 |
| Equipment Rentals/ Maintenance | - | - | - | - | - | 5,833 | 5,833 | 5,726 | 5,645 | 5,645 | 5,645 | 5,739 | 6,300 | 46,367 |
| Other Variable | - | - | - | - | - | 5,833 | 5,833 | 5,726 | 5,645 | 5,645 | 5,645 | 5,739 | 6,300 | 46,367 |
| Design Subcontractors | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Variable Costs** | **-** | **-** | **-** | **-** | **-** | **449,167** | **449,167** | **440,887** | **434,677** | **434,677** | **434,677** | **441,881** | **485,100** | **3,570,233** |
| **Fixed Expenses** | | | | | | | | | | | | | | |
| Payroll | 99,724 | 99,724 | 99,724 | 66,181 | 66,181 | 66,181 | 66,181 | 66,181 | 66,181 | 66,181 | 66,181 | 66,181 | 66,181 | 960,985 |
| Insurance | - | 86,500 | - | - | - | - | 86,500 | - | - | - | - | 86,500 | - | 259,500 |
| Rent | - | - | 150,000 | - | - | - | 150,000 | - | - | - | - | 150,000 | - | 450,000 |
| Computer & Internet & Software | - | - | 20,872 | - | - | - | 20,872 | - | - | - | - | 20,872 | - | 62,616 |
| Ordinary Course Professionals | - | - | 23,750 | - | - | - | 23,750 | - | - | - | - | 23,750 | - | 71,250 |
| Vehicle Expense | - | - | 8,333 | - | - | - | 8,333 | - | - | - | - | 8,333 | - | 25,000 |
| Office | - | - | 4,167 | - | - | - | 4,167 | - | - | - | - | 4,167 | - | 12,500 |
| Utilities | - | - | 3,750 | - | - | - | 3,750 | - | - | - | - | 3,750 | - | 11,250 |
| **Total Fixed Costs** | **99,724** | **99,724** | **397,096** | **66,181** | **66,181** | **66,181** | **363,553** | **66,181** | **66,181** | **66,181** | **66,181** | **363,553** | **66,181** | **1,853,101** |
| *Total Operating Disbursements* | *99,724* | *99,724* | *397,096* | *66,181* | *66,181* | *515,348* | *812,720* | *507,068* | *500,859* | *500,859* | *500,859* | *805,434* | *551,281* | *5,423,335* |
| **Net Operating Cash Flow** | 154,953 | 350,510 | (39,451) | 674,870 | 419,665 | (70,262) | 158,211 | (305,788) | (441,069) | 138,475 | 138,475 | (190,144) | 45,977 | 1,034,421 |
| Cumulative | 154,953 | 505,463 | 466,012 | 1,140,882 | 1,560,546 | 1,490,284 | 1,648,495 | 1,342,708 | 901,638 | 1,040,113 | 1,178,587 | 988,444 | 1,034,421 | |
| **Non-Operating Receipts & Disbursements** | | | | | | | | | | | | | | |
| Critical Vendor Payments | 238,500 | 200,000 | 453,489 | 200,000 | 200,000 | 200,000 | 453,489 | 200,000 | 200,000 | 200,000 | 200,000 | 453,489 | 200,000 | 3,398,967 |
| US Trustee Fees | - | - | - | - | - | - | - | - | - | 17,624 | - | - | - | 17,624 |
| Bankruptcy Professional Fees | - | - | 110,000 | - | - | - | 110,000 | - | - | - | - | 110,000 | - | 330,000 |
| Total Non-Operating Disbursements | 238,500 | 200,000 | 563,489 | 200,000 | 200,000 | 200,000 | 563,489 | 200,000 | 200,000 | 200,000 | 217,624 | 563,489 | 200,000 | 3,746,591 |
| *Net Total Cash Flow* | *(83,547)* | *150,510* | *(602,940)* | *474,870* | *219,665* | *(270,262)* | *(405,278)* | *(505,788)* | *(641,069)* | *(61,525)* | *(79,150)* | *(753,633)* | *(154,023)* | *(2,712,171)* |
| Cumulative | (83,547) | 66,963 | (535,977) | (61,107) | 158,557 | (111,705) | (516,983) | (1,022,770) | (1,663,840) | (1,725,365) | (1,804,515) | (2,558,148) | (2,712,171) | |
| Beginning Cash Balance | 4,455,500 | 4,371,953 | 4,522,463 | 3,919,523 | 4,394,393 | 4,614,057 | 4,343,795 | 3,938,517 | 3,432,730 | 2,791,660 | 2,730,135 | 2,650,985 | 1,897,352 | 4,455,500 |
| Net Cash Flow | (83,547) | 150,510 | (602,940) | 474,870 | 219,665 | (270,262) | (405,278) | (505,788) | (641,069) | (61,525) | (79,150) | (753,633) | (154,023) | (2,712,171) |
| Ending Cash Balance | 4,371,953 | 4,522,463 | 3,919,523 | 4,394,393 | 4,614,057 | 4,343,795 | 3,938,517 | 3,432,730 | 2,791,660 | 2,730,135 | 2,650,985 | 1,897,352 | 1,743,329 | 1,743,329 |

