

# FLEET SERVICES MASTER AGREEMENT

This Fleet Services Master Agreement for selected fleet related services together with any addenda is hereby made and entered into as of April 28, 2025, by and between Merchants Automotive Group, LLC., a New Hampshire limited liability company doing business at 14 Central Park Drive, 1st Floor, Hooksett, New Hampshire 03106 ("Merchants"), and Excell Communications, Inc., a corporation (the "Customer") together with its divisions and subsidiaries with a principal office at 255 Executive Drive, Suite 409, Plainview, New York 11803. (the "Client").

In consideration of the mutual covenants hereinafter contained, the parties hereto agree for themselves, their heirs, executors, administrators, representatives, successors and assigns, as follows:

1) **Services.** From time-to-time Client may subscribe to certain services identified in the applicable addenda attached hereto for those vehicles enrolled by Client (the "Vehicles") in these services. Vehicles covered under this Agreement may be leased to Client by Merchants and/or it's titling trust, or owned by the Client or other third party.

2) **Term.** This Agreement shall commence upon signing by both parties. This Agreement along with individual addendum attached hereto shall remain in force for an indefinite period of time. Individual vehicles enrolled in any service however shall have a minimum enrollment term of twelve (12) months or a minimum term as otherwise indicated on the Fee Schedule. This Agreement or addenda may be terminated by either party, or Merchants may revise the fees therein with sixty (60) days written notice.

3) **Invoicing and payment.** The Client agrees to pay Merchants in accordance with the attached ADDENDUM TO FLEET SERVICES MASTER AGREEMENT FUEL CARD PROGRAM AND MANAGEMENT. Merchants will invoice the Client in the format and frequency mutually agreed upon. Late payment fees will be charged at a rate of 1.5%, or the highest rate available at law (whichever is less), per month. Client shall notify Merchants promptly of any disputed charges and every reasonable effort to resolve such disputes will be made prior to the due date of the invoice. If disputed charges are not resolved prior to the due date the Client shall pay the entire amount due and Merchants will promptly endeavor to substantiate the charges or credit the Client's account if the invoice is ultimately determined to be in error.

4) **Fees** – In addition to all fees charged by Merchants pursuant to the Fee Schedule, the Client shall be responsible for the payment of all pass-through charges incurred through third-party service providers for any goods and services provided hereunder and/or any administrative fees agreed to in advance by the parties for services outside of the services detailed in the applicable addenda or Fee Schedule. Client acknowledges that Merchants may receive certain volume discounts and rebillers' fees directly from such third-party service providers.

5) **Financial Information.** The creditworthiness of Client and any guarantor is a material condition to this Agreement. Client shall provide Merchants with financial information reasonably requested by and satisfactory to Merchants each year of this Agreement.

6) **Disclaimer of Warranties.** MERCHANTS IS NOT THE MANUFACTURER OR DISTRIBUTOR OF THE GOODS AND SERVICES PURCHASED FROM THIRD PARTIES PURSUANT TO THIS AGREEMENT AND MAKES NO EXPRESS OR IMPLIED REPRESENTATIONS OR WARRANTIES AS TO SUCH GOODS AND SERVICES WHATSOEVER, INCLUDING WITHOUT LIMITATION, THE MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE AND MERCHANTS HEREBY DISCLAIMS ANY SUCH WARRANTY. MERCHANTS DOES NOT CONDUCT, AND SHALL NOT BE RESPONSIBLE FOR CONDUCTING, ANY FORMAL QUALITATIVE REVIEW OR INSPECTION OF SUCH THIRD-PARTY

SERVICE PROVIDERS, INCLUDING, BUT NOT LIMITED TO, GOODS OR SERVICES PROVIDED OR EMPLOYEE QUALIFICATIONS. MERCHANTS IS NOT RESPONSIBLE FOR ANY REPAIRS OR SERVICE TO THE VEHICLES, DEFECTS THEREIN OR FAILURES IN THE OPERATION THEREOF AND THE CLIENT AGREES TO LOOK SOLELY TO THE MANUFACTURER OR DISTRIBUTOR OF SUCH GOODS AND SERVICES AND HEREBY WAIVES ANY CLAIMS, INCLUDING PRODUCT LIABILITY CLAIMS, AGAINST MERCHANTS. CLIENT ACKNOWLEDGES AND AGREES THAT MERCHANTS IS AN INDEPENDENT CONTRACTOR AND DOES NOT ACT IN THE CAPACITY OF A FIDUCIARY OF CLIENT, AND THAT IT HAS NO FIDUCIARY RESPONSIBILITY AS TO CLIENTS' VEHICLES AND EMPLOYEES.

