UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

In re:                                                        Chapter 11

EXCELL COMMUNICATIONS, INC., *et al.*,[1]                      Case No. 25-71444 (LAS)

                        Debtors.                          (Jointly Administered)

---------------------------------------------------------------x

## AMENDED DISCLOSURE STATEMENT FOR SECOND AMENDED JOINT PLAN OF REORGANIZATION OF EXCELL COMMUNICATIONS, INC., TELECABLE, INC. AND F-FLEET SERVICES CORP. UNDER CHAPTER 11 OF THE BANKRUPTCY <u>CODE</u>

---

**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE SECOND AMENDED PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE COURT.**

---

Forchelli Deegan Terrana LLP
Michael S. Amato
333 Earle Ovington Blvd, Suite 1010
Uniondale, New York 1553
(516) 248-1700
[mamato@forchellilaw.com](mailto:mamato@forchellilaw.com)

*Attorneys for Debtors and Debtors-in-Possession*

May 27, 2026

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: E-Fleet Services Corp. (3213), Excell Communications, Inc. (3973), and Telecable, Inc. (7957). The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is 255 Executive Drive, Suite 409, Plainview, New York 11803.

## DISCLAIMER

NO REPRESENTATIONS CONCERNING OR RELATING TO THE DEBTORS, THE CHAPTER 11 CASE, OR THE PLAN ARE AUTHORIZED BY THE BANKRUPTCY COURT OR THE BANKRUPTCY CODE, OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.  ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE VOTING HOLDERS' ACCEPTANCE OR REJECTION OF THE PLAN THAT ARE OTHER THAN AS CONTAINED IN, OR INCLUDED WITH, THIS DISCLOSURE STATEMENT, SHOULD NOT BE RELIED UPON BY VOTING HOLDERS IN ARRIVING AT THEIR DECISION.  VOTING HOLDERS SHOULD PROMPTLY REPORT UNAUTHORIZED REPRESENTATIONS OR INDUCEMENTS TO COUNSEL TO THE DEBTORS AND THE OFFICE OF THE UNITED STATES TRUSTEE FOR THE EASTERN DISTRICT OF NEW YORK.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF EXHIBITS ..................................................................................................................... ii

I.    INTRODUCTION ....................................................................................................................1

        A.  Definitions and Exhibits .................................................................................................1

        B.  Notice to Creditors.........................................................................................................1

II.    EXPLANATION OF CHAPTER 11 ......................................................................................2

III.    THE DEBTORS PRIOR TO THE CHAPTER 11 CASE ......................................................3

IV.    THE DEBTORS' CHAPTER 11 CASE.................................................................................5

V.    SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF
       CLAIMS AND INTERESTS .................................................................................................12

VI.    MEANS FOR IMPLEMENTATION OF THE PLAN...........................................................17

VII.    EFFECT OF PLAN ON CLAIMS, INTERESTS, AND CAUSES OF ACTION ............25

VIII.    EXECUTORY CONTRACTS AND LEASES .................................................................28

IX.    CONDITIONS TO CONFIRMATION AND OCCURRENCE
       OF EFFECTIVE DATE..........................................................................................................30

X.    CONFIRMABILITY AND SEVERABILITY OF THE PLAN......................................32

XI.    ADMINISTRATIVE PROVISIONS..............................................................................32

XII.    ALTERNATIVES TO THE PLAN ..............................................................................36

XIII.    CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ..................38

XIV.    VOTING PROCEDURES AND REQUIREMENTS........................................................39

XV.    CONFIRMATION OF THE PLAN................................................................................40

XVI.    CONCLUSION...............................................................................................................44

## TABLE OF EXHIBITS

**EXHIBIT A**        Plan of Reorganization

**EXHIBIT B**        Liquidation Analysis

**EXHIBIT C**        Financial Projections

## I.        INTRODUCTION

Excell Communications, Inc. ("**Excell**"), Telecable, Inc. ("**Telecable**") and E-Fleet Services Corp. ("**E-Fleet**"), debtors and debtors-in-possession (the "**Debtors**") submit this Amended Disclosure Statement (the "**Statement**") pursuant to section 1125 of title 11, United States Code (the "**Bankruptcy Code**").  The Statement is provided to all of the Debtors' known creditors in order to disclose the information deemed to be material, important and necessary for the Debtors' creditors to arrive at a reasonably informed decision in exercising their rights to vote on the Second Amended Joint Plan of Reorganization proposed by the Debtors (the "**Plan**").[2] A copy of the Plan is annexed hereto as Exhibit A.  Also accompanying the Plan and Statement is a creditor's voting ballot (the "**Ballot**") for the acceptance or rejection of the Plan, together with a copy of the Order approving the Statement and Scheduling a Hearing on Confirmation of the Plan.

### A.  Definitions and Exhibits

Definitions. The definitions and designations of terms and names in the Plan apply to the Statement and you should refer to the Plan for such definitions and designations.

Exhibits.  All Exhibits to the Statement are incorporated as if fully set forth herein and are a part of the Statement.

### B.  Notice to Creditors

The Debtors believe that confirmation and implementation of the Plan is in the best interest of the Debtors' estates and their creditors.  Based on the liquidation analysis annexed hereto as Exhibit B (the "**Liquidation Analysis**"), the Debtors believe that the distributions provided for in the Plan exceed the distributions that unsecured creditors would receive if the Debtors' assets were liquidated.  For this reason, the Debtors believe that approval of the Plan is the best opportunity for Creditors to receive Distributions with respect to Allowed Claims.

Pursuant to Bankruptcy Code §1125, on _____, 2026, the Bankruptcy Court approved this Statement for submission to the holders of Claims against, or Interests in, the Debtors. On _____, 2026 at ____ a.m. a hearing will be held to consider confirmation of the Plan before the Honorable Louis A. Scarcella, United States Bankruptcy Judge, United States Bankruptcy Court for the Eastern District of New York, 100 Federal Plaza, Central Islip, New York 11722 (the "**Bankruptcy Court**").

The Bankruptcy Court has directed that objections, if any, to confirmation of the Plan be served and filed on or before 4:00 p.m. on _____, 2026.  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for the filing of a notice of the adjourned date on the Bankruptcy Court's docket, or the announcement of the adjourned date at the Confirmation Hearing (or at any subsequent adjourned date for the Confirmation Hearing).  Creditors entitled to vote may vote on the Plan by filling out and mailing the accompanying Ballot to Forchelli Deegan Terrana LLP, 333 Earle Ovington Blvd., Uniondale,

---

[2] Capitalized terms not otherwise defined in this Statement shall have the meanings set forth in the Plan.

1

New York 11553 (Attn: Michael S. Amato), so the Ballot is received on or before _____, 2026 at 4:00 p.m.

Under the Bankruptcy Code, acceptance of a plan by a class of claims occurs when holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the allowed claims of that class that cast ballots for acceptance or rejection of the plan, vote to accept the plan. Thus, acceptance of the Plan by a particular class will occur only if at least two-thirds in dollar amount and a majority in number of the holders of the claims in that class, that cast their Ballots, vote to accept the Plan. A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that such acceptance or rejection was not solicited or produced in good faith or in accordance with the provisions of the Bankruptcy Code.

Bankruptcy Code §1129(b) permits confirmation of the Plan, notwithstanding rejection by one or more Classes of Claims, if: (i) at least one impaired Class has accepted the Plan; and (ii) the Bankruptcy Court finds that the Plan does not "discriminate unfairly," and is "fair and equitable" with respect to the rejecting Class. This procedure is generally referred to as "cram-down."

The purpose of this Statement is to inform all Claim holders of the information deemed to be material, important and necessary to make an informed judgment about the Plan, and to vote for the acceptance or rejection of the Plan, where voting is necessary.

The approval by the Bankruptcy Court of this Statement does not constitute a recommendation by the Bankruptcy Court as to the merits of the Plan, only that the Statement contains "adequate information" from which creditors may form an opinion as to the merits of the Plan.

The financial information contained in this Statement has not been subject to a certified audit. Accordingly, the Debtors are unable to warrant or represent that the information is accurate and complete in all respects, although the Debtors have used their best efforts to set forth information and disclosures which are complete and accurate. This Statement has been prepared based on assumptions which the Debtors believe to be reasonable, however, there can be no assurance that these assumptions will prove to have been accurate.

## II.    EXPLANATION OF CHAPTER 11

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Pursuant to chapter 11 of the Bankruptcy Code, a debtor may remain in possession of its assets and business and attempt to reorganize or liquidate its business for the benefit of such debtor, its creditors and other parties in interest.

The commencement of a chapter 11 case creates an estate comprised of all the legal and equitable interests of a debtor in property as of the date that the bankruptcy petition is filed. Bankruptcy Code §§ 1107 and 1108 provide that a debtor may continue to operate its business and remain in possession of its property as a "debtor in possession," unless the bankruptcy court orders the appointment of a trustee. The filing of a bankruptcy petition also triggers the automatic stay

2

provisions of Bankruptcy Code § 362 which provide, among other things, for an automatic stay of all attempts to collect prepetition claims from a debtor or otherwise interfere with its property or business.

The Bankruptcy Code provides that, upon commencement of a chapter 11 bankruptcy case, the Office of the United States Trustee may appoint a committee of unsecured creditors and may, it its discretion, appoint additional committees of creditors or of equity holders if necessary to assure adequate representation.

Upon the commencement of a chapter 11 bankruptcy case, all creditors and equity interest holders have standing to be heard on any issue in the chapter 11 proceedings pursuant to Bankruptcy Code § 1109.

The formulation and confirmation of a plan is the principal objective of a chapter 11 case. The plan sets forth the means of satisfying claims against, and equity interests in, the debtor.  A bankruptcy court's confirmation of a plan binds the debtor, any entity acquiring property under the plan, any holder of a claim or an equity interest in the debtor and all other entities as may be ordered by the bankruptcy court in accordance with the applicable provisions of the Bankruptcy Code to the terms and conditions of the plan, whether or not such entity voted on the plan or affirmatively voted to reject the plan.

## III.    THE DEBTORS PRIOR TO THE CHAPTER 11 CASE

**Nature of Debtors' Business and Circumstances Leading to the Filing of these Chapter 11 Cases**

**Excell**

Excell is a corporation organized and existing under the laws of Alabama. Founded in 2008, Excell originally was a small regional telecommunications contractor with offices in Birmingham, Alabama.

Excell was purchased by *Dunas de Contrastes* (Portuguese corporation based in Braga, Portugal) in 2018. In 2019, Excell began providing services to Altice, USA. In 2020, primarily due to its growing relationship and business with Altice, Excell relocated its main business operations to Plainview, New York. Excell on the one hand, and Altice USA, LLC and CSC Holdings, LLC (collectively, "**Altice**") entered into that certain Master Services Agreement effective as of August 28, 2022 (the "**2022 MSA**") and related Statements of Work ("**SOW's**") and related documents and agreements, as supplemented and amended from time to time (the "**Altice Agreements**") pursuant to which Excell provided goods and services to Altice and certain of its subsidiaries.

Excell's business providing fiber optic connection and construction services to Altice grew to approximately $250–300 million per year in 2022. Almost 100% of all Excell's work was for Altice. By 2022, Excell was one of the four largest fiber optic deployment companies in the United

3

States, and had personnel, fleet contractors, and real estate (offices, lots, warehouses) to support those operations, with over five hundred (500) employees, operating in more than thirty (30) states.

In 2022, *Dunas de Contrastes* sold its interest in Excell to its current owner, Global Growth Tech Fund, *Fundo de Capital de Risco Fechado* or its designee ("GGTF"), a private equity fund based in Lisbon, Portugal.

In or about July 2023 there was a breakdown in the relationship between Altice and Excell, unrelated to Excell's performance. Altice unilaterally terminated all contracts and existing projects with Excell.[3]

Excell's business has two major components — design and construction. Design requires: (i) completing a survey or surveys, (ii) project design and (iii) obtaining necessary permits and licenses to complete the potential project. The construction phase is the actual installation of fiber optic cable and related equipment, which can be installed either aerial or underground.

Surveys are obtained from third party subcontractors. Permits are set up and submitted by a third party and obtained by Excell. Each project may require multiple permits at various levels, including state, county and local municipalities or utilities. The project design phase is performed by a mix of third-party contractors and existing Excell employees.

Historically, construction was completed using Excell employees and/or subcontractors. Since the Petition Date, and going forward, Excell will complete projects using subcontractors, with Excell providing project management services.

At the commencement of the cases, Excell had two major customers — Connect Holding II LLC d/b/a Brightspeed ("**Brightspeed**") and Hotwire Communications, Ltd. ("**Hotwire**").[4] Pursuant to that certain Master Services Agreement dated as of July 31, 2023 (as amended and supplemented from time to time) between Excell and Brightspeed, Excell provides goods and services to Brightspeed related to the installation and maintenance of Fiber optic cables and networks.

**Telecable**

In or about 2022, Excell acquired Telecable. Historically, Telecable was a cable and line construction service.  On the Petition Date, Telecable was a Tier 1 partner of Comcast Cable Communications Management, LLC ("**Comcast**"). Excell acquired Telecable based upon its relationship as a Tier 1 partner of Comcast.

Telecable provided "business as usual" or "BAU" services to Comcast, essentially performing maintenance work for existing networks in specific zones. This current work is not profitable, which has resulted in Excell providing additional funding to Telecable to sustain its operations.

---

[3] In July 2023, the Portuguese government announced an investigation into alleged fraud involving Altice and various contractors/individuals. Soon afterward, Altice terminated its relationship with Excell.

[4] The Debtors and Brightspeed terminated the relationship during the pendency of the bankruptcy cases.

However, this work is essential to develop Telecable and develop the opportunity to expand its role for Comcast to include more profitable design and construction projects. Presently, Telecable is working on several construction projects for Comcast in the Edison, New Jersey region.

**E-Fleet**

E-Fleet was formed essentially as a special purpose entity. It leased vehicles and equipment pursuant to that certain Master Lease dated March 17, 2023, and related documents (the **"Altec Lease"**), by and between E-Fleet and ALTEC Capital Services, LLC ("**Altec**"). The Altec Lease is guaranteed by Excell.

**Circumstances Leading to Filing**

The breakdown with Altice required Excell to downsize dramatically. Excell was slow to take the necessary measures to adapt to its new, much smaller business. Initially, Excell expected that it could replace the work that it previously performed for Altice, maintain the company, and provide the same level of service. Once Excell realized that it could not fully replace the Altice work, it already had sustained substantial losses.

The Debtors engaged in substantial efforts to right size their business operations. It has returned vehicles and equipment that was leased pursuant to various agreements, surrendered multiple leased premises and relocated to smaller, less expensive and appropriate spaces, and reduced its headcount. However, the business was not sustainable over the long term under its debt obligations, cost structure and sales volume. Given these considerations, the Debtors concluded, in the exercise of their business judgment, that the only viable path to maximize the value of the business was to file for protection under the Bankruptcy Code.

## IV.    THE DEBTORS' CHAPTER 11 CASE

**The Filing and Bankruptcy Case Generally**

The Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on April 14, 2025 (the "**Petition Date**")

The Debtors' management team consists of its "Chief Financial Officer" Harry Zapiti, and "Chief Executive Officer" Carlos Lourenco.

The Court held "First Day" hearings on April 17, 2025.  The Court entered Orders directing joint administration (ECF Doc. No. 21), establishing certain notice, case management and administrative procedures (ECF Doc. No. 24), and  Interim Orders authorizing the Debtors to pay certain pre-petition wages, compensation and benefits and to continue certain plans and programs (ECF Doc. No. 23) and authorizing the Debtors to continue their cash management system, use their existing bank accounts, and business forms and books and records (ECF Doc. No. 25).

On May15, 2025, the Office of the U.S. Trustee held the 341(a) Meeting of Creditors.

5

On May 16, 2025, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors consisting to NY Cabletek LLC, SmartDev, S.A. and Work Zone Contractors (ECF Doc. No. 82).

On May 28, 2025, the Court entered the Final Order with respect to payment of certain pre-petition wages, compensation and benefits and to continue certain plans and programs (ECF Doc. No. 96).   On June 5, 2025, the Court entered a Final Order authorizing the Debtors to continue their cash management system, using their existing bank accounts and business forms and books and records (ECF Doc. No. 109).

On May 28, 2025, the Court entered the *Final Order (I) Approving Debtors' Proposed Form of Adequate Assurance of Payment to Utility Providers, (II) Establishing Procedures for Determining Adequate Assurance of Payment for Future Utility Services; and (III) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Utility Service* (ECF Doc No. 95).

On August 22, 2025, the Court entered the *Order Extending Debtors' Exclusive Time Periods to File a Plan and Solicit Acceptances Thereto.* The Exclusivity Period was extended for: (i) filing the Plan through and including 10/11/2025; and (ii) obtaining acceptances thereof through and including 12/10/2025 (ECF Doc No. 95). The Court entered three (3) subsequent orders, extending the Debtors Exclusivity Period to obtain acceptances through and including July 16, 2026 (ECF Doc Nos. 234, 259 and 265)

On June 27, 2025, the Court entered an Order establishing August 25, 2025 (the "**Bar Date**") as the deadline for filing proofs of claim against the Debtors' estates (ECF Doc. No 126).

On May 18, 2026, the Debtors filed their *First Omnibus Motion to Object/Reclassify/Reduce/Expunge Claims* ("**Claims Objection**" ECF Doc. No. 283). The Claims Objection presently is returnable June 25, 2026.

**Critical Vendors**

On April 15, 2025, the Court entered the O*rder to Schedule Hearing on Debtors Motion for Entry of Interim and Final Orders Authorizing Debtors to Pay Certain Pre-Petition Claims of Critical Vendors* (ECF Doc. No. 12)

On April 28, 2025, the Court entered the *Interim Order (I) Authorizing Debtors to Pay Certain Pre-Petition Claims of Critical Vendors, and (II) Granting Related Relief.* (ECF Doc. No. 45).  Pursuant to the Interim Critical Vendor Order, the Debtors were authorized, but not directed, in the reasonable exercise of their business judgment, to honor, pay, or otherwise satisfy pre-petition claims held by the Critical Vendors as set forth on the Revised Critical Vendors List annexed to this Interim Critical Vendor Order as Schedule A in accordance with the weekly line-item expense allocated to the payment of Critical Vendors Claims set forth in the budget submitted at the hearing for the period through and including 5/22/2025 (ECF Doc. No. 45).

On June 10, 2025, the Court entered the *Final Order Authorizing Debtors to Pay Certain Pre-Petition Claims of Critical Vendors, and Granting Related Relief.* The Debtors were authorized, but not directed, to honor, pay, or otherwise satisfy in the ordinary course those pre-petition claims held by the Critical Vendors as set forth on the Revised Critical Vendors List annexed to the Order as Schedule A (ECF Doc. No. 110).

**Non-Residential Real Property Leases**

On May 1, 2025, the Court entered *the Order Authorizing Excell Communications, Inc. to Enter into Certain Leases of Non-Residential Real Property and Granting Related Relief.* Pursuant to the Order, the Debtors were authorized to enter into new leases for premises in Kings Park, New York and Henderson, North Carolina utilized for storage (ECF Doc. No. 56).

On May 27, 2025, the Court entered the *Order Authorizing (I) the Rejection of Certain Unexpired Real Property Leases and Executory Contracts as of April 22, 2025, and (II) the Abandonment of Certain Personal Property in Connection Therewith*, pursuant to which, the Debtors rejected certain leases of non-residential real property and certain executory contracts as set forth on Schedules 1 and 2 attached to the Order (ECF Doc. No. 93).

On August 8, 2025, the Court entered the *Order Granting Motion to Extend Time to Assume or Reject Unexpired Leases of Nonresidential Real Property* through and including November 10, 2025 (ECF Doc. No. 166).

On August 8, 2025, the Court entered the *Order Authorizing Excell Communications, Inc. to Enter into Certain Leases of Non-Residential Real Property.* Excell was authorized, to enter into both the Proposed Short Hills, New Jersey Lease and Proposed Birmingham, Alabama Renewal (ECF Doc. No. 175).

On September 29, 2025, the Court entered the *Order Authorizing (I) the Rejection of Certain Unexpired Real Property Leases and Executory Contracts as of 9/11/2025, and (II) the Abandonment of Certain Personal Property in Connection Therewith* (ECF Doc. No. 196).

On November 11, 2025, the Court entered a series of Stipulations and Order Pursuant to §365(d)(4) of the Bankruptcy Code, extending the Debtors' time to assume the real property leases for the premises listed below through and including confirmation of the Debtors' plan unless sooner assumed and assigned or rejected by Order of the Bankruptcy Court (ECF Doc Nos. 219, 220, 221, 222, 223)

      i.    2510 S. Cockrell Ave, Dallas, Texas.
     ii.    320 W. Main Street, Thomasville, North Carolina.
   iii.    117-B Liberty Drive, Thomasville, North Carolina.
   iv.    255 Executive Drive, Suite 409, Plainview, New York.
    v.    404 Mountain Avenue, Rural Retreat, Virginia.

**Retention of Professionals**

On May 27, 2025, the Court entered an *Order authorizing the retention of Ruskin Moscou Faltischek, P.C.* as counsel to the Debtors (ECF Doc. No. 89).

On May 27, 2025, the Court entered an *Order authorizing the retention of Harris Beach Murtha Cullina PLLC* as special counsel for Debtors (ECF Doc. No. 90).

On May 27, 2025, the Court entered an *Order authorizing the retention of Lindenwood Associates, LLC* as financial advisor for Debtors (ECF Doc. No. 91).

On July 11, 2025, the Court entered an *Order authorizing the retention of Porzio, Bromberg & Newman, P.C. as Counsel to the Official Committee of Unsecured Creditors* Effective as of 5/27/2025 (ECF Doc. No. 136).

On July 25, 2025, the Court entered an *Order authorizing the retention of Forchelli Deegan Terrana LLP* to replace Ruskin Moscou Faltischek, P.C. as counsel to the Debtors (ECF Doc. No. 148).

On July 25, 2025, the Court entered the *Order Granting Application to Employ Grassi & Co CPAs P.C. as Accountants for Debtors Effective as of 7/21/2025* (ECF Doc. No. 181).

On September 29, 2025, the Court entered the *Order Granting Application to Employ Baker Donelson Bearman Caldwell & Berkowitz P.C.* as special counsel to the Debtors effective as of the Petition Date (ECF Doc. No. 195).

On October 9, 2025, the Court entered the *Order Granting Application to Employ Dundon Advisers LLC as Financial Advisor to the Official Committee of Unsecured Creditors* effective as of 7/23/2025 (ECF Doc. No. 207).

On October 9, 2025, the Court entered the *Order Granting Application to Employ RRBB Advisors, LLC as Accountants for Debtors* effective as of the Petition Date (ECF Doc. No. 208).

On October 28, 2025, the Court entered the *Order Granting Application to Employ Maltz Auctions Inc., as Broker and Advisor* effective as of 9/1/2025 (ECF Doc. No. 217).

**Hotwire Communications Ltd.**

Prior to the Petition Date, on August 28, 2023, Hotwire entered into a Subcontractor Master Services Agreement (the "**MSA**") with the Debtors and subsequently issued a number of purchase orders under the terms of the MSA.

On August 11, 2025, the Court approved the *Stipulation and Order by and between Excell Communications, Inc and Hotwire Communications, Ltd. for Relief from the Automatic Stay to Terminate Subcontractor Master Services Agreement and Various Purchase Orders Issued*

*Thereunder Pursuant to 11 U.S.C. Section 362(d), Fed. R. Bankr. P. 4001(d), and Related Relief* (ECF Doc. No. 168)

Pursuant to the Stipulation and Order, the MSA was terminated, and Hotwire made a one-time payment to the Debtors in the amount of $100,000.

**Financing Matters**

### Merchants Fleet

On May 1, 2025, the Court entered the *Interim Order Approving Stipulation Authorizing the Debtors to Obtain Post-petition Secured Financing from Merchants Fleet* (ECF Doc. No. 56), to finance fuel and repair charges for Debtors' fleet.  A Final Order was entered on May 27, 2025 (ECF Doc. No. 94).

Merchants Fleet Post-Petition Financing Claim. Merchants Automotive Group, Inc. and Principle Merchants Leasing, Ltd. (collectively, "**Merchants Fleet**") and the Debtors are parties to a post-petition agreement pursuant to which Merchants Fleet provides certain financing to the Debtors (the "**Merchants Financing Agreement**"), which was approved by the Court's *Final Order Approving Stipulation Authorizing The Debtors To Obtain Postpetition Secured Financing From Merchants Fleet* [Docket No. 94] (the "**Merchants Financing Order**"). The Debtors and Merchants Fleet have been performing and intend to continue to perform their respective obligations in connection with the Merchants Financing Agreement as approved by the Merchants Financing Order in the ordinary course of business hereafter including after confirmation of the Plan and the Effective Date of the Plan. Accordingly, notwithstanding anything in the Plan to the contrary, the Merchants Financing Agreement and any claims held by Merchants Fleet in connection with the Merchants Financing Agreement shall not generally be subject to the provisions of the Plan including, for illustrative purposes and without limitation, inter alia, (i) the discharge, release and injunction provisions contained in Article VI of the Plan, (ii) the Bar Date with respect to Administrative Claims contained in Section 2.02 of the Plan, (iii) the claim classification and claim administration procedures contained in Articles III and V of the Plan, (iv) the assumption and rejection provisions relating to executory contracts and leases contained in Article VII of the Plan, and (v) the retention of jurisdiction provisions contained in Article X of the Plan. Rather, it is the intent of the Debtors and Merchants Fleet that the parties respective rights and obligations in connection with the Merchants Financing Agreement shall "ride through" and be unaffected by confirmation of the Plan.

