UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| EXCELL COMMUNICATIONS, INC., *et al.,*[1] | Case No. 25-71444 (LAS) |
| Debtors. | (Jointly Administered) |

### DECLARATION OF CARLOS LOURENCO, CHIEF EXECUTIVE OFFICER, IN SUPPORT OF CONFIRMATION OF DEBTORS' SECOND AMENDED PLAN OF REORGANIZATION OF EXCELL COMMUNICATIONS, INC. UNDER CHAPTER 11 OF THE BANKRUPTCY CODE (ECF DOC. NO. 288)

I, CARLOS LOURENCO, duly affirm under penalty of perjury that the following is true and correct:

1.     I am the Chief Executive Officer ("**CEO**") of Excell Communications, LLC, Telecable, Inc. and E-Fleet Services Corp. (the "**Debtors**"), the above-captioned debtors and debtor-in-possession. The facts set forth in this declaration (the "**Lourenco Declaration**") are personally known to me and, if called as a witness, I could testify thereto. I am fully familiar with the facts set forth and circumstances described herein based upon my personal knowledge or knowledge derived from discussions with professionals employed by the Debtors and/or my review of the documents obtained and the files created in this case.

2.     I submit this Declaration in support of confirmation *Under Chapter 11 of the Bankruptcy Code* (ECF Doc. No. 288) (the "**Plan**")[2].  I have reviewed and I am generally familiar

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are as follows: E-Fleet Services Corp. (3213), Excell Communications, Inc. (3973), and Telecable, Inc. (7957). The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is 255 Executive Drive, Suite 409, Plainview, New York 11803.

[2] All capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Plan.

with, the terms and provisions of the Plan, the Disclosure Statement, and the requirements for confirmation of the Plan under section 1129 of the Bankruptcy Code.

3.      Except where specifically noted, the statements in this Declaration are based on my personal knowledge, belief, opinion or information that I have received from the Debtors' officers, including Harry Zapiti, CFO, employees, advisors working directly with me or under my supervision, direction, or control, or from the records maintained in the ordinary course of business of the Debtors or the employees or advisors to the Debtors.

4.      If I were called upon to testify, I could and would testify competently to the facts set forth herein.  I am authorized to submit this Declaration on behalf of the Debtors.

5.      Debtors submit that the Plan satisfies each of the applicable provisions of Bankruptcy Code § 1129 by a preponderance of the evidence and, therefore, should be confirmed.

**I.      The Plan Complies with Bankruptcy Code § 1129**

6.      Based on my understanding of the Plan, the events that have occurred prior to and during the Chapter 11 Case, and discussions I have had with the Debtors' legal and financial advisors regarding the requirements set forth in the Bankruptcy Code, I believe that the Plan satisfies all of the applicable requirements of Bankruptcy Code § 1129.

7.      **Bankruptcy Code § 1129(a)(1)**. I understand, based on discussions with the Debtors' legal advisors, that the Plan satisfies Bankruptcy Code § 1129(a)(1), because it complies with Bankruptcy Code §§ 1122 and 1123.  In that regard, I understand that the Plan designates the classifications of Claims and Interests in accordance with Bankruptcy Code § 1122.  I also understand that the Plan provides for the separate classification of Claims against and Interests in the Debtors based upon the differences in legal nature/or priority of such Claims and Interests.  I

further believe that the Plan satisfies each requirement set forth in Bankruptcy Code § 1123(a) regarding the required contents of a chapter 11 plan.

8.       Under the Plan, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within the Class.  *See* Plan, Art. III, Sec. 3.01.  Specifically, the Plan provides for the following Classes of Claims and Interests:

| Class | Treatment | Entitled to Vote |
|---|---|---|
| **1 Other Priority Claim** | Unimpaired | No –Deemed to Accept |
| **2(a) Secured Tax Claims** | Unimpaired | No – Deemed to Accept |
| **2(b) Other Secured Claims** | Unimpaired | No – Deemed to Accept |
| **3 General Unsecured Claims** | Impaired | Yes |
| **4 Equity Interests** | Unimpaired | No – Deemed to Accept |

9.       I believe the Plan's classification scheme is supported by valid business, legal, and factual reasons.

10.       The Plan's classifications not only serve the purpose of facilitating ease of distributions on the Effective Date, but also acknowledge the fundamental differences between those types of Claims and Interests.

