UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | Chapter 11 |
| EXCELL COMMUNICATIONS, INC., *et al.*,[1] | Case No. 25-71444 (LAS) |
| Debtors. | (Jointly Administered) |

## DEBTORS' MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF THE SECOND AMENDED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE (ECF DOC. NO. 288)

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are as follows: E-Fleet Services Corp. (3213), Excell Communications, Inc. (3973), and Telecable, Inc. (7957). The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is 255 Executive Drive, Suite 409, Plainview, New York 11803.

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................iv

PRELIMINARY STATEMENT ......................................................................................................1

RELEVANT FACTS .......................................................................................................................2

ARGUMENT....................................................................................................................................2

    **I.**     The Plan Should be Approved ...................................................................................2

          A.   The Plan Complies with Bankruptcy Code § 1129(a)(1)...................................2

          B.  The Plan Satisfies the Classification Requirements
              of Bankruptcy Code § 1122 ..............................................................................3

          C.  The Plan Complies with Bankruptcy Code § 1123(a) ......................................4

          D.  The Plan Complies with Bankruptcy Code § 1123(b).......................................5

          E.  The Plan Complies with Bankruptcy Code § 1123(d).......................................5

          F.  The Plan Complies with Bankruptcy Code § 1129(a)(2)...................................6

    **II.**    The Debtors Have Complied with the Disclosure Statement Order, and
          the Disclosure and Solicitation Requirements of Bankruptcy Code § 1125,
          Warranting Final Approval of the Disclosure Statement..........................................7

    **III.**   The Debtors Satisfied the Requirements of Bankruptcy Code § 1126 ......................8

    **IV.**   The Plan Complies with the Remaining Applicable Sections of
          Bankruptcy Code § 1129 ..........................................................................................8

          A.   The Plan Complies with Bankruptcy Code § 1129(a)(3)..................................8

          B.   The Plan Complies with Bankruptcy Code § 1129(a)(4)..................................9

          C.   The Plan Complies with Bankruptcy Code § 1129(a)(5)................................10

          D.   The Plan Complies with Bankruptcy Code § 1129(a)(7)................................11

          E.   The Plan Complies with Bankruptcy Code § 1129(a)(8)................................12

          F.   The Plan Complies with Bankruptcy Code § 1129(a)(9)................................12

i

G.  The Plan Satisfies Bankruptcy Code § 1129(a)(10) ...........................................13

H.  The Plan Complies with Bankruptcy Code § 1129(a)(11)...................................14

I.  The Plan Complies with Bankruptcy Code § 1129(a)(12)...................................15

J.  The Plan Bankruptcy Code §§ 1129(a)(13), (14), (15) and (16)
    Are Not Applicable ............................................................................................15

K.  The Plan Satisfies the "Cram Down" Requirements of
    Bankruptcy Code § 1129(b).................................................................................16

        i.      The Plan Does Not Discriminate Unfairly With Respect to
                Rejecting Classes ...............................................................................16

        ii.     The New Value Contribution Satisfies the Applicable Requirements .......18

L.  Bankruptcy Code § 1129(c) is Inapplicable to the Plan ....................................22

M.  The Plan Complies with Bankruptcy Code § 1129(d) ........................................22

N.  Bankruptcy Code § 1129(e) Does Not Apply.....................................................22

V.  The Debtors' Exculpation, Injunction, and Discharge Provisions Should
    be Approved .............................................................................................................22

A.  The Exculpation Provision Should be Approved.................................................22

B.  The Injunction and Discharge Provision Should be Approved ...........................23

VI.  Assumption and Rejection of Executory Contracts and Unexpired
    Leases Should be Approved.....................................................................................24

VII.  CONCLUSION.............................................................................................................25

ii

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Argo Fund Ltd. v. Bd. of Dirs. of Telecom Argentina, S.A. (In re Bd. Of Dirs. Of Telecom Argentina, S.A.)*
528 F.3d 162 (2d Cir. 2008) ....................................................................................... 8

*Bank of Am. Nat. Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*
526 U.S. 434 (1999) ................................................................................................. 17

*Bank of Am. Nat. Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*
526 U.S. 434 (1999) ................................................................................................. 18

*Boston Post Rd. L.P. v. F.D.I.C. (In re Boston Post Rd. L.P.)*
21 F.3d 477 (2d Cir. 1994) .......................................................................................... 3

*BT/SAP Pool C Assocs. V. Coltex Loop Cent. Three Partners*
203 B.R. 527 (S.D.N.Y. 1996) ............................................................................. 18, 19

*Case v. Los Angeles Lumber Prod. Co.*
308 U.S. 106 (1939) ................................................................................................. 19

*Castleton Plaza, LP*
707 F.3d 821 (7th Cir. 2013) ..................................................................................... 19

*Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)*
10 F.3d 944 (2d Cir. 1993) .......................................................................................... 3

*Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters., Ltd., II (In re Briscoe Enters. Ltd., II)*
994 F.2d 1160 (5th Cir. 1993) ................................................................................... 11

*In re Adelphia Bus. Solutions, Inc.*
341 B.R. 415 (Bankr. S.D.N.Y. 2003).......................................................................... 14

*In re Adelphia Commc'ns Corp.*
368 B.R. 140 (Bankr. S.D.N.Y. 2007)..................................................................... 11, 16

*In re Ambanc La Mesa Ltd. P'ship*
115 F.3d 650 (9th Cir. 1997) ..................................................................................... 16

*In re Aztec Co.*
107 B.R. 585 (Bankr. M.D. Tenn. 1989)................................................................. 16, 17

*In re Bally Total Fitness of Greater N.Y., Inc.*
Case No. 07-12395 (BRL), 2007 WL 2779438 (Bankr. S.D.N.Y. Sept. 17, 2007) .................... 3

*In re Best Prods. Co., Inc,*
   168 B.R. 35 (Bankr. S.D.N.Y. 1994).......................................................................................... 11

*In re Breitburn Energy Partners LP*
   582 B.R. 321 (Bankr. S.D.N.Y. 2018)........................................................................................ 17

*In re Bumgardner*
   Case No. 10-09785-8-SWH, 2013 Bankr. LEXIS 747 (Bankr. E.D.N.C. Feb. 28, 2013) ....... 20

*In re Buttonwood Partners, Ltd.*
   111 B.R. 57 (Bankr. S.D.N.Y. 1990).......................................................................................... 16

*In re Chateugay Corp.*
    89 F.3d 942 (2d Cir. 1996) ......................................................................................................... 3

*In re Coltex Loop Cent. Three Partners, L.P.*
   138 F.3d 39 (2d Cir. 1998) ......................................................................................................... 18

*In re Drexel Burnham Lambert Grp., Inc.*
   138 B.R. 714 (Bankr. S.D.N.Y. 1992)........................................................................................ 17

*In re Eletson Holdings Inc.*
   664 B.R. 569 (Bankr. S.D.N.Y. 2024)........................................................................................ 19

*In re Fur Creations by Varriale, Ltd.*
   188 B.R. 754 (Bankr. S.D.N.Y. 1995)........................................................................................ 11

*In re Genco Shipping & Trade Ltd.*
   513 B.R. 233 (Bankr. S.D.N.Y. 2014)........................................................................................ 17

*In re Global Fertility & Genetics, New York, LLC*
   663 B.R. 584 (Bankr. S.D.N.Y. 2024)........................................................................................ 21

*In re Granite Broad. Corp.*
   369 B.R. 120 (Bankr. S.D.N.Y. 2007).......................................................................................... 8

*In re Ionosphere Clubs, Inc.*
   98 B.R. 174 (Bankr. S.D.N.Y. 1989)............................................................................................ 3

*In re Johns-Manville Corp*
   68 B.R. 618 (Bankr. S.D.N.Y. 1986).................................................................................. 6, 10, 14, 16

*In re Koelbl*
   751 F.2d 137 (2d Cir. 1984) ...................................................................................................... 8, 9