## <u>SCHEDULE 11</u>

Pursuant to Local Rule 1007-4(a)(xviii), the following is a schedule of the Debtors' current insurance policies, including the identity of the insurer, policy period and type of insurance for each insurance policy listed.

| Company | Policy | Amount |
|---|---|---|
| Travelers | D&O Policy | $5,000,000 |
| U.S. Risk | General Liability | $1,000,000 / $2,000,000 |
| U.S. Risk | Umbrella | $5,000,000 |
| U.S. Risk | Workers Comp | $1,000,000 |
| U.S. Risk | Cyber | $3,000,000 |
| U.S. Risk | Commercial/Property | $3,000,000 |
| Captive | Liability | unknown |

## **SCHEDULE 12**

Pursuant to Local Rule 1007-4(a)(xix), the following is a schedule of the Debtors' bank accounts, including the name and address of the banking institution where the accounts are held, the name on the account, and the nature of the account for each bank account listed.

| Debtor (last four digits of FEIN) | Bank[5] | Account Number | Account Type | Description |
|---|---|---|---|---|
| Excell Communications, Inc. (3973) | Regions Bank | xxxxx2946 | Commercial Checking | Depository Account |
| Excell Communications, Inc. (3973) | Regions Bank | xxxxx7890 | Commercial Checking | Disbursement Account |
| Excell Communications, Inc. (3973) | Regions Bank | xxxxx8822 | Commercial Checking | Brokerage Account |
| Excell Communications, Inc. (3973) | Regions Bank | xxxxx4740 | Commercial Checking | Brokerage Account |
| Excell Communications, Inc. (3973) | Regions Bank | xxxxx1789 | Commercial Checking | Flex Pay Account |
| Excell Communications, Inc. (3973) | Regions Bank | xxxxx6160 | Certificate of Deposit | CD Account |
| E-Fleet Services Corp. (3213) | Regions Bank | xxxxx2127 | Commercial Checking | Depository Account |
| E-Fleet Services Corp. (3213) | Regions Bank | xxxxx2143 | Commercial Checking | Disbursement Account |
| Telecable, Inc. (7957) | Regions Bank | xxxxx2100 | Commercial Checking | Depository Account |
| Telecable, Inc. (7957) | Regions Bank | xxxxx2119 | Commercial Checking | Disbursement Account |
| Telecable, Inc. (7957) | Regions Bank | xxxxx2925 | Commercial Checking | Limited-Use Account |

---

[5] All of the Debtors' bank accounts are maintained at Regions Bank at the branch located at 1900 5th Avenue, North Birmingham, Alabama 35203.