7) **Client's Indemnity of Merchants.** CLIENT WILL INDEMNIFY, DEFEND AND HOLD HARMLESS MERCHANTS AGAINST ANY LOSS, LIABILITY, OR CLAIM, DIRECTLY OR INDIRECTLY RELATED TO THE GOODS AND SERVICES OBTAINED FROM THIRD PARTIES PURSUANT TO THIS AGREEMENT. THE INDEMNITY IS UNCONDITIONAL AND ABSOLUTE AND INCLUDES CLAIMS OF NEGLIGENCE, STRICT LIABILITY AND BREACH OF WARRANTY. THIS INDEMNITY WILL SURVIVE THE TERMINATION OF THIS AGREEMENT.

8) **Default. Remedies.**

   a. Default. If (a) Client shall fail to make payments to Merchants in accordance with the attached ADDENDUM TO FLEET SERVICES MASTER AGREEMENT FUEL CARD PROGRAM AND MANAGEMENT and such condition shall continue for three (3) business days, or (b) shall fail to perform or observe any of its other covenants, conditions or obligations under this Agreement, or (c) if Client or any guarantor shall (i) make an assignment for the benefit of creditors, or suffer a receiver or trustee to be appointed, or file or suffer to be filed any petition under any bankruptcy or insolvency law of any jurisdiction; or (ii) discontinue business; or (iii) cease its corporate, partnership or legal existence or die; or (iv) be in default under any other agreement it may have with Merchants or any parent, subsidiary or affiliate of Merchants; or (v) undergo a change in controlling ownership; or (vi) suffer a material adverse change in operating or financial condition which impairs Client's ability to perform its obligations hereunder; or (vii) make any representation or warranty herein, or in any document delivered to Merchants in connection herewith (including, without limitation, financial information) or filed with any governmental entity and obtained by Merchants in connection herewith, which shall prove to be false or misleading in any material respect; then in such event, then Client shall be in default under this Agreement. A default under the terms of this Agreement shall constitute a default under any other agreement Client has with Merchants or any parent, subsidiary or affiliate of Merchants.

   b. Remedies. In the event of default by Client, and upon three (3) business days' notice via email to harryzapiti@excellcommunications.com, and a copy to mamato@rmfpc.com and nflorio@rmfpc.com, Merchants shall have the right to: (i) immediately discontinue all services being provided under this Fleet Service Master Agreement and related addendums; (ii) collect all amounts due including amounts invoiced prior to the default which remain unpaid and all fees and pass through charges incurred but not yet invoiced; (ii) cancel any payment instruments then in possession of the Client and its employees and reasonable attorneys' fees incurred by Merchants for enforcement of Merchants' rights. In addition, Merchants shall have the right to cancel this Agreement and shall retain all rights and remedies available at law or in equity; all such rights and remedies to be cumulative and not exclusive.

9) **Assignment.** Client may not assign any interest in this Agreement to any party without the prior written consent of the Merchants. This Agreement and all rights of the Merchants hereunder shall be freely assignable by Merchants, in whole or in part, to any Assignee without notice to the Client. Any such assignment shall not relieve Merchants of its obligations hereunder unless specifically assumed by the Assignee, and the Client agrees the Client shall not assert any defense, rights of set-off or counterclaim against any Assignees, nor hold or attempt to hold such Assignee liable for any of Merchants' obligations hereunder. No such assignment shall materially increase the Client's obligations hereunder.

10) **Enforceability and Governing Law.** Any provisions of this Agreement which are unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such unenforceability without invalidating the remaining provisions hereof, and any such unenforceability in any jurisdiction shall not render unenforceable such provisions in any other jurisdiction. To the extent permitted by applicable law, the Client hereby waives any provisions of law which render any provision hereof unenforceable in any respect.

11) **Disclosure.** Client (including any Related Entity) authorizes Merchants to disclose information about Client or any Related Entity that Merchants may at any time possess to any affiliate or third-party vendor from whom the Client received, directly or indirectly, goods or services, whether such information was supplied by Client to Merchants or otherwise obtained by Merchants, in each case solely to the extent and in the amount and type necessary to obtain such goods or services, or to make payment of or otherwise facilitate the provision of such goods or services. "Related Entity" means any present or future subsidiary, parent or affiliate of Client.