### Peoples Premium Finance

On May 1, 2025, the Court entered the Order granting Debtors' *Motion to Enter into Insurance Premium Finance Agreement* to finance certain insurance premiums (ECF Doc. No. 167).

**Debtor in Possession Financing**

The Debtors entered into that certain Senior Secured Super-priority Debtor in Possession Loan and Security Agreement, dated as of October 24, 2025, with Global Growth Tech Fund, *Fundo de Capital de Risco Fechado* or its designee[5] (as amended, supplemented, or otherwise modified and in effect from time to time, the "**DIP Loan Agreement**" and, together with any and all schedules thereto and other related documents, notes and agreements entered into in connection with or related thereto, including, without limitation, the DIP Order and budgets, the "**DIP Loan Documents**")

On October 24, 2025, the Court entered the *Final Order Pursuant to 11 U.S.C. §§ 105,361,362,363,364 and 507 (I) Approving and Authorizing Senior Secured Post-petition Financing; (II) Granting Liens and Providing Super-priority Administrative Expense Status; and (III) Modifying Automatic Stay,* authorizing the Debtors to borrow up to the aggregate amount of $3,000,000 under the DIP Loan Documents and pursuant to the budget (ECF Doc. No. 216).

**Regions Bank**

The Debtors maintain a commercial card program under that certain Commercial Card Agreement, dated April 17, 2024 (as amended, restated, supplemented or otherwise modified from time to time, together with all related addendums and documents, the "**Card Agreement**"), between Excell and Regions. Pursuant to the Final Order authorizing the Debtors to continue their cash management system, using existing bank accounts and business forms and books and records (ECF Doc. No. 109), Regions is authorized to make advances from time to time to Excell pursuant to the terms of the Card Agreement, subject to the existing credit limit of $125,000.00. The obligations of, and indebtedness owed by Excell to Regions in respect of the Card Agreement are secured by Certificate of Deposit account number xxxxxx6160 (the "**Collateral Account**"), pursuant to the terms of that certain Assignment of Deposit Account, dated as of November 15, 2024, whereby Excell assigned and granted Regions a security interest in the Collateral Account to secure all of Excell's obligations to Regions.

**Monthly Compensation and Professional Fee Applications**

On May 27, 2025, the Court entered the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* (ECF Doc. No. 92).

On September 26, 2025, the Court entered the *Order Granting First Interim and Final Application of Ruskin Moscou Faltischek, P.C., Former Counsel to the Debtors and Debtors-in_Possession, for Allowance of Compensation and Reimbursement of Expenses for Interim and Final Period April 14, 2025, through and Including July 25, 2025. For Ruskin Moscou Faltischek, P.C., fees awarded: $166953.00, expenses awarded: $6896.40* (ECF Doc. No. 194).

On December 15, 2025, the Court entered the *Order Granting First Interim Applications for Allowance of Compensation and Reimbursement of Expenses of Retained Professionals of the Debtors and the Official Committee of Unsecured Creditors for Interim Period 4/14/2025 through*

---

[5] Global Growth Tech Fund, *Fundo de Capital de Risco Fechado* is the shareholder of the Debtors.

10

*and including 10/31/2025. Baker Donelson Bearman Caldwell & Berkowitz P.C., fees awarded: $27,958.50, expenses awarded: $0.00; Dundon Advisers LLC, fees awarded: $49560.00, expenses awarded: $94.00; Forchelli Deegan Terrana LLP, fees awarded: $212299.00, expenses awarded: $4827.53; Grassi & Co CPAs P.C., fees awarded: $30246.00, expenses awarded: $0.00; Harris Beach Murtha Cullina PLLC, fees awarded: $167987.50, expenses awarded: $14907.66; Lindenwood Associates, LLC, fees awarded: $235540.50, expenses awarded: $314.36; Porzio, Bromberg & Newman, P.C., fees awarded: $176810.75, expenses awarded: $2049.08; RRBB Advisors, LLC, fees awarded: $80568.00, expenses awarded: $0.00* (ECF Doc. No. 248)

### The Debtors' Staffing and Operational Issues

As of the Petition Date, the Debtors had 42 employees.  During the pendency of the Chapter 11 proceeding, the Debtors reduced their combined headcount to 29, including:

### Chief Executive Officer
Provides overall strategic leadership and direction for the telecommunications organization, overseeing operations, financial performance, network expansion, regulatory compliance, and innovation. Responsible for driving sustainable growth, aligning executive leadership with company objectives, fostering key partnerships, and ensuring the delivery of reliable, high-quality telecommunications services while maximizing shareholder and stakeholder value.

### Chief Financial Officer
Oversee all financial operations including budgeting, forecasting, and strategic planning to support the growth and profitability of the telecom business.

### Chief Commercial Officer
Responsible for leading sales, marketing, and revenue strategy to drive growth, customer acquisition, and profitability for the telecommunications company.

### Construction Manager
Oversees field construction activities including underground fiber installation, ensuring projects are completed safely, on time, and within budget. Coordinates crews, subcontractors, and equipment on-site.

### Real Estate Manager
Manages leasing, permitting, and acquisition of land or easements required for telecom infrastructure, including fiber hubs, right-of-way access, and utility coordination.

### Account Receivables
Handles billing and incoming payments, ensuring accurate tracking of customer accounts and timely collection of receivables related to telecom service contracts and construction projects.

### Project Coordinator
Supports project managers with scheduling, documentation, and communication across teams. Tracks fiber builds and underground construction timelines to keep deliverables on course.

### Director of Design
Leads the design and planning of fiber optic networks, including routing, structural layouts, and integration with underground infrastructure, ensuring compliance with engineering and permitting standards.

**Chief Procurement Compliance Officer**

Ensures all purchasing activities align with legal and industry standards, especially for materials and services tied to underground and fiber optic construction. Oversees vendor compliance and audit readiness.

**Director of Human Resources**

Oversees company-wide HR functions including recruitment, benefits, compliance, and employee relations—focused on supporting a growing, field-heavy telecom workforce.

**Procurement Coordinator**

Manages purchase orders and sourcing for telecom construction materials (fiber, conduit, hardware), working closely with vendors and the field to maintain supply chain flow.

**Project Manager**

Leads end-to-end fiber optic and underground construction projects, managing budgets, schedules, crews, and client communication to ensure successful delivery.

**Construction Supervisor**

Directs daily job site operations, supervises field crews during trenching, boring, and fiber laying, and ensures safety and quality standards are met.

**Human Resources Manager**

Supports day-to-day HR operations including onboarding, payroll coordination, and employee support—often liaising with field staff and foremen.

**Warehouse Team Leader**

Manages the telecom materials warehouse, oversees inventory of fiber, conduit, and tools, and ensures timely distribution to field crews for ongoing builds.

**Fleet Coordinator**

Oversees company vehicles and equipment, scheduling maintenance and managing the utilization of trenchers, boring machines, and transport vehicles used in underground work.

**Logistics Director**

Responsible for the management of all warehouses, including the movement of materials, crews, and equipment to job sites, ensuring timely deliveries to support fiber construction schedules and minimize downtime.

**Controller**

Manages cash flow, banking relationships, and liquidity planning to ensure financial readiness for ongoing telecom infrastructure projects.

## V.    SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND INTERESTS

Below is a summary of the Plan.  Parties in interest are urged to review the Plan in its entirety to determine how the Plan affects their rights as Creditors or Interest holders.

The Plan provides for the restructuring of the Debtors' balance sheet by the elimination of a significant amount of unsecured debt, paying priority and secured claims of taxing authorities over the life of the Plan and reducing the Debtors' expenses. The Plan provides for a lump sum

12

payment to fund distributions to Allowed Claims of General Unsecured Creditors in the amount of $1,300,000. The Distributions will be funded by the New Value Contribution, as well as by available Cash from the Debtors' business operations and proceeds from any other Assets available to fund the Plan.

GGTF will make the New Value Contribution as follows:  on the Effective Date, GGTF will contribute an amount up to an aggregate of $1,300,000.00 to fund Distributions to holders of Allowed Claims in Class 3, and consent to the conversion of the DIP Loans to the DIP Term Out Facility as agreed to by GGTF as of the Effective Date in order to fund the Distributions to Allowed Claims in Class.

The Debtors, the Plan Proponent and the Creditors Committee engaged in substantial negotiations over the value and timing of the New Value Contribution.  The Debtors assets include receivables, limited vehicles and related equipment, and inventory, primarily composed of fiber optic cable and related equipment. (the "**Fiber Assets**").

Beginning in October 2024, the Debtors engaged approximately nine (9) brokers from around the globe to market the Assets, in the United States, South America, the Middle East, Europe, Africa and the Caribbean.  Notwithstanding these efforts, to date, the Debtors have not received a single proposal to purchase some or all of the Fiber Assets.

In addition to the Debtors' efforts, the Creditors Committee, through its retained professionals, Dundon Advisors, actively marketed the Fiber Assets. Dundon contacted twenty (20) potential purchasers (both directly and indirectly), including nineteen (19) potential purchasers of the Fiber Assets and one (1) potential financial partner.   Thirteen (13) contacts were outside of the United States, including parties from Africa, Mexico, Canada, Columbia, Spain, Brazil, Chile and the United Kingdom.

As set forth more fully below in Section XII, neither the Debtors, nor the Creditor Committee's advisors were able to locate a buyer or buyers of the Fiber Assets.

Based upon these efforts and recognizing the limited value of the Debtors' assets, the Debtors, Plan Proponent and Creditors Committee engaged in substantial negotiations, and agreed upon the value and timing of the New Value Contribution.

The Debtors have determined to treat the Creditors of each of the respective Debtors under a single plan.  Excell remains the main operating debtor.  As set forth above, E-Fleet was formed essentially as a special purpose entity. It leased vehicles and equipment pursuant to the Altec Lease. E-Fleet's obligations under the Altec Lease were guaranteed by Excell, and E-Fleet has little or no assets.

Historically, Telecable was a cable and line construction service.  On the Petition Date, Telecable was a Tier 1 partner of Comcast. Telecable provided "business as usual" or "BAU" services, essentially performing maintenance work for existing networks in specific zones. This work was not profitable, which resulted in Excell providing additional funding to Telecable to sustain its operations.  Presently, Telecable does not provide any goods or services to Comcast, and has limited, if any, assets or income.

As such, the Debtors determined that it is in the best interests of the Debtors, the estates, and each of the Creditors, and that it is fair and equitable, to address the Creditors of each of the Debtors under a single plan.

The Debtors believe that the treatment of General Unsecured Creditors under the Plan provides creditors with substantially greater value compared to what they would receive in liquidation under chapter 7 of the Bankruptcy Code.

The respective Claims Registers reflect seventy-eight (78) filed claims, in the total amount of approximately $57.3 Million. Of those claims, there are approximately $1.7 Million Priority Claims, $3.1 Million Secured Claims and $35.9 General Unsecured Claims.

The remaining approximately $16.6 Million in filed Claims consists of approximately $13 Million in contingent insurance and litigation claims subject to payment solely by available insurance coverage, approximately $4.9 Million in critical vendor claims, which were paid in full during the pendency of the Bankruptcy Cases pursuant to the Interim and Final Critical Vendor Orders, and approximately $2.1 Million in General Unsecured Claims for which the Debtors dispute liability, all of which are or will be subject to the Claims Objection.

The Debtors filed the Claims Objection and may file additional objections prior to the Effective Date of the Plan. Also, the Claims Administrator reserved the right to object to additional Claims.  The Debtors estimate that the total value of allowed General Unsecured Claims will be approximately $16.6-19 Million, and that the estimated pro rata distribution to Class 3 General Unsecured Creditors will be approximately 7-8%.

**Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Bankruptcy Code.  They are not considered impaired and holders of such claims do not vote on the Plan.  Holders of these claims may, however, object if, in their view, their treatment under the Plan does not comply with the requirements under the Bankruptcy Code.  As such, the Debtors have *not* placed the following claims in any class:

**Administrative Claims.** Subject to the Bar Date and other provisions herein and except to the extent the Debtors, or the Reorganized Debtor, as applicable, and the holder of an Allowed Administrative Claim agree to different and less favorable treatment, the Reorganized Debtor shall pay, in full satisfaction and release of such Claim, to each holder of an Allowed Administrative Claim, Cash, in an amount equal to such Allowed Administrative Claim, on the later of (i) the Effective Date, and (ii) the first Business Day after the date that is 60 calendar days after the date on which such Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practicable. Allowed Administrative Claims shall be paid from available Cash. For the avoidance of doubt, Professional Fee Claims shall be Allowed Administrative Claims. The Reorganized Debtor shall pay all US Trustee Fees, in accordance with the terms of the Plan, until such time as the Bankruptcy Court enters a final decree closing the Chapter 11 Case.

**Priority Tax Claims.**  Priority Tax Claims include the claims asserted as follows:

14

| | | |
|---|---|---|
| I. | Internal Revenue Service | $28,128.43[6] |
| II. | New York State Dept. of Taxation and Finance | $144,805.86 |
| III. | New Jersey – Division of Taxation | $1,476,396.99 |

Once any Priority Tax Claim is determined to be an Allowed Priority Tax Claim, then except to the extent the Recognized Debtors and the holder of an Allowed Priority Tax Claim agree to a different and less favorable treatment, holders of Allowed Priority Tax Claims shall receive Distributions over the life of the Plan or maximum time allowed in accordance with Bankruptcy Code §1129(a) of the Bankruptcy Code, plus interest from and after the Petition Date at the applicable federal or state rate, until paid in full.  Notwithstanding anything to the contrary, the interest rate applicable to New York State's priority tax claim will be nine (9%) percent.

**DIP Loan.** In connection with the New Value Contribution, the DIP Lender has agreed as of the Effective Date that its Claims in respect of the DIP Loan shall receive treatment different from that specified in Section 1129(a)(9)(A) and the DIP Loan Agreement and DIP Order such that the DIP Loans shall not be repaid in full in Cash on the Effective Date. On the Effective Date, the outstanding DIP Loans shall automatically be converted into a term loan facility between the Reorganized Debtor and the DIP Lender maturing on the date that is three (3) years after the Effective Date (the "**DIP Term Out Facility**"). Except as modified as set forth herein, the DIP Term Out Facility shall be on the same terms and conditions as set forth in the DIP Loan Agreement, including with respect to interest rates, collateral and Lien priority. On or promptly following the Effective Date, the Reorganized Debtor and DIP Lender shall enter into such amendments, amendments and restatements, or other documentation as reasonably necessary to evidence the DIP Term Out Facility consistent with this Plan, provided that the effectiveness of the DIP Term Out Facility shall not be conditioned upon execution or further approval of such documentation.

### Classes of Claims and Equity Interests

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

### Class 1: Other Priority Claims

Certain priority claims that are referred to in Bankruptcy Code §507 not referenced above are required to be placed in classes. The Bankruptcy Code § 1129(a)(9)(B) and (C) requires that each holder of such priority claims receive Cash on the Effective Date of the Plan equal to the allowed amount of such claim, or if the applicable class has accepted the Plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; however, a class of holders of such claims may agree to accept different treatment.

Except to the extent holders of Allowed Other Priority Claims agree to less favorable treatment, in full and final satisfaction of such Claims, each holder of an Allowed Other Priority Claim shall receive Distributions in an amount equal to the amount of such Allowed Other Priority

---

[6] In addition to the Priority Tax Claim, the IRS asserts a secured tax claim in the amount of $3,146,881.89.

Claim over a five (5) year period in accordance with Bankruptcy Code § 1129(a), plus interest from and after the Petition Date at the applicable federal rate, until paid in full.

The Debtors do not believe that there are any Other Priority Claims, other than the claim of Carol Birmingham, which the Debtors object to in the Claims Objection.

**Classes of Secured Claims**

Allowed Secured Claims are claims secured by property of the Debtors' bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under Bankruptcy Code §506. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be treated as a General Unsecured Claim.

**Class 2(a): Secured Tax Claims**

Except to the extend holders of Allowed Class 2(A) claims agree to less favorable treatment, in full and final settlement of their Claims, each holder of Allowed Class 2(a) Claims shall receive Distributions in an amount equal to the amount of such Allowed Class 2(a) Claims over the life of the Plan or maximum time allowed in accordance with section 1129(a) of the Bankruptcy Code, plus interest from and after the Petition Date at the applicable federal rate, until paid in full.

The sole creditor in Class 2(a) is the Internal Revenue Service, with a Secured Claim in the amount of $3,146,881.89.

**Class 2(b): Other Secured Claims**

Asserted Class 2(b) secured claims include:

| Creditor | Secured Claim Asserted | Collateral | Secured Claim | Objection Pending |
|---|---|---|---|---|
| Altec | $3,807,831.10 | None | $0.00 | Yes |
| JRP Realty LLC | $291,016.31 | Security Deposit | TBD | Yes |
| Lincoln Financial | $38,133.70 | None | $0.00 | Yes |
| First Insurance Funding | $203,378.75 | None | $0.00 | Yes |
| Gordon L. Seamon | $280,434.07 | None | $0.00 | Yes |
| Regions Bank | $31,477.35 as of May 21, 2026 | Card Collateral Account (defined in | $31,477.35 as of May 21, 2026. | Objection is resolved subject to |

16

| | | Article VIII *infra.*) | | Confirmation of the Plan. |
|---|---|---|---|---|
| H&R Realty Group LLC | $21,054.10 | Security Deposit | TBD | Yes |

Subject to the Claims Objection, and except to the extent holders of Allowed Claims in Class 2(b) agree to less favorable treatment, in full and final satisfaction of such Claims, the holders of Allowed Claims in Class 2(b), Other Secured Claims, shall either (i) receive delivery of collateral securing such Claims or the net proceeds, if any, of the sale or other distribution of the Assets on which such holders have a Lien; or (ii) be paid their Allowed Claims over the life of the Plan.

**Classes of General Unsecured Claims**

General unsecured claims are not secured by property of the estate and are not entitled to priority under Bankruptcy Code §507(a).

**Class 3: General Unsecured Claims**

General Unsecured Claims consist of the Allowed Claims of non-priority unsecured creditors of each of the Debtors.

The holders of Allowed Class 3 General Unsecured Claims will receive their ProRata Share of the General Unsecured Claims Cash Distribution, with the initial Distribution to be made on or as soon as reasonably practicable after the Effective Date.

**Class 4: Equity Interests**

GGTF is the holder of Equity Interests in the Debtors. GGTF will receive no Distributions under the Plan on account of its Equity Interest in the Debtors. GGTF will retain its Equity Interest in the Debtors.

**Claims and Interests Not Impaired Under the Plan**

The term "impaired" as used below shall have the same meaning as it has pursuant to Bankruptcy Code §1124. Holders of Administrative Claims and Priority Tax Claims are not impaired under the Plan. Classes 1, 2(a), 2(b) and 4 are not impaired under the Plan and shall be deemed to accept the Plan.

**Claims and Interests Impaired Under the Plan**

Claims in Class 3 are impaired under the Plan and are entitled to vote to accept or reject the Plan.

## VI.    MEANS FOR IMPLEMENTATION OF THE PLAN

The Reorganized Debtor, with the assistance of the Plan Administrator with respect to General Unsecured Claims, will implement the Plan in a manner consistent with the terms and conditions set forth in the Plan and the Confirmation Order. On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

The Plan will be funded by the New Value Contribution deposited on the Effective Date for the benefit of unsecured creditors, from Cash on hand and revenue generated from business operations, as well as the proceeds from any other Assets available to fund the Plan. On the Effective Date, the lump sum payment in the amount of $1,300,000 from the New Value Contribution shall be deposited into a segregated account designated by and under the control of the Plan Administrator (the "GUC Distribution Account"), separate and apart from the Reorganized Debtor's operating accounts, for the exclusive benefit of holders of Allowed General Unsecured Claims. The Debtors shall be responsible for satisfying all Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Priority Claims in full.

On the Effective Date, or as soon as reasonably practicable thereafter, the Reorganized Debtor may take all actions and execute and deliver any and all documents as may be necessary or appropriate to affect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the transactions contemplated by the New Value Contribution, and the Confirmation Order shall constitute approval thereof by the Court.

**New Board.** The composition of the New Board or managers of the Reorganized Debtor and officers of the Reorganized Debtor shall be disclosed before the Confirmation Hearing in accordance with Bankruptcy Code §1129(a)(5). Except as otherwise provided in the Plan Supplement, the officers of the Reorganized Debtor immediately before the Effective Date, shall serve as the initial officers of the Reorganized Debtor on and after the Effective Date.

**Vesting of Assets in the Debtor.** As of the Effective Date, pursuant to the provisions of Bankruptcy Code §§1141(b) and (c), all Assets shall vest in the Reorganized Debtor free and clear of all Claims, Liens, encumbrances, charges, Equity Interests, and other interests, except as otherwise expressly provided in the Plan or the Confirmation Order, and subject to the terms and conditions of the Plan and the Confirmation Order.

**Substantive Consolidation**. For limited purposes of satisfying the Debtors' obligations under the Plan, the assets and revenue of the Debtors shall be available to and consolidated with the Reorganized Debtor; provided, however, that the Debtors may maintain their separate corporate existence under applicable non-bankruptcy law.

**Continuing Existence.** From and after the Effective Date, the Debtors shall continue in existence as the Reorganized Debtor in accordance with the applicable laws of the jurisdiction in which it is organized or incorporated for all purposes, including, among other things: (a) enforcing and prosecuting claims, interests, rights, and privileges of the Debtors including, without limitation, prosecuting Causes of Action and Preserved Causes of Action (defined below), (b) resolving Disputed Claims, (c) administering the Plan, (d) filing appropriate tax returns and refund

18

requests, and (e) performing all such other acts and conditions required by and consistent with consummation of the Plan.

**Notice of Effective Date.** Not later than five (5) Business Days following the Effective Date, the Debtors shall file a notice of the occurrence of the Effective Date with the Bankruptcy Court.

**Employee Matters and Retiree Benefits.** Unless otherwise set forth in the schedule of rejected executory contracts and unexpired leases included in the Plan Supplement, all material employee compensation and benefit plans, and employment, severance, retirement, indemnification, and other similar employee-related agreements or arrangements in place as of the Effective Date with the Debtors shall be assumed by the Reorganized Debtor and shall remain in place after the Effective Date, as such agreements may be amended by agreement between the beneficiaries of such agreements and the Debtors or, after the Effective Date, the Reorganized Debtor. Nothing in the Plan shall limit, diminish, or otherwise alter the Reorganized Debtor's defenses, Claims, Causes of Action, Preserved Causes of Action or other rights with respect to any such contracts, agreements, policies, programs, and plans. Notwithstanding the foregoing, pursuant to Bankruptcy Code §1129(a)(13), on and after the Effective Date, all retiree benefits (as that term is defined in Bankruptcy Code §1114), if any, shall continue to be paid in accordance with applicable law.

**Corporate Action.** The Plan will be administered by the Plan Administrator and the Reorganized Debtor, as applicable, and all actions taken under the Plan in the name of the Debtors shall be taken through the Plan Administrator and Reorganized Debtor, as applicable.

**Appointment of the Plan Administrator.** The Confirmation Order shall provide for the appointment of a Plan Administrator, if necessary. The Plan Administrator shall be deemed the Estates' representative in accordance with Bankruptcy Code §1123 and except as otherwise set forth herein and in the Plan, shall have all powers, authority, and responsibilities specified in the Plan, including, without limitation, the powers of a trustee under Bankruptcy Code §§ 704 and 1106.

**Powers and Duties of the Plan Administrator.** The Plan Administrator will act in a fiduciary capacity with respect to the reconciliation of General Unsecured Claims, the making of Distributions to holders of Allowed General Unsecured Claims, and the prosecution of Causes of Action and Preserved Causes of Action on behalf of the Estate for the benefit of holders of Allowed General Unsecured Claims, subject to the provisions of the Plan. The powers and duties of the Plan Administrator shall be limited to the following:

(a)     making Distributions of Cash to holders of Allowed General Unsecured Claims and paying obligations incurred by the Plan Administrator in connection therewith in accordance with the Plan;

(b)     engaging professional persons necessary to assist the Plan Administrator with respect to the Plan Administrator's responsibilities;

(c)     executing and delivering all documents and taking all actions necessary to effectuate Distributions to holders of Allowed General Unsecured Claims;

(d)     paying the reasonable and necessary fees and expenses of the professional persons engaged by the Plan Administrator in connection with the reconciliation of General Unsecured Claims and making Distributions;

(e)     objecting to, compromising, and settling General Unsecured Claims; investigating, commencing, prosecuting, compromising, settling, or abandoning Causes of Action and Preserved Causes of Action on behalf of the Estate for the benefit of holders of Allowed General Unsecured Claims, including retaining and compensating counsel in connection therewith;

(f)     such other powers as may be vested in or assumed by the Plan Administrator pursuant to the Plan or other Order of the Bankruptcy Court, solely as needed or appropriate to carry out the Plan Administrator's duties with respect to General Unsecured Claims, Distributions thereon, and Causes of Action and Preserved Causes of Action.

**Retention of Professionals.** The Plan Administrator shall have the right to retain the services of attorneys, accountants, and other Professionals that are necessary to assist the Plan Administrator in the performance of its duties as Plan Administrator or otherwise under this Plan. The Plan Administrator is not obligated to retain the services of the Debtors' Professionals retained during the Chapter 11 Case and, unless otherwise agreed upon by and among the Plan Administrator, the Reorganized Debtor and the Professionals, the Professionals shall seek final allowance and payment of any fees and expenses incurred, on notice and a hearing, consistent with the Plan, the Bankruptcy Code and other applicable orders and guidelines. The reasonable fees and expenses of such professionals and the additional expenses of the Plan Administrator incurred in the performance of its duties as Plan Administrator under this Plan shall be paid by the Reorganized Debtor and shall not be subject to the approval of the Bankruptcy Court.