11.       I understand that the requirements of Bankruptcy Code § 1123(a) are satisfied. *First*, the Plan designates Classes of Claims and Interests. *See* Plan, Section 3.03.  **Second**, the Plan specifies which Classes of Claims and Interests are Impaired and Unimpaired and sets forth the Treatment of such Classes.  *See* Plan, Section 3.03.  **Third**, unless a Holder of Claim or Interest agrees to less favorable treatment, the Plan provides for the same treatment for each Claim or Interest.  **Fourth**, the Plan provides adequate means for its implementation.  The Plan provides a detailed blueprint for the transactions contemplated thereunder, including: (a) the reorganization of the Debtors' businesses; (b) the New Value Contribution; (c) assumption of necessary leases and contracts; (d) resolution of claims against GGTF and Tirion; and (e) retaining the Plan Administrator.   Article V of the Plan describes the implementation of the aforementioned

3

transactions, as well as preservation of certain Causes of Action and Claim objections.  The precise terms governing the execution of these transactions are set forth in greater detail in the Plan.  ***Last***, I understand the Plan contains only those provisions that are consistent with the interests of Holders of Claims and Interests and with public policy with respect to the manner of selection of any officer, director, trustee or the Plan Administrator under the Plan, and any successor to such officer, director, trustee or the Plan Administrator.  The manner and selection of officers, directors and the Plan Administrator is disclosed in Article V, Section 5.04 and 5.11.

12.      I also understand the Plan complies with Bankruptcy Code § 1123(b).  Among other things, I am advised that the Plan provides for: (a) the impairment of certain Claims; (b) the modification of the rights of certain secured claims; (c) the rejection or assumption of certain executory contracts and unexpired leases; and (d) the injunction and/or exculpation of certain parties. *See* Plan, Articles III, VI and VII.

13.      I am advised that the Plan complies with Bankruptcy Code § 1123(d), which provides that the amounts necessary to cure default sunder executory contracts proposed to be assumed "shall be determined in accordance with the underlying agreement and applicable non-bankruptcy law." I understand Section 7.03 of the Plan provides for the notification and determination of cure amounts, if any, and Section 7.04 of the Plan provides for the satisfaction of any such cure amounts associated with each executory contract and unexpired lease to be assumed which I am advised is in accordance with Bankruptcy Code § 365(b)(1). I understand the Plan requires that at least fourteen (14) days before the Confirmation Hearing, the Debtors will serve notices on parties to executory contracts or unexpired leases to be assumed reflecting the Debtors' intention to assume the contracts and leases, and setting forth the proposed cure amount (if any). *See* Plan, Sec. 7.03.  If any counterparty does not receive a notice, the proposed cure amount is

4

zero dollars ($0.00). *Id.*   Subject to the resolution of any cure disputes, all cures shall be satisfied by the Debtors or the Reorganized Debtors, as applicable, upon assumption. *See* Plan, Sec. 7.04. Any disputed cure amounts will be determined in accordance with the procedures set forth in Section 7.03 of the Plan and applicable law. In sum, it is my understanding that the Plan complies with Bankruptcy Code § 1123(d) because it provides that the Debtors will cure, or provide adequate assurance that the Debtors will promptly cure, defaults with respect to executory contracts or unexpired leases in compliance with Bankruptcy Code § 365(b)(1).

14.    **Bankruptcy Code § 1129(a)(2)**. To the best of my knowledge and belief, based on discussions with the Debtors' legal advisors, and as evidenced by the Disclosure Statement Order, prior orders of the Court entered in this Chapter 11 Case, and the filings submitted by the Debtors, I believe that the Debtors complied with the applicable provisions of the Bankruptcy Code, including Bankruptcy Code §§ 1125 and 1126, Bankruptcy Rules 3017 and 3018.

15.    It is my understanding after speaking with the Debtors' legal advisors that the Debtors have not received any objections or indications of objections to continuation of the Plan.

16.    I understand that Debtors' counsel caused copies of the "Solicitation Packages" to be served via first-class mail to the Holders of Claims and Interests as required under the Disclosure Statement Order. I understand that the "Solicitation Packages" consist of: (a) the Plan; (b) the Disclosure Statement; (c) Disclosure Statement Order; and (d) Ballots. I am also advised that the Debtors did not solicit acceptances of the Plan from any creditor or interest holder prior to transmission of the Disclosure Statement.

17.    **Bankruptcy Code § 1129(a)(3).**  I believe that the Plan was proposed in good faith and not by any means forbidden by law. I believe the Plan is the product of extensive arm's-length and good faith negotiations by and among myself and the Debtors (by and through its counsel),

GGTF and the Creditors Committee and other third parties.  Those negotiations culminated in the Plan and Plan Supplement, which provide for, among other things, what I believe is the fair allocation of the Debtors' assets, GGTF's ownership of the Interests in the Reorganized Debtors in exchange for the New Value Contribution and resolution of the Estates' potential claims against GGTF and Tirion.  Moreover, I believe the Plan formulation process was conducted in good faith and all participants were independently represented by competent counsel.