*In re Lionel L.L.C.*
   Case No. 04-17324 (BRL), 2008 Bankr. LEXIS 1047, (Bankr. S.D.N.Y. Mar. 31, 2008)......... 9

iv

*In re One Times Square Assocs. Ltd. P'ship*
  159 B.R. 695 (Bankr. S.D.N.Y. 1993).................................................................................. 14

*In re Oneida Ltd.*
  351 B.R. 79 (Bankr. S.D.N.Y. 2006)..................................................................................... 22

*In re Platinum Corral LLC*
  Case No. 21-00833-5-JNC, 2022 WL 127431 (Bankr. E.D.N.C. Jan. 13, 2022)................ 20, 21

*In re Sea Launch Co., L.L.C.*
  Case No. 09-12153 (BLS), 2010 Bankr. LEXIS 5283 (Bankr. D. Del. July 30, 2010) ............ 15

*In re Texaco, Inc.*
  84 B.R. 893 (Bankr. S.D.N.Y. 1988)...................................................................................... 2

*In re WorldCom, Inc.*
  Case No. 02-13533 (AJG), 2003 WL 23861928 (Bankr. S.D.N.Y. Oct. 31, 2003) 10, 15, 16, 17

*In re Zenith Elecs. Corp.*
  241 B.R. 92 (Bankr. D. Del. 1999)......................................................................................... 16

*JP Morgan Chase Bank, N.A. v. Charter Commc'ns Operating, LLC (In re Charter Commc'ns)*
  419 B.R. 221 (Bankr. S.D.N.Y. 2009).................................................................................... 2

*Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*
  843 F.2d 636 (2d Cir. 1988) ............................................................................................... 8, 14

*Pub. Fin. Corp. v. Freeman (In re Pub. Fin. Corp.)*
  712 F.2d 219 (5th Cir. 1982) .................................................................................................. 9

*SEC v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*
  960 F.2d 285 (2d Cir. 1992) ................................................................................................... 8

*Upstream Energy Servs. v. Enron Corp.* (*In re Enron Corp.*)
  326 B.R. 497 (S.D.N.Y. 2005) ............................................................................................... 23

**Statutes**

28 U.S.C. § 1930.................................................................................................................... 15

Bankruptcy Code § 1114 ....................................................................................................... 15

Bankruptcy Code § 1121(d).................................................................................................... 20

Bankruptcy Code § 1122 ................................................................................................. 2, 3, 4

Bankruptcy Code § 1123(a) .................................................................................................. 4, 5

Bankruptcy Code § 1123(a)(1) ............................................................................................... 4

Bankruptcy Code §§ 1123(a)(2) .................................................................................. 4

Bankruptcy Code §§ 1123(a)(3) .................................................................................. 4

Bankruptcy Code § 1123(a)(4) .................................................................................... 4

Bankruptcy Code § 1123(a)(5) .................................................................................... 4

Bankruptcy Code § 1123(a)(6) .................................................................................... 5

Bankruptcy Code § 1123(a)(7) .................................................................................... 5

Bankruptcy Code §1123(a)(8) ..................................................................................... 4

Bankruptcy Code § 1123(a)11 ..................................................................................... 4

Bankruptcy Code § 1123(b)......................................................................................... 5

Bankruptcy Code § 1123(b)(2) .................................................................................. 24

Bankruptcy Code § 1123(d)...................................................................................... 5, 6

Bankruptcy Code §1125 ........................................................................................ 6, 7, 8

Bankruptcy Code § 1125(a) ......................................................................................... 7

Bankruptcy Code § 1125(b)......................................................................................... 7

Bankruptcy Code § 1125(c) ......................................................................................... 7

Bankruptcy Code § 1126 ............................................................................................. 8

Bankruptcy Code § 1126(c) ....................................................................................... 12

Bankruptcy Code § 1126(f) .................................................................................... 8, 11

Bankruptcy Code § 1129 ........................................................................................ 2, 8

Bankruptcy Code § 1129(a) ....................................................................... 1, 6, 10, 16

Bankruptcy Code § 1129(a)(1) .................................................................................... 2

Bankruptcy Code § 1129(a)(10) ................................................................................ 13

Bankruptcy Code § 1129(a)(11) ........................................................................... 14, 15

Bankruptcy Code § 1129(a)(12) ................................................................................ 15

Bankruptcy Code § 1129(a)(13) ................................................................................ 15

Bankruptcy Code § 1129(a)(14) ............................................................................................... 15

Bankruptcy Code § 1129(a)(15) ............................................................................................... 15

Bankruptcy Code § 1129(a)(16) ............................................................................................... 15

Bankruptcy Code § 1129(a)(2) ................................................................................................... 6

Bankruptcy Code § 1129(a)(3) ................................................................................................ 8, 9

Bankruptcy Code § 1129(a)(4) .............................................................................................. 9, 10

Bankruptcy Code § 1129(a)(5) ................................................................................................. 10

Bankruptcy Code § 1129(a)(5)(A)(i) ........................................................................................ 10

Bankruptcy Code § 1129(a)(5)(A)(ii) ....................................................................................... 10

Bankruptcy Code § 1129(a)(5)(B) ............................................................................................ 10

Bankruptcy Code § 1129(a)(7) ............................................................................................ 11,12

Bankruptcy Code § 1129(a)(8) ........................................................................................ 1, 12, 16

Bankruptcy Code § 1129(a)(9) ............................................................................................. 12, 13

Bankruptcy Code § 1129(a)(9)(A) ............................................................................................ 13

Bankruptcy Code § 1129(a)(9)(B) ............................................................................................ 13

Bankruptcy Code § 1129(a)(9)(C) ............................................................................................ 13

Bankruptcy Code § 1129(b) ................................................................................................. 16, 17

Bankruptcy Code § 1129(b)(1) ................................................................................................. 16

Bankruptcy Code §§ 1129(b)(2)(B)(ii) ..................................................................................... 17

Bankruptcy Code § 1129(c) ...................................................................................................... 22

Bankruptcy Code §§ 1129 (C)(ii) ............................................................................................. 17

Bankruptcy Code § 1129(d) ...................................................................................................... 22

Bankruptcy Code § 1129(e) ...................................................................................................... 22

Bankruptcy Code § 1141(d) ...................................................................................................... 23

Bankruptcy Code § 1141(d)(1)(A) ............................................................................................ 23

Bankruptcy Code §§ 1141(d)(2) ......................................................................................... 23

Bankruptcy Code §§ 1141(d) (3) ....................................................................................... 23

Bankruptcy Code § 365 ..................................................................................................... 24

Bankruptcy Code § 365(b)(1) ........................................................................................ 5, 6

Bankruptcy Code § 502(g) ................................................................................................ 23

Bankruptcy Code § 502(h) ................................................................................................ 23

Bankruptcy Code § 502(i) ................................................................................................. 23

ankruptcy Code § 507(a)(8) ............................................................................................. 13

Bankruptcy Code §§ 507(a)(1) or (4) through (7) ............................................................ 13

Bankruptcy Code §507(a)(2) ............................................................................................... 4

Bankruptcy Code §§ 507(a)(4) through (7) ...................................................................... 13

Bankruptcy Code §507(a)(8) ............................................................................................... 4

N.Y. BUS. CORP. LAW § 1507 (McKinney) ...................................................................... 21

## Other Authorities

H.R. Rep. No. 31, 109th Cong., 1st Sess. 145 (2005) ...................................................... 15

H.R. Rep. No. 595, 95th Cong., 1st Sess. 412 (1977 .......................................................... 6

## Rules

Bankruptcy Rules 2002(b) ................................................................................................... 7

Bankruptcy Rules 3017 ........................................................................................................ 6

Bankruptcy Rules 3017(d)–(f) ............................................................................................. 7

Excell Communications, Inc. and its affiliated debtors and debtors-in-possession (the "**Debtors**"), the above-captioned debtors and debtors-in-possession, respectfully submit this memorandum of law (the "**Memorandum**") in support of confirmation of the *Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (ECF Doc. No. 288) (the "**Plan**")[2].

In support of this Memorandum, the Debtors rely upon and incorporate herein by reference the Declaration of Carlos Lourenco, Chief Executive Officer of the Debtors (the "**Lourenco Declaration**").