THIS AGREEMENT AND THE LEGAL RELATIONS OF THE PARTIES HERETO SHALL IN ALL RESPECTS BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF NEW HAMPSHIRE, WITHOUT REGARD TO PRINCIPLES REGARDING THE CHOICE OF LAW. THE PARTIES HEREBY CONSENT AND SUBMIT TO THE JURISDICTION OF THE UNITED STATES BANKRUPTCY COURT, EASTERN DISTRICT OF NEW YORK FOR THE PURPOSES OF ANY SUIT, ACTION OR OTHER PROCEEDING ARISING OUT OF ITS OBLIGATIONS HEREUNDER, AND EXPRESSLY WAIVES ANY OBJECTIONS THAT THE CLIENT MAY HAVE TO THE VENUE OF SUCH COURTS. THE CLIENT HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION BROUGHT ON OR WITH RESPECT TO THIS AGREEMENT.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their authorized representatives.

| **MERCHANTS** | **CLIENT** |
|---|---|
| **MERCHANTS AUTOMOTIVE GROUP, LLC** | **EXCELL COMMUNICATIONS, INC.** |
| | FEIN: __-_____ (Client to Provide) |
| By: _____ (signature) | By: _____ (signature) |
| Name: _____ (printed name) | Name: _____ (printed name) |
| Title: _____ | Title: _____ |
| Date: _____ | Date: _____ |



# FEE SCHEDULE TO FLEET SERVICES MASTER AGREEMENT

This Fee Schedule (the "Fee Schedule"), made effective as of April 28, 2025 (the "Effective Date"), to the Fleet Master Services Agreement by and between Merchants Automotive Group, LLC, dba Merchants Fleet, ("Merchants"), and EXCELL COMMUNICATIONS, INC., (the "Client")(together, with Merchants, the "Parties" and each individually a "Party"), dated April 28, 2025 (the "Agreement"). Capitalized terms not otherwise defined herein shall have the meanings set forth in the Agreement.

The following are agreed upon Fees associated with the signed Fleet Services Addenda:

**Fuel Card Program:**

| | |
|---|---|
| Per fuel card per month admin Fee | $0.00 per card per month |
| Billing Cycle | **Weekly** |
| Payment Type | **ACH Pull** |
| Due date from date of invoice | 2 Business Days |
| Expedited Shipping | $25.00 per card, per occurrence |

Due date outlined above for fuel services SUPERSEDES THE PAYMENT DUE DATE OUTLINED IN SECTION 2 OF THE MASTER

**MERCHANTS AUTOMOTIVE GROUP, LLC**        **EXCELL COMMUNICATIONS, INC.**

By: _____        By: _____
     (signature)                                                                  (signature)

Name: _____        Name: _____
      (printed name)                                                            (printed name)

Title: _____        Title: _____

Date: _____        Date: _____

## ADDENDUM TO FLEET SERVICES MASTER AGREEMENT
## FUEL CARD PROGRAM AND MANAGEMENT

This Program Addendum (this "Addendum") to that certain Fleet Services Master Agreement made and entered into as of April 28, 2025 (the "Agreement") by and between Merchants Automotive Group, LLC ("Merchants"), and **EXCELL COMMUNICATIONS, INC.** (the "Client"), is made effective as of April 28, 2025 (the "Effective Date"). Merchants and Client are collectively referred to herein as the "parties" and each individually as a "party". Capitalized terms not otherwise defined herein shall have the meanings set forth in the Agreement.

**WHEREAS,** Merchants, in conjunction with a third-party fuel card vendor, ("WEX" or "Fuel Card Vendor"), provides an instrument ("Fuel Card") to Client to assist in managing fuel purchases for fleet vehicles (the "Fuel Management Program");

**WHEREAS,** Client desires to obtain Fuel Cards and/or enroll certain vehicles in the Fuel Management Program;

**NOW THEREFORE,** in consideration of the foregoing, and for other good and valuable consideration, the parties agree to the following:

1. **Fuel Card Issuance.** Merchants shall provide the Fuel Cards to the Client as requested from time to time by the Client, and as approved by Merchants.

2. **Fuel Card Use and Users.** Client shall use the Fuel Cards for commercial purposes and in accordance with the terms of this Addendum. Prior to receipt of the Fuel Card(s), the Client will identify the individual or vehicle associated with the individual Fuel Card(s) issued to the Client.

3. **Fuel Card Restrictions and Customization.** Fuel Card(s) are restricted to fuel and car wash purchases at an approved network provider. Fuel Card(s) are not to be used for other purchases (e.g., repairs, maintenance and food)Merchants shall set up the Fuel Management Program account for the Client, and the Client shall select the features for each card offered under the Fuel Management Program, including the definition of controls and restrictions based on either: (a) a specific number of authorizations/transactions per day, (b) a specific dollar purchase limit per day, or (c) the day of the week and/or the time of day.

4. **Acceptance at Point of Sale.** Fuel Card(s) are programed to only be accepted at vendors with qualifying Merchants Category Codes (MCC). Eligible fuel and wash purchases at fuel merchants with improperly coded credit card processing services may not be honored. Merchants cannot be responsible for purchases being rejected or declined because the vendor is set-up with an ineligible MCC.