**Distributions to Holders of Claims and Equity Interests.**

**Estimation of Claims.** The Reorganized Debtor, or the Plan Administrator, with respect to General Unsecured Claims, may, at any time, request that the Bankruptcy Court (or the District Court, if applicable) estimate any Claim not expressly Allowed by the terms of the Plan and otherwise subject to estimation under Bankruptcy Code §502(c) and for which the Debtors may be liable under the Plan, including any Claim for taxes, to the extent permitted by Bankruptcy Code §502(c), regardless of whether any party in interest previously objected to such Claim, and the Bankruptcy Court (or the District Court, if applicable) will retain jurisdiction to estimate any Claim pursuant to Bankruptcy Code §502(c) at any time prior to the time that such Claim becomes an Allowed Claim. If the Bankruptcy Court (or the District Court, if applicable) estimates any contingent or unliquidated Claim, the estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court (or the District Court, if applicable). The foregoing objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated by the Bankruptcy Court (or the District Court, if applicable) and subsequently compromised,

20

settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court (or the District Court, if applicable).

**No Recourse.** Notwithstanding that the allowed amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount for which after application of the payment priorities established by the Plan there is insufficient Cash to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claim holder shall have recourse against the Debtors, the Estate, the Plan Administrator, or any of their respective professionals, consultants, officers, directors, or members or their successors or assigns, or any of their respective property. Except as specifically stated otherwise in the Plan, nothing in the Plan shall modify any right of a holder of a Claim under Bankruptcy Code §502(j).

THE ESTIMATION OF CLAIMS AND ESTABLISHMENT OF RESERVES UNDER THIS PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS IF THE ESTIMATION IS MADE SOLELY FOR THE PURPOSE OF ESTIMATING A MAXIMUM LIABILITY FOR RESERVE PURPOSES, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.

**Automatic Disallowance and Expungement of Certain Claims.** On the Effective Date, all Claims filed after the applicable Bar Date that were required to be filed on or in advance of such Bar Date under its terms, shall be expunged and disallowed without any further notice to or action, order, or approval of the Bankruptcy Court.

**Distributions to Holders of Allowed Claims.**

(a)    On the Effective Date, the Debtors shall deposit the General Unsecured Claims Cash Distribution into the GUC Distribution Account in accordance with [Section 5.02] of the Plan. The Plan Administrator shall make Distributions to holders of Allowed General Unsecured Claims from the GUC Distribution Account and, as applicable, from net proceeds of Causes of Action and Preserved Causes of Action deposited therein, in accordance with the Plan. The Plan Administrator shall reserve amounts in the GUC Disputed Claims Reserve in accordance with Section 5.16 of the Plan.

(b)    On the Effective Date and thereafter as Claims become Allowed, the Reorganized Debtor shall fund Distributions from available Cash to holders of all other Allowed Claims in accordance with Article II and Section 3.03 of the Plan. To the extent Disputed Claims (other than Disputed General Unsecured Claims) exist as of the Effective Date, the Reorganized Debtor shall reserve amounts in the Reorganized Debtor Disputed Claims Reserve in accordance with [Section 5.16] of the Plan.

(c)    Any holder of a Disputed Claim that ultimately becomes an Allowed Claim shall receive no more from the applicable Disputed Claims Reserve Account than the amount reserved with respect to such Claim under [Section 5.16] of the Plan. No holder of a Disputed Claim shall have recourse to the Debtors, the Reorganized Debtor, the Plan Administrator, or any property transferred pursuant to the Plan, other than such holder's entitlement to the applicable Disputed

Claims Reserve Account and, with respect to holders of General Unsecured Claims, the General Unsecured Claims Cash Distribution and the GUC Disputed Claims Reserve.

**Objections to Claims.** Notwithstanding any other provision of the Bankruptcy Code and unless otherwise ordered by the Bankruptcy Court, on and after the Effective Date, the Plan Administrator shall have the exclusive right to make, file, and prosecute objections to and settle, compromise, or otherwise resolve Disputed General Unsecured Claims, and the Reorganized Debtor shall have the exclusive right to make, file, and prosecute objections to and settle, compromise, or otherwise resolve all other Disputed Claims, except that as to applications for allowances of Professional Fee Claims, objections may be made in accordance with the applicable Bankruptcy Rules by parties in interest. Subject to further extension by the Bankruptcy Court, the Plan Administrator or the Reorganized Debtor, as applicable, shall file and serve a copy of any such objection upon the holder of the Claim to which an objection is made on or before the latest to occur of: (i) 90 days after the Effective Date, (ii) 45 days after a request for payment or proof of claim is timely filed and properly served upon the Plan Administrator or the Reorganized Debtor, as applicable, and (iii) such other date as may be fixed by the Bankruptcy Court either before or after the expiration of such time periods. Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the claimant if the Plan Administrator or the Reorganized Debtor, as applicable, effects service in any of the following manners: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) by first-class mail, postage prepaid, on the signatory of the proof of Claim or other representative identified in the proof of claim or any attachment thereto at the address of the creditor set forth therein; or (c) by first-class mail, postage prepaid, on any counsel that has appeared on the claimant's behalf in the Chapter 11 Case. From and after the Effective Date, the Plan Administrator may settle or compromise any Disputed General Unsecured Claim, and the Reorganized Debtor may settle or compromise any other Disputed Claim, pursuant to the terms of the Plan without further order of the Bankruptcy Court; provided, however, that the Reorganized Debtor shall not settle, compromise, release, or abandon any Cause of Action or Preserved Cause of Action that is being pursued by or could reasonably be pursued by the Plan Administrator for the benefit of holders of Allowed General Unsecured Claims without the prior written consent of the Plan Administrator, which consent shall not be unreasonably withheld.

**Resolution of Disputed Claims.** No Distribution or payment shall be made on account of a Disputed Claim until such Disputed Claim becomes an Allowed Claim.

**Establishment of Disputed Claims Reserve Account.** On the Effective Date, the Reorganized Debtor shall establish and fund from available Cash: (i) the GUC Disputed Claims Reserve for the benefit of holders of Disputed General Unsecured Claims, which shall be administered by the Plan Administrator; and (ii) the Reorganized Debtor Disputed Claims Reserve for the benefit of holders of all other Disputed Claims, which shall be administered by the Reorganized Debtor.

**Duties in Connection with Disputed Claims.** The Plan Administrator shall (i) deposit in the GUC Disputed Claims Reserve, Cash in an amount required by order of the Bankruptcy Court or the District Court, if applicable, (including any order estimating the maximum liability of a Disputed General Unsecured Claim) or, in the absence of such order, Cash equal to the Distributions that would have been made to the holder of such Disputed General Unsecured Claim,

if it were an Allowed Claim in a liquidated amount, if any, on the Effective Date, (ii) object to, settle, or otherwise resolve Disputed General Unsecured Claims, (iii) make Distributions to holders of Disputed General Unsecured Claims that subsequently become Allowed Claims in accordance with the Plan, and (iv) distribute any remaining assets of the GUC Disputed Claims Reserve, after resolving all Disputed General Unsecured Claims, to the Reorganized Debtor in accordance with the Plan. All amounts to be deposited or reserved pursuant to this Paragraph shall be made from the New Value Contribution.

**Duties in Connection with Other Disputed Claims.** The Reorganized Debtor shall (i) deposit in the Reorganized Debtor Disputed Claims Reserve, Cash in an amount required by order of the Bankruptcy Court or the District Court, if applicable, (including any order estimating the maximum liability of a Disputed Claim other than a Disputed General Unsecured Claim) or, in the absence of such order, Cash equal to the Distributions that would have been made to the holder of such Disputed Claim, if it were an Allowed Claim in a liquidated amount, if any, on the Effective Date, (ii) object to, settle, or otherwise resolve such Disputed Claims, (iii) make Distributions to holders of such Disputed Claims that subsequently become Allowed Claims in accordance with the Plan, and (iv) distribute any remaining assets of the Reorganized Debtor Disputed Claims Reserve, after resolving all such Disputed Claims, for the benefit of the Reorganized Debtor.

**Distributions when Disputed General Unsecured Claim Is Resolved.** On the next Distribution Date following the date upon which a Disputed General Unsecured Claim is ultimately Allowed, the Plan Administrator shall distribute to the holder of such Claim any amounts attributable to such Claim from the GUC Disputed Claims Reserve, in accordance with the Plan. Any Cash held in the GUC Disputed Claims Reserve for the benefit of a holder of a Disputed General Unsecured Claim, which is subsequently disallowed, in whole or in part, shall revert to the GUC Distribution Account.

**Distributions when Other Disputed Claim Is Resolved.** On the next Distribution Date following the date upon which any other Disputed Claim is ultimately Allowed, the Reorganized Debtor shall distribute to the holder of such Claim any amounts attributable to such Claim from the Reorganized Debtor Disputed Claims Reserve, in accordance with the Plan. Any Cash held in the Reorganized Debtor Disputed Claims Reserve for the benefit of a holder of a Disputed Claim which is subsequently disallowed, in whole or in part, shall revert to the Reorganized Debtor.

**Miscellaneous Distribution Provisions.**

**Method of Cash Distributions.** All Distributions to holders of Allowed General Unsecured Claims shall be made by the Plan Administrator from the General Unsecured Claims Cash Distribution, and all other Distributions shall be made by the Reorganized Debtor, or in each case by a duly appointed disbursing agent. Cash payments made pursuant to the Plan shall be in United States dollars by checks drawn on a domestic bank selected by the Reorganized Debtor or the Plan Administrator, as applicable, or by wire transfer from a domestic bank, at the option of the Reorganized Debtor or the Plan Administrator, as applicable; provided, however, that Cash payments made to foreign creditors, if any, holding Allowed Claims may be (but are not required to be) paid, at the option of the Reorganized Debtor or the Plan Administrator, as applicable, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

23

**No Distribution in Excess of Allowed Amount of Claim.** Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall receive in respect of such Claim any Distribution in excess of the amount of such Allowed Claim.

**Minimum Cash Distributions.** The Plan Administrator shall not be required to make any distribution of Cash less than $25 to any holder of an Allowed Claim, except as otherwise set forth in the Plan.

**Allocation of Payments.** Amounts paid to holders of Allowed Claims in satisfaction thereof shall be allocated first to the principal amounts of such Claims, with any excess allocated to any interest that has accrued on such Claims but remains unpaid.

**Setoffs.** The Reorganized Debtor, or the Plan Administrator with respect to General Unsecured Claims, is authorized, pursuant to and to the extent permitted by applicable law, to set off against any Allowed Claim and the Distributions to be made on account of such Allowed Claim, the claims, rights, and Causes of Action of any nature that the Debtors, the Reorganized Debtor, or the Plan Administrator (with respect to General Unsecured Claims), as applicable, may hold against the holder of such Allowed Claim. Neither the failure to effect such a setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors, the Reorganized Debtor, or the Plan Administrator of any such claims, rights, and Causes of Action the Debtors, the Reorganized Debtor, or the Plan Administrator, as applicable, may have against such holder.

**Record Date for Distributions to Holders of Claims.** As of the close of business on the Confirmation Date, there shall be no further changes in the record holders of the Claims for purposes of the Distributions under the Plan. The Debtors and the Plan Administrator shall have no obligation to recognize any transfer of Claims occurring after the Confirmation Date for purposes of the Distributions.

**Disputed Payments.** If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Plan Administrator or the Reorganized Debtor, as applicable, may, in lieu of making such Distribution to such Person, make such Distribution into an escrow account to be held in trust for the benefit of such holder and such Distribution shall not constitute property of the Debtors or the Estate. Such Distribution shall be held in escrow until the disposition thereof shall be determined by order of the Bankruptcy Court or other court of competent jurisdiction or by written agreement signed by all of the interested parties to such dispute.

**Withholding Taxes.** The Plan Administrator shall not be required to withhold taxes or comply with any applicable reporting requirements. The recipients of Distributions will be required to comply with all applicable laws and regulations concerning the reporting and taxing of the Distributions. If requested by the recipient of a Distribution, the Plan Administrator will issue an IRS Form 1099.

**Request for Expedited Determination of Taxes.** The Debtors or the Reorganized Debtor, as applicable, shall have the right to request an expedited determination under Bankruptcy Code

24

§505(b) with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

**Resignation or Removal of Plan Administrator.** If the Plan Administrator resigns or is removed, dies, dissolves, or is incapacitated, a successor Plan Administrator shall be appointed by the Bankruptcy Court, after notice and a hearing, upon motion of the Reorganized Debtor or any party in interest. For the avoidance of doubt, the Reorganized Debtor shall not serve as the Plan Administrator or successor Plan Administrator. No successor Plan Administrator hereunder shall in any event have any liability or responsibility for the acts or omissions of any of his or her predecessors, with the compensation of the successor Plan Administrator to be determined by the Bankruptcy Court.

**No Agency Relationship.** The Plan Administrator shall not be deemed to be the agent for any of the holders of Claims in connection with the funds held or distributed pursuant to the Plan. The Plan Administrator shall not be liable for any mistake of fact or law or error of judgment or any act or omission of any kind unless it constitutes gross negligence or willful misconduct or breach of fiduciary duty. To the greatest extent permitted by applicable law, the Plan Administrator shall be indemnified and held harmless, including the cost of defending such claims and attorneys' fees in seeking indemnification, by the Estate against any and all claims arising out of his or her duties under the Plan, except to the extent his or her actions constitute gross negligence or willful misconduct or breach of fiduciary duty. The Plan Administrator may conclusively rely, and shall be fully protected personally in acting upon any statement, instrument, opinion, report, notice, request, consent, order, or other instrument or document which he or she believes to be genuine and to have been signed or presented by the proper party or parties. The Plan Administrator may rely upon information previously generated by the Debtors and such additional information provided to him or her by former employees of the Debtors.

## VII.    EFFECT OF PLAN ON CLAIMS, INTERESTS, AND CAUSES OF ACTION

**Binding Effect.** Except as otherwise provided in Bankruptcy Code §1141(d), on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim or interest against the Debtors who held such Claim or interest at any time during the Chapter 11 Case and its respective successors and assigns, whether or not the Claim or interest of such holder is Impaired under the Plan and whether or not such holder has accepted (or has been deemed to accept) the Plan.

**Term of Injunctions or Stays.** Unless otherwise provided herein, all injunctions or stays provided for in the Chapter 11 Case pursuant to Bankruptcy Code §§ 105 or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Chapter 11 Case is closed.

**Retention of Rights and Causes of Action.** Except as provided in the Plan, all present or future rights, claims, or Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtors had prior to the Effective Date against any Person on behalf of the Estate or of the Debtors in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law (collectively, the "**Preserved Causes of Action**") are preserved for the Reorganized Debtor and the Plan Administrator. On the Effective Date, pursuant to Bankruptcy

25

Code § 1123(b)(3), the Reorganized Debtor and the Plan Administrator, each as a representative of the Estate, shall have possession and control of, and shall retain and have the right to enforce and pursue, any and all present or future rights, claims, or Causes of Action, Preserved Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses against any Person and with respect to any rights of the Debtors that arose before or after the Petition Date; provided, that the Plan Administrator's authority to pursue Causes of Action and Preserved Causes of Action shall be exercised for the benefit of holders of Allowed General Unsecured Claims. The Reorganized Debtor and the Plan Administrator have, retain, reserve, and shall be entitled to assert and pursue all such claims, Causes of Action, Preserved Causes of Action, rights of setoff, or other legal or equitable defenses, and all legal and equitable rights of the Debtors not expressly released under the Plan may be asserted after the Effective Date. The Reorganized Debtor or the Plan Administrator, as applicable, may abandon, settle, or release any or all such claims, rights, or Causes of Action or Preserved Causes of Action as it deems appropriate without further order of the Bankruptcy Court. In pursuing any claim, right, Cause of Action, or Preserved Cause of Action, the Reorganized Debtor or the Plan Administrator, as the representative of the Estate, shall be entitled to the extensions provided under Bankruptcy Code § 108. Except as otherwise provided in the Plan, all Causes of Action shall survive confirmation and the commencement or prosecution of Causes of Action or Preserved Causes of Action shall not be barred or limited by any estoppel, whether judicial, equitable, or otherwise.

**Satisfaction of Claims.** The treatment to be provided for Allowed Claims shall be in full satisfaction, settlement, and release of each such Claim.

**Scope of Injunction.** To the greatest extent permitted by applicable law, except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, all Persons that hold a Claim are permanently enjoined from taking any of the following actions against the Debtors on account of any Claim: (i) commencing or continuing in any manner any action or other proceeding with respect to a Claim or based upon a theory which arises out of such holder's Claim; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order with respect to a Claim; (iii) creating, perfecting, or enforcing any lien or encumbrance with respect to a Claim; (iv) asserting a setoff, right of subrogation, or recoupment of any kind with respect to a Claim, the assets, or other property of the Estate; and (v) commencing or continuing any action that does not comply with or is inconsistent with the Plan. Nothing shall preclude the holder of a Claim from pursuing any applicable insurance after the Chapter 11 Case is closed, from seeking discovery in actions against third parties, or from pursuing third-party insurance that does not cover Claims against the Debtors. For the avoidance of doubt, nothing in this injunction shall limit the rights of a holder of a Claim to enforce the terms of the Plan.

**Release of Collateral.** Except as expressly provided herein, unless a holder of a Secured Claim receives a return of its Collateral in respect of such Claim under the Plan: (i) each holder of (A) an Allowed Secured Claim; and/or (B) an Allowed Claim that is purportedly secured, on the Effective Date shall (1) turn over and release to the Reorganized Debtor any and all property that secures or purportedly secures such Claim; and (2) execute such documents and instruments as the Plan Administrator or Reorganized Debtor requires to evidence such claimant's release of such property; and (ii) on the Effective Date, all claims, rights, title, and interest in such property shall revert to the Reorganized Debtor, free and clear of all Claims, including (without limitation) Liens, charges, pledges, encumbrances, and/or security interests of any kind. No Distribution shall be

26

made to or on behalf of any holder of such Claim unless and until such holder executes and delivers to the Plan Administrator such release of Liens. Any such holder that fails to execute and deliver such release of Liens within 60 days of any demand thereof shall be deemed to have no further Claim and shall not participate in any Distribution hereunder. Notwithstanding the immediately preceding sentence, a holder of a Disputed Claim shall not be required to execute and deliver such release of Liens until the time such Claim is Allowed or disallowed.

**Cause of Action Injunction.** On and after the Effective Date, all Persons other than the Reorganized Debtor or Plan Administrator on behalf of the Estate will be permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively, or otherwise) on account of, or respecting any claim, debt, right, or Preserved Cause of Action that the Reorganized Debtor or Plan Administrator retains authority to pursue in accordance with the Plan.

**Exculpation.**  To the greatest extent permitted by applicable law, and except as otherwise set forth in the Plan, neither the Debtors, the Plan Administrator, nor any of their respective current or former members, directors, officers, trustees, employees, agents (acting in such capacity), advisors, brokers, attorneys, accountants, nor representatives of any professional employed by any of them shall have or incur any liability to any Person or entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, or any contract, release, or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Plan, the administration of the Plan or property to be distributed pursuant to the Plan, and actions taken or omitted to be taken in connection with the Chapter 11 Case or the operations, monitoring, or administration of the Debtors during the Chapter 11 Case, and the Plan Administrator and any professionals retained by the Plan Administrator to implement the Plan shall have no liability for any action taken or omitted to be taken in connection with or related to the post-confirmation administration of the Estate, except for (i) intentional fraud, gross negligence, or willful misconduct, and (ii) **solely in the case of attorneys, to the extent that such exculpation would violate any applicable professional disciplinary rules, including Disciplinary Rule 6-102 of the Code of Professional Conduct**.

**Preservation and Application of Insurance.** The provisions of the Plan shall not diminish or impair in any manner the enforceability of coverage of any insurance policies (and any agreements, documents, or instruments relating thereto) that may cover Claims against the Debtors, any directors, trustees, or officers of the Debtors, or any other Person, including, without limitation, insurance for the Debtors' directors and officers.

**Compromise of Controversies.** Pursuant to Bankruptcy Code §1123 and Bankruptcy Rule 9019, and in consideration for the classification, distribution, and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan, including, without limitation, all Claims arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to, or in connection with the business or affairs of or transactions with the Debtors. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its

27

determination that such compromises and settlements are in the best interests of the Debtors, the Estates, creditors, and other parties in interest, and are fair, equitable, and within the range of reasonableness.

**Solicitation of Plan.** As of and subject to the occurrence of the Confirmation Date: (a) the Debtors shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e), and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation and (b) the Debtors and each of its respective directors, officers, employees, affiliates, agents, financial advisors, investment bankers, professionals, accountants, and attorneys shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance, and solicitation will not be, liable at any time for any violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of any securities under the Plan.

**Post-Confirmation Activity.** As of the Effective Date, the Reorganized Debtor or Plan Administrator may conclude the implementation of the Plan without supervision of the Bankruptcy Court, other than those restrictions expressly imposed by the Plan and the Confirmation Order. Without limiting the foregoing, the Plan Administrator may pay any charges it incurs for taxes, professional fees, disbursements, expenses, or related support services after the Effective Date without application to and approval of the Bankruptcy Court.

**Estate Release of GGTF and Tirion.** As of the Effective Date, in exchange for GGTF's agreement to contribute the New Value Contribution and other good and valuable consideration, the Debtors, Reorganized Debtor and the Plan Administrator, each for itself and on behalf of the Debtors' Estate, and its and their respective successors and assigns, shall and hereby does, as of the Effective Date, release GGTF and Tirion from any claim or Cause of Action, including without limitation, any Cause of Action under Chapter 5 of the Bankruptcy Code, which it could have asserted as of the Effective Date, except to the extent arising from gross negligence, willful misconduct or fraud. Nothing in this Section shall release any obligation under this Plan.

## VIII.    <u>EXECUTORY CONTRACTS AND LEASES</u>

**Executory Contracts and Unexpired Leases.** To the extent not previously rejected or listed on the schedule of rejected executory contracts and unexpired leases filed with the Plan Supplement, but subject to the occurrence of the Effective Date, all of the Debtors' executory contracts and unexpired leases entered into prior to the Petition Date that have not previously been assumed or rejected, and have not been assumed and assigned during the Chapter 11 Case, shall be deemed assumed by the Reorganized Debtor pursuant to the provisions of Bankruptcy Code §365.

**Rejection Damages Bar Date.** If rejection, pursuant to the Plan, of an executory contract or unexpired lease, results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the Debtors, the Reorganized Debtor or their property, or the Plan Administrator unless a proof of claim is filed with the Bankruptcy Court and served upon the Plan

Administrator not later than 30 days after the date of service of notice of entry of the Confirmation Order, or such other period set by the Bankruptcy Court. Any such Claim, to the extent Allowed, shall be classified as a Class 3 General Unsecured Claim.

**Notice and Determination of Cure Disputes and Deemed Consent.** Any monetary amounts by which any executory contract or unexpired lease to be assumed herein is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by the Reorganized Debtor promptly upon assumption thereof. At least fourteen (14) days before the Confirmation Hearing, the Debtors shall serve a notice on parties to executory contracts and unexpired leases to be assumed reflecting the Debtors' intention to assume the contract or unexpired lease in connection with the Plan and setting forth the proposed cure amount (if any). If a counterparty to any executory contract or unexpired lease does not receive such a notice, the proposed cure amount for such contract or lease shall be deemed to be zero dollars ($0).

Disputes pertaining to the assumption of an executory contract or unexpired lease shall be heard by the Bankruptcy Court prior to such assumption and assignment being effective; provided, however, before the Effective Date, the Debtors or the Plan Administrator, as applicable, may settle any dispute regarding a cure amount without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

Any counterparty to any executory contract or unexpired lease that fails to object timely to the notice of the proposed assumption of such contract or lease or the relevant cure amount within ten (10) days of the service thereof, (i) shall be deemed to have assented to (A) such cure amount, (B) assumption of the applicable contract or lease notwithstanding any provision thereof that purports to (1) prohibit, restrict, or condition the transfer or assignment of such contract or lease, or (2) terminate or permit the termination of a contract or lease as a result of any direct or indirect transfer or assignment of the rights of the Debtors under contract or lease or a change, if any, in the ownership or control to the extent contemplated by the Plan, and shall forever be barred and enjoined from asserting such objection against the Debtors, the Plan Administrator or the Reorganized Debtor or terminating or modifying such contract or lease on account of the transactions contemplated by the Plan, and (ii) shall be forever barred, estopped, and enjoined from challenging the validity of such assumption or the Allowed amount of the cure amount.

If there is a cure dispute or a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection under the Plan, the Debtors, Plan Administrator, or Reorganized Debtor as applicable, shall have sixty (60) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease by filing a notice indicating such altered treatment.

**Payments Related to Assumption or Assignment of Contracts and Leases.** Subject to resolution of any cure dispute, all cures shall be satisfied by the Debtors or the Reorganized Debtor, as applicable, upon assumption of the underlying contracts and unexpired leases. Assumption of any executory contract or unexpired lease pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the cure amount, whether monetary or nonmonetary, including defaults of provisions relating to change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the effective date of the assumption or

29

assumption and assignment, as applicable. Any proofs of claim filed with respect to any executory contract or unexpired lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other entity, upon the deemed assumption of such contract or unexpired lease.