18.    **Bankruptcy Code § 1129(a)(4).**  I understand that payments made or to be made by the Debtors for services or for costs and expenses, in connection with, this Chapter 11 Case, or in connection with the Plan and incident to this Chapter 11 Case have been approved by, or is or will be subject to approval of the Bankruptcy Court.

19.    **Bankruptcy Code § 1129(a)(5).**  I am aware that under the Plan, the officers of the Reorganized Debtor before the Effective Date shall serve as the initial officers after the Effective Date.  *See* Plan, Sec. 5.04.

20.    **Bankruptcy Code § 1129(a)(7).** I understand that the Bankruptcy Code requires that a plan must be in the "best interests" of creditors and interest holders, which means each holder of a claim or interest either accept the plan or receive or retain property having a present value, as of the effective date of the plan, not less than the amount such holder would receive or retain if the Debtors were liquidated in a hypothetical liquidation under chapter 7 of the Bankruptcy Code.  I understand that the best interests test is generally satisfied by a liquidation analysis demonstrating that an impaired class will receive no less under the plan than under a Chapter 7 liquidation.  The Debtors, working with their retained professionals, prepared a liquidation analysis that estimates recoveries for members of each Class under the Plan (the "**Liquidation Analysis**").  *See,* Disclosure Statement, Ex. B.  The major components of the liquidation and distribution of proceeds

6

are as follows; (a) generation of cash proceeds from the sale and monetization of assets; (b) payment of costs related to the liquidation process, such as Estate wind-down costs and trustee, professional, broker, and other administrative fees; and (c) reconciliation of Claims and distribution of net proceeds generated from asset sales to the holders of Allowed Claims and Interests in the Debtors in accordance with the priority scheme under the Bankruptcy Code.

21.    Under the Liquidation Analysis, any available net proceeds are allocated to the applicable holders of Claims and Interests of the Debtors in strict priority in accordance with Bankruptcy Code § 726. The assumed distributions are estimated in accordance with the "absolute priority rule" pursuant to which no junior creditor will receive any distribution until all senior creditors of the Debtors are paid in full, and no equity holder will receive any distribution under all creditors of the Debtors are paid in full.

22.    The Liquidation Analysis compares the distribution in a reorganization if the Plan is confirmed. If the probable distribution in a chapter 7 has a value that is equal to or less than the value of the probable distribution under the plan, the "best interests" test has been satisfied.

23.    The projected recoveries under the Plan and the results of the Liquidation Analysis for Holders of Claims and Interests in Voting Classes are:

| Class | Designation | Voting Rights | Projected Recovery under the Plan | Estimated Recovery Under Chapter 7 Liquidation |
|---|---|---|---|---|
| Class 3 | General Unsecured Claims | Yes | 7%-8% | 0 -1 % |

24.    As demonstrated by the Liquidation Analysis, if this Chapter 11 Case was converted to a case under chapter 7 of the Bankruptcy Code, creditors in the Voting Classes would receive lower recoveries than under the Plan.

25.    **Bankruptcy Code § 1129(a)(8).**  I understand that Bankruptcy Code § 1129(a)(8) requires that each class of claims or interests must either accept a debtor's plan or be unimpaired

7

under the plan.  I understand that as reflected in the Certification of Ballots, Class 3 (General Unsecured Claims), voted to accept the Plan.

26.    **Bankruptcy Code § 1129(a)(9).** I understand that the Plan's treatment of Administrative Claims, Professional Fee Claims, Priority Tax Claims, and Other Priority Claims complies with Bankruptcy Code § 1129(a)(9). First, I understand that the Bankruptcy Code § 1129(a)(2) also requires the proponent of a chapter 11 plan to comply with the applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1129(a)(2).  Bankruptcy Code § 1129(a)(2) is intended to encompass the disclosure and solicitation requirements contained in §§ 1125 and 1126. *See* S. Rep. No. 989, 95th Cong., 2d Sess. 126 (1978) ("Paragraph (2) [of section 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure."); H.R. Rep. No. 595, 95th Cong., 1st Sess. 412 (1977) (same); *see also In re Johns-Manville Corp.*, 68 B.R. 618, 630 (Bankr. S.D.N.Y. 1986) ("Objections to confirmation raised under § 1129(a)(2) generally involve the alleged failure of the plan proponent to comply with § 1125 and § 1126 of the Code.").  The Debtors have complied with the applicable provisions of the Bankruptcy Code, including  Bankruptcy Code §§ 1125 and 1126, Bankruptcy Rules 3017, by distributing the Disclosure Statement and soliciting votes on the Plan in accordance with the *Order: (A) Approving Adequacy of the Disclosure Statement for Debtors' Second Amended Plan of Reorganization under Chapter 11 of the Bankruptcy Code; (B) Establishing Procedures for Solicitation and Tabulation of Votes to accept the Plan ; and (C) Scheduling a Hearing on Confinement of the Plan and (D) Approving Related Notice Procedures* (ECF Doc. No. 289) (the "**Disclosure Statement Order**").