The Debtors, by and through its undersigned counsel, respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The Debtors respectfully submit that the Court should confirm the Plan because it: (a) satisfies the requirements of Bankruptcy Code § 1129(a), (b) is in the best interests of the Estates, (c) is the product of extensive good faith and arm's length negotiations, and (d) has been accepted by all Classes entitled to vote. The Plan provides for the reorganization of the Debtors, allowing them to emerge leaner and more productive companies. The Plan includes estimated Distributions to General Unsecured Creditors of approximately 7% to 8%.

2.      All voting Classes voted to accept the Plan. Accordingly, the Debtors submit that it satisfies Bankruptcy Code § 1129(a)(8).  With respect to GGTF's continued ownership of Interests in the Reorganized Debtors, the Debtors submit that the New Value Contribution satisfies the requirements under applicable law. As demonstrated below, the New Value Contribution is meaningful, substantial, and essential for the Debtors' successful reorganization.

3.      The Plan satisfies each of the necessary statutory requirements, as demonstrated

---

[2] All capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Plan.

below. The Debtors respectfully submit that for the reasons set forth herein, the Plan is in the best interests of the Estates and all stakeholders and should be confirmed.

**RELEVANT FACTS**

4.　　The factual background for confirmation of the Plan is in the Disclosure Statement, the Lourenco Declaration, and, as necessary, any evidence that is presented or adduced at the Confirmation Hearing.

**ARGUMENT**

5.　　To confirm the Plan, the Debtors must establish by a preponderance of the evidence that the Plan has satisfied the requirements set forth in Bankruptcy Code § 1129. *See JP Morgan Chase Bank, N.A. v. Charter Commc'ns Operating, LLC (In re Charter Commc'ns)*, 419 B.R. 221, 243–44 (Bankr. S.D.N.Y. 2009*)* (finding plan proponent bears burden of establishing compliance with the factors set forth in section 1129 by a preponderance of the evidence).  The Debtors submit that the Plan satisfies each of the applicable provisions of Bankruptcy Code § 1129 by a preponderance of the evidence and, therefore, should be confirmed.

**I.　　The Plan Should be Approved**

**A.　The Plan Complies with Bankruptcy Code § 1129(a)(1)**

6.　　Bankruptcy Code § 1129(a)(1) provides that a plan must comply with the applicable provisions of the Bankruptcy Code — notably, those governing classification of claims and interests and the contents of the Plan.  *See* Bankruptcy Code § 1129(a)(1); *In re Texaco, Inc.*, 84 B.R. 893, 905 (Bankr. S.D.N.Y. 1988) ("In determining whether a plan complies with section 1129(a)(1), reference must be made to and  with respect to the classification of claims and the contents of a plan of reorganization."). Thus, to satisfy section 1129(a)(1), the Plan must comply with  Bankruptcy Code §§ 1122 and 1123, and the Debtors submit it does so.

2

### B.    The Plan Satisfies the Classification Requirements of Bankruptcy Code § 1122

7.        Under Bankruptcy Code § 1122, claims or interests within a given class must be "substantially similar" to the other claims or interests in the class.  *See* Bankruptcy Code § 1122. Such claims or interests may be separately classified provided a rational basis exists.  *See  Boston Post Rd. L.P. v. F.D.I.C. (In re Boston Post Rd. L.P.)*, 21 F.3d 477, 483 (2d Cir. 1994) (holding a debtor may classify unsecured claims in separate classes if the debtor adduces credible proof of a legitimate reason for separate classification of similar claims); *Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)*, 10 F.3d 944, 956–57 (2d Cir. 1993) (finding separate classification appropriate where classification scheme had rational basis; separate classification based on court-approved settlement); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 177–78 (Bankr. S.D.N.Y. 1989).

8.        Courts have identified several grounds justifying the separate classification of claims, including (a) where members of a class possess different legal rights, and (b) where the debtor has good business reasons for separate classification. *See In re Chateugay Corp.*, 89 F.3d 942, 949 (2d Cir. 1996) (finding separate classification of similarly situated claims is appropriate where supported by credible proof); *In re Bally Total Fitness of Greater N.Y., Inc.*, Case No. 07-12395 (BRL), 2007 WL 2779438, at *3 (Bankr. S.D.N.Y. Sept. 17, 2007) (same).

9.        Under the Plan, each Class contains only Claims or Interests that are substantially similar to the other Claims or Interests within the Class.  *See* Plan, Art. III.  Specifically, the Plan provides for the following Classes of Claims and Interests:

| Class | Treatment | Entitled to Vote |
|---|---|---|
| **1 Other Priority Claim** | Unimpaired | No –Deemed to Accept |
| **2(a) Secured Tax Claims** | Unimpaired | No – Deemed to Accept |
| **2(b) Other Secured Claims** | Unimpaired | No – Deemed to Accept |
| **3 General Unsecured Claims** | Impaired | Yes |
| **4 Equity Interests** | Unimpaired | No – Deemed to Accept |

10.     The Plan's classification scheme is supported by valid business, legal, and factual reasons.  Thus, valid business and legal reasons exist for separately classifying the Classes of Claims and Interests, and the Plan satisfies Bankruptcy Code § 1122.

### C.  The Plan Complies with Bankruptcy Code § 1123(a)

11.     Bankruptcy Code § 1123(a) sets forth seven requirements with which the Plan must comply. 11 U.S.C. § 1123(a)11 U.S.C. § 1123(a).[3] The Plan satisfies these requirements. *First*, as required by Bankruptcy Code § 1123(a)(1), the Plan designates Classes of Claims and Interests. *See* Plan, Sec. 3.03.  *Second*, as required by Bankruptcy Code §§ 1123(a)(2) and (3), the Plan specifies which Classes of Claims and Interests are Impaired and Unimpaired and sets forth their treatment.  *See* Plan, Sec. 3.03.  *Third*, unless a Holder of a Claim or Interest agrees to less favorable treatment, the Plan provides for the same treatment for each, satisfying Bankruptcy Code § 1123(a)(4).  *Fourth*, the Plan provides adequate means for its implementation as required under Bankruptcy Code § 1123(a)(5).  The Plan provides a detailed blueprint for the transactions contemplated thereunder, including: (a) the reorganization of the Debtors' business; (b) the New Value Contribution; (c) assumption of necessary leases and contracts; and (d) retaining the Plan Administrator.  Article V of the Plan describes the implementation of the aforementioned transactions, as well as preservation of certain Causes of Action and Claim objections.  Thus, the Plan satisfies Bankruptcy Code § 1123(a)(5).

---

[3] Specifically, the Plan must: (a) designate classes of claims and interests, other than administrative expense claims under Bankruptcy Code §507(a)(2) and priority tax claims under Bankruptcy Code §507(a)(8) (); (b) specify any class of claims or interests that is not impaired under the plan (); (c) specify the treatment of any class of claims or interests that is impaired under the plan (); provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest (); (e) provide adequate means for the plan's implementation (); (f) provide that the debtor's organizational documents prohibit the issuance of non-voting securities (); and (g) contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director or trustee under the plan and any successor to such officer, director, or trustee ().  Bankruptcy Code §1123(a)(8) is not applicable here.

4

12.    ***Fifth***, satisfying Bankruptcy Code § 1123(a)(6), the Debtors' corporate governance documents already or will prohibit the issuance of non-voting equity securities and GGTF will retain its interest in the Debtors. ***Last***, the Plan complies with Bankruptcy Code § 1123(a)(7) as it contains only those provisions that are consistent with the interests of Holders of Claims and Interests and with public policy, with respect to the manner of selection of any officer, director, trustee or the Plan Administrator, and any successor. The manner and selection of officers, directors and the Plan Administrator is disclosed in Article V, Sections 5.04 and 5.11. Accordingly, the Plan complies with Bankruptcy Code § 1123(a).

### D.  The Plan Complies with Bankruptcy Code § 1123(b)

13.    The Plan contains numerous provisions permitted by Bankruptcy Code § 1123(b) and applicable laws. Among other things, the Plan provides for: (a) the impairment of certain Claims; (b) modification of the rights of secured claims; (c) the rejection or assumption of certain executory contracts and unexpired leases; and (d) the injunction and/or exculpation of certain parties. *See* Plan, Art. III, VI and VII.