5. **Web Portal and Access.** Merchants shall provide the Client access to its secure web portal ("TotalView") to allow the Client to manage the assigned Fuel Cards, obtain invoice information, generate reports on card usage, track purchases, and receive alerts and notifications and terminate cards.

6. **Fees.** Client shall pay the fees set forth in the applicable sections of the Fee Schedule attached to the Agreement. Client employs the Fuel Card Vendor to facilitate fuel cards, any costs incurred by the Fuel Card Vendor due to shipping or express mailing will be passed through to the Client.

7. **Liability and Payment.** Client is liable for all charges incurred in connection with the use of the assigned Fuel Card(s). Client shall pay all such charges to Merchants in accordance with the terms set forth on the applicable Fee Schedule attached to the Agreement. In the event that the Client is in breach of the Agreement or this Addendum, or if the Client fails to pay any amount when due pursuant to the applicable Fee Schedule, in addition to any and all remedies available to Merchants under the Agreement and applicable law, Merchants shall have the absolute right to immediately suspend or revoke the Client's right to use the Fuel Cards.

8. **Lost or Stolen Cards.** Client has the ability to cancel a card immediately in TotalView if a Fuel Card is lost or stolen, or if the Client suspects the card is being used without the Client's permission. In the event Client is unable to access

TotalView, Client shall notify Merchants immediately and Merchants shall immediately suspend or revoke the Fuel Card in question upon receipt of such notice from the Client. Client shall remain liable for any charges incurred on the Fuel Card, whether fraudulent or not, prior to Merchants' suspension or revocation of the Fuel Card.

9. **Disputed Charges.** Disputed charges must be made known within sixty (60) days of the transaction. Client is not responsible for fraudulent charges disputed within sixty (60) days of the billing date of transaction to the extent resulting solely and directly from third party "white plastic" fraud activities in the event such third parties obtain electronic information from a card through a breach of any database maintained by Merchants or Fuel Card Vendor or "card skimming" fraud committed by third parties who obtain electronic information directly off of the card at the point of sale or through other means that do not involve a data breach of any database maintained by the fuel merchant or other third party. For the avoidance of doubt, Client is responsible for any fraudulent charges to the extent resulting from Client's failure to protect cards, codes, credentials and/or devices that belong to Client or are in Client's, or their respective employees', agents' or representatives', possession. If the Client is participating in WEX's *Tax Exemption & Reporting Program* (e.g., net billing), Client must comply with disputed charges in accordance with the terms and conditions of that program if it provides for a shorter dispute.

10. **WEX's Tax Exemption & Reporting Program.** For certain eligible Clients, WEX offers a *Tax Exemption & Reporting Program* that provides special billing of federal and state fuel excise taxes. Clients eligible for such program will complete the necessary application forms prior to participating in the program. If eligible and accepted by WEX, Client shall be subject to the terms and conditions of the program. As the program is administered by a third-party, Client agrees to hold harmless Merchants for any failures, omissions or errors arising from the program.

11. **Fuel Data.** Merchants has no fiduciary responsibility to monitor or analyze fuel card usage. If a card is lost, a replacement card may be obtained by notifying Merchants with such replacement subject to any fees outlined on the Fee Schedule. Merchants is not monitoring charges/daily fuel transactions and is not responsible for monitoring or tracking potentially fraudulent transactions.

12. **Renewal of Cards.** Client's individual cards will be valid through the expiration date printed on each Fuel Card. Merchants will issue replacement cards upon expiration of a card, unless the Client instructs Merchants in writing to not issue a renewal of a card.

13. **Amendment.** Notwithstanding the terms of the Agreement, Merchants reserves the right to amend this Addendum at any time by providing prior written notice to the Client. Client will be deemed to have accepted such amendment(s) if the Client keeps or uses the Fuel Card after it receives such notice.

14. **Termination.** This Addendum may be terminated by either party in accordance with the terms of the Agreement. Client shall be responsible for any fuel charges actually incurred whether before or after such termination. Without limiting the generality of the foregoing, Merchants may revoke the Client's rights to use the Fuel Card(s) at any time with or without cause, and without notice, including in the event of the Client's breach of this Addendum or the Agreement, or if Merchants believes that any purchases made with a Fuel Card were not authorized.

If Client is qualified and intends to enroll in WEX's optional Tax Exemption & Reporting Program, initial here: _____

**MERCHANTS AUTOMOTIVE GROUP, LLC**

By: _____
(signature)

Name: _____
(printed name)

Title: _____

Date: _____

**EXCELL COMMUNICATIONS, INC.**

By: _____
(signature)

Name: _____
(printed name)

Title: _____

Date: _____