**Effect of Post-Confirmation Rejection.** The entry by the Bankruptcy Court on or after the Confirmation Date of an order authorizing the rejection of an executory contract or unexpired lease entered into prior to the Petition Date shall result in such rejection being a prepetition breach under Bankruptcy Code §§365(g) and 502(g).

**Regions Bank Commercial Card Agreement**. Notwithstanding 11 U.S.C. § 365(c)(2), subject to compliance with the provisions of this Order and payment of the Regions Cure Amounts (as defined below), Regions Bank consents to the Debtor's assumption of the *Commercial Card Agreement* dated February 21, 2024, (as amended, restated, supplemented or otherwise modified from time to time, the "**Card Agreement**"), between Debtor Excell Communications, Inc. and Regions Bank ("**Regions**") and the related Security Agreement (as defined below). Regions shall provide the Debtor (via email to its counsel or other designee agreed upon in writing) with one or more statements of obligations due and owing under the Card Agreement as of the Effective Date, which shall also include all reasonable and documented attorneys' fees incurred by Regions relating to the Debtors' bankruptcy cases and payable under the Card Agreement. The Reorganized Debtor shall pay any and all such obligations (including attorneys' fees) (the "**Regions Cure Amounts**") to Regions on the Effective Date. Any and all accrued obligations which are not yet payable as of the Effective Date shall be paid in the ordinary course of business pursuant to the Card Agreement (e.g., any charges under the Card Agreement which have been incurred but not yet billed on a monthly statement shall be paid in the ordinary course irrespective of whether the charges were pre- or post-Effective Date).

Notwithstanding anything to the contrary in: (i) the Plan; (ii) this Order; (iii) the Plan Supplement (iv) any other document (the "**Plan Documents**"), nothing contained herein or therein shall alter or impair Regions' rights under the Card Agreement or the agreement titled *Assignment of Deposit Account*, dated as of November 15, 2024 (the "**Security Agreement**"), and Regions shall maintain its security interest and rights of setoff and recoupment related to the Certificate of Deposit account number x6160 (the "**Card Account Collateral**") maintained at Regions as security for the Reorganized Debtor's obligations under the Card Agreement, including the Regions Cure Amounts. Notwithstanding anything to the contrary in the Plan Documents: (a) the Card Agreement and Security Agreement shall be assumed in their entirety subject to existing terms, (b) Regions shall retain its first priority security interest and lien on the Card Account Collateral; and (c) no liens or security interests, if any, granted in connection with or pursuant to the Plan Documents shall prime or impair Regions' first priority security interests, liens and rights of setoff and recoupment in the Card Account Collateral.

## IX.    CONDITIONS TO CONFIRMATION AND OCCURRENCE OF EFFECTIVE DATE

**Conditions to Confirmation.** The Plan may not be confirmed unless each of the conditions set forth below is satisfied: (a) the Plan Supplement has been filed with all necessary exhibits; and

30

(b) the Confirmation Order is entered in a form reasonably acceptable to the Reorganized Debtor and the Plan Administrator.

**Conditions to Occurrence of Effective Date.** The Effective Date for the Plan may not occur unless each of the conditions set forth below is satisfied. Any one or more of the following conditions, except for (f), may be waived in whole or in part at any time by the Plan Administrator with the consent of the Debtors:

a. The Bankruptcy Court shall have entered the Confirmation Order in form and substance satisfactory to the Debtors and the Plan Administrator (if applicable), and it shall have become a Final Order and shall not have been stayed, modified, or vacated on appeal;

b. The Confirmation Order shall provide for the injunctions and exculpation of the Persons provided for by the Plan;

c. If necessary, the Plan Administrator shall have been appointed and shall have agreed to act as such in accordance with the terms and conditions of the Plan;

d. The Debtors or the Plan Administrator shall confirm in writing, email being sufficient, to the Reorganized Debtor, counsel to the Creditors Committee, counsel to GGTF and the Office of the U.S. Trustee, that there are sufficient funds available in Cash to effectuate the Distributions under the Plan required on the Effective Date;

e. All actions, documents, and agreements necessary to implement and consummate the Plan shall have been executed and binding on all parties thereto;

f. All governmental and third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan shall have been obtained, not be subject to unfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions; and

g. The consummation of the New Value Contribution;

h.  The Debtors shall have satisfied or made adequate provision for the payment in full of all Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Priority Claims; and

i. The Debtors shall have filed one or more omnibus claim objections with the Bankruptcy Court in advance of or concurrently with the commencement of the Plan solicitation process.

31

**Effect of Nonoccurrence of the Conditions to Occurrence of Effective Date.** If each of the conditions to the occurrence of the Effective Date has not been satisfied or duly waived on or before the date which is no later than the first Business Day after 30 days after the Confirmation Date, or by such later date as is approved, after notice and a hearing, by the Bankruptcy Court, then upon motion by any party in interest made before the time that each of the conditions has been satisfied or duly waived, the Confirmation Order may be vacated by the Bankruptcy Court; provided, however, that, notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions to occurrence of the Effective Date is either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion. If the Confirmation Order is vacated pursuant to the Plan, then the Plan shall be null and void in all respects, and nothing contained in the Plan shall: (i) constitute a waiver or release of any claims by or against the Debtors, or (ii) prejudice in any manner the rights of the Debtors or of any other party in interest.

## X.    CONFIRMABILITY AND SEVERABILITY OF THE PLAN

The Debtors reserves the right to alter, amend, modify, revoke, or withdraw the Plan.  If the Debtors revoke or withdraws from the Plan, then nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors, or to prejudice in any manner the rights of the Debtors or any persons in any further proceedings involving the Debtors. A determination by the Bankruptcy Court that the Plan, as it applies to the Debtors, is not confirmable pursuant to Bankruptcy Code §1129 shall not limit or affect the Debtors' ability to modify the Plan to satisfy the confirmation requirements of Bankruptcy Code §1129. Each provision of the Plan shall be considered severable and, if for any reason any provision or provisions herein are determined to be invalid and contrary to any existing or future law, the balance of the Plan shall be given effect without relation to the invalid provision, to the extent it can be done without causing a material change in the Plan.

The Debtors shall have the right to request the Bankruptcy Court to confirm the Plan in accordance with Bankruptcy Code §1129(b).

## XI.    ADMINISTRATIVE PROVISIONS

**Retention of Jurisdiction.** Notwithstanding confirmation of the Plan or occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction and authority for all purposes permitted under applicable law, including, without limitation, the following purposes:

a. to determine any motion, adversary proceeding, avoidance action, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date;

b. to hear and determine applications for the assumption or rejection of executory contracts or unexpired leases and the allowance, estimation, or payment of Claims and cure disputes resulting therefrom;

c. to ensure that Distributions to holders of Allowed Claims are accomplished as provided herein and to adjudicate any and all disputes arising from or relating to Distributions under the Plan;

d.  to hear and determine objections to the allowance of Claims, whether filed, asserted, or made before or after the Effective Date, including, without limitation, to hear and determine objections to the classification of Claims and the allowance or disallowance of Disputed Claims, in whole or in part;

e.  to consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim; provided, however, that the District Court shall have jurisdiction to estimate any Claim that cannot be estimated by the Bankruptcy Court;

f.  to enter, implement, or enforce such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

g.  to issue injunctions, enter and implement other Orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other Order of the Bankruptcy Court;

h.  to hear and determine any application to modify the Plan in accordance with Bankruptcy Code §1127, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement, or any Order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

i.  to hear and determine all Professional Fee Claims;

j.  to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Plan Supplement, the Confirmation Order or any transactions or payments contemplated hereby or thereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

k.  to take any action and issue such Orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan, including any release or injunction provisions set forth herein, or to maintain the integrity of the Plan following consummation;

l.  to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

m.  to hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code §§346, 505, and 1146;

n.  to enter a final decree closing the Chapter 11 Case;

o.  to recover all assets of the Debtors and property of the Estate, wherever located;

33

      p.  to hear and determine any rights, Claims, Preserved Causes of Action or Causes of Action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any statute or legal theory;

      q.  to hear and determine any matters for which jurisdiction was retained by the Bankruptcy Court pursuant to prior Orders; and

      r.  to hear and determine any other matters related hereto and consistent with the Bankruptcy Code, title 28 of the United States Code, and other applicable law.

**Courts of Competent Jurisdiction.** If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of, or with respect to, the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**Governing Law.** Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal laws apply, the laws of the State of New York shall govern the rights and obligations arising under the Plan, without giving effect to principles of conflicts of law of the State of New York.

**Effectuating Documents and Further Transactions.** The Reorganized Debtor or the Plan Administrator, as applicable, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such action as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**Waiver of Bankruptcy Rule 7062.** The Reorganized Debtor or Plan Administrator may request the Confirmation Order include (a) a finding that Bankruptcy Rule 7062 shall not apply to the Confirmation Order and the Plan be immediately binding and enforceable; and (b) authorization for the Debtors to consummate the Plan immediately after entry of the Confirmation Order.

**No Admissions.** Notwithstanding anything herein to the contrary, nothing contained in the Plan or the Disclosure Statement shall be deemed as an admission by any Person with respect to any matter set forth herein.

**Payment of Statutory Fees.** All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court on the Confirmation Date, shall be paid on the Effective Date. Any statutory fees accruing after the Confirmation Date shall be paid in accordance with the Plan.

**Amendments.**

      a.  **Pre-Confirmation Amendment.** The Debtors may modify the Plan at any time prior to the entry of the Confirmation Order provided that the Plan, as modified, and the Disclosure Statement pertaining thereto meet applicable Bankruptcy Code requirements, including those set forth in section 1125.

b. **Post-Confirmation Amendment Not Requiring Re-solicitation.** After the entry of the Confirmation Order, the Debtors may modify the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided (i) the Debtors obtain approval of the Bankruptcy Court for such modification, after notice and a hearing, and (ii) such modification shall not materially and adversely affect the interests, rights, or treatment, of any Class under the Plan.

c. **Post-Confirmation Amendment Requiring Re-solicitation.** After the Confirmation Date and before the Effective Date of the Plan, the Debtors may modify the Plan (with the consent of the Plan Administrator) in a way that materially or adversely affects the interests, rights, treatment, or Distributions of a class of Claims, provided: (i) the modified Plan meets applicable Bankruptcy Code requirements; (ii) the Debtors obtain Bankruptcy Court approval for such modification, after notice to all creditors entitled to receive notice pursuant to the Bankruptcy Code and the Bankruptcy Rules and a hearing; (iii) such modification is accepted by at least two-thirds in amount, and more than one-half in number, of Allowed Claims voting in each Class affected by such modification; and (iv) the Debtors comply with Bankruptcy Code §1125 with respect to the modified Plan.

**Successors and Assigns.** The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the heir, executor, administrator, successor, or assign of such Person.

**Confirmation Order and Plan Control.** To the extent the Confirmation Order and/or the Plan is inconsistent with the Disclosure Statement or any other agreement entered into between the Debtors and any third party, the Plan shall control the Disclosure Statement and any previous agreements and the Confirmation Order shall control the Plan.

**Notices.** Any notice required or permitted to be provided under the Plan, unless otherwise provided herein, shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) overnight delivery service, postage prepaid, and addressed as follows:

| **For the Debtors and the Reorganized Debtor**: | **With copies to:** |
|---|---|
| Attn: Carlos Lourenco, CEO and Harry Zapiti, CFO<br>255 Executive Drive, Suite 409<br>Plainview, New York 11803 | Forchelli Deegan Terrana LLP<br>333 Earle Ovington Blvd.<br>Uniondale, NY 11553<br>Attn: Michael S. Amato<br>mamato@forchellilaw.com<br>Attorneys for Debtors and Debtors-in-Possession |
| **For the Creditors Committee:** | **With copies to:**<br><br>Porzio Bromberg & Newman, P.C. |

35

|  | 1675 Broadway, Suite 1818<br>New York, NY 10019<br>Attn: Brett S. Moore<br>bsmoore@pbnlaw.com<br>Kelly D. Curtin<br>kdcurtin@pbnlaw.com<br>*Attorneys for the Official Committee of Unsecured Creditors* |
|---|---|
| **For Global Growth Tech Fund,** *Fundo de Capital de Risco Fechado* | **With copies to:**<br><br>Klestadt Winters Jureller Southard &<br><br>Stevens, LLP<br>200 West 41st Street, 17th Floor<br>New York, NY, 10036-7203<br>Attn: Sean C. Southard<br>ssouthard@klestadt.com<br>Stephanie Sweeney<br>ssweeney@klestadt.com<br>*Attorneys for GGTF* |
| **For the Plan Administrator:**<br><br>**Dundon Advisors LLC**<br>**Ten Bank Street, Suite 1100**<br>**White Plains, New York 10606 USA**<br>**Attn:Eric Reubel**<br>**er@dundon.com**<br>**Romeo Reyes**<br>**rr@dundon.com** | **With copies to**:<br><br>Porzio Bromberg & Newman, P.C.<br>1675 Broadway, Suite 1818<br>New York, NY 10019<br>Attn: Brett S. Moore<br>bsmoore@pbnlaw.com<br>Kelly D. Curtin<br>kdcurtin@pbnlaw.com |

**Substantial Consummation.** On the Effective Date, the Plan shall be deemed to be substantially consummated under Bankruptcy Code §§ 1101 and 1127(b).

**Deemed Acts.** Whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

## XII. ALTERNATIVES TO THE PLAN

The Debtors and their professionals have carefully considered alternatives to the Plan. The alternatives considered were the sale of the Debtors' Assets as a "going concern" and the

36

liquidation of the Debtors' Assets. After considering these alternatives and the Liquidation Analysis, the Debtors have determined [and the Creditors Committee agrees] that the Plan provides the best opportunity to provide a meaningful distribution to creditors.

The Debtors' financial advisors and the Debtors produced the Liquidation Analysis providing the liquidation value of the Debtors' Assets as of the date of this Disclosure Statement.

The Debtors considered the Liquidation Analysis, and for the reasons set forth below believe that consideration offered to Creditors under the Plan, with the New Value Contribution offered as a "new value" contribution under the Plan, is fair and appropriate under the circumstances.

Prior to filing the Plan, the Debtors and the Creditors Committee sought buyers for the Debtors' assets, particularly, the Fiber Assets.

Beginning in October 2024, the Debtors engaged approximately nine (9) brokers from around the globe to market the Assets, in the United States, South America, the Middle East, Europe, Africa and the Caribbean.  Notwithstanding these efforts, to date, the Debtors have not received a single proposal to purchase some or all of the Fiber Assets.

In addition to the Debtors' efforts, the Creditors Committee, through its retained professionals, Dundon Advisors, actively marketed the Fiber Assets. Dundon contacted twenty (20) potential purchasers (both directly and indirectly), including nineteen (19) potential purchasers of the Fiber Assets and one (1) potential financial partner.   Thirteen (13) contacts were outside of the United States, including parties from Africa, Mexico, Canada, Columbia, Spain, Brazil, Chile and the United Kingdom.

The Debtors encourage all creditors to carefully review the Liquidation Analysis to fully understand how General Unsecured Creditors will be treated if the Debtors' Assets were liquidated.

**Liquidation Under Chapter 7 of the Bankruptcy Code**

If the Plan is not confirmed under Bankruptcy Code § 1129(a), the Debtors or the Court may convert this Chapter 11 Case a case under chapter 7 of the Bankruptcy Code, in which case, a trustee would be elected or appointed to liquidate any remaining assets of the Debtors for distribution to creditors pursuant to chapter 7 of the Bankruptcy Code.  If a trustee is appointed, the Debtors believe, and the Liquidation Analysis confirms, that all Creditors holding Allowed General Unsecured Claims will receive less than they would under the Plan.  In the event of liquidation under chapter 7 of the Bankruptcy Code, the Debtors believe that all of the Cash proceeds of such liquidation would be paid to holders of Secured Claims, Administrative Claims, Priority Tax Claims and Other Priority Claims, with no or an extremely limited distribution to holders of General Unsecured Claims.  In addition, a chapter 7 trustee, who would lack the Debtors' knowledge and relationships, would be less successful than the Debtors in collecting the Debtors' accounts receivable, which could result in significant claims against the Debtors' estate. Moreover, a chapter 7 trustee would be required to invest substantial time and resources to investigate the facts underlying the nature and extent of the Debtors' Assets and claims.

37

**Certain Risk Factors**

Payouts to Priority Tax Claims and Class 2(A) Secured Tax Claims will be paid over a five (5) year period. Although the Debtors have developed financial projections which indicate that the Debtors will have the ability to make the payments required by the Plan, the Debtors' financial performance may not meet those projections due to many factors, some of which are outside of the Debtors' control. For example, the Debtors cannot be certain that its customers will remain the same or that customers will engage the Debtors at the same level and frequency for the same number of services. It is possible that the number of customers will increase, but that is unknown. As a part of each creditor's analysis of the Plan, it should consider the risk that the Debtors may not meet their financial projections. Creditors are encouraged to review the Debtors' projections filed with the Plan Supplement.

In the event that the Plan is not confirmed, or the Chapter 11 Case is converted to a case under chapter 7 of the Bankruptcy Code, the Debtors believe that such action or inaction, as the case may be, will cause General Unsecured Creditors to receive less than they ultimately receive under the Plan. The Debtors believe that conversion of this case to chapter 7 will cause the Debtors' estate to incur substantial expenses which will negatively affect potential recoveries for General Unsecured Creditors.

In addition, there is no assurance that the Causes of Action or the Preserved Causes of Action will provide significant recoveries for the benefit of General Unsecured creditors, or that General Unsecured Creditors will receive any additional Distributions. At this point, the Debtors can't make any representation regarding the likely success or cost of pursuing the Causes of Action or the Preserved Causes of Action.

## XIII.    CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

The following discussion summarizes certain federal income tax consequences of the Plan to the Debtors and the holders of Claims based upon the Internal Revenue Code, the Treasury Regulations promulgated thereunder, judicial authorities and current administrative rulings and practices now in effect, all of which are subject to change at any time by legislative, judicial or administrative action. Any such change could be retroactively applied in a manner that could adversely affect the Debtors, and holders of Claims. In addition, certain aspects of the following discussion are based on proposed Treasury Regulations.

The tax consequences of certain aspects of the Plan may be subject to administrative or judicial interpretations that differ from the discussion below. The Debtors have not requested, nor do they intend to request, a tax ruling from the Internal Revenue Service (the "**IRS**"), nor will the Debtors, with respect to the federal income tax consequences of the Plan, obtain any opinion of counsel. Consequently, there can be no assurance that the treatment set forth in the following discussion will be accepted by the IRS. Further, matters not discussed below may affect the federal income tax consequences to the Debtors, holders of Claims and holders of Interests.

THE DISCUSSION SET FORTH BELOW IS INCLUDED FOR GENERAL INFORMATION ONLY. THE DEBTORS, AND THEIR PROFESSIONALS ARE NOT MAKING ANY REPRESENTATIONS REGARDING THE PARTICULAR TAX

CONSEQUENCES OF CONFIRMATION AND CONSUMMATION OF THE PLAN, WITH RESPECT TO THE DEBTORS, HOLDERS OF CLAIMS OR HOLDERS OF INTERESTS, NOR ARE THEY RENDERING ANY FORM OF LEGAL OPINION OR TAX ADVICE ON SUCH TAX CONSEQUENCES.  THE TAX LAWS APPLICABLE TO CORPORATIONS OR LIMITED LIABILITY COMPANIES IN BANKRUPTCY ARE EXTREMELY COMPLEX, AND THE FOLLOWING SUMMARY IS NOT EXHAUSTIVE.  HOLDERS OF CLAIMS AND HOLDERS OF INTERESTS ARE STRONGLY URGED TO CONSULT THEIR OWN TAX ADVISORS REGARDING TAX CONSEQUENCES OF THE PLAN, INCLUDING FEDERAL, FOREIGN, STATE AND LOCAL TAX CONSEQUENCES.

**Federal Income Tax Consequences to Holders of Claims**

The federal income tax consequences of the implementation of the Plan to a holder of a Claim will depend, among other things, upon the origin of the holder's Claim, when the holder's Claim becomes an Allowed Claim, when the holder receives payment in respect of such Claim, whether the holder reports income using the accrual or cash method of accounting, and whether the holder has taken a bad debt deduction or worthless security deduction with respect to such Claim.

**Claims for Accrued Interest**

Notwithstanding the general rules described above, holders of Claims who receive any consideration under the Plan in respect of Allowed Claims for accrued but not previously taxed interest must treat the amount of such consideration as ordinary income.  A holder of a Claim whose Allowed Claim for accrued and previously taxed interest is not fully satisfied generally may take an ordinary deduction for the unsatisfied portion of such Allowed Claim, even if the underlying Claim is held as a capital asset.  The proper allocation, between principal and interest, of consideration to be distributed under the Plan is unclear. The Debtors intend to take the position that such consideration is allocated to principal, to the extent thereof, before any amount is allocated to accrued but unpaid interest.  Creditors should be aware, however, that the IRS may take a different position with respect to the proper allocation.

## XIV.   <u>VOTING PROCEDURES AND REQUIREMENTS</u>

**Ballots and Voting Deadline**

IT IS IMPORTANT THAT THE HOLDERS OF CLAIMS IN CLASS 3 TIMELY EXERCISE THEIR RIGHT TO VOTE TO ACCEPT OR REJECT THE PLAN.  Holders of Class 3 Claims have been sent a Ballot together with this Disclosure Statement.  Such holders should read the Ballot carefully and follow the instructions contained therein.  Please use only the Ballot that accompanies this Disclosure Statement.

The Debtors' attorneys Forchelli Deegan Terrana LLP shall serve as voting agent (the "**Voting Agent**") to assist in the transmission of voting materials and in the tabulation of votes with respect to the Plan.  FOR YOUR VOTE TO BE COUNTED, YOUR VOTE MUST BE RECEIVED BY THE VOTING AGENT AT THE ADDRESS SET FORTH BELOW BEFORE THE VOTING DEADLINE OF **_:00 P.M. E.T.** ON  _____ ___**, 2026**

39

IF A BALLOT IS DAMAGED OR LOST, YOU MAY CONTACT THE VOTING AGENT AT THE ADDRESS SET FORTH BELOW.  ANY BALLOT THAT IS EXECUTED AND RETURNED BUT WHICH DOES NOT INDICATE AN ACCEPTANCE OR REJECTION OF THE PLAN WILL NOT BE COUNTED.

IF YOU HAVE ANY QUESTIONS CONCERNING VOTING PROCEDURES, YOU MAY CONTACT THE VOTING AGENT AT:

Forchelli Deegan Terrana LLP
333 Earle Ovington Blvd., Suite 1010
Uniondale, NY 11553
(516) 663-6600
Attn: Michael S. Amato
mamato@forchellilaw.com

Additional copies of this Disclosure Statement are available upon request made to the Voting Agent.

**Holders of Claims Entitled to Vote**

Class 3 is the only class of Claims under the Plan that is impaired and entitled to vote to accept or reject the Plan.  All holders of Classes 3 Claims should complete the enclosed Ballot and return it to the Voting Agent so that it is received by the Voting Agent before the Voting Deadline.

**Withdrawal of Ballots**

Any voter that has delivered a valid Ballot may withdraw its vote by delivering a written notice of withdrawal to the Voting Agent before the Voting Deadline.  To be valid, the notice of withdrawal must (a) be signed by the party who signed the Ballot to be revoked, and (b) be received by the Voting Agent before the Voting Deadline.  The Debtors may contest the validity of any withdrawals.

Any holder that has delivered a valid Ballot may change its vote by delivering to the Voting Agent a properly completed subsequent Ballot so as to be received before the Voting Deadline.  In the case where more than one timely, properly completed Ballot is received, only the Ballot that bears the latest date will be counted.

**Presumed Rejections of Plan and Cram-Down**

For purposes of voting on the Plan, and if applicable, if any Class of Creditors votes to reject the Plan, then the Debtors may seek to utilize the provisions of Bankruptcy Code §1129(b) to satisfy the requirements for confirmation of the Plan over the rejections of such Class.

## XV.    <u>CONFIRMATION OF THE PLAN</u>

The Court will confirm the Plan only if all of the requirements of Bankruptcy Code §1129 are met.

**Acceptance of the Plan**

Under the Bankruptcy Code, acceptance of a plan by a class of claims occurs when holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the allowed claims of that class that cast ballots for acceptance or rejection of the plan vote to accept the plan. Thus, acceptance of the Plan by a particular class will occur only if at least two-thirds in dollar amount and a majority in number of the holders of the claims in that class cast their Ballots in favor of acceptance.  A vote may be disregarded if the Court determines, after notice and a hearing, that such acceptance or rejection was not solicited or produced in good faith or in accordance with the provisions of the Bankruptcy Code.

**Best Interests Test and Liquidation Analysis**

The Bankruptcy Code provides that the Plan will not be confirmed, regardless of whether or not anyone objects to confirmation, unless the Court finds that the Plan is in the "best interests" of all Classes of Claims which are impaired. The "best interests" test will be satisfied by a finding of the Court that either (i) all holders of impaired Claims have accepted the Plan or (ii) the Plan will provide such a holder that has not accepted the Plan with a recovery at least equal in value to the recovery such holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

The starting point in determining whether the Plan meets the "best interests" test is a determination of the amount of proceeds that would be generated from the liquidation of the Debtors' assets in the context of a chapter 7 liquidation. Such value must then be reduced by the costs of such liquidation, including costs incurred during the Chapter 11 Case and allowed under chapter 7 of the Bankruptcy Code (such as professionals' fees and expenses), a trustee's fees, and the fees and expenses of professionals retained by a trustee. The potential chapter 7 liquidation distribution in respect of each Class must be further reduced by costs imposed by the delay caused by conversion to chapter 7.