27.    **Bankruptcy Code § 1129(a)(10).**  I understand that Bankruptcy Code § 1129(a)(10) requires that at least one impaired class of claims, excluding acceptances of insiders,

8

accept the Plan.  It is my understanding that the Plan was accepted by at least one impaired class of claims excluding insiders; and Class 3(General Unsecured Claims).

28.    **Bankruptcy Code § 1129(a)(11).** I understand that Bankruptcy Code § 1129(a)(11) requires that the Court find that the Plan is feasible, *i.e.,* not likely to be followed by liquidation or the need for further organization. I am advised by the Debtors' legal advisors that to demonstrate that a plan is feasible, it is not necessary that success be guaranteed.

29.    Here, I believe the Plan satisfies the feasibility requirements of Bankruptcy Code § 1129(a)(11) by providing a clear path to emerge from this Chapter 11 Case and the ability of the Debtors to satisfy its obligations under the Plan.  The Debtors anticipate that it will have sufficient Cash on hand on the Effective Date to make all of the payments required on the Effective Date under the Plan.  GGTF has or will fund the New Value Contribution allowing the Debtors to deposit the General Unsecured Claims Cash Distributions in the GUC Distribution Account.  I believe that based on the Financial Projections, the Debtors will be able to make the required Distributions under the Plan and confirmation is not likely to be followed by liquidation or a further reorganization.

30.    I was involved in the preparation of the Financial Projections together with the Debtors and their retained professionals, and the business plan that supports them.  I believe that the Financial Projections were prepared in good faith and reflect reasonable estimates and judgment of the Debtors as to the Debtors' future operating and financial performance as of the date of their preparation.  Moreover, I believe that the Plan is the product of extensive negotiation and discussions among the Debtors and their key stakeholders.  Furthermore, I understand that no objections were filed challenging the Financial Projections.

9

31.    **Bankruptcy Code § 1129(a)(12)**.   I am aware that Section 10.07 of the Plan provides for the payment of all statutory fees by the Reorganized Debtors after the Effective Date, which I understand is required by Bankruptcy Code § 1129(a)(12).

32.    **Bankruptcy Code §§ 1129(a)(13), (14), (15) and (16)**.  It is my understanding that Bankruptcy Code §§ 1129(a)(13), (14), (15) and (16) do not apply here.

33.    **Bankruptcy Code § 1129(b).** It is my understanding that, pursuant to Bankruptcy Code § 1129(b), a plan may be confirmed notwithstanding the rejection or deemed rejection by a class of claims or interests as long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to the non-accepting impaired classes.

34.    While there are no impaired classes that voted to reject the Plan, I believe that the Plan does not discriminate unfairly with respect to the impaired classes.  I understand that the Claims and Interests are not similarly situated to any other Classes, given their distinct legal character.  Accordingly, the Plan does not seem to unfairly discriminate against Classes of Claims or Interests deemed to reject the Plan because they are not similarly situated to any other Class.

35.    Furthermore, I believe that the Plan is "fair and equitable" in compliance with Bankruptcy Code § 1129(b)(2).  I understand that this is known as the "absolute priority rule," which requires that if the holders of claims in a particular class receive less than full value for their claims, no holders of claims or interests in a junior class may receive any property under the plan.

36.    I understand from the Debtors' legal advisors that there is an exception or corollary to the absolute priority rule which provides that a debtors' equity holder may retain his equity even where unsecured creditors are not paid in full, if certain requirements are satisfied.  I am aware that the Plan provides that GGTF will retain his Interests in the Reorganized Debtors even though creditors are not being paid in full.

37.    I believe that the value of the New Value Contribution is substantially more than any third-party would offer for the Debtors' Interests under the circumstances of this Chapter 11 Case. *First*, failure to accept the Plan would mean that the business likely would fail, because the Debtors' contracts are MSA's and do not require specific volumes of sales or purchases.  *Second*, there is no objecting General Unsecured Creditor Class in this case. In fact, after extensive settlement discussions, the Creditors Committee accepted the Plan and is not objecting to confirmation.  *Third*, the Debtors have been in bankruptcy for nearly eighteen (18) months, but no third parties have made offers to acquire the business.