### E.  The Plan Complies with Bankruptcy Code § 1123(d)

14.    Bankruptcy Code § 1123(d) provides that "if it is proposed in a plan to cure a default the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable non-bankruptcy law." 11 U.S.C. § 1123(d). Section 7.03 of the Plan provides for the notification and determination of cure amounts, if any, and Section 7.04 provides for the satisfaction of any such cure amounts associated with each executory contract and unexpired lease to be assumed in accordance with Bankruptcy Code § 365(b)(1). 11 U.S.C. § 365(b)(1). At least fourteen (14) days before the Confirmation Hearing, the Debtors will serve notices on parties to executory contracts or unexpired leases to be assumed reflecting the Debtor's

5

intention, and setting forth the proposed cure amount (if any). *See* Plan, Sec. 7.03(a). If any counterparty does not receive a notice, the proposed cure amount is zero dollars ($0.00). *Id.* Subject to the resolution of any cure disputes, all cures shall be satisfied by the Debtors or the Reorganized Debtors, as applicable, upon assumption. *See* Plan, Sec. 7.04. Any disputed cure amounts will be determined in accordance with the procedures set forth in Section 7.03 of the Plan and applicable law. In sum, the Plan complies with Bankruptcy Code § 1123(d) because it provides that the Debtors will cure, or provide adequate assurance that the Debtors will promptly cure, defaults under executory contracts or unexpired leases under Bankruptcy Code § 365(b)(1).

**F.   The Plan Complies with Bankruptcy Code § 1129(a)(2)**

15.    Bankruptcy Code § 1129(a)(2) also requires the proponent of a chapter 11 plan to comply with the applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1129(a)(2). Bankruptcy Code § 1129(a)(2) is intended to encompass the disclosure and solicitation requirements contained in §§ 1125 and 1126. *See* S. Rep. No. 989, 95th Cong., 2d Sess. 126 (1978) ("Paragraph (2) [of section 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure."); H.R. Rep. No. 595, 95th Cong., 1st Sess. 412 (1977) (same); *see also In re Johns-Manville Corp.*, 68 B.R. 618, 630 (Bankr. S.D.N.Y. 1986) ("Objections to confirmation raised under § 1129(a)(2) generally involve the alleged failure of the plan proponent to comply with § 1125 and of the Code.").

16.    The Debtors have complied with the applicable provisions of the Bankruptcy Code, including  Bankruptcy Code §§ 1125 and 1126, Bankruptcy Rules 3017, by distributing the Disclosure Statement and soliciting votes on the Plan in accordance with: (a) the *Order: (A) Approving Adequacy of the Disclosure Statement for Debtors' Second Amended Plan of Reorganization under Chapter 11 of the Bankruptcy Code; (B) Establishing Procedures for*

6

*Solicitation and Tabulation of Votes to accept the Plan ; and (C) Scheduling a Hearing on Confinement of the Plan and (D) Approving Related Notice Procedures* (ECF Doc. No. 289) (the "**Disclosure Statement Order**").

II.     **The Debtors Have Complied with the Disclosure Statement Order, and the Disclosure and Solicitation Requirements of Bankruptcy Code § 1125, Warranting Final Approval of the Disclosure Statement**

17.     The Debtors satisfied Bankruptcy Code § 1125, which prohibits the solicitation of acceptances or rejections of a plan "unless, at the time of or before such solicitation, there is transmitted . . . the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." 11 U.S.C. § 1125.  As set forth in the *Affidavit of Service of Solicitation Packages* (ECF Doc. Nos. 92 and 317), on June 12, 2026, Debtors' counsel caused copies of the "Solicitation Packages" to be served via first-class mail to the Holders of Claims and Interests as required under the Disclosure Statement Order.[4]

18.     Accordingly, the Debtors served the Solicitation Packages in accordance with the requirements of Bankruptcy Rules 2002(b) and 3017(d)–(f) and the Disclosure Statement Order. The Debtors have complied in all respects with the content and delivery requirements of the Disclosure Statement Order, thereby satisfying Bankruptcy Code § 1125(a) and (b).  Furthermore, the Debtors satisfied Bankruptcy Code § 1125(c), which provides that the same disclosure statement must be transmitted to each holder of a claim or interest in a particular class. *See* Bankruptcy Code § 1125(c); *Affidavit of Service of Solicitation Packages* (ECF Doc. Nos. 292 and 317).  Last, the Debtors did not solicit acceptances of the Plan from any creditor or interest holder prior to transmission of the Disclosure Statement.  The Debtors have complied with Bankruptcy Code § 1125.

---

[4] The "Solicitation Packages" consist of: (a) the Plan; (b) the Disclosure Statement; (c) the Disclosure Statement Order; and (d) Ballots.

### III.    The Debtors Satisfied the Requirements of Bankruptcy Code § 1126

19.    Bankruptcy Code § 1126 specifies the requirements for acceptance of a plan and provides which holders of claims or interests are entitled to vote on the plan. *See* 11 U.S.C. § 1126. Only holders of allowed claims in impaired classes that will receive or retain property under a plan on account of such claims may vote. *See id.* A class that is not impaired, and each holder of a claim or interest in such class, is presumed to accept the plan. *See* 11 U.S.C. § 1126(f); *see also SEC v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 960 F.2d 285, 290 (2d Cir. 1992) (noting that an unimpaired class is presumed to have accepted the plan).

20.    Pursuant to the Plan, the Debtors did not solicit votes from: (a) Class 1, Class 2, Class 2(a), Class 2(b) and Class 4 which Classes are unimpaired and, therefore, deemed to accept the Plan. Bankruptcy Code § 1126. Only Holders of Claims in Class 3 were entitled to vote to accept or reject the Plan, because they are impaired and will receive Distributions. The Debtors submit that its solicitation of votes complies with Bankruptcy Code §§ 1125 and 1126.

### IV.    The Plan Complies with the Remaining Applicable Sections of Bankruptcy Code § 1129

#### A.    The Plan Complies with Bankruptcy Code § 1129(a)(3)

21.    Bankruptcy Code § 1129(a)(3) requires that a plan be "proposed in good faith and not by any means forbidden by law." Bankruptcy Code § 1129(a)(3). The good faith standard requires "a showing that the plan [was] proposed with honesty, good intentions and with a basis for expecting that a reorganization can be effected." *In re Granite Broad. Corp.*, 369 B.R. 120, 129 (Bankr. S.D.N.Y. 2007) (alteration in original) (internal quotation marks omitted); *Argo Fund Ltd. v. Bd. of Dirs. of Telecom Argentina, S.A. (In re Bd. Of Dirs. Of Telecom Argentina, S.A.)*, 528 F.3d 162, 174 (2d Cir. 2008) (same) (citing *In re Koelbl*, 751 F.2d 137, 139 (2d Cir. 1984)); *Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 649 (2d Cir. 1988)

8

(quoting *In re Koelbl*).

22.    Good faith is to be determined "in light of the totality of the circumstances surrounding" formulation of the plan.  *Pub. Fin. Corp. v. Freeman (In re Pub. Fin. Corp.)*, 712 F.2d 219, 221 (5th Cir. 1982); *see In re Lionel L.L.C.*, Case No. 04-17324 (BRL), 2008 Bankr. LEXIS 1047, at *15–16 (Bankr. S.D.N.Y. Mar. 31, 2008) (looking to the totality of the circumstances to determine that a plan was proposed in good faith under section 1129(a)(3)).

23.    The Plan was proposed in good faith and not by any means forbidden by law.  The Plan is the product of extensive arm's-length and good faith negotiations by and among the Debtors, the Plan Proponent, and the Official Committee of Unsecured Creditors ("Creditors Committee"). As a result, the Plan provides for: (a) the fair allocation of the Debtors' assets and Distributions to General Unsecured Creditors, and (b) GGTF's ownership of the Interests in the Reorganized Debtors in exchange for the New Value Contribution. Those negotiations resulted in a consensual Plan, where no party's good faith was questioned.  The Plan formulation process was conducted in good faith and all participants were independently represented by competent counsel. Furthermore, the support of the Plan as to the Voting Class(es) reflects the Plan's inherent fairness and good faith efforts to achieve the objectives of chapter 11. Thus, the Plan satisfies Bankruptcy Code § 1129(a)(3).