The Liquidation Analysis demonstrates that General Unsecured Creditors would receive less in a chapter 7 liquidation compared to the Distributions contemplated by the Plan.

For the reasons set forth above, the Debtors submit that each impaired Class will receive under the Plan a recovery at least equal in value to the recovery such Class would receive pursuant to a liquidation of the Debtors under chapter 7 of the Bankruptcy Code.

**Feasibility of the Plan**

Bankruptcy Code §1129(a)(11) provides that a chapter 11 plan may be confirmed only if the Court finds that such plan is feasible. A feasible plan is one which will not lead to a need for further reorganization or liquidation of the Debtors. The Debtors anticipate that they will have sufficient Cash on hand on the Effective Date to make all of the payments required to be made on the Effective Date under the Plan. To the extent necessary, the Debtors will have sufficient Cash to pay total Distributions, and will satisfy the Debtors' initial payment obligations to Administrative Claim holders (including professionals), estimated U.S. Trustee fees, payments to Holders of Allowed Class 2 Secured Claims, payments to holders of Priority Claims to the extent they are Allowed, and holders of Claims in Classes 3 (General Unsecured Claims).  Attached to

41

this Disclosure Statement **as Exhibit C** are the Debtors' financial projections for the five (5) years following the Effective Date, the life of the Plan.  Those projections indicate that the Debtors can successfully make the payments required under the Plan.

The Debtors believe, based on their financial projections and the New Value Contribution, that they will have sufficient available Cash on the Effective Date to make the payments required under the Plan.  In addition, the Debtors believe that, based on their financial projections, they will be able to make the required Distributions under the Plan.  For these reasons, the Debtors believe that the Court will find that the Plan is feasible. In addition, the Plan Administrator and the Reorganized Debtor will have sufficient funds to meet all post-Confirmation Date obligations to pay for the costs of administering and fully consummating the Plan and closing the Chapter 11 Case.  The Debtors believe that the Plan satisfies the financial feasibility requirement imposed by the Bankruptcy Code because the Debtors will have the Cash necessary to make all the payments required under the Plan.

**Classification of Claims Under the Plan**

The Debtors believe that the Plan meets the classification requirements of the Bankruptcy Code which requires that a plan of reorganization place each claim into a class with other claims that are "substantially similar." The Plan establishes classes of Claims as required by the Bankruptcy Code and summarized above. Administrative Claims and Priority Tax Claims are not classified.

**Confirmation of the Plan If a Class Does Not Accept the Plan**

The Bankruptcy Code contains provisions for confirmation of a plan even if it is not accepted by all impaired classes, as long as it is accepted by at least one impaired class of claims. If applicable, the Plan may be confirmed under the so-called "cram-down" provisions set forth in Bankruptcy Code §1129(b) if, in addition to satisfying the other requirements for confirmation, the Plan is determined to be "fair and equitable" and "does not discriminate unfairly" with respect to each class of Claims that has not accepted the Plan.  If the holders of Claims in Class 3 vote to reject the Plan, then the Court may only confirm the Plan if the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such Classes.

Under the Bankruptcy Code, "fair and equitable" has different meanings for secured and unsecured claims. With respect to a secured claim, "fair and equitable" means (i) the impaired secured creditor retains its liens to the extent of its allowed claim and receives deferred cash payments at least equal in value to the allowed amount of its claim with a present value as of the effective date of the plan at least equal in value to such creditor's interest in the debtors' interest in the property securing its claim, (ii) if property subject to the lien of the impaired secured creditor is sold free and clear of that lien, the lien attaches to the proceeds of the sale, and such lien proceeds are treated in accordance with clause (i) or (iii) of this paragraph, or (iii) the impaired secured creditor realizes the "indubitable equivalent" of its claim under the plan.

With respect to an unsecured claim, the "fair and equitable" standard, also known as the "absolute priority rule," requires that a dissenting class receive full compensation for its Allowed Claim before any junior class receives or retains any property under the Plan.  If the holders of

claims in any impaired class vote to reject the Plan, the Plan may be confirmed under Bankruptcy Code §1129(b) if all holders of Claims junior to those of the impaired class do not receive or retain any property under the Plan.

In the Plan, the absolute priority rule, to the extent applicable, is not being strictly followed because GGTF, as a Holder of Class 4 Interests is receiving 100% of the ownership interests in the Reorganized Debtor while holders of General Unsecured Claims are not being paid in full. That is justifiable under applicable law because GGTF, as the Holder of the Debtors' Interests, is contributing significant "new value" in the form of the New Value Contribution.

IF ALL OTHER CONFIRMATION REQUIREMENTS ARE SATISFIED AT THE CONFIRMATION HEARING, THE DEBTORS WILL ASK THE COURT TO RULE THAT THE PLAN MAY BE CONFIRMED ON THE BASIS THAT BANKRUPTCY CODE §1129(b) REQUIREMENTS HAVE BEEN SATISFIED.

**Confirmation Hearing**

Bankruptcy Code §1128 requires the Court, after notice, to hold a hearing on confirmation of the Plan (the "**Confirmation Hearing**").  Bankruptcy Code §1128(b) provides that any party in interest may object to confirmation of a plan.

By order of the Court dated _____ ____, 2026, the Confirmation Hearing has been scheduled for **_____, 2026 at ____ a.m.** a hearing before the Honorable Louis A. Scarcella, United States Bankruptcy Judge, United States Bankruptcy Court for the Eastern District of New York, 100 Federal Plaza, Central Islip, New York 11722.  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing or any adjourned hearing.  Any objection to confirmation of the Plan must (a) be in writing, (b) state the name and address of the objecting party and the amount and nature of the claim or interest of such party, (c) state with particularity the basis and nature of any objection or proposed modification, and (d) be filed with the Clerk of the Court, with a copy delivered to chambers, and served so that they are received on or before ____ __**, 2026** at **4:30 p.m.** , upon  (i) counsel to the Debtors, Forchelli Deegan Terrana, LLP, 333 Earle Ovington Boulevard, Suite 1010, Uniondale, New York 11553 Attn: Michael S. Amato, Esq. ([mamato@forchellilaw.com](mailto:mamato@forchellilaw.com)); (ii) the Office of the United States Trustee for the Eastern District of New York, Central Islip Division, Alfonse D'Amato Federal Courthouse, 560 Federal Plaza, Central Islip, New York 11722-4456, Attn: William J. Birmingham ([William.birmingham@usdoj.gov](mailto:William.birmingham@usdoj.gov)); (iii) counsel to the Official Committee of Unsecured Creditors, Porzio Bromberg & Newman, P.C., 1675 Broadway, New York, New York 10019, Attn.: Brett S. Moore, Esq. and Kelly D. Curtin, Esq. ([BSMoore@pbnlaw.com](mailto:BSMoore@pbnlaw.com) and [kdcurtin@pbnlaw.com](mailto:kdcurtin@pbnlaw.com)); (iv) counsel to GGTF, Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street 17th Floor, New York, NY, 10036-7203 Attn: Sean C. Southard, Esq. and Stephanie Sweeney, Esq. ([SSouthard@Klestadt.com](mailto:SSouthard@Klestadt.com) and [ssweeney@klestadt.com](mailto:ssweeney@klestadt.com)) and (v) any party that has requested notice pursuant to Bankruptcy Rule 2002, so as to be actually received by _____**2026 at 4:30 p.m. (ET**) (the "**Objection Deadline**").

Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.  Unless an objection to confirmation is timely served and filed, it will not be considered by the Bankruptcy Court.

At the Confirmation Hearing, the Bankruptcy Court must determine whether the requirements of Bankruptcy Code §1129 have been satisfied and, upon demonstration of such compliance, the Bankruptcy Court will enter the Confirmation Order.

## XVI.  CONCLUSION

This Statement was approved by the Bankruptcy Court pursuant to Bankruptcy Code §1125.  The Bankruptcy Court has determined that [on an interim basis] the Statement contains "adequate information" as that term is defined in Bankruptcy Code §1125(a). The Debtors believe that confirmation of the Plan is preferable to the alternatives described above because it provides the best opportunity for Distributions to General Unsecured Creditors.

Dated:    Uniondale, New York
          May 27, 2026

Respectfully submitted,

Excell Communications, Inc., Telecable, Inc.
and E-Fleet Services Corp
*Debtors and Debtors-in-possession*

By:  */s/ Carlos Lourenco*
Carlos Lourenco, solely in his capacity as
Chief Executive Officer of the Debtors and
Debtors-in-Possession

44

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

 ------------------------------------------------------------x

In re:                                                   Chapter 11

EXCELL COMMUNICATIONS, INC., *et al.*,[1]                 Case No. 25-71444 (LAS)


                              Debtors.                    (Jointly
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                                         Administered) x


### SECOND AMENDED JOINT PLAN OF REORGANIZATION OF EXCELL COMMUNICATIONS, INC., TELECABLE, INC. AND F-FLEET SERVICES CORP. <u>UNDER CHAPTER 11 OF THE BANKRUPTCY CODE</u>

---

**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE COURT. THE DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE COURT.**

---

FORCHELLI DEEGAN TERRANA LLP
Michael S. Amato
333 Earle Ovington Blvd, Suite 1010
Uniondale, New York 1553
(516) 248-1700
[mamato@forchellilaw.com](mailto:mamato@forchellilaw.com)
*Attorneys for Debtors and Debtors-in-Possession*
May 27, 2026

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: E-Fleet Services Corp. (3213), Excell Communications, Inc. (3973), and Telecable, Inc. (7957). The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is 255 Executive Drive, Suite 409, Plainview, New York 11803.

**TABLE OF CONTENTS**

ARTICLE I -DEFINITIONS, RULES OF INTERPRETATION, AND CONSTRUCTION.........1

ARTICLE II -TREATMENT OF UNCLASSIFIED CLAIMS........................................................7

ARTICLE III - CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS
AND EQUITY INTERESTS....................................................................................................9

ARTICLE IV - VOTING AND DISTRIBUTIONS UNDER THE PLAN...................................12

ARTICLE V - IMPLEMENTATION OF PLAN .......................................................................13

ARTICLE VI - EFFECT OF PLAN ON CLAIMS, INTERESTS, AND CAUSES OF
ACTION ...............................................................................................................................22

ARTICLE VII - EXECUTORY CONTRACTS AND UNEXPIRED LEASES...........................25

ARTICLE VIII - CONDITIONS TO CONFIRMATION AND OCCURRENCE OF
EFFECTIVE DATE...............................................................................................................27

ARTICLE IX - CONFIRMABILITY AND SEVERABILITY OF THE PLAN .........................29

ARTICLE X - ADMINISTRATIVE PROVISIONS..................................................................29

# ARTICLE I

**DEFINITIONS, RULES OF INTERPRETATION, AND CONSTRUCTION**

**Section 1.01 Defined Terms.** For the purpose of the Plan, the following terms set forth in this Article I shall have the respective meanings set forth below.

"**Administrative Claim**" means any Claim under §§ 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation: (a) the actual, necessary costs and expenses incurred by the Debtors after the Petition Date of preserving the Estate or operating the Debtors' business; (b) Professional Fee Claims; (c) US Trustee Fees; and (d) any Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court.

"**Allowed**," with respect to a Claim, means the extent to which a Claim: (a) is not disallowed or expunged by stipulation or Final Order of the Bankruptcy Court; (b) is not objected to within the period fixed by the Plan or established by the Bankruptcy Court, if the Claim (i) was scheduled by the Debtors pursuant to the Bankruptcy Code and the Bankruptcy Rules in a liquidated amount and not listed as contingent, unliquidated, or disputed, or (ii) was timely filed (or deemed timely filed) pursuant to the Bankruptcy Code, the Bankruptcy Rules, or any applicable orders of the Bankruptcy Court; (c) for which an objection has been filed, but such objection has been withdrawn or determined by a Final Order (but only to the extent such Claim has been allowed); (d) is determined to be valid by the Debtors, the Reorganized Debtor, or the Plan Administrator; or (e) is otherwise allowed by Final Order, including, without limitation, the Confirmation Order, after notice and a hearing. A proof of Claim that is not timely filed (or not deemed timely filed) shall not be Allowed for purposes of distribution under the Plan.

"**Assets**" means all assets of the Debtors of any nature whatsoever, including, without limitation, all property of the Estate pursuant to Bankruptcy Code §§ 541, Cash (including proceeds from the sale of Assets), Causes of Action, accounts receivable, tax refunds, claims of right, interests and property, real and personal, tangible and intangible, and proceeds from all of the foregoing.

"**Ballot**" means the ballots accompanying the Disclosure Statement upon which holders of Impaired Claims entitled to vote may indicate their acceptance or rejection of the Plan, which must be actually received on or before the Voting Deadline in accordance with the procedures governing the solicitation process.

"**Bankruptcy Code**" means title 11 of the United States Code, as now in effect or as hereafter amended, as applicable to the Chapter 11 Case.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Eastern District of New York which has jurisdiction over the Chapter 11 Case.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code, and any applicable rules of the Bankruptcy Court, as amended, from time to time and as applicable to the Chapter 11 Case.

1

"**Bar Date**" means such date(s) established by the Bankruptcy Court as the last date for filing proofs of claim or requests for allowance of Administrative Claims, as applicable, against the Debtors.

"**Business Day**" means any day except a Saturday, Sunday, or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

"**Cash**" means cash and cash equivalents denominated in U.S. dollars.

"**Causes of Action**" means any and all claims, rights, and causes of action that could have been brought or can be brought now by or on behalf of the Debtors or the Estate arising before, on, or after the Petition Date, whether they are known or unknown, direct or indirect, reduced or not reduced to judgment, disputed or undisputed, suspected or unsuspected, in contract or in tort, at law or in equity or under any theory of law, including, but not limited to: (a) those referred to in the Disclosure Statement; (b) derivative claims; (c) rights of setoff or recoupment; and (d) claims on contracts or breaches of duty imposed by law.

"**Chapter 11 Case**" means the cases commenced under Chapter 11 of the Bankruptcy Code by the Debtors, consolidated under Chapter 11 Case No.25-71444 (LAS), currently pending before the Bankruptcy Court.

"**Claim**" means a "claim," as defined in Bankruptcy Code § 101(5), against the Debtors, whether or not asserted, whether or not the facts or legal bases therefor are known or unknown, and specifically including, without express or implied limitation, any rights under Bankruptcy Code §§ 502(g), 502(h), or 502(i), any claim of a derivative nature, any potential or unmatured contract claims, and any other contingent claim.

"**Class**" means a category of Claims or Equity Interests set forth in Article III of the Plan.

"**Confirmation Date**" means the date on which the Confirmation Order is entered on the docket of the Chapter 11 Case, as it might be amended or supplemented.

"**Confirmation Hearing**" means the hearing or hearings conducted by the Bankruptcy Court to consider confirmation of the Plan as it may be modified hereafter from time to time.

"**Confirmation Order**" means the order(s) confirming the Plan and approving the transactions contemplated hereunder.

"**Creditors' Committee**" means the Official Committee of Unsecured Creditors appointed by the office of the United States Trustee consisting of N.Y. Cabletek, LLC, SmartDev, S.A. and Work Zone Contractors and represented by Porzio Bromberg & Newman, P.C.

"**Debtors**" means Excell Communications, Inc., Telecable, Inc. and E-Fleet Services Corp. "**DIP Lender**" means GGTF, in its capacity as lender under the DIP Loan Agreement.

"**DIP Loan**" means the loans advanced and other obligations incurred under or in connection with the DIP Loan Agreement approved pursuant to the DIP Order, including all principal, accrued and unpaid interest, fees, expenses and other obligations thereunder.

2

"**DIP Loan Agreement**" means the Senior Secured Superpriority Debtor in Possession Loan and Security Agreement, dated as of October 24, 2025, among the Debtors and the DIP Lender.

"**DIP Order**" means the *Final Order Pursuant to Bankruptcy Code sections 105(a), 361, 362, 363, 364 and 507 and Federal Rules 2002, 4001 (i)(I) Approving and Authorizing Senior Secured Post-petition Financing; (II) Granting Liens and Providing Super-priority Administrative Expense Status; and (III) Modifying the Automatic Stay* entered by the Court on October 24, 2025 (ECF Dckt. No. 216).

"**DIP Term Out Facility**" shall have the meaning set forth in section 2.04 of the Plan.

"**Disclosure Statement**" means the disclosure statement for the Plan filed with the Bankruptcy Court by the Debtors in accordance with Bankruptcy Code § 1125, including all exhibits and schedules thereto, as it may be amended from time to time.

"**Disclosure Statement Order**" means the order of the Bankruptcy Court approving the Disclosure Statement as containing adequate information pursuant to Bankruptcy Code § 1125.

"**Disputed Claim**" means a Claim that is not an Allowed Claim nor a disallowed Claim, and is any Claim, proof of which was filed, or an Administrative Claim or other unclassified Claim, which is the subject of a dispute under the Plan or as to which Claim the Debtors, the Reorganized Debtor, or the Plan Administrator (with respect to General Unsecured Claims) has interposed a timely objection and/or request for estimation in accordance with Bankruptcy Code § 502(c) and Bankruptcy Rule 3018 or other applicable law, which dispute, objection, and/or request for estimation has not been withdrawn or determined by a Final Order, and any Claim, proof of which was required to be filed by order of the Bankruptcy Court, but as to which a proof of claim was not timely or properly filed (or deemed timely or properly filed).

"**Disputed Claims Reserve Account**" means (a) with respect to Disputed General Unsecured Claims, an account or accounts established by the Reorganized Debtor or the Plan Administrator and funded from the New Value Contribution and administered by the Plan Administrator for payment of Disputed General Unsecured Claims that become Allowed Claims after the Effective Date, which shall hold Cash and/or other Assets as applicable for the benefit of the holders of Disputed General Unsecured Claims (the "GUC Disputed Claims Reserve"), and (b) with respect to all other Disputed Claims, a separate account or accounts established and funded by the Reorganized Debtor and administered by the Reorganized Debtor for payment of such Disputed Claims that become Allowed Claims after the Effective Date, which shall hold Cash and/or other Assets as applicable for the benefit of the holders of such Disputed Claims (the "Reorganized Debtor Disputed Claims Reserve").

"**Distribution**" means the distribution to holders of Allowed Claims in accordance with the Plan of any Assets, or other consideration distributed under Article IV herein.

"**Distribution Address**" means the address set forth in the applicable proof of claim, as such address may have been updated pursuant to Bankruptcy Rule 2002(g). If no proof of claim is or has been filed in respect of a particular Claim, "Distribution Address" means the address set forth in the Debtors' Schedules, as such address may have been updated pursuant to Bankruptcy Rule 2002(g).

3

"**Distribution Date**" means any date on which the Reorganized Debtor or the Plan Administrator determines that a Distribution, under or in accordance with the Plan, should be made to holders of Allowed Claims (or to a particular holder of an Allowed Claim) in light of, for example, resolutions of Disputed Claims, liquidation of Assets (including aggregate recoveries on account of Causes of Action), and the administrative costs of such a Distribution; provided, however, that subject to sufficient Cash being available, there shall be a Distribution Date on the anniversary of the Effective Date for the life of the Plan.

"**Effective Date**" means a Business Day, selected by the Debtors on which all conditions to the Effective Date have been satisfied or, if permitted, waived by the Debtors, and on which no stay of the Confirmation Order shall be pending.

"**Equity Interest**" means the equity interests in the Debtors owned solely and wholly by GGTF as of the Petition Date.

"**ERISA**" means the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1301-1461 (2018 & Supp. III 2021).

"**Estate**" means the estates of the Debtors as created under Bankruptcy Code § 541.

"**Exhibit Filing Date**" means the last date by which forms of the exhibits to the Plan shall be filed with the Bankruptcy Court, which date shall be not later than 5 days prior to the deadline for objections to approval of the Disclosure Statement on a final basis and confirmation of the Plan.

"**Final Order**" means an order as to which the time to appeal, petition for *certiorari*, or move for re-argument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for re-argument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, move for re-argument, or rehearing shall have been waived in writing or, in the event an appeal, writ of *certiorari*, or re-argument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or *certiorari* has been denied, or from which re-argument or rehearing was sought, and the time to take any further appeal, petition for *certiorari*, or motion for re-argument or rehearing shall have expired.

"**General Unsecured Claim**" means a Claim that is not an Administrative Claim, a Professional Fee Claim, a Priority Tax Claim, a Secured Claim, or a Priority Claim.

"**General Unsecured Claims Cash Distribution**" means the Cash in the aggregate amount of $1,300,000.00 (inclusive of $100,000.00 that may be used, at the Plan Administrator's election, to pay for post-confirmation claims objections or related post-Effective Date administrative work, including making Distributions, or included in the general unsecured creditor Distribution) that shall be distributed to holders of Allowed General Unsecured Claims, to be funded from the New Value Contribution on the Effective Date and deposited into the GUC Distribution Account.

"**GGTF"** means Global Growth Tech Fund, *Fundo de Capital de Risco Fechado*.

4

"**Impaired**" means any Class of Claims or Equity Interests that is impaired within the meaning of Bankruptcy Code § 1124.

"**Lien**" means any charge against, security interest in, encumbrance upon, or other interest in property to secure payment of a debt or performance of an obligation.

"**Litigation Claim**" means any prepetition Claim against the Debtors relating to arbitrations, mediations, lawsuits, and other prosecutions.

"**New Board**" means the initial board of directors of the Reorganized Debtor.

"**New Value Contribution**" means the lump sum payment of $1,300,000.00 by GGTF and the Debtors on the Effective Date for the benefit of holders of Allowed General Unsecured Claims, the conversion of DIP Loans to the DIP Term Out Facility, and the Debtors' obligation to satisfy all Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Priority Claims, agreed to by the Debtors as of the Effective Date in order to fund the Distributions to Allowed Claims in Class 3 and to satisfy all unclassified Claims contemplated hereunder.

"**Other Secured Claims**" means secured claims asserted by Altec Capital Services, LLC.

"**Person**" means an individual, corporation, general partnership, limited partnership, limited liability company, limited liability partnership, association, joint venture, trust, estate, unincorporated organization, governmental authority, governmental unit or any agency or political subdivision thereof, or any entity of whatever nature.

"**Petition Date**" means April 16, 2025, the date upon which the Chapter 11 petitions of the Debtors were filed with the Bankruptcy Court.

"**Plan**" means this reorganization plan under Chapter 11 of the Bankruptcy Code, including, without limitation, the exhibits, appendices, and schedules hereto to be filed with the Plan Supplement, as such may be altered, amended, or otherwise modified from time to time.

"**Plan "Administrator"**" means Dundon Advisors LLC, as the representative of the Estate for purposes of (a) reconciling, objecting to, and resolving General Unsecured Claims in Class 3, and making Distributions to holders of Allowed General Unsecured Claims, including administering the Disputed Claims Reserve Account and performing related post-Effective Date administrative work with respect to Class 3 Claims, and (b) pursuing, prosecuting, compromising, settling, or abandoning Causes of Action and Preserved Causes of Action on behalf of the Estate for the benefit of holders of Allowed General Unsecured Claims, in each case in consultation with the Reorganized Debtor whose consent to any such settlement of a General Unsecured Claim or Cause of Action shall not be unreasonably withheld. For the avoidance of doubt, all other post-confirmation obligations, including but not limited to the payment of Administrative Claims, Priority Tax Claims, and Priority Claims, post-confirmation reporting, and the payment of US Trustee Fees, shall be the sole responsibility of the Reorganized Debtor. The Plan Administrator's role shall terminate after the later of the date upon which: (i) all General Unsecured Claims in Class 3 have been reconciled and resolved; (ii) all Distributions to holders of Allowed General Unsecured Claims under the Plan are effectuated; (iii) all Causes of Action and Preserved Causes of Action being pursued by the Plan Administrator have been resolved, settled, or abandoned; and (iv) a final

5

decree closing the Chapter 11 Case is entered; provided, however, that the Plan Administrator and the Reorganized Debtor may agree to move for entry of a final decree closing the Chapter 11 Case prior to making all Distributions under the Plan, as allowed under the Bankruptcy Code. The Plan Administrator will be compensated at its standard hourly rate.

"**Plan Supplement**" means the supplemental documents, schedules, and exhibits to the Plan, to be filed by the Debtors no later than the Exhibit Filing Date, containing substantially final forms of, among other things, schedules of rejected executory contracts. The Debtors shall have the right to amend all of the documents contained in, and exhibits to, the Plan Supplement through the Effective Date.

"**Preserved Causes of Action**" shall have the meaning set forth in section 6.03 of the Plan.

"**Priority Claim**" means any Claim entitled to priority pursuant to Bankruptcy Code § 507(a), other than (a) an Administrative Claim, or (b) a Priority Tax Claim.

"**Priority Tax Claim**" means any Claim entitled to priority pursuant to Bankruptcy Code §§ 502(i) and 507(a)(8).

"**Professional Fee Claim**" means a Claim for compensation, indemnification, or reimbursement of expenses pursuant to Bankruptcy Code §§ 328, 330, 331, or 503(b) in connection with the Chapter 11 Case incurred on or after the Petition Date and prior to the Effective Date.

"**Professionals**" mean the attorneys, accountants, financial advisors, and other professionals whose retention in the Chapter 11 Case has been approved by the Bankruptcy Court.

"**Pro Rata Share**" means the proportion that the Allowed Claim bears to the sum of all Allowed Claims, Disputed Claims and Undetermined Claims of that particular Class.