38.    In sum, the Debtors submit that the New Value Contribution satisfies the applicable requirements, and the Plan is fair and equitable.

39.    **Bankruptcy Code § 1129(c).** I am advised that the Plan is the only plan filed, so Bankruptcy Code § 1129(c) is inapplicable.

40.    **Bankruptcy Code § 1129(d)**.The purpose of the Plan is not to avoid taxes or the application of section 5 of the Securities Act of 1933, and no party that is a governmental unit, or any other entity, has requested that the Court decline to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the application of section 5 of the Securities Act of 1933.

41.    **Bankruptcy Code § 1129(e)**.  I am advised that this is not a "small business case" so Bankruptcy Code § 1129(e) does not apply.

42.    **The Debtors' Exculpation, Injunction, and Discharge Provisions Should be Approved**.  I understand that the Plan includes certain narrowly tailored exculpation, injunction and discharge provisions.  The exculpation provision as revised is limited to claims against the Debtors, the Plan Administrator, the Creditors Committee and any of the respective current or

11

former members, directors, officers, trustees, employees, agents (acting in such capacity), advisors, brokers, attorneys, accountants, or representatives of any professional employed by any of them, in each case only to the extent that they were acting as a representative of the Debtors or the Estates.  Those parties meaningfully and substantially contributed to the success of the Chapter 11 Case, and the language is appropriately circumscribed and has not been objected to and is proper.  I understand that appropriate exculpation provisions for case fiduciaries in chapter 11 plans remains standard practice and have been approved in large chapter 11 cases in this District.

43.    **The Injunction and Discharge Provision Should be Approved**.  I understand that Section 6.01 of the Plan provides that except as provided in Bankruptcy Code § 1141(d), "after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim or interest against the Debtors" essentially operating as a standard discharge provision which is important to the Plan and the public policy underlying chapter 11.

44.    I understand that the injunction set forth in Section 6.04 of the Plan provides that the treatment for Allowed Claims under the Plan shall be in full satisfaction, settlement and release of such Claim.  Moreover, holders of Claims are only permanently enjoined as to the Debtors, and it does not apply to efforts to enforce the terms of the Plan.  The injunction set forth in the Plan is narrowly tailored and centrally important to the Plan and the public policy underlying chapter 11. Further, the injunction language is necessary to enforce the discharge provision in Section 6.01 as well as the exculpation language in Section 6.05, both of which are narrowly tailored as well. Thus, the injunction is appropriate under Bankruptcy Code § 1123(b)(6) and 1123(a)(5) and should be approved.

45.    **Assumption and Rejection of Executory Contracts and Unexpired Leases Should be Approved.**  I understand that Bankruptcy Code § 1123(b)(2) allows a plan to provide

12

for the assumption, rejection, or assignment of any executory contract or unexpired lease not previously assumed or rejected under section 365. I understand that Article VII of the Plan provides that to the extent not previously rejected or listed on the "Schedule of Rejected Executory Contracts and Unexpired Leases" filed with the Plan Supplement, subject to the occurrence of the Effective Date, all of the Debtors' executory contracts and unexpired leases entered into prior to the Petition Date shall be deemed assumed by the Reorganized Debtors. *See* Plan, Sec. 7.01. Executory contracts and unexpired leases rejected and giving rise to a Claim must be filed within 30 days after the date of service of notice of entry of the Confirmation Order, or such other date set by the Bankruptcy Court, and any Allowed Claim shall be a Class 3(a) General Unsecured Claim. Section 7.03 provides clear instructions for counterparties to assumed executory contracts and unexpired leases with respect to asserting and resolving cure amounts, and that if a counterparty does not receive a notice setting forth a cure amount at least 14 days before the Confirmation Hearing, the proposed cure amount for such contract or lease shall be deemed to be zero dollars. *See* Plan, Sec. 7.03. All cures shall be satisfied by the Debtors or the Reorganized Debtors, as applicable, upon assumption. *See* Plan, Sec. 7.04. The Plan articulates clear procedures and mechanisms for the assumption and rejection of unexpired leases and executory contracts and should be approved.

**Conclusion**

46.    I respectfully submit that the Plan complies with all applicable requirements under the Bankruptcy Code and the Bankruptcy Rules. Accordingly, I believe the Court should enter an Order confirming the Plan, together with such other and further relief the Court deems just and proper.

13

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated:  New York, New York
         July 14, 2026

                                                    /s/ *Carlos Lourenco*