### B.    The Plan Complies with Bankruptcy Code § 1129(a)(4)

24.    Bankruptcy Code § 1129(a)(4) requires that a payment "for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved, or is subject to approval of, the court as reasonable." 11 U.S.C. § 1129(a)(4).  This section has been construed to require that all payments of professional fees that are made from assets of a debtor's estate be subject to bankruptcy court review and approval as to

their reasonableness. *See In re WorldCom, Inc.,* Case No. 02-13533 (AJG), 2003 WL 23861928, at \*54 (Bankr. S.D.N.Y. Oct. 31, 2003) ("Section 1129(a)(4) has been construed to require that all payments of professional fees that are made from estate assets be subject to review and approval as to their reasonableness by the Court."); *see also In re Johns-Manville Corp.*, 68 B.R. 618, 632 (Bankr. S.D.N.Y. 1986).

25.    Pursuant to the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (ECF Doc. No. 23), the Court authorized and approved procedures for payment of certain fees and expenses of professionals retained in this Chapter 11 Case.  All Professional Fee Claims are subject to final review and approval by the Court under the applicable provisions of the Bankruptcy Code. *See* Plan, Art. I and Sec. 2.02.  The Plan provides that all Professionals shall submit final fee applications seeking approval of all Professional Fee Claims no later than forty-five (45) days after the Effective Date. *See* Plan, Sec. 2.02(b).   Accordingly, the Plan complies with Bankruptcy Code § 1129(a)(4).

**C.    The Plan Complies with Bankruptcy Code § 1129(a)(5)**

26.    Bankruptcy Code § 1129(a)(5) requires the proponent of a plan to disclose the identity and affiliation of any individual proposed to serve as a director or officer of the debtor, or a successor to the debtor under a plan. *See* 11 U.S.C. § 1129(a)(5)(A)(i).  Bankruptcy Code § 1129(a)(5)(A)(ii) requires that the appointment or continuance of such officers and/or directors be consistent with the interest of creditors and equity security holders and with public policy.  11 U.S.C. § 1129(a)(5)(A)(ii).  Bankruptcy Code § 1129(a)(5)(B) requires that the plan proponent disclose the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for any such insider. *See* 11 U.S.C. § 1129(a)(5)(B).

27.    Under the Plan, the officers of the Reorganized Debtors before the Effective Date

10

shall serve as the initial officers after the Effective Date. *See* Plan, Sec. 5.04.

### D.    The Plan Complies with Bankruptcy Code § 1129(a)(7)

28.    Bankruptcy Code § 1129(a)(7) provides that a plan must be in the "best interests" of creditors and interest holders. *See* 11 U.S.C. § 1129(a)(7). The "best interests" test requires that each holder of a claim or interest accept the plan or receive or retain property having a present value, as of the effective date of the plan, not less than the amount such holder would receive or retain if the debtor were liquidated in a hypothetical liquidation under chapter 7 of the Bankruptcy Code. *See Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters., Ltd., II (In re Briscoe Enters. Ltd., II)*, 994 F.2d 1160, 1167 (5th Cir. 1993); *In re Fur Creations by Varriale, Ltd.*, 188 B.R. 754, 759 (Bankr. S.D.N.Y. 1995); *In re Best Prods. Co., Inc.,* 168 B.R. 35, 72 (Bankr. S.D.N.Y. 1994).

29.    Bankruptcy Code § 1129(a)(7) applies only to non-accepting holders of impaired claims. *See* 11 U.S.C. § 1129(a)(7). Pursuant to Bankruptcy Code § 1126(f), a class that is not "impaired" under the plan is deemed to have accepted the plan and, therefore, has waived application of the "best interests" test. *See id.id.id.*; 11 U.S.C. § 1126(f). Here, Classes 1, 2(a), 2(b), and 4 are Unimpaired under the Plan, deemed to have accepted the Plan and, therefore, waived application of the "best interests" test. The "best interests" test also does not apply to Class 3, because there would be no recovery available to them in a chapter 7 liquidation.

30.    The best interests test is generally satisfied by a liquidation analysis demonstrating that an impaired class will receive no less under the plan than under a chapter 7 liquidation. *See In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 251 (Bankr. S.D.N.Y. 2007) (holding that Bankruptcy Code § 1129(a)(7) was satisfied when impaired holder of claim would receive "no less than such holder would receive in a hypothetical chapter 7 liquidation"). The Debtors, with the assistance of its retained professionals, prepared a liquidation analysis that estimates recoveries

11

for members of each Class under the Plan (the "**Liquidation Analysis**"). *See* Disclosure Statement, Exh. B. The projected recoveries under the Plan and the results of the Liquidation Analysis for Holders of Claims and Interests in Voting Classes are:

| Class | Designation | Voting Rights | Projected Recovery Under the Plan | Estimated Recovery Under Chapter 7 Liquidation |
|---|---|---|---|---|
| Class 3 | General Unsecured Claims | Yes | 7% -8% | 0 |

31. All Holders of Claims and Interests entitled to vote on the Plan received the Liquidation Analysis and the Disclosure Statement and were provided ample time to consider the contents thereof. Further, many of the Holders of Claims in Class 3 continue to do business with the Reorganized Debtors and benefit from the reorganization. As demonstrated by the Liquidation Analysis, if this Chapter 11 Case converts to a case under chapter 7, creditors in the Voting Classes would receive lower recoveries than under the Plan. The Debtors submit that the Plan satisfies the "best interests" test and all other requirements of Bankruptcy Code § 1129(a)(7).

**E.      The Plan Complies with Bankruptcy Code § 1129(a)(8)**

32. Bankruptcy Code § 1129(a)(8) requires that each class of claims or interests must either accept a debtor's plan or be unimpaired under the plan. *See* 11 U.S.C. § 1129(a)(8). Pursuant to Bankruptcy Code § 1126(c), a class of impaired claims accepts a plan if holders of at least two-thirds in dollar amount and more than one-half in number of the allowed claims of such class that have accepted or rejected the plan. *See* 11 U.S.C. § 1126(c).

33. Here, Class 3 (General Unsecured Claims), voted to, or agreed to vote to, accept the Plan. Accordingly, all impaired Classes entitled to vote accepted the Plan.

**F.      The Plan Complies with Bankruptcy Code § 1129(a)(9)**

34. Bankruptcy Code § 1129(a)(9) requires that certain priority claims be paid in full

12

on the effective date and others receive deferred cash payments. *See* 11 U.S.C. § 1129(a)(9).[5]   The

Plan satisfies Bankruptcy Code § 1129(a)(9):

a. The Plan satisfies Bankruptcy Code § 1129(a)(9)(A) because except to the extent the Debtors or the Plan Administrator, as applicable, and the holder of an Allowed Administrative Claim agree to different and less favorable treatment, the Plan Administrator shall pay, in full satisfaction and release of such Claim, to each such holder, on the later of (i) the Effective Date, and (ii) the first Business Day that is 60 calendar days after the date on which such Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practicable. *See* Plan, Sec. 2.01.

b. The Plan satisfies Bankruptcy Code § 1129(a)(9)(B) because Holders of the types of Claims specified in that section are unimpaired under the Plan and will receive on account of such Allowed Other Priority Claim monthly Distributions in an amount equal to the amount of such Allowed Other Priority Claim over a five (5) year period, at the prime rate of interest as published by the Wall Street Journal or similar publication.  *See* Plan, Sec. 3.03.

c. The Debtors shall be responsible for ensuring the payment in full of all Allowed Priority Tax Claims. Holders of Allowed Priority Tax Claims shall receive Distributions over the life of the Plan or maximum time allowed in accordance with section 1129(a) of the Bankruptcy Code, plus interest from and after the Petition Date at the applicable federal rate, state rate, or as agreed upon by the parties, until paid in full. Notwithstanding anything contained herein to the contrary, the interest rate applicable to New York State's priority tax claim will be nine (9%) percent.