"**Reorganized Debtor**" means the Debtors, or any successor thereto, on or after the Effective Date.

"**Schedules**" means, unless otherwise specified, the respective schedules of assets and liabilities, the list of holders of Equity Interests, and the statements of financial affairs filed by the Debtors in accordance with Bankruptcy Code § 521 and the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended on or prior to the Confirmation Date.

"**Secured Claim**" means any Claim that is secured by a Lien on any Asset of the Debtors, or right of setoff, which Lien or right of setoff, as the case may be, is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, but only to the extent of the value, pursuant to Bankruptcy Code § 506(a), of any interest of the holder of the Claim in property of the Estate securing such Claim.

"**Tax Code**" means the Internal Revenue Code of 1986, as amended from time to time.

"**Tirion**" means Tirion Works Management, Inc.

6

"**Unimpaired**" means any Class of Claims or Equity Interests that is not impaired within the meaning of Bankruptcy Code § 1124.

"**US Trustee**" means the office of the United States Trustee for Region 2.

"**US Trustee Fees**" means all fees and charges assessed against the Estate by the US Trustee and due pursuant to section 1930 of title 28 of the United States Code.

"**Voting Deadline**" means the date and time, prevailing Eastern time, established by the Bankruptcy Court.

**Section 1.02 Other Terms.** Any capitalized term used in the Plan and not defined herein that is used in the Bankruptcy Code or Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or Bankruptcy Rules.

**Section 1.03 Rules of Construction.** The meanings set forth herein shall be equally applicable to the singular and plural forms of the terms defined, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and neutral gender. Unless otherwise stated, the words "herein," "hereof," "hereto," "hereunder," and other similar words refer to the Plan as a whole and not to any particular article, section, subsection, clause, paragraph, or portion contained therein. All of the definitions and provisions contained in this Article I are and shall be regarded as integral, substantive, and operative provisions of the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Except as otherwise provided, any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter. The rules of construction set forth in Bankruptcy Code § 102 of shall apply to all of the provisions of the Plan.

**Section 1.04 Exhibits, Supplements, Appendices, and Schedules.** All exhibits, supplements, appendices, and schedules to the Plan, including those filed with the Plan Supplement, are incorporated into and are a part of the Plan as if set forth herein. To the extent that any exhibit, schedule, or Plan Supplement is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the Plan shall control.

**Section 1.05 Controlling Document.** The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided, that, if there is determined any inconsistency between a Plan provision and a provision of the Confirmation Order, the Confirmation Order provision shall govern and such provision shall be deemed a modification of the Plan and shall control and take precedence.

**ARTICLE II**
**TREATMENT OF UNCLASSIFIED CLAIMS**

**Section 2.01 Administrative Claims.**

Subject to the Bar Date and other provisions herein and except to the extent the Debtors or the Reorganized Debtor, as applicable, and the holder of an Allowed Administrative Claim agree to different and less favorable treatment, the Reorganized Debtor shall pay, in full satisfaction and

7

release of such Claim, to each holder of an Allowed Administrative Claim, Cash, in an amount equal to such Allowed Administrative Claim, on the later of (i) the Effective Date, and (ii) the first Business Day after the date that is 60 calendar days after the date on which such Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practicable. Allowed Administrative Claims shall be paid from available Cash. The Debtors shall be responsible for ensuring the payment in full of all Allowed Administrative Claims. For the avoidance of doubt, Professional Fee Claims shall be Allowed Administrative Claims.

### Section 2.02 Administrative Claim Bar Date.

(a)    **General Administrative Claim Bar Date Provisions.** Except as provided below for (a) Professionals requesting compensation or reimbursement for Professional Fee Claims, and (b) US Trustee Fees, requests for payment of Administrative Claims must be filed no later than 30 days after notice of entry of the Confirmation Order is filed with the Bankruptcy Court or such later date as may be established by Order of the Bankruptcy Court. Holders of Administrative Claims who are required to file a request for payment of such Claims and who do not file such requests by the applicable Bar Date, shall be forever barred from asserting such Claims against the Debtors or their property, and the holder thereof shall be enjoined from commencing or continuing any action, employment of process, or act to collect, offset, or recover such Administrative Claim.

(b)    **Professional Fee Claim Bar Date.** All Professionals or other Persons requesting compensation or reimbursement of Professional Fee Claims for services rendered before the Effective Date (including compensation requested by any Professional or other entity for making a substantial contribution in the Chapter 11 Case) shall file an application for final allowance of compensation and reimbursement of expenses no later than 45 days after the Effective Date (the "**Fee Claim Deadline**"). Objections to applications of Professionals or other entities for compensation or reimbursement of expenses must be filed no later than 21 days after any such application is filed. All compensation and reimbursement of expenses allowed by the Bankruptcy Court shall be paid by the Reorganized Debtor to the applicable Professional or other entities requesting compensation or reimbursement of Professional Fee Claims as soon as is practicable after any such Professional Fee Claims are allowed, but in no event less than 30 days after entry of the applicable Bankruptcy Court order. Each Professional or other Person that intends to seek payment on account of a Professional Fee Claim shall provide the Debtors with a statement, by no later than the Confirmation Date, of the amount of estimated unpaid fees and expenses accrued by such Professional up to the date of such statement, the amount of fees and expenses that each such Professional expects to incur from such date through the Effective Date, and the amount of fees and expenses that each such Professional expects to incur from such date in connection with the preparation and prosecution of each such Professional's final fee application.

(c)    **US Trustee Fees.** The Reorganized Debtor shall pay all US Trustee Fees, in accordance with the terms of the Plan, until such time as the Bankruptcy Court enters a final decree closing the Chapter 11 Case.

**Section 2.03 Priority Tax Claims.** The Debtors shall be responsible for ensuring the payment in full of all Allowed Priority Tax Claims. Holders of Allowed Priority Tax Claims shall receive Distributions over the life of the Plan or maximum time allowed in accordance with section 1129(a) of the Bankruptcy Code, plus interest from and after the Petition Date at the applicable

8

federal rate, state rate, or as agreed upon by the parties, until paid in full. Notwithstanding anything contained herein to the contrary, the interest rate applicable to New York State's priority tax claim will be nine (9%) percent.

**Section 2.04 DIP Loan.** In connection with the New Value Contribution, the DIP Lender has agreed as of the Effective Date that its Claims in respect of the DIP Loan shall receive treatment different from that specified in Section 1129(a)(9)(A) and the DIP Loan Agreement and DIP Order such that the DIP Loans shall not be repaid in full in Cash on the Effective Date. On the Effective Date, the outstanding DIP Loans shall automatically be converted into a term loan facility between the Reorganized Debtor and the DIP Lender maturing on the date that is three (3) years after the Effective Date (the "**DIP Term Out Facility**"). Except as modified as set forth herein, the DIP Term Out Facility shall be on the same terms and conditions as set forth in the DIP Loan Agreement, including with respect to interest rates, collateral and Lien priority. On or promptly following the Effective Date, the Reorganized Debtor and DIP Lender shall enter into such amendments, amendments and restatements, or other documentation as reasonably necessary to evidence the DIP Term Out Facility consistent with this Plan, provided that the effectiveness of the DIP Term Out Facility shall not be conditioned upon execution or further approval of such documentation.

### ARTICLE III
### CLASSIFICATION AND
### TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

**Section 3.01 General Notes on Classification and Treatment of Classified Claims and Equity Interests.** Pursuant to Bankruptcy Code §§ 1122 and 1123, Claims and Equity Interests (other than Claims arising under Bankruptcy Code §§ 507(a)(2) or 507(a)(8), which Claims do not require classification pursuant to Bankruptcy Code § 1123(a) and are receiving the treatment set forth in Article II) are classified for all purposes, including, without limitation, voting, confirmation, and distribution pursuant to the Plan, as set forth herein. A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.

**Section 3.02 Special Provision Governing Unimpaired Claims.** Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtors or the Reorganized Debtor, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

**Section 3.03 Classification and Treatment of Classified Claims and Equity Interests.**

| Class | Treatment | Entitled to Vote |
|---|---|---|
| **1 Other Priority Claim** | Unimpaired | No –Deemed to Accept |
| **2(a) Secured Tax Claims** | Unimpaired | No – Deemed to Accept |
| **2(b) Other Secured Claims** | Unimpaired | No – Deemed to Accept |
| **3 General Unsecured Claims** | Impaired | Yes |
| **4 Equity Interests** | Unimpaired | No – Deemed to Accept |
| | | |

9

**(a)     Class 1: Other Priority Claims.**

(i)     <u>Class 1 Treatment</u>. Except to the extent holders of Allowed Other Priority Claims agree to less favorable treatment, in full and final satisfaction of such Claims, each holder of an Allowed Other Priority Claim shall receive Distributions in an amount equal to the amount of such Allowed Other Priority Claim over a five (5) year period in accordance with Bankruptcy Code § 1129(a), to be funded by the Debtors, plus interest from and after the Petition Date at the applicable federal rate until paid in full.

(ii)     <u>Class 1 Voting</u>. Holders of Allowed Priority Claims in Class 1 are not Impaired under the Plan. Each holder of an Allowed Priority Claim is conclusively presumed to accept the Plan under Bankruptcy Code § 1126(f) and is therefore not entitled to vote to accept or reject the Plan in its capacity as a holder of such Claim.

**(b)     Class 2(a): Secured Tax Claims.**

(i)     <u>Class 2(a) Treatment</u>. Except to the extent holders of Allowed Other Secured Tax Claims agree to less favorable treatment, in full and final satisfaction of such Claims, the holders of Allowed Class 2(a) Claims shall receive Distributions in an amount equal to the amount of such Allowed Class 2(a) Claims over the life of the Plan or maximum time allowed in accordance with section 1129(a) of the Bankruptcy Code, to be funded by the Debtors, plus interest from and after the Petition Date at the applicable federal rate, until paid in full.

(ii)     <u>Class 2(a) Voting</u>. The holders of Allowed Claims in Class 2(a) are not Impaired under the Plan. The holders of the Allowed Secured Claims in Class 2(a) are conclusively presumed to accept the Plan under Bankruptcy Code § 1126(f) and therefore are not entitled to vote to accept or reject the Plan in their capacity as a holder of such Claim.

**(c)     Class 2(b): Other Secured Claims.**

(i)     <u>Class 2(b) Treatment</u>. Except to the extent holders of Allowed Claims in Class 2(b) agree to less favorable treatment, in full and final satisfaction of such Claims, the holders of Allowed Claims in Class 2(b), Other Secured Claims, shall either (i) receive delivery of collateral securing such Claims or the net proceeds, if any, of the sale or other distribution of the Assets on which such holders have a Lien; or (ii) be paid their Allowed Claims over the life of the Plan.

(ii)     <u>Merchants</u> Fleet Post-Petition Financing Claim. Merchants Automotive Group, Inc. and Principle Merchants Leasing, Ltd. (collectively, "Merchants Fleet") and the Debtors are parties to a post-petition agreement pursuant to which Merchants Fleet provides certain financing to the Debtors (the "Merchants Financing Agreement"), which was approved by the Court's *Final Order Approving Stipulation Authorizing The Debtors To Obtain Postpetition Secured Financing From Merchants Fleet* [Docket No. 94] (the "Merchants

10

Financing Order"). The Debtors and Merchants Fleet have been performing and intend to continue to perform their respective obligations in connection with the Merchants Financing Agreement as approved by the Merchants Financing Order in the ordinary course of business hereafter including after confirmation of the Plan and the Effective Date of the Plan. Accordingly, notwithstanding anything in the Plan to the contrary, the Merchants Financing Agreement and any claims held by Merchants Fleet in connection with the Merchants Financing Agreement shall not generally be subject to the provisions of the Plan including, for illustrative purposes and without limitation, inter alia, (i) the discharge, release and injunction provisions contained in Article VI of the Plan, (ii) the Bar Date with respect to Administrative Claims contained in Section 2.02 of the Plan, (iii) the claim classification and claim administration procedures contained in Articles III and V of the Plan, (iv) the assumption and rejection provisions relating to executory contracts and leases contained in Article VII of the Plan, and (v) the retention of jurisdiction provisions contained in Article X of the Plan. Rather, it is the intent of the Debtors and Merchants Fleet that the parties respective rights and obligations in connection with the Merchants Financing Agreement shall "ride through" and be unaffected by confirmation of the Plan.

(iii)    Class 2(b) Voting.  The holders of Allowed Claims in Class 2(b) are not Impaired under the Plan. The holders of Allowed Secured Claims in Class 2(b) are conclusively presumed to accept the Plan under Bankruptcy Code § 1126(f) and therefore are not entitled to vote to accept or reject the Plan in their capacity as a holder of such Claim.

**(d)    Class 3: General Unsecured Claims.**

(i)    Class 3 Treatment. Class 3 consists of the Claims of non-priority unsecured creditors. The holders of Allowed Class 3 Claims will receive their ProRata Share of the General Unsecured Claims Cash Distribution, with the initial Distribution to be made on or as soon as reasonably practicable after the Effective Date.

(ii)    Class 3 Voting. Class 3 is Impaired under the Plan. Each holder of an Allowed General Unsecured Claim in Class 3 is entitled to vote to accept or reject the Plan.

**(e)    Class 4: Equity Interests.**

(i)    Class 4 Treatment. Class 4 consists of the holder of the Equity Interests in the Debtors, GGTF. The holder of Class 4 Interests will receive no Distributions under the Plan on account of its Equity Interest in the Debtors. GGTF will retain its Equity Interest in the Debtors in consideration for making the New Value Contribution.

(ii)    Class 4 Voting. Equity Interests are not Impaired under the Plan, and the holder of the Equity Interest in the Debtors is conclusively deemed to accept the

Plan under Bankruptcy Code §1126(g) and is therefore not entitled to vote to accept or reject the Plan in its capacity as a holder of such Equity Interests.

## ARTICLE IV
## VOTING AND DISTRIBUTIONS UNDER THE PLAN

**Section 4.01 Voting of Claims and Interests.** Class 3 General Unsecured Claims are Impaired and entitled to vote to accept or reject the Plan. Unimpaired Classes are presumed to have accepted the Plan. All classes of Claims and Equity Interests are permitted to object to the Plan or the adequacy of the Disclosure Statement. The Debtors will file and serve one or more notices with respect to approval of the Plan and the Disclosure Statement which will provide a deadline for filing objections and responses to the Plan and Disclosure Statement.

**Section 4.02 Elimination of Vacant Classes.** Any Class of Claims or Equity Interests which does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Equity Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing, shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to Bankruptcy Code § 1129(a)(8).

**Section 4.03 Distributions Under the Plan.** Whenever any Distribution to be made pursuant to the Plan shall be due on a day other than a Business Day, such Distribution shall instead be made on the immediately succeeding Business Day and shall be deemed to have been made on the date due. As of the close of business on the Confirmation Date, there shall be no further changes in the record holders of the Claims for purposes of Distributions under the Plan. The Debtors, Reorganized Debtor, or the Plan Administrator, as applicable, shall have no obligation to recognize any transfer of Claims occurring after the Confirmation Date.

**Section 4.04 Distribution Deadlines.** Any Distribution to be made by the Plan Administrator or the Reorganized Debtor, as applicable, pursuant to the Plan shall be deemed to have been timely made if made within 30 days after the time therefor specified in the Plan or such other agreements. No interest shall accrue or be paid with respect to any Distribution as a consequence of such Distribution not having been made on the date specified therefor herein.

**Section 4.05 Manner of Payment Under the Plan.** Unless the Person receiving a payment agrees otherwise, any payment in Cash to be made by the Plan Administrator or the Reorganized Debtor, as applicable, shall be made by check drawn on a domestic bank or by automated clearinghouse transfer.

**Section 4.06 De Minimis Distributions.** The Plan Administrator or the Reorganized Debtor, as applicable, shall not be required to make any Cash payment of less than twenty-five dollars ($25.00) with respect to any Claim unless a request therefor is made in writing to the Plan Administrator or the Reorganized Debtor, as applicable, on or before 60 days after the later of the Effective Date or the date on which the Claim becomes an Allowed Claim. Any *de minimis* Distributions of less than twenty-five dollars ($25), not subject to a timely request for payment shall revert to the Reorganized Debtor.

**Section 4.07 Unclaimed Property.** All Distributions to any holder of an Allowed Claim shall be made at the Distribution Address unless the Debtors, Reorganized Debtor and/or the Plan Administrator, as applicable, have been notified in writing of a change of address. If any Distribution to any holder of an Allowed Claim is returned as undeliverable, no further Distributions to such holder shall be made unless and until the Plan Administrator is notified of such holder's then current address, at which time all eligible missed Distributions shall be made to such holder, without interest. All demands for undeliverable Distributions shall be made on or before 60 days after the date such undeliverable Distribution was initially made. Thereafter, the amount represented by such undeliverable Distribution shall irrevocably revert to the Reorganized Debtor. Any entitlement of any holder of any Claim to such Distributions shall be extinguished and forever barred.

**Section 4.08 Time Bar to Cash Payments.** Checks issued by the Plan Administrator or the Reorganized Debtor, as applicable, in respect of Allowed Claims shall be null and void if not negotiated within 60 days after the date of issuance thereof. Requests for reissuance of any check shall be in writing to the Plan Administrator or the Reorganized Debtor, as applicable, by the holder of the Allowed Claim to whom such check originally was issued. Any such written claim in respect of such a voided check must be received by the Plan Administrator or the Reorganized Debtor, as applicable, on or before 60 days after the expiration of the 60-day period following the date of issuance of such check. Thereafter, the amount represented by such voided check shall irrevocably revert to the Reorganized Debtor. Any Claim in respect of such voided check shall be discharged and forever barred from assertion against the Debtors, the Estate, the Reorganized Debtor, or the Plan Administrator.

## ARTICLE V
## IMPLEMENTATION OF PLAN

**Section 5.01 Implementation.** The Reorganized Debtor, with the assistance of the Plan Administrator with respect to General Unsecured Claims, will implement the Plan in a manner consistent with the terms and conditions set forth in the Plan and the Confirmation Order. On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**Section 5.02 Funding for the Plan.** The Plan will be funded by the New Value Contribution deposited on the Effective Date for the benefit of unsecured creditors, from Cash on hand and revenue generated from business operations, as well as the proceeds from any other Assets available to fund the Plan. On the Effective Date, the lump sum payment in the amount of $1,300,000 from the New Value Contribution shall be deposited into a segregated account designated by and under the control of the Plan Administrator (the "GUC Distribution Account"), separate and apart from the Reorganized Debtor's operating accounts, for the exclusive benefit of holders of Allowed General Unsecured Claims. The Debtors shall be responsible for satisfying all Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Priority Claims in full.

13

**Section 5.03 Restructuring Transactions.** On the Effective Date, or as soon as reasonably practicable thereafter, the Reorganized Debtor may take all actions and execute and deliver any and all documents as may be necessary or appropriate to affect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the transactions contemplated by the New Value Contribution, and the Confirmation Order shall constitute approval thereof by the Court.

**Section 5.04 New Board.** The composition of the New Board or managers of the Reorganized Debtor and officers of the Reorganized Debtor shall be disclosed before the Confirmation Hearing in accordance with Bankruptcy Code §1129(a)(5). Except as otherwise provided in the Plan Supplement, the officers of the Reorganized Debtor immediately before the Effective Date shall serve as the initial officers of the Reorganized Debtor on and after the Effective Date.

**Section 5.05 Vesting of Assets in the Debtor.** As of the Effective Date, pursuant to the provisions of Bankruptcy Code §§ 1141(b) and (c), all Assets shall vest in the Reorganized Debtor free and clear of all Claims, Liens, encumbrances, charges, Equity Interests, and other interests, except as otherwise expressly provided in the Plan or the Confirmation Order, and subject to the terms and conditions of the Plan and the Confirmation Order.

**Section 5.06 Continuing Existence.** From and after the Effective Date, the Debtors shall continue in existence as the Reorganized Debtor in accordance with the applicable laws of the jurisdiction in which it is organized or incorporated for all purposes, including, among other things: (a) enforcing and prosecuting claims, interests, rights, and privileges of the Debtors including, without limitation, prosecuting Causes of Action and Preserved Causes of Action (subject to the Plan Administrator's authority with respect thereto as set forth herein); (b) resolving Disputed Claims; (c) administering the Plan; (d) filing appropriate tax returns and refund requests; and (e) performing all such other acts and conditions required by and consistent with consummation of the Plan.

**Section 5.07 Notice of Effective Date.** Not later than five (5) Business Days following the Effective Date, the Debtors shall file a notice of the occurrence of the Effective Date with the Bankruptcy Court.

**Section 5.08 Employee Matters and Retiree Benefits.** Unless otherwise set forth in the schedule of rejected executory contracts and unexpired leases included in the Plan Supplement, all material employee compensation and benefit plans, and employment, severance, retirement, indemnification, and other similar employee-related agreements or arrangements in place as of the Effective Date with the Debtors shall be assumed by the Reorganized Debtor and shall remain in place after the Effective Date, as such agreements may be amended by agreement between the beneficiaries of such agreements and the Debtors or, after the Effective Date, the Reorganized Debtor. Nothing in the Plan shall limit, diminish, or otherwise alter the Reorganized Debtor's defenses, Claims, Causes of Action, or other rights with respect to any such contracts, agreements, policies, programs, and plans. Notwithstanding the foregoing, pursuant to Bankruptcy Code § 1129(a)(13), on and after the Effective Date, all retiree benefits (as that term is defined in Bankruptcy Code § 1114), if any, shall continue to be paid in accordance with applicable law.

**Section 5.09**    **Summary of Pension Obligations.**

The Debtors are the contributing sponsor of a pension plan (the "**Pension Plan**"). 29 U.S.C. § 1301(a)(13). The Pension Plan is covered by Title IV of ERISA.

Under the Plan, the Reorganized Debtor will assume and continue to maintain the Pension Plan. After the Effective Date, the Reorganized Debtor shall, in the ordinary course of its business, as and to the extent required by the Pension Plan's governing documents and in accordance with applicable non-bankruptcy law: (i) satisfy the minimum funding requirements to the Pension Plan under 26 U.S.C. §§ 412 and 430 and 29 U.S.C. §§ 1082 and 1083; (ii) pay all required premiums, if any, owed to PBGC under 29 U.S.C. §§ 1306 and 1307, for the Pension Plan; and (iii) administer the Pension Plan in accordance with the applicable provisions of ERISA and the Internal Revenue Code.

With respect to the Pension Plan, no provision of the Plan, Confirmation Order, or any other document filed in this Chapter 11 Case shall be construed to discharge, release, limit, or relieve any individual from any claim by the Pension Plan for breach of any fiduciary duty under ERISA, including prohibited transactions, with respect to the Pension Plan, subject to any and all applicable rights and defenses of such parties, which are expressly preserved. The Pension Plan shall not be enjoined or precluded from enforcing such fiduciary duty or related liability by any of the provisions of the Disclosure Statement and Plan, Confirmation Order, Bankruptcy Code, or other document filed in this Chapter 11 case. For the avoidance of doubt, the Reorganized Debtor shall not be released from any liability or obligation under ERISA, the Internal Revenue Code, and any other applicable law relating to the Pension Plan.

**Section 5.10 Corporate Action.** The Plan will be administered by the Reorganized Debtor, with the Plan Administrator responsible for reconciling General Unsecured Claims, making Distributions to holders of Allowed General Unsecured Claims, and pursuing Causes of Action and Preserved Causes of Action for the benefit of holders of Allowed General Unsecured Claims, and all actions taken under the Plan in the name of the Debtors shall be taken through the Reorganized Debtor, or the Plan Administrator with respect to General Unsecured Claims and Causes of Action, as applicable.

**Section 5.11 Appointment of the Plan Administrator.** The Confirmation Order shall provide for the appointment of Dundon Advisors LLC as Plan Administrator. The Plan Administrator shall be deemed the Estate's representative in accordance with Bankruptcy Code § 1123 for purposes of reconciling General Unsecured Claims, making Distributions to holders of Allowed General Unsecured Claims, and to the extent not pursued by the Reorganized Debtor, , and to the extent not pursued by the Reorganized Debtor, pursuing Causes of Action and Preserved Causes of Action on behalf of the Estate for the benefit of holders of Allowed General Unsecured **that will be identified on a schedule to be filed as part of the Plan Supplement (the "Plan Administrator Causes of Action")**, and shall have the powers, authority, and responsibilities specified in the Plan with respect thereto.

**Section 5.12 Powers and Duties of the Plan Administrator.** The Plan Administrator will act in a fiduciary capacity with respect to the reconciliation of General Unsecured Claims, the making of Distributions to holders of Allowed General Unsecured Claims, and the prosecution of

Causes of Action and Preserved Causes of Action on behalf of the Estate for the benefit of holders of Allowed General Unsecured Claims, subject to the provisions of the Plan. The powers and duties of the Plan Administrator shall be limited to the following:

      (a)     making Distributions of Cash to holders of Allowed General Unsecured Claims and paying obligations incurred by the Plan Administrator in connection therewith in accordance with the Plan;

      (b)     engaging professional persons necessary to assist the Plan Administrator with respect to the Plan Administrator's responsibilities;

      (c)     executing and delivering all documents and taking all actions necessary to effectuate Distributions to holders of Allowed General Unsecured Claims;

      (d)     paying the reasonable and necessary fees and expenses of the professional persons engaged by the Plan Administrator in connection with the reconciliation of General Unsecured Claims and making Distributions;

      (e)     objecting to, compromising, and settling General Unsecured Claims; investigating, commencing, prosecuting, compromising, settling, or abandoning Causes of Action and Preserved Causes of Action on behalf of the Estate for the benefit of holders of Allowed General Unsecured Claims, including retaining and compensating counsel in connection therewith;

      (f)     such other powers as may be vested in or assumed by the Plan Administrator pursuant to the Plan or other Order of the Bankruptcy Court, solely as needed or appropriate to carry out the Plan Administrator's duties with respect to General Unsecured Claims, Distributions thereon, and Causes of Action and Preserved Causes of Action.