### G.      The Plan Satisfies Bankruptcy Code § 1129(a)(10)

35.      Bankruptcy Code § 1129(a)(10) requires that at least one impaired class of claims,

excluding acceptances of insiders, accept the Plan. *See* 11 U.S.C. § 1129(a)(10). The Plan was

---

[5] Pursuant to Bankruptcy Code § 1129(a)(9)(A), holders of claims of a kind specified in Bankruptcy Code § 507(a)(2) — administrative claims allowed under section 503(b) — must receive on the effective date cash equal to the allowed amount of such claims.  *Id.*  Bankruptcy Code § 1129(a)(9)(B) requires that each holder of a claim of a kind specified in Bankruptcy Code §§ 507(a)(1) or (4) through (7) — which generally include domestic support obligations, wages, employee benefits, and deposit claims entitled to priority — must receive deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim (if such class has accepted the plan), or cash of a value equal to the allowed amount of such claim on the effective date of the plan (if such class has not accepted the plan).  *See* 11 U.S.C. § 1129(a)(9)(B).  Finally, Bankruptcy Code § 1129(a)(9)(C) provides that the holder of a claim of a kind specified in Bankruptcy Code § 507(a)(8) — priority tax claims — must receive cash payments over a period not to exceed five years from the petition date, the present value of which equals the allowed amount of the claim.  11 U.S.C. § 1129(a)(9)(C).

accepted by at least one impaired class of claims excluding insiders.

**H.        The Plan Complies with Bankruptcy Code § 1129(a)(11)**

36.        Bankruptcy Code § 1129(a)(11) requires that the Court find that the Plan is feasible. *See* 11 U.S.C. § 1129(a)(11).  It is not necessary that success be guaranteed.  *See Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 649 (2d Cir. 1988) ("[T]he feasibility standard is whether the plan offers a reasonable assurance of success.  Success need not be guaranteed."). "In making determinations as to feasibility . . . a bankruptcy court does not need to know to a certainty, or even a substantial probability, that the plan will succeed.  All it needs to know is that the plan has a reasonable likelihood of success." *In re Adelphia Bus. Solutions, Inc.*, 341 B.R. 415, 421–22 (Bankr. S.D.N.Y. 2003); *In re One Times Square Assocs. Ltd. P'ship*, 159 B.R. 695, 709 (Bankr. S.D.N.Y. 1993). Courts will find that a plan is feasible if a debtor demonstrates a reasonable assurance that consummation of the plan will not likely be followed by a further need for financial reorganization." *See In re Johns-Manville Corp.*, 843 F.2d at 649.

37.        Courts consider a number of factors when assessing feasibility of a plan, including: (a) the prospective earnings of the business or its earning power; (b) the soundness and adequacy of the capital structure and working capital for the business which the debtor will engage in post-confirmation; (c) the prospective availability of credit; (d) whether the debtor will have the ability to meet its requirements for capital expenditures; (e) economic and market conditions; (f) the ability of management, and the likelihood that the same management will continue; and (g) any other related matter which determines the prospects of a sufficiently successful operation to enable performance of the provisions of the plan.  *See, e.g.*, *WorldCom, Inc.*, Case No. 02-13533 (AJG), 2003 WL 23861928, at *58 (Bankr. S.D.N.Y. Oct. 31, 2003); 8 B.R. 85, 862–63 (Bankr. S.D.N.Y. 1986).

38.    Here, the Plan satisfies the feasibility requirements of Bankruptcy Code § 1129(a)(11).  The Debtors anticipate that it will have sufficient Cash on hand on the Effective Date to make all of the payments required on the Effective Date under the Plan.  *See* Disclosure Statement, Art. XV.   GGTF has or will fund the New Value Contribution allowing the Debtors to deposit the General Unsecured Claims Cash Distribution into the GUC Distribution Account.  The Debtors financial projections confirm that the Debtors can successfully make the payments under the Plan.  Moreover, as of the date of this Memorandum, no objections were filed as to the Debtors' financial projections of the Plan.  Accordingly, the Plan satisfies Bankruptcy Code § 1129(a)(11).

## I.    The Plan Complies with Bankruptcy Code § 1129(a)(12)

39.    Bankruptcy Code § 1129(a)(12) requires that either all fees payable under 28 U.S.C. § 1930, as determined by the court at the confirmation hearing, have been paid or that the plan provides for the payment of all such fees on the effective date.  11 U.S.C. § 1129(a)(12).  The Plan provides that all such fees shall be paid on the Effective Date.  *See* Plan, Sec. 10.07.

## J.    The Plan Bankruptcy Code §§ 1129(a)(13), (14), (15) and (16) Are Not Applicable

40.    Bankruptcy Code §§ 1129(a)(13), (14), (15) and (16) do not apply here.[6]

---

[6] Bankruptcy Code § 1129(a)(13) requires that retiree benefits are paid post-confirmation at any levels established in accordance with Bankruptcy Code § 1114.  *See* 11 U.S.C. § 1129(a)(13).  The Plan provides that all such retiree benefits, if any exist (none do presently), shall continue to be paid in accordance with applicable law.  *See* Plan, Sec. 5.11. Bankruptcy Code § 1129(a)(14) requires payment of certain support obligations.  *See* 11 U.S.C. § 1129(a)(14). The Debtors have none. Bankruptcy Code § 1129(a)(15) imposes payment obligations on individual debtors.  *See* 11 U.S.C. § 1129(a)(15).  The Debtors are not an individual. Bankruptcy Code § 1129(a)(16) applies to transfers by "a corporation or trust that is not a moneyed, business, or commercial corporation or trust."  11 U.S.C. § 1129(a)(16). This section was intended to "restrict the authority of a trustee to use, sell, or lease property by a nonprofit corporation or trust." *See* H.R. Rep. No. 31, 109th Cong., 1st Sess. 145 (2005); *In re Sea Launch Co., L.L.C.*, Case No. 09-12153 (BLS), 2010 Bankr. LEXIS 5283, at *41 (Bankr. D. Del. July 30, 2010) ("Section 1129(a)(16) by its terms applies only to corporations and trusts that are not moneyed, business, or commercial.") (internal quotation marks and citation omitted).  The Debtors are not a nonprofit entity.

15

**K. The Plan Satisfies the "Cram Down" Requirements of Bankruptcy Code § 1129(b)[7]**

41. Bankruptcy Code § 1129(b) provides that if all applicable requirements of section 1129(a) are met, other than section 1129(a)(8), a plan may be confirmed so long as the requirements set forth in section 1129(b) are met. *See* 11 U.S.C. § 1129(b). To confirm a plan that has not been accepted by all impaired classes the plan proponent must show that the plan does not "discriminate unfairly" and is "fair and equitable" with respect to the non-accepting impaired classes. *See* 11 U.S.C. § 1129(b)(1). *See also In re Zenith Elecs. Corp.*, 241 B.R. 92, 105 (Bankr. D. Del. 1999) (explaining "[w]here a[n impaired] class of creditors or shareholders has not accepted a plan of reorganization, the court shall nonetheless confirm the plan if it 'does not discriminate unfairly and is fair and equitable.'") (citation omitted).