For the avoidance of doubt, all post-confirmation obligations not expressly assigned to the Plan Administrator herein, including but not limited to the payment of Administrative Claims, Priority Tax Claims, Priority Claims, US Trustee Fees, and Professional Fee Claims, the preparation and filing of post-confirmation reports and US Trustee quarterly reports, the administration of executory contracts and unexpired leases, and all other operational and administrative matters of the Reorganized Debtor, shall be the sole responsibility of the Reorganized Debtor. Net proceeds recovered by the Plan Administrator from Causes of Action and Preserved Causes of Action, after deduction of all reasonable costs and expenses of prosecution, shall be distributed to holders of Allowed General Unsecured Claims in accordance with the Plan.

The Reorganized Debtor shall cooperate with the Plan Administrator in the performance of the Plan Administrator's duties, including providing reasonable access to the Debtors' books, records, and other documents and information necessary for the Plan Administrator to reconcile and resolve General Unsecured Claims, make Distributions to holders of Allowed General Unsecured Claims, and investigate and pursue Causes of Action and Preserved Causes of Action.

      **Section 5.13    Retention of Professionals.** The Plan Administrator shall have the right to retain the services of attorneys and accountants that are necessary to assist the Plan Administrator in the performance of its duties as Plan Administrator or otherwise under this Plan. The Plan

16

Administrator is not obligated to retain the services of the Debtors' Professionals retained during the Chapter 11 Case and, unless otherwise agreed upon by and among the Plan Administrator, the Reorganized Debtor and the Professionals, the Professionals shall seek final allowance and payment of any fees and expenses incurred, on notice and a hearing, consistent with the Plan, the Bankruptcy Code and other applicable orders and guidelines. The reasonable fees and expenses of such professionals and the additional expenses of the Plan Administrator incurred in the performance of its duties as Plan Administrator under this Plan shall be paid by the Reorganized Debtor and shall not be subject to the approval of the Bankruptcy Court.

### Section 5.14 Distributions to Holders of Claims and Equity Interests.

**(a)    Estimation of Claims.** The Reorganized Debtor, or the Plan Administrator with respect to General Unsecured Claims, may, at any time, request that the Bankruptcy Court (or the District Court, if applicable) estimate any Claim not expressly Allowed by the terms of the Plan and otherwise subject to estimation under Bankruptcy Code § 502(c) and for which the Debtors may be liable under the Plan, including any Claim for taxes, to the extent permitted by Bankruptcy Code § 502(c), regardless of whether any party in interest previously objected to such Claim, and the Bankruptcy Court (or the District Court, if applicable) will retain jurisdiction to estimate any Claim pursuant to Bankruptcy Code § 502(c) at any time prior to the time that such Claim becomes an Allowed Claim. If the Bankruptcy Court (or the District Court, if applicable) estimates any contingent or unliquidated Claim, the estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court (or the District Court, if applicable). The foregoing objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated by the Bankruptcy Court (or the District Court, if applicable) and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court (or the District Court, if applicable).

**(b)    No Recourse.** Notwithstanding that the allowed amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount for which after application of the payment priorities established by the Plan there is insufficient Cash to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claim holder shall have recourse against the Debtors, the Estate, the Plan Administrator, or any of their respective professionals, consultants, officers, directors, or members or their successors or assigns, or any of their respective property. Except as specifically stated otherwise in the Plan, nothing in the Plan shall modify any right of a holder of a Claim under Bankruptcy Code § 502(j).

THE ESTIMATION OF CLAIMS AND ESTABLISHMENT OF RESERVES UNDER THIS PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS IF THE ESTIMATION IS MADE SOLELY FOR THE PURPOSE OF ESTIMATING A MAXIMUM LIABILITY FOR RESERVE PURPOSES, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.

**(c)    Automatic Disallowance and Expungement of Certain Claims. On the** Effective Date, all Claims filed after the applicable Bar Date that were required to be filed on or in

17

advance of such Bar Date under its terms, shall be expunged and disallowed without any further notice to or action, order, or approval of the Bankruptcy Court.

**(d)** **Distributions to Holders of Allowed Claims.**

(i)  On the Effective Date, the Debtors shall deposit the General Unsecured Claims Cash Distribution into the GUC Distribution Account in accordance with [Section 5.02] of the Plan. The Plan Administrator shall make Distributions to holders of Allowed General Unsecured Claims from the GUC Distribution Account and, as applicable, from net proceeds of Causes of Action and Preserved Causes of Action deposited therein, in accordance with the Plan. The Plan Administrator shall reserve amounts in the GUC Disputed Claims Reserve in accordance with Section 5.16 of the Plan.

(ii)  On the Effective Date and thereafter as Claims become Allowed, the Reorganized Debtor shall fund Distributions from available Cash to holders of all other Allowed Claims in accordance with Article II and Section 3.03 of the Plan. To the extent Disputed Claims (other than Disputed General Unsecured Claims) exist as of the Effective Date, the Reorganized Debtor shall reserve amounts in the Reorganized Debtor Disputed Claims Reserve in accordance with [Section 5.16] of the Plan.

(iii) Any holder of a Disputed Claim that ultimately becomes an Allowed Claim shall receive no more from the applicable Disputed Claims Reserve Account than the amount reserved with respect to such Claim under [Section 5.16] of the Plan. No holder of a Disputed Claim shall have recourse to the Debtors, the Reorganized Debtor, the Plan Administrator, or any property transferred pursuant to the Plan, other than such holder's entitlement to the applicable Disputed Claims Reserve Account and, with respect to holders of General Unsecured Claims, the General Unsecured Claims Cash Distribution and the GUC Disputed Claims Reserve.

**Section 5.15 Pre-Solicitation Omnibus Claim Objections.**

The Debtors have or shall file one or more omnibus claim objections with the Bankruptcy Court in advance of or concurrently with the commencement of the Plan solicitation process, for the purpose of reducing the asserted claims pool, which the Debtors estimate is more accurately reflected in the range of $12,000,000.00 to $18,000,000.00 as opposed to the current estimate of over $50,000,000.00 reflected on the claims register. To the extent any contested claim objections cannot be resolved prior to the Effective Date, such contested objections may be adjourned and handled post-Effective Date by the Plan Administrator.

**Section 5.16 Disputed Claims Reserve Account.**

**(a)** **Objections to Claims.** Notwithstanding any other provision of the Bankruptcy Code and unless otherwise ordered by the Bankruptcy Court, on and after the Effective Date, the Plan Administrator shall have the exclusive right to make, file, and prosecute objections to and settle, compromise, or otherwise resolve Disputed General Unsecured Claims, and the Reorganized Debtor shall have the exclusive right to make, file, and prosecute objections to and settle, compromise, or otherwise resolve all other Disputed Claims, except that as to applications for allowances of Professional Fee Claims, objections may be made in accordance with the applicable Bankruptcy Rules by parties in interest. Subject to further extension by the Bankruptcy Court, the

Plan Administrator or the Reorganized Debtor, as applicable, shall file and serve a copy of any such objection upon the holder of the Claim to which an objection is made on or before the latest to occur of: (i) 90 days after the Effective Date, (ii) 45 days after a request for payment or proof of claim is timely filed and properly served upon the Plan Administrator or the Reorganized Debtor, as applicable, and (iii) such other date as may be fixed by the Bankruptcy Court either before or after the expiration of such time periods. Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the claimant if the Plan Administrator or the Reorganized Debtor, as applicable, effects service in any of the following manners: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) by first-class mail, postage prepaid, on the signatory of the proof of Claim or other representative identified in the proof of claim or any attachment thereto at the address of the creditor set forth therein; or (c) by first-class mail, postage prepaid, on any counsel that has appeared on the claimant's behalf in the Chapter 11 Case. From and after the Effective Date, the Plan Administrator may settle or compromise any Disputed General Unsecured Claim, and the Reorganized Debtor may settle or compromise any other Disputed Claim, pursuant to the terms of the Plan without further order of the Bankruptcy Court; provided, however, that the Reorganized Debtor shall not settle, compromise, release, or abandon any Cause of Action or Preserved Cause of Action that is being pursued by or could reasonably be pursued by the Plan Administrator for the benefit of holders of Allowed General Unsecured Claims without the prior written consent of the Plan Administrator, which consent shall not be unreasonably withheld.

(b) **Resolution of Disputed Claims.** No Distribution or payment shall be made on account of a Disputed Claim until such Disputed Claim becomes an Allowed Claim.

(c) **Establishment of Disputed Claims Reserve Accounts.** On the Effective Date, the Reorganized Debtor shall establish and fund from available Cash: (i) the GUC Disputed Claims Reserve for the benefit of holders of Disputed General Unsecured Claims, which shall be administered by the Plan Administrator; and (ii) the Reorganized Debtor Disputed Claims Reserve for the benefit of holders of all other Disputed Claims, which shall be administered by the Reorganized Debtor.

(d) **Duties in Connection with Disputed General Unsecured Claims.** The Plan Administrator shall (i) deposit in the GUC Disputed Claims Reserve, Cash in an amount required by order of the Bankruptcy Court or the District Court, if applicable, (including any order estimating the maximum liability of a Disputed General Unsecured Claim) or, in the absence of such order, Cash equal to the Distributions that would have been made to the holder of such Disputed General Unsecured Claim, if it were an Allowed Claim in a liquidated amount, if any, on the Effective Date, (ii) object to, settle, or otherwise resolve Disputed General Unsecured Claims, (iii) make Distributions to holders of Disputed General Unsecured Claims that subsequently become Allowed Claims in accordance with the Plan, and (iv) distribute any remaining assets of the GUC Disputed Claims Reserve, after resolving all Disputed General Unsecured Claims, to the Reorganized Debtor in accordance with the Plan. All amounts to be deposited or reserved pursuant to this Paragraph shall be made from the New Value Contribution.

(e) **Duties in Connection with Other Disputed Claims.** The Reorganized Debtor shall (i) deposit in the Reorganized Debtor Disputed Claims Reserve, Cash in an amount required by order of the Bankruptcy Court or the District Court, if applicable, (including any order

19

estimating the maximum liability of a Disputed Claim other than a Disputed General Unsecured Claim) or, in the absence of such order, Cash equal to the Distributions that would have been made to the holder of such Disputed Claim, if it were an Allowed Claim in a liquidated amount, if any, on the Effective Date, (ii) object to, settle, or otherwise resolve such Disputed Claims, (iii) make Distributions to holders of such Disputed Claims that subsequently become Allowed Claims in accordance with the Plan, and (iv) distribute any remaining assets of the Reorganized Debtor Disputed Claims Reserve, after resolving all such Disputed Claims, for the benefit of the Reorganized Debtor.**.**

(f)       **Distributions when Disputed General Unsecured Claim Is Resolved.** On the next Distribution Date following the date upon which a Disputed General Unsecured Claim is ultimately Allowed, the Plan Administrator shall distribute to the holder of such Claim any amounts attributable to such Claim from the GUC Disputed Claims Reserve, in accordance with the Plan. Any Cash held in the GUC Disputed Claims Reserve for the benefit of a holder of a Disputed General Unsecured Claim, which is subsequently disallowed, in whole or in part, shall revert to the Reorganized Debtor.

(g)       **Distributions when Other Disputed Claim Is Resolved.** On the next Distribution Date following the date upon which any other Disputed Claim is ultimately Allowed, the Reorganized Debtor shall distribute to the holder of such Claim any amounts attributable to such Claim from the Reorganized Debtor Disputed Claims Reserve, in accordance with the Plan. Any Cash held in the Reorganized Debtor Disputed Claims Reserve for the benefit of a holder of a Disputed Claim which is subsequently disallowed, in whole or in part, shall revert to the Reorganized Debtor.

### Section 5.17 Miscellaneous Distribution Provisions.

(a)       **Method of Cash Distributions.** All Distributions to holders of Allowed General Unsecured Claims shall be made by the Plan Administrator from the General Unsecured Claims Cash Distribution, and all other Distributions shall be made by the Reorganized Debtor, or in each case by a duly appointed disbursing agent. Cash payments made pursuant to the Plan shall be in United States dollars by checks drawn on a domestic bank selected by the Reorganized Debtor or the Plan Administrator, as applicable, or by wire transfer from a domestic bank, at the option of the Reorganized Debtor or the Plan Administrator, as applicable; provided, however, that Cash payments made to foreign creditors, if any, holding Allowed Claims may be (but are not required to be) paid, at the option of the Reorganized Debtor or the Plan Administrator, as applicable, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

(b)       **No Distribution in Excess of Allowed Amount of Claim.** Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall receive in respect of such Claim any Distribution in excess of the amount of such Allowed Claim.

(c)       **Minimum Cash Distributions.** The Reorganized Debtor or the Plan Administrator shall not be required to make any distribution of Cash less than $25 to any holder of an Allowed Claim, except as set forth in Section 4.06.

**Section 5.18 Allocation of Payments.** Amounts paid to holders of Allowed Claims in satisfaction thereof shall be allocated first to the principal amounts of such Claims, with any excess allocated to any interest that has accrued on such Claims but remains unpaid.

**Section 5.19 Setoffs.** The Reorganized Debtor, or the Plan Administrator with respect to General Unsecured Claims, is authorized, pursuant to and to the extent permitted by applicable law, to set off against any Allowed Claim and the Distributions to be made on account of such Allowed Claim, the claims, rights, and Causes of Action of any nature that the Debtors, the Reorganized Debtor, or the Plan Administrator (with respect to General Unsecured Claims), as applicable, may hold against the holder of such Allowed Claim. Neither the failure to effect such a setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors, the Reorganized Debtor, or the Plan Administrator of any such claims, rights, and Causes of Action the Debtors, the Reorganized Debtor, or the Plan Administrator, as applicable, may have against such holder.

**Section 5.20 Record Date for Distributions to Holders of Claims.** As of the close of business on the Confirmation Date, there shall be no further changes in the record holders of the Claims for purposes of the Distributions under the Plan. The Debtors, the Reorganized Debtor, and the Plan Administrator shall have no obligation to recognize any transfer of Claims occurring after the Confirmation Date for purposes of the Distributions.

**Section 5.21 Disputed Payments.** If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Plan Administrator or the Reorganized Debtor, as applicable, may, in lieu of making such Distribution to such Person, make such Distribution into an escrow account to be held in trust for the benefit of such holder and such Distribution shall not constitute property of the Debtors or the Estate. Such Distribution shall be held in escrow until the disposition thereof shall be determined by order of the Bankruptcy Court or other court of competent jurisdiction or by written agreement signed by all of the interested parties to such dispute.

**Section 5.22 Withholding Taxes.** The Plan Administrator or the Reorganized Debtor, as applicable, shall not be required to withhold taxes or comply with any applicable reporting requirements. The recipients of Distributions will be required to comply with all applicable laws and regulations concerning the reporting and taxing of the Distributions. If requested by the recipient of a Distribution, the Plan Administrator or the Reorganized Debtor, as applicable, will issue an IRS Form 1099.

**Section 5.23 Request for Expedited Determination of Taxes.** The Debtors or the Reorganized Debtor, as applicable, shall have the right to request an expedited determination under Bankruptcy Code § 505(b) with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

**Section 5.24 Resignation or Removal of Plan Administrator.** If the Plan Administrator resigns or is removed, dies, dissolves, or is incapacitated, a successor Plan Administrator shall be appointed by the Bankruptcy Court, after notice and a hearing, upon motion of the Reorganized Debtor or any party in interest. For the avoidance of doubt, the Reorganized Debtor shall not serve as the Plan Administrator or successor Plan Administrator. No successor Plan Administrator

21

hereunder shall in any event have any liability or responsibility for the acts or omissions of any of his or her predecessors, with the compensation of the successor Plan Administrator to be determined by the Bankruptcy Court.

**Section 5.25 No Agency Relationship.** The Plan Administrator shall not be deemed to be the agent for any of the holders of Claims in connection with the funds held or distributed pursuant to the Plan. The Plan Administrator shall not be liable for any mistake of fact or law or error of judgment or any act or omission of any kind unless it constitutes gross negligence or willful misconduct or breach of fiduciary duty. To the greatest extent permitted by applicable law, the Plan Administrator shall be indemnified and held harmless, including the cost of defending such claims and attorneys' fees in seeking indemnification, by the Estate and the Reorganized Debtor against any and all claims arising out of his or her duties under the Plan, except to the extent his or her actions constitute gross negligence or willful misconduct or breach of fiduciary duty. The Plan Administrator may conclusively rely and shall be fully protected personally in acting upon any statement, instrument, opinion, report, notice, request, consent, order, or other instrument or document which he or she believes to be genuine and to have been signed or presented by the proper party or parties. The Plan Administrator may rely upon information previously generated by the Debtors and such additional information provided to him or her by former employees of the Debtors or the Reorganized Debtor.

**ARTICLE VI**
**EFFECT OF PLAN ON CLAIMS,**
**INTERESTS, AND CAUSES OF ACTION**

**Section 6.01 Binding Effect.** Except as otherwise provided in Bankruptcy Code § 1141(d), on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim or interest against the Debtors who held such Claim or interest at any time during the Chapter 11 Case and its respective successors and assigns, whether or not the Claim or interest of such holder is Impaired under the Plan and whether or not such holder has accepted (or has been deemed to accept) the Plan.

**Section 6.02 Term of Injunctions or Stays.** Unless otherwise provided herein, all injunctions or stays provided for in the Chapter 11 Case pursuant to Bankruptcy Code §§ 105 or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Chapter 11 Case is closed.

**Section 6.03 Retention of Rights and Causes of Action.** Except as provided in the Plan, all present or future rights, claims, or Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtors had prior to the Effective Date against any Person on behalf of the Estate or of the Debtors in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law (collectively, the "**Preserved Causes of Action**") are preserved for the Reorganized Debtor and the Plan Administrator. On the Effective Date, pursuant to Bankruptcy Code § 1123(b)(3), the Reorganized Debtor and the Plan Administrator, each as a representative of the Estate, shall have possession and control of, and shall retain and have the right to enforce and pursue, any and all present or future rights, claims, or Causes of Action, Preserved Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses against any Person and with respect to any rights of the Debtors that arose before or after the Petition Date; provided, that the Plan Administrator's authority to pursue Causes of Action and Preserved Causes of Action shall be

22

exercised for the benefit of holders of Allowed General Unsecured Claims. The Reorganized Debtor and the Plan Administrator have, retain, reserve, and shall be entitled to assert and pursue all such claims, Causes of Action, Preserved Causes of Action, rights of setoff, or other legal or equitable defenses, and all legal and equitable rights of the Debtors not expressly released under the Plan may be asserted after the Effective Date. The Reorganized Debtor or the Plan Administrator, as applicable, may abandon, settle, or release any or all such claims, rights, or Causes of Action or Preserved Causes of Action as it deems appropriate without further order of the Bankruptcy Court. In pursuing any claim, right, Cause of Action, or Preserved Cause of Action, the Reorganized Debtor or the Plan Administrator, as the representative of the Estate, shall be entitled to the extensions provided under Bankruptcy Code § 108. Except as otherwise provided in the Plan, all Causes of Action shall survive confirmation and the commencement or prosecution of Causes of Action or Preserved Causes of Action shall not be barred or limited by any estoppel, whether judicial, equitable, or otherwise.

### Section 6.04 Injunction.

**(a)    Satisfaction of Claims.** The treatment to be provided for Allowed Claims shall be in full satisfaction, settlement, and release of each such Claim.

**(b)    Scope of Injunction.** To the greatest extent permitted by applicable law, except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, all Persons that hold a Claim are permanently enjoined from taking any of the following actions against the Debtors on account of any Claim: (i) commencing or continuing in any manner any action or other proceeding with respect to a Claim or based upon a theory which arises out of such holder's Claim; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order with respect to a Claim; (iii) creating, perfecting, or enforcing any lien or encumbrance with respect to a Claim; (iv) asserting a setoff, right of subrogation, or recoupment of any kind with respect to a Claim, the assets, or other property of the Estate; and (v) commencing or continuing any action that does not comply with or is inconsistent with the Plan. Nothing shall preclude the holder of a Claim from pursuing any applicable insurance after the Chapter 11 Case is closed, from seeking discovery in actions against third parties, or from pursuing third-party insurance that does not cover Claims against the Debtors. For the avoidance of doubt, nothing in this injunction shall limit the rights of a holder of a Claim to enforce the terms of the Plan.

**(c)    Release of Collateral.** Except as expressly provided herein, unless a holder of a Secured Claim receives a return of its Collateral in respect of such Claim under the Plan: (i) each holder of (A) an Allowed Secured Claim; and/or (B) an Allowed Claim that is purportedly secured, on the Effective Date shall (1) turn over and release to the Reorganized Debtor any and all property that secures or purportedly secures such Claim; and (2) execute such documents and instruments as the Reorganized Debtor requires to evidence such claimant's release of such property; and (ii) on the Effective Date, all claims, rights, title, and interest in such property shall revert to the Reorganized Debtor, free and clear of all Claims, including (without limitation) Liens, charges, pledges, encumbrances, and/or security interests of any kind. No Distribution shall be made to or on behalf of any holder of such Claim unless and until such holder executes and delivers to the Reorganized Debtor such release of Liens. Any such holder that fails to execute and deliver such release of Liens within 60 days of any demand thereof shall be deemed to have no further Claim and shall not participate in any Distribution hereunder. Notwithstanding the immediately preceding

23

sentence, a holder of a Disputed Claim shall not be required to execute and deliver such release of Liens until the time such Claim is Allowed or disallowed.

**(d)    Cause of Action Injunction.** On and after the Effective Date, all Persons other than the Reorganized Debtor and the Plan Administrator, each on behalf of the Estate, will be permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively, or otherwise) on account of, or respecting any claim, debt, right, or Cause of Action that the Reorganized Debtor or the Plan Administrator retains authority to pursue in accordance with the Plan.

**Section 6.05 Exculpation.** To the greatest extent permitted by applicable law, and except as otherwise set forth in the Plan, neither the Debtors, the Plan Administrator, the Official Committee of Unsecured Creditors nor any of their respective current or former members, directors, officers, trustees, employees, agents (acting in such capacity), advisors, brokers, attorneys, accountants, nor representatives of any professional employed by any of them shall have or incur any liability to any Person or entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, or any contract, release, or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Plan, the administration of the Plan or property to be distributed pursuant to the Plan, and actions taken or omitted to be taken in connection with the Chapter 11 Case or the operations, monitoring, or administration of the Debtors during the Chapter 11 Case, and the Plan Administrator and any professionals retained by the Plan Administrator to implement the Plan shall have no liability for any action taken or omitted to be taken in connection with or related to the post-confirmation administration of the Estate, except for (i) intentional fraud, gross negligence, or willful misconduct, and (ii) **solely in the case of attorneys, to the extent that such exculpation would violate any applicable professional disciplinary rules, including Disciplinary Rule 6-102 of the Code of Professional Conduct**.

**Section 6.06 Preservation and Application of Insurance.** The provisions of the Plan shall not diminish or impair in any manner the enforceability of coverage of any insurance policies (and any agreements, documents, or instruments relating thereto) that may cover Claims against the Debtors, any directors, trustees, or officers of the Debtors, or any other Person, including, without limitation, insurance for the Debtors' directors and officers.

**Section 6.07 Compromise of Controversies.** Pursuant to Bankruptcy Code §1123 and Bankruptcy Rule 9019, and in consideration for the classification, distribution, and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan, including, without limitation, all Claims arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to, or in connection with the business or affairs of or transactions with the Debtors. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Estate, creditors, and other parties in interest, and are fair, equitable, and within the range of reasonableness.

**Section 6.08 Solicitation of Plan.** As of and subject to the occurrence of the Confirmation Date: (a) the Debtors shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, Bankruptcy Code §§ 1125(a) and (e), and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation and (b) the Debtor and each of its respective directors, officers, employees, affiliates, agents, financial advisors, investment bankers, professionals, accountants, and attorneys shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance, and solicitation will not be, liable at any time for any violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of any securities under the Plan.

**Section 6.09 Post-Confirmation Activity.** As of the Effective Date, the Reorganized Debtor may conclude the implementation of the Plan without supervision of the Bankruptcy Court, other than those restrictions expressly imposed by the Plan and the Confirmation Order. Without limiting the foregoing, the Reorganized Debtor may pay any charges it incurs for taxes, professional fees, disbursements, expenses, or related support services after the Effective Date without application to and approval of the Bankruptcy Court.

**Section 6.10 Estate Release of GGTF and Tirion.** As of the Effective Date, in exchange for GGTF's agreement to contribute the New Value Contribution and other good and valuable consideration, the Debtors, Reorganized Debtor and the Plan Administrator, each for itself and on behalf of the Debtors' Estate, and its and their respective successors and assigns, shall and hereby does, as of the Effective Date, release GGTF and Tirion from any claim or Cause of Action, including without limitation, any Cause of Action under Chapter 5 of the Bankruptcy Code, which it could have asserted as of the Effective Date, except to the extent arising from gross negligence, willful misconduct or fraud. Nothing in this Section shall release any obligation under this Plan.