**(i)      The Plan Does Not Discriminate Unfairly With Respect to Rejecting Classes**

42. The Plan does not discriminate unfairly with respect to the impaired classes that are deemed to reject the Plan. Bankruptcy Code § 1129(b) provides that a plan discriminates unfairly where similarly situated classes are treated differently without a reasonable basis for the disparate treatment. *See In re WorldCom, Inc.,* Case No. 02-13533 (AJG), 2003 WL 23861928, at \*59 (Bankr. S.D.N.Y. Oct. 31, 2003) (citing *In re Buttonwood Partners, Ltd.*, 111 B.R. 57, 63 (Bankr. S.D.N.Y. 1990)); *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 247 (Bankr. S.D.N.Y. 2007). As between two classes of claims or interests, there is no unfair discrimination if (a) the classes are comprised of dissimilar claims or interests (*see, e.g.*, *In re Johns-Manville Corp,* 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986); *In re Ambanc La Mesa Ltd. P'ship*, 115 F.3d 650, 656–57 (9th Cir. 1997); *In re Aztec Co.*, 107 B.R. 585, 589–91 (Bankr. M.D. Tenn. 1989)), or (b) taking into account the

---

[7] All voting impaired Classes accepted the Plan and, therefore, the Plan satisfies Bankruptcy Code § 1129(a)(8).

particular circumstances of the case, there is reasonable basis for such disparate treatment (*see, e.g..*, *In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 714, 715 (Bankr. S.D.N.Y. 1992) (separate classification and treatment was rational where members of each class "possess[ed] different legal rights"); *In re Aztec Co.*, 107 B.R. at 590). Not all discrimination is impermissible under section 1129(b).

43.    Courts in this District have applied a four-part test to determine if the discrimination is fair, asking whether: (a) there is a reasonable basis for discriminating; (b) the debtor cannot consummate the plan without discrimination; (c) the discrimination is proposed in good faith; and (d) the degree of discrimination is in direct proportion to its rationale. S*ee, e.g.*, *In re Genco Shipping & Trade Ltd.*, 513 B.R. 233, 241–42 (Bankr. S.D.N.Y. 2014); *WorldCom, Inc.*, 2003 WL 23861928, at *59 (citing *In re Buttonwood Partners, Ltd.*, 111 B.R. at 63).  The "test boils down to whether the proposed discrimination has a reasonable basis and is necessary for reorganization." *In re Breitburn Energy Partners LP*, 582 B.R. 321, 351 (Bankr. S.D.N.Y. 2018) (citing 7 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 1129.03(3)(a), at 1129–66).

44.    Bankruptcy Code §§ 1129(b)(2)(B)(ii) and (C)(ii) provide that a plan is fair and equitable with respect to a class of impaired unsecured claims or interests if, under the plan, no holder of any claim or interest junior thereto will receive or retain property under the plan on account of such junior claim or interest.  *See* 11 U.S.C. §§ 1129(b)(2)(B)(ii) and (C)(ii).  This central tenet of bankruptcy law, known as the "absolute priority rule," requires that if the holders of claims in a particular class receive less than full value for their claims, no holders of claims or interests in a junior class may receive any property under the plan.  *See Bank of Am. Nat. Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441–42 (1999).

17

### (ii)      The New Value Contribution Satisfies the Applicable Requirements

45.      The Debtors submit that (a) the New Value Contribution satisfies the requirements for a "new value contribution" under the applicable Second Circuit standards, and (b) the "market test" should not apply under the circumstances of this Chapter 11 Case.

46.      The details of the New Value Contribution are set forth in Articles V and VI of the Disclosure Statement. In summary, GGTF will make the New Value Contribution as follows: on the Effective Date, GGTF will contribute an amount up to an aggregate of $1,300,000.00 to fund Distributions to holders of Allowed Claims in Class 3, and consent to the conversion of the DIP Loans to the DIP Term Out Facility as of the Effective Date in order to fund the Distributions to Allowed Claims in Class. The Plan will be funded by the New Value Contribution deposited on the Effective Date for the benefit of unsecured creditors, from Cash on hand and revenue generated from business operations, as well as the proceeds from any other Assets available to fund the Plan. On the Effective Date, the lump sum payment in the amount of $1,300,000 from the New Value Contribution shall be deposited into a segregated account designated by and under the control of the Plan Administrator (the "GUC Distribution Account"), separate and apart from the Reorganized Debtor's operating accounts, for the exclusive benefit of holders of Allowed General Unsecured Claims.

47.      The "new value exception" to the absolute priority rule provides that a shareholder may retain his equity even where unsecured creditors will not be paid in full if certain requirements are satisfied. *Bank of Am. Nat. Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 442 (1999); *see BT/SAP Pool C Assocs. V. Coltex Loop Cent. Three Partners,* 203 B.R. 527, 532 (S.D.N.Y. 1996) ("*Coltex II*"), *aff'd sub nom.*, *In re Coltex Loop Cent. Three Partners, L.P.*, 138 F.3d 39 (2d Cir. 1998) ("*Coltex III*"). "To satisfy the new value exception, a contribution ha[s] to

be necessary to the success of the undertaking and old equity's participation ha[s] to be based on a substantial contribution in money or money's worth.  In addition, the contribution ha[s] to be reasonable equivalent to the property received or retained by the equity holder." *Coltex II*, 203 B.R. at 532  (citing *Case v. Los Angeles Lumber Prod. Co.*, 308 U.S. 106 (1939)).

48.    Courts in the Second Circuit have generally adopted certain requirements to satisfy the new value exception, that the contribution be "(1) new, (2) substantial, (3) money or money's worth, (4) necessary for a successful reorganization and (5) reasonably equivalent to the property that old equity is retaining or receiving." *In re Eletson Holdings Inc.*, 664 B.R. 569, 613 (Bankr. S.D.N.Y. 2024) (citing *Coltex II*, 203 B.R. at 535) (holding new value contribution did not meet new value exception where significant portions of contribution were contingent upon recoveries outside of the contributing party's control).

49.    In order to satisfy the "necessary" prong, "old equity must be willing to contribute more money than any other source or it must be the lender of 'last resort.'" *Id.* (citations omitted in original).  This has come to be known as the "market test" which overlaps the "necessary" and "reasonably equivalent value" prongs.  "[T]he market must be tested for other sources of funding and the debtor must be able to satisfy the bankruptcy court, with tangible proof, that the debtor would be unable to obtain funds from any other source or that no other source was willing to infuse the same amount of capital as old equity." *Id.*  (citations omitted).

50.    The New Value Contribution satisfies the necessary prongs.

51.    ***Second***, the market test is relevant when there exists an objecting unpaid creditor contesting an equity holder's right to purchase his interests without paying creditors in full.  *In re Castleton Plaza, LP*, 707 F.3d 821, 822 (7th Cir. 2013) ("Competition is essential whenever a plan of reorganization leaves an objecting creditor unpaid yet distributes an equity interest to an

19

insider."). Here, there is no objecting General Unsecured Creditor.

52. ***Third***, the market test is viewed as important and necessary when a debtor is attempting to confirm a plan of reorganization with a new value contribution during the exclusive period set forth under Bankruptcy Code § 1121(d). *See In re Platinum Corral LLC*, Case No. 21-00833-5-JNC, 2022 WL 127431, at *13 (Bankr. E.D.N.C. Jan. 13, 2022) ("[T]he market test can be waived, although generally this occurs after the plan exclusivity period has expired, and any party in interest could propose a competing plan but has not.") (citing *In re Bumgardner*, Case No. 10-09785-8-SWH, 2013 Bankr. LEXIS 747, at *24 (Bankr. E.D.N.C. Feb. 28, 2013) (holding new value exception was satisfied where no other party even attempted to outbid the prior equity holder or propose a competing plan when the case was months outside the exclusivity period). While the Debtors exclusive eriod to file a plan has not passed, the Debtors have been in Chapter 11 for nearly eighteen (18) months and have not received any offers to purchase some or all of the assets.

53. The Debtors, the Plan Proponent and the Creditors Committee engaged in substantial negotiations over the value and timing of the New Value Contribution. The Debtors assets include receivables, limited vehicles and related equipment, and inventory, primarily composed of fiber optic cable and related equipment. (the "**Fiber Assets**").

54. Beginning in October 2024, the Debtors engaged approximately nine (9) brokers from around the globe to market the Assets, in the United States, South America, the Middle East, Europe, Africa and the Caribbean. Notwithstanding these efforts, to date, the Debtors have not received a single proposal to purchase some or all of the Fiber Assets.

55. In addition to the Debtors' efforts, the Creditors Committee, through its retained professionals, Dundon Advisors, actively marketed the Fiber Assets. Dundon contacted twenty (20) potential purchasers (both directly and indirectly), including nineteen (19) potential

20

purchasers of the Fiber Assets and one (1) potential financial partner.   Thirteen (13) contacts were outside of the United States, including parties from Africa, Mexico, Canada, Columbia, Spain, Brazil, Chile and the United Kingdom.