## ARTICLE VII
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**Section 7.01 Executory Contract and Unexpired Leases.** To the extent not previously rejected or listed on the schedule of rejected executory contracts and unexpired leases filed with the Plan Supplement, but subject to the occurrence of the Effective Date, all of the Debtors' executory contracts and unexpired leases entered into prior to the Petition Date that have not previously been assumed or rejected, and have not been assumed and assigned during the Chapter 11 Case, shall be deemed assumed by the Reorganized Debtor pursuant to the provisions of Bankruptcy Code § 365.

**Section 7.02 Rejection Damages Bar Date.** If rejection, pursuant to the Plan, of an executory contract or unexpired lease, results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the Debtors, the Reorganized Debtor or their property unless a proof of claim is filed with the Bankruptcy Court and served upon the Reorganized Debtor not later than 30 days after the date of service of notice of entry of the Confirmation Order, or such other period set by the Bankruptcy Court. Any such Claim, to the extent Allowed, shall be classified as a Class 3 General Unsecured Claim.

25

**Section 7.03 Notice and Determination of Cure Disputes and Deemed Consent.**

(a)     Any monetary amounts by which any executory contract or unexpired lease to be assumed herein is in default shall be satisfied, under Bankruptcy Code § 365(b)(1), by the Reorganized Debtor promptly upon assumption thereof. At least fourteen (14) days before the Confirmation Hearing, the Debtors shall serve a notice on parties to executory contracts and unexpired leases to be assumed reflecting the Debtors' intention to assume the contract or unexpired lease in connection with the Plan and setting forth the proposed cure amount (if any). If a counterparty to any executory contract or unexpired lease does not receive such a notice, the proposed cure amount for such contract or lease shall be deemed to be zero dollars ($0).

(b)     Disputes pertaining to the assumption of an executory contract or unexpired lease shall be heard by the Bankruptcy Court prior to such assumption and assignment being effective; provided, however, before the Effective Date, the Debtors may settle any dispute regarding a cure amount without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

(c)     Any counterparty to any executory contract or unexpired lease that fails to object timely to the notice of the proposed assumption of such contract or lease or the relevant cure amount within ten (10) days of the service thereof, (i) shall be deemed to have assented to (A) such cure amount, (B) assumption of the applicable contract or lease notwithstanding any provision thereof that purports to (1) prohibit, restrict, or condition the transfer or assignment of such contract or lease, or (2) terminate or permit the termination of a contract or lease as a result of any direct or indirect transfer or assignment of the rights of the Debtors under contract or lease or a change, if any, in the ownership or control to the extent contemplated by the Plan, and shall forever be barred and enjoined from asserting such objection against the Debtors or the Reorganized Debtor or terminating or modifying such contract or lease on account of the transactions contemplated by the Plan, and (ii) shall be forever barred, estopped, and enjoined from challenging the validity of such assumption or the Allowed amount of the cure amount.

(d)     If there is a cure dispute or a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection under the Plan, the Debtors or Reorganized Debtor, as applicable, shall have sixty (60) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease by filing a notice indicating such altered treatment.

**Section 7.04 Payments Related to Assumption or Assignment of Contracts and Leases.** Subject to resolution of any cure dispute, all cures shall be satisfied by the Debtors or the Reorganized Debtor, as applicable, upon assumption of the underlying contracts and unexpired leases. Assumption of any executory contract or unexpired lease pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the cure amount, whether monetary or nonmonetary, including defaults of provisions relating to change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the effective date of the assumption or assumption and assignment, as applicable. Any proofs of claim filed with respect to any executory contract or unexpired lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other entity, upon the deemed assumption of such contract or unexpired lease.

**Section 7.05 Effect of Post-Confirmation Rejection.** The entry by the Bankruptcy Court on or after the Confirmation Date of an order authorizing the rejection of an executory contract or unexpired lease entered into prior to the Petition Date shall result in such rejection being a prepetition breach under Bankruptcy Code §§ 365(g) and 502(g).

**Section 7.06 Regions Bank Commercial Card Agreement**. Notwithstanding 11 U.S.C. § 365(c)(2), subject to compliance with the provisions of this Order and payment of the Regions Cure Amounts (as defined below), Regions Bank consents to the Debtor's assumption of the *Commercial Card Agreement* dated February 21, 2024, (as amended, restated, supplemented or otherwise modified from time to time, the "Card Agreement"), between Debtor Excell Communications, Inc. and Regions Bank ("Regions") and the related Security Agreement (as defined below). Regions shall provide the Debtor (via email to its counsel or other designee agreed upon in writing) with one or more statements of obligations due and owing under the Card Agreement as of the Effective Date, which shall also include all reasonable and documented attorneys' fees incurred by Regions relating to the Debtors' bankruptcy cases and payable under the Card Agreement. The Reorganized Debtor shall pay any and all such obligations (including attorneys' fees) (the "Regions Cure Amounts") to Regions on the Effective Date. Any and all accrued obligations which are not yet payable as of the Effective Date shall be paid in the ordinary course of business pursuant to the Card Agreement (e.g., any charges under the Card Agreement which have been incurred but not yet billed on a monthly statement shall be paid in the ordinary course irrespective of whether the charges were pre- or post-Effective Date).

Notwithstanding anything to the contrary in: (i) the Plan; (ii) this Order; (iii) the Plan Supplement (iv) any other document (the "Plan Documents"), nothing contained herein or therein shall alter or impair Regions' rights under the Card Agreement or the agreement titled *Assignment of Deposit Account*, dated as of November 15, 2024 (the "Security Agreement"), and Regions shall maintain its security interest and rights of setoff and recoupment related to the Certificate of Deposit account number x6160 (the "Card Account Collateral") maintained at Regions as security for the Reorganized Debtor's obligations under the Card Agreement, including the Regions Cure Amounts. Notwithstanding anything to the contrary in the Plan Documents: (a) the Card Agreement and Security Agreement shall be assumed in their entirety subject to existing terms, (b) Regions shall retain its first priority security interest and lien on the Card Account Collateral; and (c) no liens or security interests, if any, granted in connection with or pursuant to the Plan Documents shall prime or impair Regions' first priority security interests, liens and rights of setoff and recoupment in the Card Account Collateral.

### ARTICLE VIII
### CONDITIONS TO CONFIRMATION
### AND OCCURRENCE OF EFFECTIVE DATE

**Section 8.01 Conditions to Confirmation.** The Plan may not be confirmed unless each of the conditions set forth below is satisfied:

(a)     The Plan Supplement has been filed with all necessary exhibits; and

(b)     The Confirmation Order is entered in a form reasonably acceptable to the Reorganized Debtor and the Plan Administrator.

**Section 8.02 Conditions to Occurrence of Effective Date.** The Effective Date for the Plan may not occur unless each of the conditions set forth below is satisfied. Any one or more of the following conditions except Section 8.02(f) below may be waived in whole or in part at any time by the Debtors, with the consent of the Plan Administrator:

(a)     The Bankruptcy Court shall have entered the Confirmation Order in form and substance satisfactory to the Debtors and the Plan Administrator, and it shall have become a Final Order and shall not have been stayed, modified, or vacated on appeal;

(b)     The Confirmation Order shall provide for the injunctions and exculpation of the Persons provided for by the Plan;

(c)     The Plan Administrator shall have been appointed and shall have agreed to act as such in accordance with the terms and conditions of the Plan;

(d)     The Debtors and the Plan Administrator shall each independently confirm in writing, email being sufficient, to the Reorganized Debtor, GGTF (through its counsel), the Office of the U.S. Trustee, and the Creditors' Committee counsel, that there are sufficient funds available in Cash to effectuate the Distributions under the Plan required on the Effective Date;

(e)     All actions, documents, and agreements necessary to implement and consummate the Plan shall have been affected or executed and binding on all parties thereto;

(f)     All governmental and third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan shall have been obtained, not be subject to unfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions; and

(g)     The consummation of the New Value Contribution;

(h)     The Debtors shall have satisfied or made adequate provision for the payment in full of all Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Priority Claims; and The Debtors shall have filed one or more omnibus claim objections with the Bankruptcy Court in advance of or concurrently with the commencement of the Plan solicitation process as set forth in Section 5.15 of the Plan.

**Section 8.03 Effect of Nonoccurrence of the Conditions to Occurrence of Effective Date.** If each of the conditions to the occurrence of the Effective Date has not been satisfied or duly waived on or before the date which is no later than the first Business Day after 30 days after the Confirmation Date, or by such later date as is approved, after notice and a hearing, by the Bankruptcy Court, then upon motion by any party in interest made before the time that each of the conditions has been satisfied or duly waived, the Confirmation Order may be vacated by the Bankruptcy Court; provided, however, that, notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions to occurrence of the Effective

28

Date is either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion. If the Confirmation Order is vacated pursuant to the Plan, then the Plan shall be null and void in all respects, and nothing contained in the Plan shall: (i) constitute a waiver or release of any claims by or against the Debtors, or (ii) prejudice in any manner the rights of the Debtors or of any other party in interest.

## ARTICLE IX
## CONFIRMABILITY AND
## SEVERABILITY OF THE PLAN

**Section 9.01** The Debtors reserve the right to alter, amend, modify, revoke, or withdraw the Plan. If the Debtors revoke or withdraw from the Plan, then nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors, or to prejudice in any manner the rights of the Debtors or any persons in any further proceedings involving the Debtors. A determination by the Bankruptcy Court that the Plan, as it applies to the Debtors, is not confirmable pursuant to Bankruptcy Code § 1129 shall not limit or affect the Debtors' ability to modify the Plan to satisfy the confirmation requirements of Bankruptcy Code § 1129 of the Bankruptcy Code. Each provision of the Plan shall be considered severable and, if for any reason any provision or provisions herein are determined to be invalid and contrary to any existing or future law, the balance of the Plan shall be given effect without relation to the invalid provision, to the extent it can be done without causing a material change in the Plan.

**Section 9.02** The Debtors shall have the right to request the Bankruptcy Court to confirm the Plan in accordance with Bankruptcy Code § 1129(b).

## ARTICLE X
## ADMINISTRATIVE PROVISIONS

**Section 10.01 Retention of Jurisdiction.** Notwithstanding confirmation of the Plan or occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction and authority for all purposes permitted under applicable law, including, without limitation, the following purposes:

(a)     to determine any motion, adversary proceeding, avoidance action, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date;

(b)     to hear and determine applications for the assumption or rejection of executory contracts or unexpired leases and the allowance, estimation, or payment of Claims and cure disputes resulting therefrom;

(c)     to ensure that Distributions to holders of Allowed Claims are accomplished as provided herein and to adjudicate any and all disputes arising from or relating to Distributions under the Plan;

(d)     to hear and determine objections to the allowance of Claims, whether filed, asserted, or made before or after the Effective Date, including, without limitation, to hear and determine objections to the classification of Claims and the allowance or disallowance of Disputed Claims, in whole or in part;

29

(e)     to consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim; provided, however, that the District Court shall have jurisdiction to estimate any Claim that cannot be estimated by the Bankruptcy Court;

(f)     to enter, implement, or enforce such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(g)     to issue injunctions, enter and implement other Orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other Order of the Bankruptcy Court;

(h)     to hear and determine any application to modify the Plan in accordance with Bankruptcy Code § 1127, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement, or any Order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i)     to hear and determine all Professional Fee Claims;

(j)     to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Plan Supplement, the Confirmation Order or any transactions or payments contemplated hereby or thereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(k)     to take any action and issue such Orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan, including any release or injunction provisions set forth herein, or to maintain the integrity of the Plan following consummation;

(l)     to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)     to hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code §§ 346, 505, and 1146;

(n)     to enter a final decree closing the Chapter 11 Case;

(o)     to recover all assets of the Debtors and property of the Estate, wherever located;

(p)     to hear and determine any rights, Claims, Preserved Causes of Action or Causes of Action held by or accruing to the Debtors, the Reorganized Debtor, or the Plan Administrator pursuant to the Bankruptcy Code or pursuant to any statute or legal theory;

(q)     to hear and determine any matters for which jurisdiction was retained by the Bankruptcy Court pursuant to prior Orders; and

30

(r)     to hear and determine any other matters related hereto and consistent with the Bankruptcy Code, title 28 of the United States Code, and other applicable law.

**Section 10.02 Courts of Competent Jurisdiction.** If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of, or with respect to, the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**Section 10.03 Governing Law.** Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal laws apply, the laws of the State of New York shall govern the rights and obligations arising under the Plan, without giving effect to principles of conflicts of law of the State of New York.

**Section 10.04 Effectuating Documents and Further Transactions.** The Reorganized Debtor or the Plan Administrator, as applicable,  shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such action as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**Section 10.05 Waiver of Bankruptcy Rule 7062.** The Reorganized Debtor or Plan Administrator may request the Confirmation Order include (a) a finding that Bankruptcy Rule 7062 shall not apply to the Confirmation Order and the Plan be immediately binding and enforceable; and (b) authorization for the Debtors to consummate the Plan immediately after entry of the Confirmation Order.

**Section 10.06 No Admissions.** Notwithstanding anything herein to the contrary, nothing contained in the Plan or the Disclosure Statement shall be deemed as an admission by any Person with respect to any matter set forth herein.

**Section 10.07 Payment of Statutory Fees.** All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court on the Confirmation Date, shall be paid on the Effective Date. Any statutory fees accruing after the Confirmation Date shall be paid in accordance with the Plan.

**Section 10.08 Amendments.**

(a)     **Pre-Confirmation Amendment.** The Debtors may modify the Plan at any time prior to the entry of the Confirmation Order provided that the Plan, as modified, and the Disclosure Statement pertaining thereto meet applicable Bankruptcy Code requirements, including those set forth in Bankruptcy Code § 1125.

(b)     **Post-Confirmation Amendment Not Requiring Re-solicitation.** After the entry of the Confirmation Order, the Debtors may modify the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided (i) the Debtors obtain approval of the Bankruptcy Court for such modification, after notice and a hearing, and (ii) such modification shall not materially and adversely affect the interests, rights, or treatment, of any Class under the Plan.

31

(c)    **Post-Confirmation Amendment Requiring Re-solicitation.** After the Confirmation Date and before the Effective Date of the Plan, the Debtors may modify the Plan (with the consent of the Plan Administrator) in a way that materially or adversely affects the interests, rights, treatment, or Distributions of a class of Claims, provided: (i) the modified Plan meets applicable Bankruptcy Code requirements; (ii) the Debtors obtain Bankruptcy Court approval for such modification, after notice to all creditors entitled to receive notice pursuant to the Bankruptcy Code and the Bankruptcy Rules and a hearing; (iii) such modification is accepted by at least two-thirds in amount, and more than one-half in number, of Allowed Claims voting in each Class affected by such modification; and (iv) the Debtors comply with Bankruptcy Code § 1125 with respect to the modified Plan.

**Section 10.09 Successors and Assigns.** The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the heir, executor, administrator, successor, or assign of such Person.

**Section 10.10 Confirmation Order and Plan Control.** To the extent the Confirmation Order and/or the Plan is inconsistent with the Disclosure Statement, or any other agreement entered into between the Debtors and any third party, the Plan shall control the Disclosure Statement and any previous agreements and the Confirmation Order shall control the Plan.

**Section 10.11 Substantial Consummation.** On the Effective Date, the Plan shall be deemed to be substantially consummated under Bankruptcy Code §§ 1101 and 1127(b).

**Section 10.12 Deemed Acts.** Whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

**Section 10.13 Notices.** Any notice required or permitted to be provided under the Plan, unless otherwise provided herein, shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) overnight delivery service, postage prepaid, and addressed as follows:

| **For the Debtors and the Reorganized Debtor**: | **With copies to:** |
|---|---|
| Attn: Carlos Lourenco, CEO and Harry Zapiti, CFO<br>255 Executive Drive, Suite 409<br>Plainview, New York 11803 | Forchelli Deegan Terrana LLP<br>333 Earle Ovington Blvd.<br>Uniondale, NY 11553<br>Attn: Michael S. Amato<br>mamato@forchellilaw.com<br>*Attorneys for Debtors and Debtors-in-Possession* |

| For the Creditors Committee: | With copies to:<br>Porzio Bromberg & Newman, P.C.<br>1675 Broadway, Suite 1818<br>New York, NY 10019<br>Attn: Brett S. Moore<br>bsmoore@pbnlaw.com<br>Kelly D. Curtin<br>kdcurtin@pbnlaw.com<br>*Attorneys for the Official Committee of Unsecured Creditors* |
|---|---|
| **For Global Growth Tech Fund,** *Fundo de Capital de Risco Fechado* | **With copies to:**<br>Klestadt Winters Jureller Southard & Stevens, LLP<br>200 West 41st Street, 17th Floor<br>New York, NY, 10036-7203<br>Attn: Sean C. Southard<br>ssouthard@klestadt.com<br>Stephanie Sweeney<br>ssweeney@klestadt.com<br>*Attorneys for GGTF* |
| **For the Plan Administrator:**<br>Dundon Advisors LLC<br>Ten Bank Street, Suite 1100<br>White Plains, New York 10606 USA<br>Attn:Eric Reubel<br>er@dundon.com<br>Romeo Reyes<br>rr@dundon.com | **With copies to**:<br><br>Porzio Bromberg & Newman, P.C.<br>1675 Broadway, Suite 1818<br>New York, NY 10019<br>Attn: Brett S. Moore<br>bsmoore@pbnlaw.com<br>Kelly D. Curtin<br> kdcurtin@pbnlaw.com |

## REMAINDER OF PAGE INTENTIONALLY BLANK

Dated: Uniondale, New York
       May 27, 2026

Respectfully submitted,

Excell Communications, Inc., Telecable, Inc. and
E-Fleet Services Corp
Debtors and Debtors-in-possession

By: _____ */s/ Carlos Lourenco*
Carlos Lourenco, solely in his capacity as Chief
Executive Officer of the Debtors and Debtors-in-
Possession

34

# EXHIBIT B

| **As of 5/27/26** | **Excell Comm & Subsidiaries**<br>**Liquidation Analysis** | |
|---|---|---|
| | **Reorganization vs. Chapter 7 Liquidation** | |
| | **Reorganization** | **Chapter 7 Liquidation** |
| **Sources of Proceeds:** | | |
| Cash and cash equivalents | - | 1,000,000 |
| Accounts Receivable | | 800,000 |
| Fiber Inventory | - | 250,000 |
| Equipment | | 450,000 |
| Equity Investment GGTF | 2,010,000 | |
| Net Disposable Income Over Plan Term | 7,095,627 | - |
| **Total Proceeds** | **9,105,627** | **2,500,000** |
| | | |
| **Proceeds Avail for Admin, Secured GGTF, Priority Tax, Other Priority, Secured Tax, Other Secured & GUCS** | **9,105,627** | **2,500,000** |
| **Administrative Claims** | | |
| Administrative Claims | | |
| Unpaid Administrative Claims | 500,000 | 500,000 |
| Chapter 11 Trustee Fees & Expenses | 150,000 | |
| Chapter 7 Trustee Fees & Expenses | - | 500,000 |
| Total Administrative Claims | 650,000 | 1,000,000 |
| % Recovery | 100% | 100% |
| **Proceeds Avail for Secured GGTF, Priority Tax, Other Priority, Secured Tax, Other Secured & GUCS** | **8,455,627** | **1,500,000** |
| **Secured Claims GGTF** | | |
| Secured Claims GGTF | - | - |
| Total Secured Claims GGTF Disbursements | - | - |
| % Recovery | 100% | 0% |
| **Proceeds Avail for Priority Tax, Other Priority, Secured Tax , Other Secured & GUCS** | **8,455,627** | **1,500,000** |
| **Priority Tax Claims** | | |
| Priority Tax Claims | 1,649,331 | 1,649,331 |
| Total Priority Tax Claims Disbursements | 1,649,331 | - |
| % Recovery | 100% | 0.0% |
| Priority Tax Claim Plan Interest Payments | 218,164 | |
| **Proceeds Avail for Other Priority, Secured Tax , Other Secured & GUCS** | **6,588,132** | **-** |
| **Class 1 - Other Priority Claims** | | |
| Class 1  Other Priority Claims | 62,000 | 62,000 |
| Total Class 1  Other Priority Claims Disbursements | 62,000 | - |
| % Recovery | 100% | 0% |
| **Proceeds Avail for Secured Tax, Other Secured & GUCS** | **6,526,132** | **1,500,000** |
| **Class 2(a) Secured Tax Claims** | | |
| Class 2(a) Secured Tax Claims | 3,146,882 | 3,146,882 |
| Total Class 2(b) Secured Tax Claims Disbursements | 3,146,882 | 1,500,000 |
| % Recovery | 100% | 48% |
| Secured Tax Claim Plan Interest Payments | 416,251 | |
| **Proceeds Avail for Other Secured & GUCS** | **2,963,000** | **-** |
| **Class 2(b) Other Secured Claims** | | |
| Class 2(b) Other Secured Claims | - | - |
| Total Class 2(c) Other Secured Claims Disbursements | - | - |
| % Recovery | 100% | 0% |
| **Proceeds Avail for GUCs** | **2,963,000** | **-** |
| **Class 3 General Unsecured Claims** | | |
| Class 3 General Union Claims | 17,500,000 | 17,500,000 |
| Total Class General Unsecured Claims Disbursements | 1,300,000 | - |
| % Recovery | 7.4% | 0% |
| **Ending Cash** | **1,663,000** | |
| **Class 4 Existing Equity Interests** | - | - |
| Class 4 Existing Equity | 100% | 0% |

*1  Accounts receivable discounted from 2.5 million face value due to estimated customer offset and claims due to liquidation

*2  Fiber inventory was significantly discounted from 18 million book value due to no secondary-market demand and unsuccessful marketing efforts. Recovery assumes limited scrap value

*3  Estimated equipment and vehicle liquidation values were derived from a review of comparable auction results and secondary-market listings. Values reflect management's estimate of realizable proceeds in a forced liquidation scenario.

# EXHIBIT C

**As of 5/27/26**

| Excell Comm. & Subsidiaries | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Cash Flow Projection and Creditor Treatment Under Plan of Reorganization | | | | | | | | |

| Period | | 2026 | 2027 | 2028 | 2029 | 2030 | 2031 | |
|---|---|---|---|---|---|---|---|---|
| Period Start | *June 30, 2026* | *Jul 2026* | *Jan 2027* | *Jan 2028* | *Jan 2029* | *Jan 2030* | *Jan 2031* | |
| Period End | *Est. Effective Date* | *Dec 2026* | *Dec 2027* | *Dec 2028* | *Dec 2029* | *Dec 2030* | *Jun 2031* | |
| **Cash Flow** | | **2026** | **2027** | **2028** | **2029** | **2030** | **2031** | **Total** |
| Construction & Design Cash Receipts | | 19,707 | 37,681 | 41,834 | 44,318 | 46,534 | 20,290 | 210,364 |
| **Total Receipts** | | **19,707** | **37,681** | **41,834** | **44,318** | **46,534** | **20,290** | **210,364** |
| **Disbursements** | | | | | | | | |
| Direct | | 15,155 | 28,546 | 31,681 | 33,393 | 35,067 | 14,104 | 157,946 |
| Indirect | | 1,518 | 2,996 | 3,238 | 3,400 | 3,570 | 1,688 | 16,409 |
| Overheads | | 735 | 1,602 | 1,722 | 1,851 | 1,992 | 1,072 | 8,974 |
| Administrative | | 1,616 | 3,413 | 3,584 | 3,763 | 3,951 | 2,074 | 18,402 |
| Professional | | 100 | 200 | 210 | 221 | 232 | 122 | 1,084 |
| Interest Senior Loan Revolver | | 29 | 57 | 60 | 37 | 21 | - | 204 |
| Capex | | 25 | 50 | 50 | 50 | 50 | 25 | 250 |
| Total Expenses | | 19,178 | 36,864 | 40,545 | 42,714 | 44,882 | 19,085 | 203,268 |
| **Total Disbursements** | | **19,178** | **36,864** | **40,545** | **42,714** | **44,882** | **19,085** | **203,268** |
| **Disposable Income** | | **528** | **816** | **1,288** | **1,604** | **1,653** | **1,206** | **7,096** |
| Administrative | 500 | | | | | | | |
| US Trustee Fees | 150 | | | | | | | |
| Payment to GUC & Other Priority Claims | 1,360 | - | - | - | - | - | - | - |
| IRS & State Principal | | 428 | 888 | 933 | 981 | 1,031 | 535 | 4,796 |
| IRS & State Interest | | 115 | 198 | 153 | 105 | 55 | 8 | 634 |
| Total Payments | 2,010 | 543 | 1,086 | 1,086 | 1,086 | 1,086 | 543 | 5,431 |
| **Net Disposable  Income After Payments** | | **(15)** | **(270)** | **202** | **518** | **566** | **663** | **1,665** |
| **Annual Liquidity / Revolver Summary** | | | | | | | | |
| Cash at Beginning of Year | | 1,000 | 1,000 | 1,000 | 1,000 | 1,436 | 2,002 | |
| Net Disposable Income After Payments | | (15) | (270) | 202 | 518 | 566 | 663 | |
| Total Cash Available / (Required) for Revolver | | 985 | 730 | 1,202 | 1,518 | 2,002 | 2,665 | |
| Minimum Cash | | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | |
| Revolver Draw (Paydown) | | 15 | 270 | (202) | (82) | - | - | |
| Cash At End of Year | | 1,000 | 1,000 | 1,000 | 1,436 | 2,002 | 2,665 | |
| Senior Loan Revolver Balance | | | | | | | | |
| Beginning Balance | | - | 15 | 284 | 82 | - | - | |
| Add / Sweep Senior Loan | | 15 | 270 | (202) | (82) | - | - | |
| Ending Balance | | 15 | 284 | 82 | - | - | - | |