56.     Neither the Debtors, nor the Creditor Committee's advisors were able to locate a buyer or buyers of the Fiber Assets.

57.     Based upon these efforts, and recognizing the limited value of the Debtors' assets, the Debtors, Plan Proponent and Creditors Committee engaged in substantial negotiations, and agreed upon the value and timing of the New Value Contribution.

58.     Furthermore, the Debtor has been in bankruptcy for approximately eighteen (18) months, but no third parties have made offers to acquire the business.  *See In re Global Fertility & Genetics, New York, LLC*, 663 B.R. 584, 613–15 (Bankr. S.D.N.Y. 2024) (holding third-party competing plan with higher dollar value was not an appropriate measure of value of debtor's business where competing plan was filed late, without a disclosure statement, seemingly un-confirmable, and where it was not clear confirmation of that plan would produce a better outcome for creditors).

59.     ***Fourth***, the market test may be waived when "no other party is eligible to own the business, or if all eligible buyers decline to bid after given an opportunity." *In re Platinum Corral LLC*, Case No. 21-00833-5-JNC, 2022 WL 127431, at *13 (Bankr. E.D.N.C. Jan. 13, 2022).  Here, the Debtor's business is fiber optic design and installation. Accordingly, the pool of potential owners is limited. N.Y. BUS. CORP. LAW § 1507 (McKinney).

60.     In sum, the Debtors believe and ask the Court to accept that the New Value Contribution satisfies the applicable requirements, that the market test is unnecessary under the circumstances, and the Plan is fair and equitable as to Class 3.

### L.  Bankruptcy Code § 1129(c) is Inapplicable to the Plan

61.    The Plan is the only plan filed, so Bankruptcy Code § 1129(c) is inapplicable.

### M.  The Plan Complies with Bankruptcy Code § 1129(d)

62.    The purpose of the Plan is not to avoid taxes or application of section 5 of the Securities Act of 1933, and no party that is a governmental unit, or any other entity, has requested that the Court decline to confirm the Plan on the those grounds.  *See* 11 U.S.C. § 1129(d).

### N.  Bankruptcy Code § 1129(e) Does Not Apply

63.    This is not a "small business case" so Bankruptcy Code § 1129(e) does not apply.

### V.    The Debtor's Exculpation, Injunction, and Discharge Provisions Should be Approved

64.    The Plan has narrowly-tailored exculpation, injunction and discharge provisions.

### A.    The Exculpation Provision Should Be Approved

65.    The exculpation provision is limited to claims against Debtors, the Plan Administration, the Creditors Committee and any of their respective current or former members, directors, officers, trustees, employees, agents (acting in such capacity), advisors, brokers, attorneys, accountants, or representatives of any professional employed by any of them, in each case only to the extent that they were acting as a representative of the Debtors or the Estates.  Those parties meaningfully and substantially contributed to the success of the Chapter 11 Cases, and the language is appropriately circumscribed and has not been objected to and is proper.  Appropriate exculpation provisions for case fiduciaries in chapter 11 plans remains standard practice and have been approved in large chapter 11 cases in this District.  *See, e.g.*, *In re Oneida Ltd*., 351 B.R. 79, 94 n.22 (Bankr. S.D.N.Y. 2006) (approving exculpation provision releasing claims relating to any "pre-petition or postpetition act or omission in connection with, or arising out of, the Disclosure Statement, the Plan or any Plan Document . . . the solicitation of votes for and the pursuit of

22

Confirmation of [the] Plan, the Effective Date of [the] Plan, or the administration of [the] Plan or the property to be distributed under [the] Plan," where, as here, no release was provided for "gross negligence, willful misconduct, fraud, or criminal conduct, and the release cover[ed] only conduct taken in connection with Chapter 11 cases"); *Upstream Energy Servs. v. Enron Corp.* (*In re Enron Corp.*), 326 B.R. 497, 501 (S.D.N.Y. 2005) ("*Enron II*") (citing Bankruptcy Court's finding that plan's exculpation provision was "appropriately limited to a qualified immunity for acts of negligence and [did] not relieve any party of liability for gross negligence or willful misconduct" and that such clause was "reasonable and customary").

66.     Under the circumstances, the Court should approve the limited exculpation of third parties who meaningfully contributed to the success of this Chapter 11 Cases, and where the exculpation does not apply to any post-Effective Date obligations of any such party.

**B.     The Injunction and Discharge Provision Should be Approved**

67.     Bankruptcy Code § 1141(d)(1)(A) provides that the confirmation of a plan "discharges the debtor from any debts that arose before the date of such confirmation of any debt of a kind specified in section 502(g), 502(h), or 502(i)  of this tile." 11 U.S.C. § 1141(a)(1)(A). Section 6.01 of the Plan provides that except as provided in Bankruptcy Code § 1141(d), "after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim or interest against the Debtor" essentially operating as a standard discharge provision which is important to the Plan and the public policy underlying chapter 11.  Moreover, none of the exceptions in Bankruptcy Code §§ 1141(d)(2) or (d)(3) apply in this Chapter 11 Case.  The provisions set forth in Section 6.01 of the Plan  therefore are appropriate and should be approved.

68.     The injunction set forth in Section 6.04 of the Plan provides that the treatment for Allowed Claims under the Plan shall be in full satisfaction, settlement and release of such Claim.

23

Holders of Claims are only permanently enjoined as to the Debtors, and it does not apply to efforts to enforce the terms of the Plan.  The injunction set forth in the Plan is narrowly-tailored and centrally important to the Plan and the public policy underlying chapter 11.  Further, the injunction language is necessary to enforce the discharge provision in Section 6.01 as well as the exculpation language in Section 6.04, both of which are narrowly tailored as well.

### VI.    Assumption and Rejection of Executory Contracts and Unexpired Leases Should be Approved

69.     Bankruptcy Code § 1123(b)(2) allows a plan, subject to Bankruptcy Code § 365, to provide for the assumption, rejection, or assignment of any executory contract or unexpired lease not previously assumed or rejected under section 365. 11 U.S.C. § 1123(b)(2).

70.     In accordance with Bankruptcy Code § 1123(b)(2), Article VII of the Plan provides that to the extent not previously rejected or listed on the "Schedule of Rejected Executory Contracts and Unexpired Leases", subject to the occurrence of the Effective Date, all of the Debtors' executory contracts and unexpired leases entered into prior to the Petition Date shall be deemed assumed by the Reorganized Debtors. *See* Plan, Sec. 7.01. Executory contracts and unexpired leases rejected and giving rise to a Claim must be filed within 30 days after the date of service of notice of entry of the Confirmation Order, or such other date set by the Bankruptcy Court, and any Allowed Claim shall be a Class 3 General Unsecured Claim. Section 7.03 provides clear instructions for counterparties to assumed executory contracts and unexpired leases with respect to asserting and resolving cure amounts, and that if a counterparty does not receive a notice setting forth a cure amount at least fourteen (14) days before the Confirmation Hearing, the proposed cure amount for such contract or lease shall be deemed to be zero dollars. *See* Plan, Sec. 7.03. All cures shall be satisfied by the Debtors or the Reorganized Debtors, as applicable, upon assumption.  *See* Plan, Sec. 7.04.  The Plan articulates clear procedures and mechanisms for the

24

assumption and rejection of unexpired leases and executory contracts.

### VII.    Conclusion

71.    The Debtor respectfully submits that the Plan complies with all applicable requirements under the Bankruptcy Code and the Bankruptcy Rules. Accordingly, the Debtors respectfully request that the Court enter an Order together with such other relief as the Court deems just and proper.

Dated: Uniondale, New York
      July 15, 2026

FORCHELLI DEEGAN TERRANA LLP
*Attorneys for the Debtors and*
*Debtors in Possession*

By: */s/ Michael S. Amato* _
      Michael S. Amato
333 Earle Ovington Blvd, Suite 1010
Uniondale, New York 1553
(516) 248-1700
mamato@forchellilaw.com